

Aarti Reddy  
+1 415 693 2103  
areddy@cooley.com

VIA CM/ECF

September 4, 2020

Honorable Katherine H. Parker  
United States District Court  
Southern District of New York  
500 Pearl Street  
New York, New York  10007

Re:   *Mahood v. Noom, Inc.*, Case No. 1:20-cv-03677-LGS:  
<u>Defendants' Opposition to Plaintiffs' Amended Letter Motion re ESI Matters Plaintiffs Seek to Raise at the September 9 Case Management Conference</u>

Dear Judge Parker:

On behalf of Defendant Noom, Inc. ("Noom"), we write pursuant to Rule II.B of the Court's Individual Rules of Practice to oppose Plaintiffs' September 1, 2020 Rule 37.2 Letter (the "Motion"). Plaintiffs do not make clear in their letter what relief they are requesting. However, Noom wishes to respond to Plaintiffs' mischaracterizations of what they allege to be Noom's failure to disclose potentially relevant ESI repositories, its proposed ESI collection and search methodologies, or the preservation steps that Noom has taken to date. Each of Plaintiffs' accusations are false. In the interest of an orderly discovery process, Noom has gone beyond the obligations imposed by the applicable rules and disclosed:

- A detailed outline of Noom's ESI repositories and software it has identified thus far (disclosing the specific email clients, office software products, instant messaging solutions, file servers, software engineering management tools, and phone and voicemail solutions that Noom employs)

- Noom's circulation of a preservation hold to all employees known to have potentially relevant information

- A description of the automatic preservation measures taken in Noom's ESI systems

- That it plans to disclose to Plaintiffs Noom's search parameters, date ranges for searches, and custodians and will meet and confer with Plaintiffs on these issues

Noom made the above disclosures in the very July correspondence Plaintiffs attach to their Motion. (See Motion, Ex. A at 5-7.) Since Noom's July disclosures, and before Plaintiffs filed their Motion, the parties have met repeatedly to discuss Noom's ESI. During these discussions and in related correspondence, Noom has: (1) Offered to use substantially the entire ESI protocol recommended to the Parties by Judge Schofield (the Seventh Circuit Model ESI Protocol); (2) Provided a detailed collection and search methodology to Plaintiffs; (3) Proposed the Parties negotiate search terms; and (3) Provided additional details regarding its preservation efforts at Plaintiffs' request, including regarding the preservation of Slack instant messaging, as discussed further herein. In contrast, Plaintiffs have to date failed to disclose *any* specific information about the ESI repositories they intend to search for nine of the ten Named Plaintiffs, and, in an unusually contentious call, eventually admitted that they have taken no steps to ensure that their clients' auto-deletion settings for text messages, instant messages, and emails have been turned off.[1]

---

[1] Contrary to Plaintiffs' assertions in their Motion, Noom began asking about Plaintiffs' own ESI over three weeks ago. Since learning that Plaintiffs' counsel has not ensured auto-deletion settings have been turned off, Noom has inquired repeatedly about these preservation concerns, including on August 26, August 27, September 1, and September 2, and Plaintiffs have refused to provide any information to date—going so



Honorable Katherine H. Parker
September 4, 2020
Page Two

Notwithstanding this asymmetry in disclosures, Noom has tried to resolve these issues without involvement of the Court.  Plaintiffs have taken a markedly different approach—they have now filed three motions accusing Defense counsel of misconduct in just the last month.  (See ECF 25, 36, and 48.)  Noom suspects Plaintiffs are less interested in any particular ESI-related relief (indeed their Motion notably avoids asking for specific relief of any kind) than in attempting to drive up Noom's litigation costs and discredit Noom before the Court.  Despite these tactics, Noom will come to the September 9 hearing ready to discuss whatever additional information about its ESI and preservation efforts the Court believes is reasonably necessary to move past these disputes and on to the litigation of the claims at issue.

