UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X

                      :

GERALDINE MAHOOD, ALEXANDRA     :    1:20-CV-03677 (LGS) (KHP)
BURWOOD, SUSAN BREWSTER, MELISSA
CUEVAS, MARYANNE DERACLEO,      :
ELVERA HONORE, KAREN KELLY, MOJO
NICHOLS, REBECCA RICHARDS, and   :
JENNIFER SELLERS,
                      :
Individually and on Behalf of All Others
Similarly Situated,               :

                Plaintiffs,   :

                      :

        v.              :

NOOM, INC.                  :

                Defendant.  :

------------------------------------------ X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

I. NOOM ......................................................................................................................... 2

    A. Signing up for Noom ............................................................................................ 2

    B. Noom's Program ................................................................................................... 4

II. PLAINTIFFS' NOOM EXPERIENCES ...................................................................... 4

III. PROCEDURAL HISTORY ......................................................................................... 5

I. THE FAC PLAINTIFFS HAVE NOT PLED THEIR CLAIMS WITH THE REQUISITE PARTICULARITY ......................................................................................... 6

    A. All of the FAC Plaintiffs' Claims Fail under Rule 9(b) ...................................... 6

        1. Rule 9(b) applies to Counts II-XIII ............................................................. 6

        2. The FAC Plaintiffs do not satisfy applicable pleading requirements ........ 8

    B. The GBL Claims Are Also Deficiently Pled (Count I) ..................................... 11

II. NO PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ...................... 12

III. ALL OF PLAINTIFF MAHOOD'S CLAIMS MUST BE DISMISSED BECAUSE SHE HAS NOT SUFFERED ANY INJURY ................................................. 14

IV. PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS ................................. 17

    A. Those Plaintiffs Not Resident in New York Fail to State a Claim under New York's General Business Law (Count I) ...................................................... 17

    B. Plaintiffs' ARL Claim Must Be Dismissed Because There is No Private Right of Action under the ARL Statute (Count II) ............................................. 19

    C. The California Plaintiffs Do Not State a Bot Disclosure Law Violation as a Basis For Their UCL Claim (Count IV) ............................................................ 19

    D. The California Plaintiffs' CLRA Claim Fails Because Noom is Not a "Good" or "Service" Under the Statute (Count V) ............................................. 21

    E. Plaintiff Sellers' Alabama Deceptive Trade Practices Act Class Claim is Barred (Count X) ................................................................................................ 22

    F. Plaintiffs Do Not State Claims For Unjust Enrichment under New York and California Law (Count XII) ........................................................................ 23

    G. Plaintiffs' Claims For Conversion Fail under Various States' Laws (Count XIII) ...................................................................................................................... 24

CONCLUSION .................................................................................................................. 25

## Table of Authorities

**Page(s)**

**Cases**

*A.IA. Holdings, S.A. v. Lehman Bros., Inc.*,
No. 97-4978, 1998 WL 159059 (S.D.N.Y. Apr. 1, 1998) .........................................................9

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
947 F. Supp. 2d 222 (E.D.N.Y. 2013) ..................................................................................12

*Arnold Chevrolet LLC v. Tribune Co.*,
No. 04-3097, 2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) ..................................................20

*In re Arris Cable Modem Consumer Litig.*,
No. 17-01834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018)..................................................7, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................6

*Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse*
*Corp.*, No. 13-1725, 2014 WL 4054240 (S.D.N.Y. Aug. 15, 2014) ......................................17

*Becker v. Skype Inc.*,
No. 12-06477, 2014 WL 556697 (N.D. Cal. Feb. 10, 2014) ..................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................6

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)..................................................................................................13

*BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC*,
No. 13-0638, 2013 WL 6003701 (S.D.N.Y. Nov. 13, 2013)..................................................10

*Brumfield v. Trader Joe's Co.*
No. 17-3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018)............................................23, 24

*Bytemark, Inc. v. Xerox Corp.*,
342 F. Supp. 3d 496 (S.D.N.Y. 2018)....................................................................................24

*Camp v. Ala. Telco Credit Union*,
2013 WL 2106727 (N.D. Ala. May 13, 2013).......................................................................25

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)................................................................................................................12

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, N.Y.*,
    945 F.3d 83 (2d Cir. 2019).................................................................................14

*Cooper v. Bristol-Myers Squibb Co.*,
    No. 07-885, 2009 WL 5206130 (D.N.J. Dec. 30. 2009).........................................7

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013).........................................................................18, 19

*Daly v. Castro Llanes*,
    30 F. Supp. 2d 407 (S.D.N.Y. 1998).....................................................................7

*Delgado v. Ocwen Loan Servicing, LLC*,
    No. 13-4427, 2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ............................22, 23

*Dimond v. Darden Rests., Inc.*,
    No. 13-5244, 2014 WL 3377105 (S.D.N.Y. July 9, 2014)...................................15

*Doe v. SuccessfulMatch.com*,
    70 F. Supp. 3d 1066 (N.D. Cal. 2014) ................................................................16

*Dominguez v. Banana Republic, LLC*,
    --- F. Supp. 3d ----, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020).......................13

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ..................................................................7

*Durell v. Sharp Healthcare*,
    108 Cal. Rptr. 3d 682 (Ct. App. 2010) ................................................................16

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015)................................13

*Epstein v. JPMorgan Chase & Co.*,
    No. 13-4744, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014)................................14

*Ferrington v. McAfee, Inc.*,
    No. 10-01455, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ...............................22

*In re Ford Fusion and C-Max Fuel Econ. Litig.*,
    No. 13-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)..................................7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    74 F. Supp. 3d 581 (S.D.N.Y. 2015).....................................................................17

*In re Frito-Lay N.A., Inc. All Nat. Litig.*,
    No. 12-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .................................9

*In re Fyre Festival Litig.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019) ...................................................................................9

*Gale v. Int'l Bus. Machs. Corp.*,
  781 N.Y.S.2d 45 (App. Div. 2004) ....................................................................................12

*Gascho v. Global Fitness Holdings, LLC*,
  863 F. Supp. 2d 677 (S.D. Ohio 2012) .............................................................................25

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  988 F. Supp. 2d 434 (D. Del. 2013) ..................................................................................21

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  774 N.E.2d 1190 (N.Y. 2002) ...........................................................................................17

*Hart v. BHH, LLC*,
  No. 15-4804, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) ...............................................24

*Headfirst Baseball LLC v. Elwood*,
  168 F. Supp. 3d 236 (D.D.C. 2016) ..................................................................................25

*Hernandez v. BMNY Contracting Corp.*,
  No. 17-9375, 2019 WL 418498 (S.D.N.Y. Jan. 17, 2019) ...............................................11

*Hollander v. Ortho-McNeil-Janssen Pharm., Inc.*,
  No. 10-00836, 2010 WL 4159265 (E.D. Pa. Oct. 21, 2010) ............................................11

*Holve v. McCormick & Co.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) .............................................................................14

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
  1 F. Supp. 3d 34 (E.D.N.Y. 2014) ......................................................................................6

*Huu Nguyen v. Nissan N. Am., Inc.*,
  No. 16-05591, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ..........................................24

*I.B. v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ..............................................................................22

*Izquierdo v. Mondelez Int'l, Inc.*,
  No. 16-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ...........................................14

*Johnson v. Pluralsight, LLC*,
  728 F. App'x 674 (9th Cir. 2018) ......................................................................................19

*Kaufman v. Sirius XM Satellite Radio, Inc.*,
  474 F. App'x 5 (2d Cir. 2012) ...........................................................................................18

*Kwikset Corp. v. Super. Ct. of Orange Cty.*,
    246 P.3d 877 (Cal. 2011) ............................................................15, 16

*Lisk v. Lumber One Wood Preserving, LLC*,
    792 F.3d 1331 (11th Cir. 2015) ...............................................................23

