**Wittels McInturff Palikovic**

November 25, 2020

**Via ECF**
Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

By **December 7, 2020**, Defendants shall file on ECF a response to this pre-motion letter not to exceed 3 single spaced pages.

SO ORDERED.

Dated: November 30, 2020
New York, New York

*[signature]*
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Re:   *Nichols, et al., v. Noom, Inc., et al.*, No. 20 Civ. 3677 (LGS) (KHP)

Dear Judge Schofield,

Our firm represents eight individual consumer Plaintiffs from seven states and a proposed class of consumers throughout the United States who have purchased Defendant Noom, Inc.'s app-based weight loss service.  Second Am. Compl. ("SAC") ¶ 1, ECF No. 88.  We write to request a pre-motion conference under Rule III.A.1 of the Court's individual rules to discuss Plaintiffs' application to the Court for the establishment of a "bellwether" process for first proceeding with dismissal, class certification, and merits litigation with respect to a small number of states.  Specifically, we will ask the Court to order the parties to meet and confer on bellwether proposals and present those proposals to Your Honor in the coming weeks.  As discussed below, many courts overseeing similar nationwide consumer class actions have successfully adopted a bellwether approach to promote the timely and efficient disposition of these complex and important matters.

By way of brief background, the SAC challenges Noom's practice of automatically enrolling consumers who try its weight-loss program via a "trial" period that is exceedingly difficult to cancel.  Plaintiffs hail from New York, California, Washington, the District of Columbia, Ohio, Alabama, and Texas, and allege thirteen causes of action under their states' laws as well as those of the remaining 44 states.  SAC ¶¶ 205–328; *see also Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018) (consumers have standing to bring class claims on behalf of consumers in other states); *Oliver v. Am. Express Co.*, No. 19 Civ. 566 (NGG), 2020 WL 2079510, at *12 (E.D.N.Y. Apr. 30, 2020) ("[U]nder the plain language of *Langan*, Plaintiffs have standing to bring claims under the . . . laws of the 22 states in which no . . . Plaintiff resides.").

Since Plaintiffs commenced this action in May 2020, Noom customers have contacted our firm almost daily about the case.  When the Better Business Bureau issued a public warning in August that Noom "customers have submitted well over a thousand complaints alleging that the company offers misleading free trials, and that subscriptions are difficult to cancel," even more Noom customers sought out our firm.[1]  In September, a former Noom employee-turned-whistleblower gave a declaration supporting the SAC's key allegations stating, *inter alia*, that "Noom made the cancellation process difficult by design so that many customers would be charged a nonrefundable

---

[1] BBB Warning: Consumers Lose More than Weight with Popular Noom Health App (Aug. 19, 2020), https://www.bbb.org/article/news-releases/22930-bbb-warning-consumers-lose-more-than-weight-with-popular-noom-health-app (last visited Nov. 24, 2020).

autorenewal fee by failing to cancel in time or by failing to cancel at all because they didn't realize the trial would automatically convert to a paid subscription at the end of the trial period." In the face of the mounting evidence of Defendants' nationwide misconduct, exposure of more than $100,000,000, and Plaintiffs' growing roster of clients, Defendants have decided to challenge Plaintiffs at every possible turn. For example, despite a detailed 93-page SAC, Defendants last week advised the Court of their intent to move to dismiss the SAC *in toto*. ECF No. 100.

With this backdrop, Plaintiffs believe now is the appropriate time for Your Honor to establish a bellwether process that will allow the parties and the Court to first focus their resources on a small number of states (typically 1 to 5) and hold in abeyance the claims for other states. As courts have recognized, it is far less taxing on judicial resources to proceed with a bellwether process that streamlines the number of laws the Court needs to consider at one time. Here, there is no dispute that the conduct challenged by this lawsuit was uniform and common across the country. Thus, selecting the states with the two or three largest number of enrollees (such as New York and California) would simplify the analysis, and result in rulings at the dismissal, class certification, and merits phases for these states that can later be applied to the other states. For instance, findings relating to the commonality and predominance of factual issues under Rule 23 for a small number of states would inform later motions to certify classes for other states.

Similarly, a bellwether trial is useful because the factfinder's answers to common factual questions regarding a common course of conduct will inform how a subsequent jury is likely to view the same issues while applying different states' laws. The bellwether class trial also tests whether significant common questions can be decided by the factfinder based on common evidence. Critical questions for later class certification rulings can thus be grounded in the experience of actually trying a class case.

For these reasons the staged bellwether process Plaintiffs propose is commonly used in multi-state consumer class actions. *See, e.g.*, *In re GM LLC Ignition Switch Litig.*, No. 17 Civ. 06486 (JMF), Dkt. 9 (S.D.N.Y., Aug. 30, 2017) (setting a three-state bellwether class certification, summary judgment, and trial process); *Sloan v. GM LLC*, No. 16 Civ. 07244 (EMC), 2020 WL 1955643, at *4 (N.D. Cal. Apr. 23, 2020) (ruling on summary judgment, certification, and expert issues after "the parties agreed to follow a bellwether process . . . limited to California, New Jersey, Ohio, North Carolina, and Texas); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, No. 10 Ml. 2151 (JVS), Dkt. 1955 (C.D. Cal. Nov. 9, 2011) (certification and trial of a bellwether class of consumers from New York, California, and Florida).