I.   Argument

a.   **Noom Has Provided Ample ESI Source and Methodology Disclosures.**

The Parties have been exhaustively discussing Noom's ESI source and methodology disclosures as part of their ongoing efforts to finalize an agreed ESI protocol. Noom sincerely regrets burdening the Court with piecemeal disputes regarding these still ongoing efforts.[2]  In fact, to avoid further serial motion practice over ESI disputes, in exchange for Noom's agreement to Plaintiffs' *first* requested extension to submit an ESI protocol, Plaintiffs agreed that the Parties would brief all remaining ESI protocol disputes in a single consolidated motion.  Ex. B.  Only days later, however, Plaintiffs violated that agreement by filing this motion over Noom's objections, even though it concerns Noom's ESI sources and search methodology, both clearly covered by the earlier agreement.  Ex. D at 2-6 (Noom's initial draft ESI protocol).)  This sharp dealing set the stage for numerous factual misstatements in Plaintiffs' motion.

**ESI Source Disclosures.**  Plaintiffs ask the Court to order Noom to reply to the questions set out in their July 6 Letter.  (Ltr. at 3, 5.)  That letter, over the span of 19 pages, sets out *hundreds* of questions, the vast majority of which are irrelevant to the parties' ESI and preservation discussions.  By way of example, Plaintiffs' letter purports to require Noom to list all of the database rights and permissions of *any employee* that could serve as a custodian in this matter, to detail in narrative form any changes to any policy concerning legacy or backup data *since 2015*, to provide a 12-point description of each individual "server" or "hard-drive" the company possesses that may contain relevant ESI, and to provide extensive details about every thumb drive or other portable media the company may have that could contain potentially relevant information.  (*See* ECF No. 39-1.)  These requests, apart from being highly unusual, are simply not feasible to address.  And Plaintiffs cite no authority that would require Noom to draft what would amount to hundreds of pages of descriptions of its information systems and hardware inventory.  Noom has already explained in detail why these requests were not only unreasonable as a practical matter, but also inconsistent with the law of this Circuit and not proportional to the needs of this litigation.  (ECF No. 48-1, Ex. A at 2-3.)

To support their requested relief, Plaintiffs contend that Noom uses Slack, Gmail, Gchat and Google Drive and "keep[s] most of [its] documents in an openly searchable and shared Google drive," (Mot. at 2.), and they assert that they learned these facts from "*independent* research because Noom has made only minimal preservation and source disclosures[.]"  (*Id.*)  Plaintiffs' own exhibits disprove this.  Noom's

---

far as to unilaterally cancel an ESI meet-and-confer call scheduled earlier this week, in which Plaintiffs agreed to discuss these issues.  (See Ex. A.)

[2] Noom's request for consolidated briefing is consistent with Judge Schofield's order regarding the ESI protocol.  (ECF No. 30.)  Plaintiffs attempted to litigate the same issues at the Parties' August 13 conference by submitting similar arguments in the Parties' joint pre-conference submission.  (ECF No. 24 at 5-6.)  In response, Judge Schofield issued her order directing the Parties to submit joint briefing on these topics—which Plaintiffs have not done.  (ECF No. 30.)



July 23 Letter identifies each of these repositories, explains that it intends to collect and search from these sources, and that it will continue to "provide [Plaintiffs] with periodic updates regarding the parties' discovery planning efforts." (ECF No. 48-1, Ex. A at 5-7 (describing, *inter alia*, Gmail, Google Drive, Gchat).) Noom's proposed ESI protocol also identifies these sources. (Ex. D at 4.)

Noom voluntarily made these ESI source disclosures early in the Parties' discovery planning efforts in an effort to cooperate and build trust with Plaintiffs, and Noom also committed to supplementing these disclosures as it identifies additional, potentially responsive repositories. This is more than sufficient under the discovery rules. Indeed, as your Honor has recognized "nothing in Rule 26(g) obligates counsel to disclose the manner in which documents are collected, reviewed and produced in response to a discovery request." *Brown*, 2019 WL 7168146, at *3 (citation omitted); *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-12137 (JPO), 2020 U.S. Dist. LEXIS 9240, at *4-5 (S.D.N.Y. Jan. 21, 2020) ("When documents are produced in discovery, whether they be produced electronically or otherwise, the Court does not believe that, in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process."). Rather, counsel must conduct a "reasonable inquiry" for responsive documents and that duty "is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." *Brown*, 2019 WL 7168146, at *3.