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    306 F. Supp. 3d 629 (S.D.N.Y. 2018)...............................................................6

*Lopez v. Stages of Beauty, LLC*,
    307 F. Supp. 3d 1058 (S.D. Cal. 2018)...............................................................19

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...............................................................14

*Luman v. Theismann*,
    647 F. App'x 804 (9th Cir. 2016) ...............................................................14, 16

*Matsumara v. Benihana Nat'l Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008)...............................................................6, 7, 8

*Mouzon v. Radiancy, Inc.*,
    85 F. Supp. 3d 361 (D.D.C. 2015) ...............................................................7

*New Box Sols., LLC v. Davis*,
    No. 18-5324, 2018 WL 4562764 (C.D. Cal. Sept. 18, 2018) ...............................................................16

*Oden v. Boston Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................9

*Oens v. HSBC Bank*,
    No. 12-06005, 2012 WL 12887753 (C.D. Cal. Oct. 16, 2012)...............................................................16

*Peterson v. Cellco P'ship*,
    80 Cal. Rptr. 3d 316 (Ct. App. 2008) ...............................................................16

*Pugnitore v. Barbera*,
    506 F. App'x 40 (2d Cir. 2012) ...............................................................12

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)...............................................................6

*Sanbrook v. Office Depot, Inc.*,
    No. 07-05938, 2008 WL 1994884 (N.D. Cal. May 5, 2008)...............................................................16

*Sanders v. Grenadier Realty, Inc.*,
    367 F. App'x 173 (2d Cir. 2010) ...............................................................11

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
   506 F.3d 832 (9th Cir. 2007) ..............................................................15

*Song Fi, Inc. v. Google, Inc.*,
   No. 14-5080, 2016 WL 1298999 (N.D. Cal. Apr. 4, 2016).....................21

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012).......................................................22

*Speedfit LLC v. Chapco Inc.*,
   No. 15-1323, 2016 WL 5793738 (E.D.N.Y. June 29, 2016) ...................11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..............................................................................14

*Taylor v. Fed. Aviation Admin.*,
   351 F. Supp. 3d 97 (D.D.C. 2018).............................................................15

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ..................................................................21

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ..........................................................7

*Tumampos v. Cathay Pac. Airways Ltd.*,
   No. 16-6208, 2017 WL 10446824 (N.D. Cal. Apr. 25, 2017).................16

*Vaccariello v. XM Satellite Radio, Inc.*,
   295 F.R.D. 62 (S.D.N.Y. 2013) .................................................................13

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y.1997) ..................................................................11

*Woods v. Maytag Co.*,
   No. 10-0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) .............................10, 11

*Worldwide Travel, Inc. v. Travelmate US, Inc.*,
   No. 14-00155, 2015 WL 1013704 (S.D. Cal. Mar. 9, 2015) ...................25

*Wornow v. Register.Com, Inc.*,
   778 N.Y.S.2d 25 (App. Div. 2004)............................................................25

*Wright v. Publishers Clearing House, Inc.*,
   372 F. Supp. 3d 61 (E.D.N.Y. 2019) .........................................................12

*Wright v. Publishers Clearing House, Inc.*,
   439 F. Supp. 3d 102 (E.D.N.Y. 2020) ....................................................17, 18, 19

*Yunker v. Pandora Media*, *Inc.*,
    No. 11-03113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...............................................22

**Statutes**

Ala. Code Ann. § 8-19-10(f) ...................................................................................................22

Cal. Bus. & Prof. Code § 17200 .............................................................................................20

Cal. Bus. & Prof. Code § 17600 .............................................................................................19

Cal. Bus. & Prof. Code § 17941 .............................................................................................20

Cal. Civ. Code § 1770(a) ........................................................................................................21

Cal. Civ. Code § 1780(a) ........................................................................................................16

California's Bot Disclosure Law .............................................................................................20

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................................6

Fed. R. Civ. P. 12(b)(6) .....................................................................................................6, 15

Restatement (Second) of Torts §§ 222A ................................................................................24

## PRELIMINARY STATEMENT

Noom, Inc. ("Noom") is a mobile app that has helped millions of users lose weight and lead healthier lives through behavioral change.  Noom's success is built on the devotion of its customers, as demonstrated by the company's high consumer satisfaction ratings.[1]  It is therefore unsurprising that Plaintiffs have failed to find a single Noom user who can allege the facts necessary to substantiate the medley of claims in the First Amended Complaint ("FAC").  Rather than relying on particularized allegations of the Named Plaintiffs' experiences with Noom, Plaintiffs invoke hyperbole and conjecture to allege that Noom deceived users regarding its automatic purchase renewal policy, its marketing and advertising practices, and its coaching program.  But when reduced to the actual allegations regarding the named Plaintiffs, the FAC fails to state a claim.

Of the ten Named Plaintiffs, nine clearly fail to plead their claims with the required particularity for fraud under Rule 9(b).  These Plaintiffs do not identify a single advertisement that purportedly misled them, and fail to offer any specific allegations regarding their experience signing up for Noom or using its platform.  Instead, each of these Plaintiffs offer the same, insufficient, copy-and-pasted allegations that bear no connection to the FAC's far-fetched narrative of deceit, and also nonsensically allege "upon information and belief" the disclosures they saw were similar to those of "other named Plaintiffs."  Their claims easily fail.

The **only** Plaintiff who purports to offer any specific allegations about her use of Noom's platform is California Plaintiff Geraldine Mahood.  Plaintiff Mahood admits receiving clear disclosures describing Noom's policies before and after signing up for Noom, and concedes she

---

[1] Noom has a 4.7 star rating on the Apple App Store based on over 329,000 reviews, *see* App Store Preview: Noom, Apple, https://apps.apple.com/us/app/noom/id634598719 (last visited Sept. 9, 2020) and a 4.4 star rating on Google Play based on another 216,000 plus reviews, *see* Google Play: Noom, Google, https://play.google.com/store/apps/details?id=com.wsl.noom&hl=en_US (last visited Sept. 9, 2020).

received a full refund prior to filing suit.  She has thus suffered no injury and her claims also fail.

In addition to these threshold pleading deficiencies, the FAC advances myriad specious legal theories.  For example, that New York's GBL can apply to a nationwide class based on the mere fact that Noom is a New York-based company—a theory that has been roundly rejected in analogous contexts.  Likewise, Plaintiffs seek to advance classwide claims under Alabama's consumer fraud statute; however, that statute contains a class action bar that prohibits such claims. For these and various other reasons, Plaintiffs' FAC fails to state a claim and must be dismissed.

## STATEMENT OF FACTS

### I. NOOM.

#### A. Signing up for Noom.

Over 50 million users have downloaded Noom's app, making it one of the most popular weight loss programs globally.  (FAC ¶ 1.)  To get started, users complete an intake evaluation on Noom's website or mobile application.  (*Id.* ¶¶ 39, 41.)  Users can then sign up for a low-cost 14-day trial by entering their payment information in the check-out flow of the mobile app or website. (*Id.* ¶¶ 42, 43.)  Noom informs users before the transaction is completed, and reiterates in a confirmatory email sent after sign up, that a user's trial will convert into an ongoing subscription if she does not cancel before the trial ends.  (*Id.* ¶¶ 45, 82.)