Unfortunately, Defendants have thus far rejected using a bellwether process. After we requested that Noom join in our application for such a process, Noom's defense attorneys advised us that in their "collective view, this proposal is contrary to the foundational structure of Rule 23" and wrongly claimed that a bellwether process would delay resolution and increase costs. Defendants would instead have Your Honor rule on serial motions to dismiss, an omnibus ruling on the certification of claims under potentially 51 jurisdictions, and lengthy summary judgment briefing. This already resource-intensive process would then be followed by an extensive trial to resolve all counts at issue. In short, Defendants' proposal constitutes an undertaking that is not an efficient or sensible plan for resolving a large consumer class action such as this one. The true intent behind Noom's opposition to a bellwether process is clearly to gum up the works and overwhelm the Court so that the focus is deflected from the clear common factual issues present here.

Judge Furman's recent experience in the successful consumer class action portion of the *GM Ignition Switch* litigation is instructive. After ruling on motions to dismiss claims under 16 states' laws, which Judge Furman noted took "their toll on me and my chambers," the Judge remembered that class counsel had "floated" the idea of a bellwether process focused on just two states' laws. July 6, 2017, Hr'g Tr. at 13:5–14:2; *see also id.* at 15:15-18 (without a bellwether process "this litigation is going to last, you know, many more years . . . . because I have addressed only 16 of the 51 jurisdictions thus far.").[2] Judge Furman then reviewed "other MDLs and spoke to other MDL judges to get a sense of their experiences in [bellwether] matters" and refused the defendants' proposal to proceed with "briefing summary judgment and class certification as to all 51" jurisdictions.[3] Aug. 24, 2017, Hr'g Tr. at 24:3-9; *see also id.* at 25:9-12 ("I agree with the plaintiffs that some sort of bellwether approach is warranted here, which raises the question of . . . how to choose the bellwether states . . ."); *id.* at 27 (discussing picking one to four states, and defense counsel noting that "[t]he last time I did this in . . . . front of Judge Scheindlin, we settled on four . . . .[,] [t]he plaintiffs picked two, and we picked two."). Ultimately, Judge Furman decided on a three-state process, allowing the plaintiffs to pick two states and the defendants one. No. 17 Civ. 06486 (JMF), Dkt. 9 (Aug. 30, 2017). This process led to settlement after the parties briefed class certification, summary judgment, and *Daubert* motions for the three states, and after Judge Furman partially granted defendants' motion for summary judgment. 407 F. Supp. 3d 212.

A bellwether process was also successfully employed in *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, where the court certified a class of Ohio plaintiffs and the class proceeded to a bellwether trial. No. 08 WP 65000 (CAB), 2016 WL 5338012, at *2 (N.D. Ohio Sept. 23, 2016). Before the court evaluated the non-Ohio states, the parties reached a nationwide settlement. In approving the settlement, the court explained that the bellwether trial "gave the parties a clear understanding of the strengths and weaknesses of their claims and defenses," thereby removing some of the "guesswork" associated with evaluating the issues under the laws in other states. *Id.* at *10–11. A bellwether procedure here would have the same advantage.

The bellwether process in *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83 (D. Mass. 2008) is also informative. There, a single state class was certified and tried. In certifying additional state classes, the court observed that the bellwether trial "permit[ted] the Court to take a searching look at the critical fact disputes, to make fact-findings for purposes of class certification and to make grounded predictions as to how the key contested issues will play out."). *Id.* at 92.

In summary, as the experience of courts in similarly complex class actions indicates, focusing this case through a bellwether process is far more conducive to the adjudication (and resolution) of this case than Defendants' "whole hog" approach. Requiring the parties to work together to adopt a bellwether procedure as Plaintiffs propose will allow the parties and the Court to focus pre-trial and trial efforts on the claims arising under two to five states' laws before turning to the many other states. The benefits of such an ordered procedure inure to all parties and the Court.

---

[2] The *GM Ignition Switch* transcripts are *available at*: https://gmignitionmdl.com/court-documents/transcripts/.

[3] The only reason the case assigned to Your Honor is not an MDL is because our firm was able to consolidate these claims into a single action. If the consumers we represent had chosen to file in their respective jurisdictions, or with different counsel, this case would have been consolidated either via the MDL process or under 28 U.S. Code § 1404.

Thank you for the Court's consideration of this request.

                                                                    Respectfully submitted,

                                                                    /s/ Steven L. Wittels_____
                                                                       Steven L. Wittels

cc:    All counsel of record (via ECF)
          Magistrate Judge Katharine H. Parker (via ECF)