Plaintiffs claim that, because Noom did not specifically answer each minute detail of their July 6 Letter, Noom's approach to discovery has been "unorthodox" and "largely secret." (Mot. at 1.) Noom's responses have been appropriate and more than sufficient under the law and Plaintiffs cite not one case or secondary authority that holds otherwise. [3,4]

**ESI Search Methodology.** Plaintiffs also seek unspecified relief in response to their claim that Noom "refuse[s] to agree upon a search methodology with Plaintiffs" and has been "evasive about how it intend[s] to search its ESI and refuse[d] to agree upon a search methodology with Plaintiffs." (Mot. at 4.) Not so.

On July 23, 2020, Noom agreed to "meet and confer with [Plaintiffs] regarding [Noom's] custodians of relevant ESI, date ranges for searches of ESI, and other search parameters." (ECF No. 48-1, Ex. A at 3.) On August 19, Noom circulated a proposed ESI protocol memorializing this commitment, agreeing to meet and confer on search terms and other issues, and disclosing a detailed proposed collection protocol based on the Seventh Circuit Model ESI Protocol recommended to the Parties by Judge Schofield—which Plaintiffs later rejected without explanation. (Exs. C; D.).

---

[3] Indeed, the Sedona Conference principles, which Plaintiffs claim was the basis of their July 6 Letter, support **Noom's** position. (Ltr. at 3.) They hold that "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." The Sedona Principles (Second Edition): Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 6.

[4] None of Plaintiffs' cited authorities show that Noom should have responded to every facet of Plaintiffs' July 6 Letter. Those cases do not involve discovery planning at all, but address willful or grossly negligent spoliation of specific evidence revealed after the close of fact discovery. Ltr at 5 (citing *Zubulake v. UBS Warburg LLC* (*Zublake V*), 229 F.R.D. 422, 436-37 (S.D.N.Y. 2004) (awarding sanctions based on evidence that Defendant's personnel "wilfully" deleted email evidence); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs, LLC*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010) (issuing sanctions to Plaintiffs who were "grossly negligent" in preserving evidence, including by issuing a preservation hold four years after litigation was filed).)



Honorable Katherine H. Parker
September 4, 2020
Page Four

      Although the Parties are still in the midst of negotiating Noom's ESI methodology, Noom's ongoing efforts at cooperation are again consistent with Noom's discovery obligations.[5] *Mortg. Resolution Servicing v. JPMorgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 78217, at *7 (S.D.N.Y. May 18, 2017) ("Unless [Defendant's proposed methodology] is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or . . . designating custodians"). Indeed, Noom's efforts to cooperate with Plaintiffs on its search methodology adheres to the Court's guidance on these very issues. As Your Honor has held:

> [A] producing party arguably could choose to adopt the ESI protocol it deems best aimed at locating relevant documents, consistent with its obligation under Rule 26, without disclosing its process to the requesting party . . . However, the Rules also require cooperation in discovery to achieve a just, speedy, and inexpensive determination of a case. Where ESI is concerned, this typically means the parties are expected to meet and confer about custodians of relevant ESI, date ranges for searches of ESI, and other search parameters. *Brown*, 2019 U.S. Dist. LEXIS 220625, at *9-10.

Noom has agreed to meet and confer with Plaintiffs on **all these fronts**: custodians, search terms, date ranges, and other search parameters. (ECF No. 48-1, Ex. A at 5; Ex. D at 5.) Plaintiffs' suggestion that Noom has failed to comply with its discovery obligations because it will not prepare a methodology in accordance with Plaintiffs' specifications has no legal or factual merit.[6]

      **b.   Noom's ESI Preservation Disclosures Were Comprehensive and Accurate.**

      Plaintiffs claim they have "ferret[ed] out" a "major preservation dispute" and thus request a "preservation order regarding Noom's Slack messages[]." (Mot. at 1, 6.) As support, Plaintiffs claim that Noom is "only preserving 'relevant [and 2] **public** Slack channel messages" and that "Defendant's private Slack messages were **not** being preserved." (Mot. at 4.) Both of these statements are false and it is difficult to understand how Plaintiffs do not know that.

      As explained above, on July 23, Noom provided Plaintiffs with disclosures regarding the status of its ESI preservation efforts, including Slack messages. (ECF No. 48-1, Ex. A at 7.) Slack is an instant messaging platform that takes place on public and private channels. As Noom has explained to Plaintiffs numerous times, by default, **all of Noom's public and private Slack messages are preserved for the life of the Slack workspace.** (*Id.*) Further, though Slack users can alter those default settings to delete messages, this is not a straightforward undertaking. (*Id.*) If Plaintiffs had any reason to doubt these

---

[5] As part of the Parties' ongoing ESI protocol negotiations, the Parties have also been discussing the possibility of Technology Assisted Review ("TAR"). At this stage, Defendant does not intend to use TAR, but is willing to confer with Plaintiffs on its methodology if it later chooses to do so.