As shown in the screenshot Plaintiffs include in the FAC, Noom states, prior to sign up, the exact date that the trial will end and convert to a full subscription plan.  (FAC ¶ 45.)  In that example, shown below, Noom discloses above the purchase button:  "Your 14-day trial will last until December 20th, 2019.  You can cancel anytime before then and will not be charged the full amount."  (*Id.*)  The same disclosure goes on to state:  "If you decide Noom is right for you, on December 20th, 2019, you will be charged one payment of $99 for your 2 month course ($49.50/month)."  (*Id.*)



Users who sign up for a Noom trial also receive a confirmation email that includes the same cancellation and renewal terms set forth above.  (FAC ¶ 82.)  The FAC includes a screenshot of Ms. Mahood's confirmation email, which shows that Noom discloses the date the trial will end, and that Noom automatically charges renewing payments after the trial period.  (*Id.*)  The email goes on to repeat the full disclosure provided at the time of purchase and further states that users can cancel within the 14-day trial period without being charged the full plan amount.  (*Id.*)

Noom also makes it easy for users to cancel—before their trial converts to an ongoing subscription and afterwards.  Noom makes clear at the time of purchase, in the confirmation email, and on its website that users can cancel anytime, thereby preventing future renewals.  (*See e.g. id.* ¶ 45 (showing purchase screen with quote "cancel anytime").)  If a user does decide to cancel, all she needs to do is say so through Noom's messaging interface (i.e. "let [their] coach know").  (*Id.*)  Noom also provides a link that walks a user through the necessary cancellation steps.  (*Id.* ¶ 54.)

### B.    Noom's Program.

Noom's innovative mobile app offers many features that allow users to, among other things, log their meals, track their weight, read psychology-based articles and tips, and track goals tailored to their program.  (FAC ¶ 53.)[2]  The app also includes an instant messaging feature through which users can ask natural-language questions.  (*Id.* ¶ 53.)  For certain common inquiries, including cancellation of a Noom subscription, Noom will automatically direct the user to the appropriate instructions or links.  (*Id.* ¶ 54.)  But as Noom explains on its website, Noom's success is in part driven by a team of trained human coaches that assist users in their weight-loss journey through the app.  (*Id.* ¶¶ 74, 76.)  While Plaintiffs mischaracterize Noom's coaching program in the FAC, they nowhere expressly deny that Noom employs a team of skilled human coaches.

## II.   PLAINTIFFS' NOOM EXPERIENCES.

Plaintiff Mahood—who, incidentally, is a repeat named Plaintiff for Plaintiffs' counsel[3]— is the only Plaintiff that offers any details regarding her experience using Noom.  Notably, Plaintiff Mahood alleges she was shown disclosures similar to those described above, and provides her

---

[2] Plaintiffs allege that hypothetical users might be confused into thinking that they could access their programs outside of the app, but do not allege any statements by Noom that might create this confusion.  (FAC ¶ 52.)  And, critically, Plaintiffs themselves do not allege that they were confused in this way—in fact, nine out of ten plaintiffs expressly allege that they downloaded the app either to sign up for or after signing up for Noom.  (*Id.* ¶¶ 81, 84, 95, 106, 115, 124, 133, 149, 160, 169.)

[3] Ms. Mahood was also a named Plaintiff in *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427 (E.D.N.Y.).

confirmation email with renewal terms.  (FAC ¶ 82.)

After signing up for Noom's Program, Plaintiff Mahood alleges that she found the Noom app confusing and determined that success with Noom would require her to "enter[] extensive amounts of data" about her diet and exercise, which she was not willing to do.  (FAC ¶¶ 84-86.) Plaintiff Mahood also admits that she did not complete the survey that would have paired her with a human coach, as she was instructed to do.  (*Id.* ¶ 86.)

While Plaintiff Mahood alleges she was confused regarding how to cancel her subscription, she nonetheless concedes she was able to cancel her subscription in the exact manner described above.  (*Id.* ¶¶ 87, 91-92.)  Moreover, Plaintiff Mahood also admits that after she indicated to Noom (through the app) that she was unhappy with her Noom program, Noom gave her a ***full*** refund for her post-trial program fees.  (*Id.* ¶ 93.)  Mahood therefore does not identify any pecuniary harm as a result of her alleged confusion about Noom's subscription policies.

The remaining nine Plaintiffs offer virtually no specifics regarding their Noom experience. The FAC simply copy-and-pastes generic allegations that each Plaintiff either "heard" or "saw" unspecified "ads" at some unspecified time and place.  (*E.g.*, *id.* ¶¶ 95, 149.)  Similarly, each Plaintiff alleges generically that they were "misled by the [unspecified] representations and omissions outlined above"—seemingly referring to other unspecified sections of the FAC.  (*E.g.*, *id.* ¶ 96.)  The FAC also alleges, "[u]pon information and belief, the relevant representations in the sign-up flow on the app were in all material respects the same as those seen by the other named Plaintiffs."  (*E.g.*, *id.* ¶ 104.)  In short, these Plaintiffs fail to allege specifically any of the when/where/what details of the alleged misrepresentations and how they were misled by them.

### III.   PROCEDURAL HISTORY.

California Plaintiff Geraldine Mahood filed the Complaint on May 12, 2020 and asserted claims on behalf of a putative class.  After Noom filed a pre-motion letter contesting Ms. Mahood's

Article III standing, Plaintiffs amended the complaint to add claims on behalf of nine additional Plaintiffs from Alabama, California, New York, Pennsylvania, Ohio, Washington, and the District of Columbia ("FAC Plaintiffs").  That FAC is the subject of this motion.

## LEGAL STANDARD

A complaint must be dismissed if it does not allege facts sufficient to state a cognizable claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  The pleading must not merely allege conduct that is "conceivable"; it must plead enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570.  Further, claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff alleging fraud to "state with particularity" the circumstances constituting fraud.  Fed. R. Civ. P. 9(b); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (citation omitted).

## ARGUMENT

I.    THE FAC PLAINTIFFS HAVE NOT PLED THEIR CLAIMS WITH THE REQUISITE PARTICULARITY.

A.    **All of the FAC Plaintiffs' Claims Fail under Rule 9(b).**

1.    **Rule 9(b) applies to Counts II-XIII.**

Any cause of action that bears a "close legal relationship to fraud" ***or*** that is predicated on allegations of fraudulent conduct is subject to Rule 9(b), "regardless of whether fraud is an element of the claim."  *Matsumara v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008).  Relevant here, if a complaint alleges a "course of fraudulent conduct," each claim that relies on these common allegations must meet Rule 9(b)'s requirements.  *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 54 (E.D.N.Y. 2014) (applying 9(b) to California Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL") and False Advertising Law ("FAL") claims premised on course of fraudulent conduct); *see also Lokai*

*Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 640 n.5 (S.D.N.Y. 2018) (similar).

This is particularly so if a plaintiff has "made 'little, if any, effort to differentiate' [a claim] from

the fraud allegations upon which the action is predicated." *Matsumara*, 542 F. Supp. 2d at 251-52

(citation omitted); *see also In re Ford Fusion and C-Max Fuel Econ. Litig.*, No. 13-2450, 2015

WL 7018369, at *12-14 (S.D.N.Y. Nov. 12, 2015) (applying 9(b) where plaintiffs' claims were

based on a fraudulent course of conduct and did not distinguish between fraud claims and non-

fraud claims).

Here, all of the FAC Plaintiffs' claims, with the exception of their New York General

Business Law ("GBL") Section 349 claim, are subject to the strict requirements of Rule 9(b).[4]

This is because Plaintiffs allege a unified course of fraudulent conduct in which Noom allegedly

intended to convince users to sign up for Noom and then impede cancellation of their subscriptions.