[6] Plaintiffs' selective quotation of case law is misleading—they cite no case or authority to support their view that Noom must seek Plaintiffs' approval before implementing its collection and search methodology. *See. e.g.*, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008) (discussing sufficiency of search terms that were not disclosed to Plaintiffs when assessing claim of privilege waiver); *In re: Actavis Holdco U.S., Inc.*, 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019), *cert. denied* (June 15, 2020) (denying writ of mandamus and affirming unremarkable principle that a Court has the ability to order the use of specific search terms or custodians); *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 94 (S.D.N.Y. 2012) (discussing need for cooperation in performing supplementary FOIA searches for responsive documents in connection with rulings on cross-motions for summary judgment in FOIA litigation).



Honorable Katherine H. Parker
September 4, 2020
Page Five

representations, they could have confirmed these facts by performing basic online research on Slack's website prior to filing their motion. *See* Slack Help Center ("By default, Slack will retain all messages and files for the lifetime of your workspace. If you'd like, you can adjust your retention settings to automatically delete messages and files after a set amount of time.")[7]

Even though all of Noom's Slack messages are preserved by default, Noom took additional steps to comply with its preservation obligations. <u>First,</u> shortly after the filing of the Complaint, Noom circulated a litigation hold notice broadly within the Company and specifically instructed all recipients not to delete any potentially relevant Slack messages, which would include their private messages. (ECF No. 48-3, Ex. C at 2, 5.) <u>Second</u>, as part of its ESI investigation and out of a further abundance of caution, Noom further confirmed that no channel owner had overridden the default settings for any public Slack channels with potentially responsive information, using a feature that was available through Noom's Basic Slack subscription. (*Id*.) Noom determined that, out of thousands of public Slack channels within Noom, only three public channels were set to automatic deletion (not, as Plaintiffs state, that only two such channels were being preserved). (*Id.* at 2.) Noom determined that one of those channels may have information that Plaintiffs would consider responsive (Noom does not) and thus returned that channel to the default settings.

Noom told Plaintiffs all this on August 26 (along with other information Plaintiffs requested regarding Noom's preservation efforts). (*Id.* at 5.) On a subsequent meet-and-confer call regarding the ESI protocol also held on August 26, counsel for Plaintiffs expressed concerns that Noom had not separately confirmed that each individual Noom employee had not altered his or her default settings to turn on autodeletion on their own private Slack messages. Noom explained that it had no ability to do so on an automated basis using Noom's Basic Slack subscription, and Plaintiffs' counsel requested that Noom purchase a software upgrade in order to do so. (*Id.* at 2). Counsel immediately conferred with Noom regarding this request, and learned that in early August, Noom had already upgraded to a "Slack premium" subscription. As a result, Noom can now override any individual users' alterations of the default settings to preserve all Slack messages, in the unlikely event that they did so. Noom took these steps immediately, thereby mooting Plaintiffs' requested relief. (*Id.* at 2.)

Plaintiffs distort Noom's efforts at further cooperation and accuse Noom of engaging in "eleventh hour steps to turn off most automatic deletion." (Mot. at 5.) But, again, **Slack automatically preserves all messages for the life of the workspace**. (*Id.*) Noom made no misrepresentation, let alone committed spoliation, and there is no legal basis for Plaintiffs' request for unspecified additional "preservation disclosures." Noom's preservation obligation at this stage is simply to preserve sources of ESI that it knows, or reasonably should know, are relevant to the claims and defenses of the parties and ensure that they are preserved. *Rothman v. City of New York*, No. 19-225, 2019 WL 6210815, at *4 (S.D.N.Y. Nov. 21, 2019). Noom has done exactly that. Plaintiffs have misconstrued Noom's representations to manufacture a preservation issue where there is none.[8]

      c. **Plaintiffs Have Not Demonstrated that Judge Schofield's Discovery Limits Do Not Apply.**

Plaintiffs contend that Noom improperly "insist[s] that ESI discovery in this case be limited to 160

---

[7] Slack Help Center webpage, *available at* https://slack.com/help/articles/203457187-Customize-message-and-file-retention#:~:text=By%20default%2C%20Slack%20will%20retain,a%20set%20amount%20of%20time.