(FAC ¶¶ 8, 9).  Each of Plaintiffs' claims is, in turn, premised on this alleged course of fraudulent

conduct.  For example, Plaintiffs allege that Noom violated the DCCPPA by:

- Engaging in a misleading marketing and billing program;

- Failing to make adequate disclosures regarding "charges that will be imposed;"

- Inducing customers to sign up for Noom by omitting material information;

- Failing to disclose all the material terms of enrolling in a Noom trial and the cancellation process;

- Making false promises to Noom customers regarding the personalization of their

---

[4] Defendant acknowledges that courts in this circuit have found that claims under GBL Section 349 are subject to a unique specificity requirement, discussed *infra* Part I.B, rather than to Rule 9(b) scrutiny.  *E.g.*, *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014).  However, courts have applied Rule 9(b) to each of Plaintiffs' other claims.  *See, e.g.*, *In re Arris Cable Modem Consumer Litig.*, No. 17-01834, 2018 WL 288085, at *9 (N.D. Cal. Jan. 4, 2018) (applying 9(b) to UCL, CLRA, FAL and unjust enrichment claims); *Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 377-78 (D.D.C. 2015) (applying 9(b) to District of Columbia Consumer Protection Procedures Act ("DCCPPA") and Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PCPL") claims); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 924-26 (N.D. Cal. 2012) (applying 9(b) to Washington Consumer Protection Act ("WCPA") claims); *Cooper v. Bristol-Myers Squibb Co.*, No. 07-885, 2009 WL 5206130, at *7 (D.N.J. Dec. 30. 2009) (applying 9(b) to Alabama Deceptive Trade Practices Act "ADTPA") claim); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (applying 9(b) to conversion claim).

experience;

- "Curtailing customers' ability to cancel their subscription to Noom;" and
- "Misrepresenting and/or creating the net impression that enrolling in the trial program (i) is "risk free;" (ii) does not require a smartphone; (iii) costs only between $0.00 and $18.37; (iv) will be easy to cancel; (v) can be "cancelled any time;" and (vi) will feature individualized coaching from a human weight loss expert . . . ."

(*Id.* ¶ 262.)  These seven allegations reflect "quintessential averment[s] of fraud," *Matsumara*, 542 F. Supp. 2d at 252, and appear essentially verbatim across Plaintiffs' WCPA, PCPL, Ohio Consumer Sales Practices Act ("OCSPA"), and ADTPA claims.  (*Id.* ¶¶ 245, 254, 273, 282.) Likewise, Plaintiffs Automatic Renewal Law ("ARL"), FAL, UCL, CLRA, and common law claims are premised on the same alleged course of fraudulent conduct.  In support of each of these claims, Plaintiffs allege, *inter alia*, that Noom made materially misleading statements and/or omissions in the marketing and billing of its monthly subscriptions.  (*See id.* ¶¶ 200 (ARL); 209 (FAL); 218 (UCL); 221 (UCL); 235 (CLRA); 289 (common law fraud); 294, 297-98 (unjust enrichment); 304 (conversion)).  While the elements of Plaintiffs' claims differ, they are each premised on the same alleged fraudulent scheme and are therefore subject to Rule 9(b).

### 2. The FAC Plaintiffs do not satisfy applicable pleading requirements.

The FAC Plaintiffs fall far short of meeting their pleading burden for at least two reasons.

*First* and foremost, these claims fail under Rule 9(b) because not a single plaintiff pleads that she read and relied on any specific alleged misrepresentation.  Rather, much of the FAC is a transparent copy-paste job that recites the same two allegations regarding each FAC Plaintiff's interaction with Noom's platform:  (1) she "saw" or "heard" ads for Noom, at some unspecified time and place; and (2) she was "[m]isled by the representations and omissions outlined above." (*Id.* ¶¶ 95-96, 104-05, 113-14, 122-23, 131-32, 140-41, 149-50, 158-59, 167-68.)  These bare allegations do not satisfy Rule 9(b):  Each Plaintiff must specify *which* statement she read and supposedly relied on and describe the who, what, where, when, why of how they received and

relied on such statements. *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 897-98 (E.D.N.Y. 2018). No FAC Plaintiff does so and their claims—all of which sound in fraud—should be dismissed. *See A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-4978, 1998 WL 159059, at *7 (S.D.N.Y. Apr. 1, 1998) (complaint was deficient where it did not allege "particular fraudulent acts [defendant] committed with respect to any particular plaintiff," but instead "describe[d] a generic fraud, *as if each plaintiff's case was identical to every other case*") (emphasis added).

Plaintiffs assert in their pre-motion letter brief that they have detailed the alleged misrepresentations in the FAC. (ECF No. 41 at 1-2.) Even assuming this were true, Plaintiffs' argument misses the point entirely. No amount of detail regarding the existence of an alleged misrepresentation can cure the failure to connect those alleged misrepresentations to a specific plaintiff who read or relied on them. *In re Arris*, 2018 WL 288085, at *9 (finding allegations of "a range of statements on Arris's website, on Amazon.com, and on the Modem's packaging that Plaintiffs allege[d] [were] misleading" insufficient because plaintiffs "have not specified which statements any of them saw or relied on in deciding to buy the Modems"); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 216-17 (S.D.N.Y. 2019) (dismissing claims where complaint lacked particularized facts showing that that plaintiffs saw and relied on a particular statement); *Oden*, 330 F. Supp. 3d at 897-98 (E.D.N.Y. 2018) (similar); *In re Frito-Lay N.A., Inc. All Nat. Litig.*, No. 12-2413, 2013 WL 4647512, at *24-25 (E.D.N.Y. Aug. 29, 2013) (dismissing plaintiffs' claims based on allegedly false advertising and marketing materials where the complaint failed to allege which statements the plaintiffs relied on). What matters is what Plaintiffs saw and did, not what Noom allegedly said. As such, the FAC's narrative of deceit cannot save Plaintiffs' claims.

Nor can Plaintiffs excuse this lack of detail by arguing that each FAC Plaintiff saw representations that were "the same as those seen by the other named plaintiffs." (ECF No. 41 at

2 n.3).  That is because "a plaintiff that fails to plead its fraud claims with sufficient particularity cannot avoid dismissal simply by placing its claims in the same complaint as another plaintiff's claims that do satisfy the rule."  *BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC*, No. 13-0638, 2013 WL 6003701, at *3 (S.D.N.Y. Nov. 13, 2013) (dismissing claims under Rule 9(b)) (collecting authorities), *vacated in part on other grounds*, 603 F. App'x 57 (2d Cir. 2015).  *Each* FAC Plaintiff must allege the specifics of the representations they allegedly relied on, but none does.

       **Second**, compounding the FAC Plaintiffs' failure to detail the alleged misrepresentations they read and on which they relied, all of the FAC Plaintiffs' allegations regarding Noom's automatic renewal disclosures are deficiently pled under Rule 9(b), *or even Rule 8*, and the Court should not consider them.

       Instead of properly alleging what purchase flow screens and other disclosures they saw and supposedly relied on at the time of their purchases, the FAC Plaintiffs plead "upon information and belief, the relevant representations in the sign-up flow . . . were in all material respects the same" as those seen by other Plaintiffs.  (FAC ¶¶ 95, 104, 113, 122, 131, 140, 149, 158, 167.)  Thus, rather than alleging from their personal knowledge the details of the purchase flow that forms the basis of their claims, these Plaintiffs simply guess that it was the same as the purchase flow allegedly present when Plaintiff Mahood purchased her subscription.[5]  (*See id.* ¶¶ 37-46.)

       But under Rule 9(b), "[f]raud allegations cannot ordinarily be based 'upon information and belief,' except as to "matters peculiarly within opposing party's knowledge."  *Woods v. Maytag Co.*, No. 10-0559, 2010 WL 4314313, at *6 (E.D.N.Y. Nov. 2, 2010) (citation omitted).  Here, since Plaintiffs allegedly all signed up for Noom, they undeniably had prior access to these facts.

---

[5] Plaintiffs also allege "[u]pon information and belief" that "all material aspects of the enrollment process have remained the same throughout the applicable period."  (FAC ¶ 37.)  This speculative allegation similarly lends no support to their claim.