[8] Notably, Plaintiffs have made similarly unfounded accusations of spoliation even before it raised concerns regarding Slack messages. (ECF No. 48-3 at 5 (8/21/20 email from B. McInturff (accusing Defendant of "abrogate[ing] its commitment and obligation to make adequate ESI preservation disclosures.").)

# Cooley

Honorable Katherine H. Parker
September 4, 2020
Page Six

hours and 10 custodians[.]" (Mot. at 6.)  In so arguing, it appears that Plaintiffs seek relief from Judge Schofield's Individual Rules of Practice, which limit discovery: (1) to 10 key custodians; (2) from five years prior to the filing of the lawsuit; (3) from sources that are reasonably accessible without undue cost; and (4) for more than 160 hours, inclusive of time spent identifying potentially responsive ESI.  Schofield Individual Rules of Practice Rule II.A.1.  While Noom respectfully submits that it is within Your Honor's discretion to determine whether these rules should be set aside, Noom opposes Plaintiffs' Motion, because it is procedurally improper and there is no good cause for their requested relief.

First, Plaintiffs did not raise this issue with Judge Schofield in a timely and orderly manner.  To be clear, Plaintiffs have objected to these discovery limits even since the Rule 26(f) conference—well before either Party could have possibly determined that such an extension was appropriate.  Weeks later, Plaintiffs stated their intent to seek relief from Judge Schofield during the initial case management conference during which the Court set the current case management plan, *see e.g.*, (ECF No. 24 at 8, 24-1 at 2 (reflecting Plaintiffs' position that this case presents "unique complexities" that merit departure from the presumptive discovery limits).)  However, Plaintiffs chose not to raise the issue during the hearing, and Judge Schofield had no cause to believe that Plaintiffs would seek to exceed her discovery limits.  Judge Schofield subsequently set a discovery schedule that is **more expedited** than the schedule that the Parties originally proposed—presumably with her own discovery limits in mind.  (ECF No. 32 (setting close of fact discovery on December 11, 2020).)  If Plaintiffs seek to set aside Judge Schofield's discovery limits, the Parties must renegotiate the current Case Management Plan to accommodate the expanded discovery Plaintiffs inevitably will seek.  Parker Individual Rules of Practice at II.A.  Plaintiffs have not taken any of the necessary steps to do so, including by filing pre-conference submissions with this Court.  (*Id.*)

Second, Plaintiffs cite no authority for their position that Judge Schofield's referral to this Court for general pre-trial management automatically nullifies her discovery rules.  Other magistrate judges in this District have continued to apply these reasonable limits even after referral by Judge Schofield for general pre-trial management.  *See, e.g.*, *Medidata Sols., Inc. v. Veeva Sys. Inc., et al.*, Case No. 17-00589, ECF No. 138 (transferring case for "general pre-trial"); ECF Nos. 151 at 24, 39; 207 at 3 (referencing applicability of Judge Schofield's discovery limits).

Third, adherence to these reasonable limits is particularly vital in this case, given Plaintiffs' apparent intent to use overwhelming and overbroad discovery demands to extract leverage over Noom.  Most recently, Plaintiffs propounded eighty requests for production, some with as many as **11-21** subparts, which are tantamount to a production demand for virtually every document at the company.[9]

Finally, Noom respectfully submits that Plaintiffs have not shown "good cause" for their requested relief, as Judge Schofield's rules require.  Schofield Individual Rules of Practice Rule II.A.1.  Indeed, Plaintiffs' only support for their argument is a single sentence that this case is a "nationwide class action."  Defendant further submits that discovery in this case is just beginning, and that it is premature to set aside reasonable discovery limits that will enable the Parties to conduct discovery in a streamlined and efficient manner.

Respectfully submitted,

*/s/ Aarti Reddy*

Aarti Reddy

---

[9] For example, Plaintiffs seek *inter alia*, "all documents and communications sent to or received from Noom directors, officers, employees, contractors or representatives" regarding 21 different subjects and "All documents and communications from, with, or to Noom's customers or third parties" regarding those same 21 subjects.  (Plaintiffs' RFP Nos. 10, 12.)