Moreover, by alleging they were misled by Noom's **public** disclosures, Plaintiffs have "conceded that this information was publicly accessible," thereby precluding allegations premised on information and belief.  *Woods*, 2010 WL 4314313, at *6; *see also Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 101 (S.D.N.Y.1997) (holding that the Plaintiff was not permitted to plead on information and belief as to public advertisements Plaintiff purportedly relied on).[6]

Indeed, even under the more relaxed Rule 8 standard, Plaintiffs may not allege on information and belief public facts that are in their own possession.  *Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 n.2 (2d Cir. 2010) (stating that pleading on information and belief is not appropriate "if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge"); *Hernandez v. BMNY Contracting Corp.*, No. 17-9375, 2019 WL 418498, at *2 (S.D.N.Y. Jan. 17, 2019) (holding that allegations were not properly pled upon information and belief where those allegations concerned matters within the plaintiff's personal knowledge). As such, all of the FAC Plaintiffs have failed to make **any** valid allegations about the purchase flow they used to subscribe to Noom, and cannot state any claim premised on any alleged deficiencies regarding the same.  *See Speedfit LLC v. Chapco Inc.*, No. 15-1323, 2016 WL 5793738, at *9 (E.D.N.Y. June 29, 2016) (declining to consider allegations made upon information and belief where that information was presumably within the plaintiff's knowledge).

B.      **The GBL Claims Are Also Deficiently Pled (Count I).**

Although Section 349 GBL claims are not typically subject to Rule 9(b), Plaintiffs must still allege these claims with specificity.  *Woods*, 2010 WL 4314313, at *16.  Applying this

---

[6] Plaintiffs' citation to *Hollander v. Ortho-McNeil-Janssen Pharm.*, *Inc.*, No. 10-00836, 2010 WL 4159265, at *4 (E.D. Pa. Oct. 21, 2010), is incomplete at best and misleading at worst.  (ECF No. 41 at 2 n.2.) *Hollander* merely applied the rule that a party may plead facts on information and belief under Rule 9(b) only when "**essential information lies uniquely within another party's control**." *Id.*  This was the case in *Hollander*, which assessed a plaintiff's pleading as to the defendant's **intent** to falsely mark its medications with expired patents.  *Id.* at *4-5.

standard, New York Plaintiffs Deracleo and Burwood—the only Plaintiffs entitled to bring GBL claims, as explained *infra* Part IV.A—cannot sustain their claims.  To state a Section 349 claim, "each plaintiff must 'individually plead [each of] the disclosures he or she received were inadequate, misleading, or false,'" and in doing so, must "identify the specific advertisements seen by each plaintiff" and provide an explanation as to why those advertisements were false or misleading.  *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 66-67 (E.D.N.Y. 2019); *see also Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (dismissing Section 349 claim that "contain[ed] only general allegations about disclosures to all Plaintiffs, and d[id] not contain any allegations about the specific disclosures" the individual plaintiff received); *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (App. Div. 2004) (affirming dismissal of GBL claim for failure to plead causation with specificity).  Since each New York Plaintiff fails to identify the specific statements on which they relied and how they were purportedly misled by them, as described *supra* Part I.A.2, their GBL claims also fail.

## II.   NO PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF.

To demonstrate standing for injunctive relief, Plaintiffs must plausibly allege a likelihood of future or continuing harm.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Pugnitore v. Barbera*¸ 506 F. App'x 40, 41 (2d Cir. 2012).  All of Plaintiffs' claims fail for multiple reasons.

**First**, Plaintiff Mahood does not plead ***any*** facts to support a claim for injunctive relief, and her claim fails for this reason alone.  (FAC ¶¶ 81-94.)  *Pugnitore*, 506 F. App'x at 41.

**Second**, the FAC Plaintiffs improperly use the same "copy-and-paste" approach described above to support their claims for injunctive relief.  Specifically, while Plaintiffs seek injunctive relief under "the applicable state laws"[7] and various consumer fraud statutes, each of the nine FAC

---

[7] *See* FAC ¶¶ 196, 203-04, 227, 239, 248, 264, 275, 286 (pleading claims for injunctive relief pursuant to GBL, ARL, FAL, UCL, CLRA, WCPA, DCCPPA, OCSPA, and ADTPA).

Plaintiffs pleads identical, conclusory allegations of future harm: *i.e.*, that they "intend[] to continue to pursue a healthy diet and lifestyle and may purchase services, including Defendant's, in furtherance of that pursuit, as long as [s/he] can gain some confidence in Noom's representations about its services."  (FAC ¶¶ 103, 112, 121, 130, 139, 148, 157, 166, 175.)  Such bare allegations are insufficient to support an inference of future harm—particularly given Plaintiffs' simultaneous allegation that they "did not want to continue with Noom" after trying the app, (*e.g.*, FAC ¶¶ 115, 124.)  *See Dominguez v. Banana Republic, LLC*, --- F. Supp. 3d ----, 2020 WL 1950496, at *4 (S.D.N.Y. Apr. 23, 2020) ("copy-and-paste" allegations of future harm and plaintiff's "fail[ure] to allege any nonconclusory facts of a real or immediate threat of injury" deprived Plaintiff of standing).  Accordingly, all of the FAC Plaintiffs' claims for injunctive relief must be dismissed.

*Third*, the FAC Plaintiffs' purported basis for enjoining Noom is that they were "unaware that Noom would use [their] payment information to process unauthorized advance charges for a recurring non-refundable membership."  (*E.g.*, FAC ¶ 96.)  However, because Plaintiffs are "now aware of the alleged misrepresentations that they challenge, [] there is no danger that they will again be deceived by them."  *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015); *see also Berni v. Barilla S.p.A.*, 964 F.3d 141, 148 (2d Cir. 2020) (past purchasers had no standing to pursue injunctive relief because any future purchases will be "with exactly the level of information that they claim they were owed from the beginning"); *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (finding plaintiff could not seek injunctive relief because he "has demonstrated that he is now keenly aware of XM's renewal practices and policies, and as such, he is very unlikely to suffer" future injury).

*Finally*, Plaintiffs' claims of future harm are conditional: each Plaintiff alleges he or she "may purchase services, including Defendant's . . . *as long as* [s/he] can gain some confidence in

Noom's representations . . . ." (*E.g.*, FAC ¶ 103 (emphasis added).)  Because Plaintiffs effectively concede they do not plan to use Noom absent some modification of the program, they cannot plead a real or immediate threat of injury.  *See, e.g.*, *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535, 552 (W.D.N.Y. 2018) (dismissing injunctive relief claims based on plaintiff's allegation she would purchase the disputed product in the future only if the defendant altered its branding); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-04697, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) (dismissing claims for injunctive relief where plaintiff alleged he "would still be willing to purchase the current formulation" of the product "so long as [the defendant] engages in corrective advertising").

### III.   ALL OF PLAINTIFF MAHOOD'S CLAIMS MUST BE DISMISSED BECAUSE SHE HAS NOT SUFFERED ANY INJURY.

Plaintiff Mahood's claims fail for multiple reasons.  ***First***, all of her claims must be dismissed pursuant to Rule 12(b)(1) because she has not alleged "injury in fact"—a threshold element of Article III standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).[8]  Plaintiff Mahood admits that she received a full refund of her two-month subscription prior to filing suit.  (FAC ¶ 93.)  For this reason alone, she has suffered no pecuniary harm as a result of the autorenewal subscription she challenges, and her claims must be dismissed.  *See, e.g.*, *Luman v. Theismann*, 647 F. App'x 804, 806 (9th Cir. 2016) (plaintiff lacked standing to pursue monetary relief as to CLRA and UCL claims because he received a full refund prior to filing suit); *Epstein v. JPMorgan Chase & Co.*, No. 13-4744, 2014 WL 1133567, at *7 (S.D.N.Y. Mar. 21, 2014)

---

[8] It is well-settled that "named plaintiffs who represent a class 'must allege and show that they personally have been injured[.]'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016).  As such, the Court can and should assess whether Plaintiff Mahood has Article III standing to assert her claims.  Defendant acknowledges that, in some cases, the Second Circuit has applied the so-called "one-plaintiff" rule, which holds that Article III standing is satisfied "so long as at least one plaintiff . . . has standing with respect to each claim."  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, N.Y.*, 945 F.3d 83, 109 (2d Cir. 2019).  Putting aside that such a rule is in tension with *Spokeo*, it is inapplicable here, where the remaining FAC Plaintiffs fail to state any claim for relief.

("That Plaintiff received the Refund Check demonstrates the absence of any 'actual' injury on which Plaintiff's standing could be established.") (collecting authorities); *Becker v. Skype Inc*., No. 12-06477, 2014 WL 556697, at *2 (N.D. Cal. Feb. 10, 2014) (similar).

Plaintiffs erroneously contend that Ms. Mahood has standing based on a purported loss of interest in time or money.  (ECF No. 41 at 1-2.)  To begin, that argument fails because it is based on a false allegation.  The FAC alleges that Plaintiff Mahood was charged on August 23, 2019, and only received her refund in October 2019, "after repeatedly asking for a refund and finally threatening legal action."  (FAC ¶¶ 89, 93.)  That is not true: Noom issued Ms. Mahood's refund ***the same day she requested it***, ***and only 48 hours after she was charged***.  (*See* Declaration of John Riccardi ¶ 7.)[9]  Even if this allegation were true, Plaintiff Mahood does not allege a single fact that would permit an inference that she was injured by any temporary deprivation of this money.  *See Taylor v. Fed. Aviation Admin.*, 351 F. Supp. 3d 97, 102-03 (D.D.C. 2018) (holding no injury in fact based on lost time value of fee where plaintiff did not allege it would have invested the fee in some way to increase its value); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839 (9th Cir. 2007) (concluding customer did not suffer cognizable injury where grievance was "immediately corrected").  For each of these reasons, Plaintiff Mahood's argument that she was injured by the temporary deprivation of money has no merit.

***Second***, Plaintiff Mahood also fails to state a claim under Rule 12(b)(6) because she has suffered no injury to sustain her statutory or common law claims.

A plaintiff asserting UCL or FAL claims must plead "injury in fact and [] lost money or property as a result of a violation."  *Kwikset Corp. v. Super. Ct. of Orange Cty.*, 246 P.3d 877, 884

---

[9] The Court is entitled to consider extrinsic evidence in assessing Article III standing.  *Dimond v. Darden Rests., Inc*., No. 13-5244, 2014 WL 3377105, at *11-12 (S.D.N.Y. July 9, 2014).

(Cal. 2011) (internal quotation and citation omitted).  "[T]he lost money or property requirement is . . . substantially narrower than federal standing under article III[.]"  *Id.* at 886-87.  Similarly, to plead statutory standing under the CLRA, a plaintiff must have suffered "economic injury" as a result of relying on the defendant's alleged misrepresentation.  Cal. Civ. Code § 1780(a); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014).  Because Ms. Mahood received a full refund prior to filing suit, she has not suffered any economic injury and her statutory claims must be dismissed.  *See Tumampos v. Cathay Pac. Airways Ltd*., No. 16-6208, 2017 WL 10446824, at *4 (N.D. Cal. Apr. 25, 2017) (holding UCL disgorgement claim failed "because there is no allegation that Defendant kept any of the improperly withheld funds"); *Sanbrook v. Office Depot, Inc*., No. 07-05938, 2008 WL 1994884, at *5 (N.D. Cal. May 5, 2008) (dismissing UCL claim for restitution where plaintiff received full refund from defendant); *see also Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Ct. App. 2010) (CLRA plaintiff must show that defendant's alleged deceptive conduct caused the plaintiff harm);  *cf. Luman*, 647 F. App'x at 806 (applying more stringent standing inquiry to dismiss CLRA and UCL claims).

Plaintiff Mahood's common law claims should also be dismissed because she has suffered no damages—a required element of her conversion and fraud claims under California law.  *See New Box Sols., LLC v. Davis*, No. 18-5324, 2018 WL 4562764, at *9 (C.D. Cal. Sept. 18, 2018) (dismissing claim for conversion where the plaintiff had "not alleged any specific damages"); *Oens v. HSBC Bank*, No. 12-06005, 2012 WL 12887753, at *5 (C.D. Cal. Oct. 16, 2012) (dismissing fraud claim where plaintiff failed to plead damages).  Similarly, "[t]he elements of an unjust enrichment claim are the receipt of a benefit and [the] unjust retention of the benefit at the expense of another."  *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008) (affirming dismissal of unjust enrichment claim); *Sanbrook*, 2008 WL 1994884, at *6 (similar).  Here, Noom

did not retain any benefit, (FAC ¶ 93)—rather, Plaintiff Mahood had the chance to use Noom for the remainder of her subscription period for free.  As such, all of her common law claims fail. [10]

All of Plaintiff Mahood's claims are deficiently pled, and because she has not and could not cure these deficiencies with amendment, the claims should be dismissed with prejudice.

## IV.   PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS.

Even if the Court does not dismiss the FAC in its entirety based on the arguments above, multiple claims fail for various additional reasons.

### A.   Those Plaintiffs Not Resident in New York Fail to State a Claim under New York's General Business Law (Count I).

Plaintiffs assert GBL claims on behalf of "a Multistate class under New York law." (FAC at 54.)  However, the New York Court of Appeals has held that the language of Section 349 "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195-1196 (N.Y. 2002).

In an attempt to bypass this barrier to recovery, Plaintiffs allege that Noom formulated its allegedly deceptive scheme, processes consumer payments, operates its website, and receives and maintains funds in New York.  (FAC ¶ 30.)[11]  These allegations do not help Plaintiffs.  The court in *Goshen* explained that "to qualify as a prohibited act under the [GBL], *the deception of a consumer must occur in New York*." *Goshen*, 774 N.E.2d at 1195 (emphasis added).[12]  Here, none of the out-of-state Plaintiffs alleges they were deceived in New York.  Applying *Goshen*, the

---

[10] Ms. Mahood's conversion and unjust enrichment claims fail for additional reasons.  *Infra* Parts IV.F, G.

[11] Plaintiffs allege that Noom's Terms and Conditions—which they do not otherwise seek to enforce—are "governed by New York law." (FAC ¶ 31.)  This reference is unavailing because Plaintiffs do not otherwise rely on the agreement.  *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020) (declining to apply GBL claims to non-New York plaintiffs based on similar facts where New York choice-of-law provision was at issue).

[12] *See also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 601 (S.D.N.Y. 2015) (Schofield, J.) (following *Goshen* and dismissing GBL Section 349 claim where the deception of the consumer did not occur in New York); *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, No. 13-1725, 2014 WL 4054240, at *11 (S.D.N.Y. Aug. 15, 2014) (Schofield, J.) (same).

Second Circuit has declined to extend the extraterritorial reach of the GBL in similar circumstances. In *Kaufman v. Sirius XM Satellite Radio, Inc.*, the plaintiffs asserted that the defendant: (1) "provid[ed] services in exchange for the payment of services and invoice fees" in New York; (2) "formulated the scheme to charge [the allegedly fraudulent] fee in New York;" (3) "collected, assimilated, and accounted the unauthorized and unlawful . . . [f]ees by and through its corporate management in New York;" and (4) published the deceptive terms and conditions on a website controlled from New York. 474 F. App'x 5, 7–8 (2d Cir. 2012). The Court held that the non-New York plaintiffs did ***not*** state a claim and observed that "[a]ccepting plaintiffs' position would permit global coverage of GBL Section 349 any time a New York corporation charged and retained an improper fee from non-New York customers through use of deception." *Id.* at *8.

Here too, Plaintiffs are not entitled to invoke the GBL based on their allegations that Noom conducts business from its New York headquarters and processes Plaintiffs' enrollments and payments there. (FAC ¶ 30.) To the contrary, these allegations are "merely clever re-articulations of the allegation that the Defendants operate their principal place of business in New York," which is insufficient. *Wright*, 439 F. Supp. 3d at 110 (holding that Section 349 claim failed where plaintiff alleged defendant "hatched the deceptive scheme in New York, sent the relevant advertising materials from New York; and received payment and processed orders in New York").

Plaintiffs rely on *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013) in their pre-motion letter brief to support their deficient GBL allegations, but that case is inapposite. (ECF No. 41 at 2). In *Cruz*, the transaction had a much more significant nexus with New York: The defendant operated an online market place for foreign currency trading in New York; the plaintiff engaged in two years of trading on the New York-based exchange; all trading communications were processed in New York; and the customer executed an agreement at the heart of his breach

of contract claims under New York law.  *Id.* at 118, 123-24.  By contrast, here, the transactions at the core of the Plaintiffs' GBL claim—Noom's allegedly misleading marketing and purchase flow—occurred wherever the Plaintiffs viewed the advertisements or enrolled in Noom.  *See Wright*, 439 F. Supp. 3d at 112 (distinguishing *Cruz* and finding that fact that Plaintiffs received advertisements and products from New York did not establish that the transactions had a "locus in New York beyond the Defendants' residency").  Plaintiffs' attempt to stretch *Cruz* to very different circumstances fails—and the case law directly on point instead precludes application of the GBL. Because further amendment will not cure this defect, the claim must be dismissed with prejudice as to the Plaintiffs that do not reside in New York.  *Wright*, 439 F. Supp. 3d at 120.

### B. Plaintiffs' ARL Claim Must Be Dismissed Because There is No Private Right of Action under the ARL Statute (Count II).

Count II of the FAC is merely a claim brought directly under California's Automatic Purchase Renewal Statute, Cal. Business and Prof. Code § 17600 *et seq*. ("ARL"), which is part of the FAL.  "Because there is no private cause of action under the ARL, the district court [may] properly dismiss[] [Plaintiffs'] ARL claim." *Johnson v. Pluralsight, LLC,* 728 F. App'x 674, 677 (9th Cir. 2018); *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1069 (S.D. Cal. 2018) ("the Court finds that the ARL does not create a private right of action").

While *Johnson* indicates that a Plaintiff may bring an action for public injunctive relief to enjoin allegedly fraudulent ARL practices, 728 Fed. App'x at 676, the California Plaintiffs are not entitled to injunctive relief for the reasons set forth above—i.e., they have not plausibly alleged a likelihood of future injury sufficient to confer Article III standing for this remedy.  *See supra* Part II.  Accordingly, Plaintiffs' ARL claim must be dismissed.

### C. The California Plaintiffs Do Not State a Bot Disclosure Law Violation as a Basis For Their UCL Claim (Count IV).

As support for their claim that Noom violated the "unlawful" prong of the UCL, the

California Plaintiffs assert that Noom violated California's Bot Disclosure Law ("BDL").  (FAC ¶¶ 214-227 (alleging violations of Cal. Bus. & Prof. Code § 17941 and Cal. Bus. & Prof. Code § 17200, which prohibits "any unlawful, unfair or fraudulent business act or practice ").)  This claim is frivolous.

The BDL prohibits using a bot:

> "[T]o communicate or interact with another person in California online, **with the intent to mislead** the other person about its artificial identity **for the purpose of knowingly deceiving** the person about the content of the communication in order to incentivize a purchase or sale of goods or services in a commercial transaction."

Cal. Bus. & Prof. Code § 17941 (emphasis added).

To start, and as discussed above, Plaintiffs' BDL claim is subject to Rule 9(b)'s heightened pleading requirements because it sounds in fraud and is based on the same set of facts as their other fraud claims.  *See supra* Part I.A.1; *see also Arnold Chevrolet LLC v. Tribune Co*., No. 04-3097, 2007 WL 2743490, at *7 (E.D.N.Y. Sept. 17, 2007) (claim based upon same set of facts as fraud claim was subject to Rule 9(b)).  Specifically, Plaintiffs assert that their BDL claim is based on Noom's alleged "*intent to mislead* consumers into believing that Noom's services included a personal human coach"—the same facts that underlie their fraud claims.  (*See* FAC ¶¶ 219 (emphasis added); 287(h) (alleging omission of "the fact that customers would not be assigned a human coach" in support of common law fraud claim).)

Applying Rule 9(b) standards, Plaintiffs' allegations are clearly deficient.  The FAC offers no factual basis for the BDL claim and merely parrots the statutory requirements.  (FAC ¶ 219.)  Plaintiff Mahood—the only Plaintiff who alleges anything at all about a "bot"—claims that when she opened the Noom app, she received a message from "Concierge Eva."  (FAC ¶ 85.)  But Ms. Mahood's allegations do not plausibly allege that she was misled to believe that Concierge Eva was a human coach, much less that Noom "inten[ded]" to mislead her about the nature of

"Concierge Eva" "for the purpose of knowingly deceiving" her into a purchase. That is because Plaintiff Mahood: (1) never alleges receiving any messages in which "Concierge Eva" purported to be her "coach;" (2) concedes she never completed the coaching preference survey "to get started," with a human coach as "Concierge Eva" instructed; and (3) tacitly reveals her understanding that "Concierge Eva" was *not* her coach by alleging that after this interaction, she still "did not know how to contact her coach, or even who her coach was." (*Id.* ¶ 85-88.) No other Plaintiff alleges that they exchanged messages of any type on Noom's platform, whether with a bot or a human. As such, Plaintiffs cannot establish that Noon engaged in any "unlawful" conduct that violated the BDL and this portion of the UCL claim must be dismissed.

### D. The California Plaintiffs' CLRA Claim Fails Because Noom is Not a "Good" or "Service" Under the Statute (Count V).

Plaintiffs also fail to state a CLRA claim on behalf of the California class. (FAC ¶¶ 228-39.) A CLRA claim must involve "goods or services" within the meaning of the statute. *See* Cal. Civ. Code § 1770(a); *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("Because the CLRA applies to such a limited set of transactions . . . it is not a law of general applicability." (quotation omitted)). Here, Plaintiffs do not plausibly allege that Noom is a good or service under the statute. To the contrary, Plaintiffs contend that the only "services" Noom offers are "impersonal, automated messages powered by artificial intelligence which can only be accessed through Noom's smartphone app." (*See* FAC ¶ 7 (stating that users "do not even understand that they have been assigned a coach . . . because the 'coach' is actually a bot").) This allegation precludes application of the CLRA, as it is settled law that software apps and websites are neither goods nor services within the meaning of the statute. *See, e.g.*, *Song Fi, Inc. v. Google, Inc.*, No. 14-5080, 2016 WL 1298999, at *11 (N.D. Cal. Apr. 4, 2016) (holding that plaintiff failed to allege facts to show use of Youtube as a service); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 988

F. Supp. 2d 434, 451 (D. Del. 2013) *vacated in part on other grounds* 806 F.3d 105 (3d Cir. 2015) ("[t]he California case law is clear that software and software activity are not covered by the CLRA") (collecting authorities); *Yunker v. Pandora Media, Inc*., No. 11-03113, 2013 WL 1282980, at *12-13 (N.D. Cal. Mar. 26, 2013) (granting motion to dismiss CLRA claim because Pandora app was not a good or service under CLRA); *I.B. v. Facebook, Inc*., 905 F. Supp. 2d 989, 1007 (N.D. Cal. 2012) (Facebook credits were neither a good nor a service but "intangible interests"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942, 972 (S.D. Cal. 2012) (holding that computer network system was not a "good" or a "service" under the CLRA); *Ferrington v. McAfee, Inc*., No. 10-01455, 2010 WL 3910169, at *18 (N.D. Cal. Oct. 5, 2010) (CLRA not applicable to license for the use of software).

Although Plaintiffs argue that Noom is a "service" under the CLRA because it offers "personalized coaching," from "Real, Live, People," their own allegations contradict this argument. (*Compare* ECF No. 41 at 3 *with* FAC ¶¶ 1, 7, 49 (stating that Noom is available exclusively through a "smartphone app").)  Having alleged that Noom only offers users "bot" coaches, Plaintiffs cannot take a contrary position merely to save their CLRA claim. *Yunker*, 2013 WL 1282980, at *12-13 (plaintiff did not state a CLRA claim where he alleged facts inconsistent with his argument that the Pandora app was a "service").  Further, because no amendment can cure this defect, the claim should be dismissed with prejudice. *See I.B.*, 905 F. Supp. 2d at 1008.

### E.    Plaintiff Sellers' Alabama Deceptive Trade Practices Act Class Claim is Barred (Count X).

Plaintiff Sellers' ADTPA class claims should be dismissed, because the statute contains a class action bar.  Ala. Code Ann. § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class.").  In *Delgado v. Ocwen Loan Servicing, LLC*, the court enforced this statutory provision and granted a motion to dismiss putative

class claims asserted by the same Plaintiffs' counsel.  No. 13-4427, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017).  In so holding, the *Delgado* court rejected the argument that Plaintiffs' counsel advances again here—i.e., that Rule 23 of the Federal Rules of Civil Procedure preempted the ADTPA class action bar.  (ECF No. 41 at 3); *Delgado*, 2017 WL 5201079, at *10 (rejecting the holding in *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015)). *Delgado* reasoned that *Lisk* "has not been widely followed outside of the Eleventh Circuit . . . with most courts outside of that circuit implicitly or explicitly disagreeing" with its holding.  2017 WL 5201079, at *10 (collecting authorities).  This Court should decline Plaintiffs' invitation to create an intra-circuit split and dismiss the ADPTA class claims with prejudice.

### F.    Plaintiffs Do Not State Claims For Unjust Enrichment under New York and California Law (Count XII).

The New York and California Plaintiffs' unjust enrichment claims must be dismissed because they are duplicative of the other tort and statutory claims alleged in the FAC.

In *Brumfield v. Trader Joe's Co.*, for example, this Court dismissed unjust enrichment putative class claims under New York and California law because those claims were "premised on the same alleged misrepresentation" that was the basis of Plaintiff's statutory and tort claims, and so "an adequate remedy exist[ed] at law."  No. 17-3239, 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018) (Schofield J.).  The same result follows here.  The FAC makes no attempt to tie any of the allegations to specific causes of action and instead refers to the same factual allegations as the basis for each claim.  (*See, e.g.*, FAC ¶¶ 294, 297-98; *infra* Parts I.A.1-2.)  Tellingly, Plaintiffs also seek identical relief for their unjust enrichment and statutory and common law fraud claims. (*Compare* FAC ¶ 299 (seeking restitution under unjust enrichment) *with* FAC ¶¶ 196, 204 (seeking refunds under the GBL and ARL); 213, 227 (seeking restitution under the FAL and UCL); 227 (seeking restitution under the UCL); 239, 292 (seeking restitution under the CLRA and damages

under fraud).  Plaintiffs' unjust enrichment claims are therefore duplicative of their statutory and common law fraud claims and are subject to dismissal under New York and California law. *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) (dismissing unjust enrichment claim that was "based on the same factual allegations underlying its . . . tort claims"); *Brumfield*, 2018 WL 4168956, at *5; *Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-05591, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (dismissing unjust enrichment claim that was duplicative of UCL claim).

Further, the California unjust enrichment claims fail for the additional reason that unjust enrichment is not a standalone cause of action under California law.  *Hart v. BHH, LLC*, No. 15-4804, 2016 WL 2642228, at *5 (S.D.N.Y. May 5, 2016) (the "majority of courts. . . have found that [unjust enrichment] claims are not cognizable under California law").

### G.  Plaintiffs' Claims For Conversion Fail under Various States' Laws (Count XIII).

The FAC asserts a claim for conversion "on behalf of each member of the Multistate Class under New York law" as well as "on behalf of each member of the individual State Classes under the laws for those states."  (FAC ¶ 301.)  Most of these claims fail because conversion does not apply to the facts at issue under New York, Ohio, Alabama, California, or Washington, D.C. law.

Generally, claims for conversion arise where one person intentionally interferes with the personal property of another.  Restatement (Second) of Torts §§ 222A ("Conversion is an intentional exercise of dominion or control over a chattel which . . . interferes with the right of another to control it").  The FAC strains to fit the contours of this claim by alleging that Noom interfered with Plaintiffs' "possession of th[e] money" that is in "their bank accounts, internet accounts, and/or credit cards . . . by making unauthorized charges" to those accounts "for multiple-month subscriptions."  (FAC ¶¶ 303-04.)

Plaintiffs' claims under New York, Ohio, and Alabama law all fail because the law of conversion in those states only applies to funds that are designated for a particular purpose or are specifically identifiable and earmarked funds, rather than generalized funds in a plaintiff's bank account.  In *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012), for example, the Court held that the plaintiff did not state conversion claims under Ohio law based on her allegations that she incurred unlawful charges in signing a gym membership contract with the defendant.  Reasoning that "[a]n action alleging conversion of cash lies only where the money involved is 'earmarked' or is specific money capable of identification," the plaintiff's failure to identify "specific segregated, identifiable money, as opposed to a sum certain" was "fatal" to the claim.  *Id.*  New York and Alabama law are in accord.  *See, e.g.*, *Camp v. Ala. Telco Credit Union*, 2013 WL 2106727, at *4 (N.D. Ala. May 13, 2013) ("Generally, an action will not lie for the conversion of cash" except for "[s]pecific money capable of identification"); *Wornow v. Register.Com, Inc.*, 778 N.Y.S.2d 25, 26 (App. Div. 2004) (similar).

In a similar vein, courts applying California and Washington, D.C. law have held that the types of transactions alleged in the FAC—i.e., unauthorized charges or overcharges to credit cards—do not support a claim for conversion.  *Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 252 (D.D.C. 2016) (dismissing conversion claim for "alleged unauthorized use of the Headfirst Baseball credit card"); *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-00155, 2015 WL 1013704, at *10 (S.D. Cal. Mar. 9, 2015).  For each of these reasons, Plaintiffs' New York, Ohio, Alabama, California, and Washington, D.C. conversion claims must be dismissed.

## CONCLUSION

For all the reasons set forth above, Noom respectfully requests that the FAC be dismissed in its entirety.

Dated: New York, New York  
September 24, 2020

Respectfully submitted,

COOLEY LLP

By: */s/ Aarti Reddy*  
    Aarti Reddy  
    101 California Street, 5th Floor  
    San Francisco, CA 94111  
    Phone: (415) 693-2000  
    Email: areddy@cooley.com

    Michael G. Rhodes  
    (*pro hac vice* admission pending)  
    101 California Street, 5th Floor  
    San Francisco, CA 94111  
    Phone: (415) 693-2000  
    Email: rhodesmg@cooley.com

    Ian Shapiro  
    55 Hudson Yards  
    New York, NY 10001  
    Phone: (212) 479-6000  
    Email: ishapiro@cooley.com

    *Counsel for Defendant Noom, Inc.*