# EXHIBIT A

# ***Nichols, et al., v. Noom Inc., et al.*, No. 20 Civ. 3677 (LGS) (KHP)**

# Sedona Conference Rule 34(b)(2) Primer Tracking Chart of the Parties' Agreements and Judicial Resolution of the Disputes Regarding Plaintiffs' Second Amended Document Requests

## Introduction

Once finalized and executed, this document shall replace Plaintiffs' July 14 document requests and Defendant's August 27, 2020 responses. Other than the following general instructions and parameters, all other instructions, requests, responses, and objections are only those contained in the columns below. All prior instructions, requests, responses, and objections are superseded.

## Instructions

1. Unless otherwise stated, these document requests ("Document Requests") cover the "Relevant Period" of [**subject to continuing negotiations**].

2. These Document Requests do not specifically call for the production of documents protected by the attorney client privilege or work product doctrines, although relevant documents that are responsive to these Document Requests shall be logged pursuant to the privilege log parameters set forth in [**ECF No. XX, the Court-ordered ESI protocol**].

3. These Document Requests are continuing. If, after producing documents, you obtain or become aware of any further documents responsive to these Document Requests, you must produce such additional documents as required by Fed. R. Civ. P. 26(e).

4. In response to these Document Requests you are required to produce all documents in your possession, custody, or control, including documents in the possession of, or available or accessible to, you or any of your agents, attorneys, employees, divisions, or representatives within (30) days of receipt of these Document Requests.

5. In the event that any document called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that document is to be identified as completely as possible, including, without limitation, by a description containing the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, person authorizing the disposal, and the person disposing of the document, and identify its last known location and the reason it is no longer in existence.

6. If any document cannot be produced in full, produce to the extent possible, specifying the reasons for the inability to produce the remainder.

7.      If any requested document was formerly in your possession, custody, and control but no longer is in your possession, custody, and control, state when and what disposition was made of the document, and what efforts, if any, you have made to obtain each such document in response hereto.  Further, if any such document is not in your possession, custody, or control but you know the identity of the entity or person currently with possession, custody, or control of such document, identify the entity or person who has the document, including the address and telephone number of the entity or person.

8.      If with respect to any request there are no responsive documents, irrespective of Defendant's objections, Defendant shall so state in writing.

9.      The following rules of construction apply to all Document Requests:

    a.  Each of these Document Requests should be construed to exclude publicly disclosed and available court filings made in this action.

    b.  The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the document requests all responses that might otherwise be construed to be outside of their scope.

    c.  Each paragraph and subparagraph herein should be construed independently and not by reference to any other paragraph or subparagraph of these requests for purposes of limitation.

10.     Defined terms may be capitalized or emphasized for convenience; the definitions herein apply whether or not the term is so capitalized or emphasized.

11.     Except where expressly stated, these Document Requests are not limited in any way by geography.

12.     Any request for "documents" also requests "communications" and vice versa as those terms are defined in in Rule 26.3 of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York.

13.     Each request which seeks information relating in any way to communications from or within a business or corporate entity, is hereby designated to demand and should be construed to include all communications by and between representatives, employees, or agents of the business or corporate entity.

14.     Each request should be responded to separately.

15.     Pursuant to Fed. R. Civ. P. 34(b), all documents produced shall be segregated and identified by the request to which they are primarily responsive.  Where required by a particular subparagraph of these Document Requests, documents produced shall be further segregated by the subparagraph to which they are primarily responsive.

**[ISSUE 1] – The parties disagree as to whether the above "Introduction" and "Instructions" should be included in this document.**

| Plaintiffs' Position | Noom's Position |
| --- | --- |
| The Court should adopt the Introduction and Instructions set forth above, which will promote transparency into Defendants' grounds for withholding discovery, and will prevent downstream disputes. Noom has had these standard and uncontroversial Introduction and Instructions sections of the chart since September 28, 2020, but waited until December 3, 2020 to advise Plaintiffs that it does "not believe the full set of instructions" should be included in this submission to the Court "because it omits [Noom's] objections." However, Noom has never made objection to these Introduction and Instructions sections. Instead, Noom's reference to its objections refers to Noom's August 27, 2020, objections to the original instructions that Plaintiffs' included in their First Request for Production of Documents. Days later Plaintiffs detailed the improper nature of those objections in a September 4, 2020 deficiency letter to Noom's counsel, but have received no response. Subsequently, as part of the first iteration of this tracking chart, Plaintiffs provided Noom with the narrowed instructions above. These instructions are based on guidance from the Sedona Conference and were provided for Noom's consideration as of September 28, 2020; it was not until December 3, 2020 that Noom raised any issue with their inclusion, despite Plaintiffs having sent Noom three versions of this chart since the time of the Court's Order (ECF No. 94) directing that the current version of the chart be jointly submitted to the Court for review. Plaintiffs are concerned that Noom's refusal to provide proper objections to the instructions will be used as a basis for withholding documents, without providing Plaintiffs with the opportunity to know of and/or adequately assess any such withholding. This widespread practice of withholding without adequately apprising the requesting party was the driving concern behind the 2015 amendments to Rule 34. | Defendants object to Plaintiffs' inclusion of the Definitions and Instructions in this chart, and their suggestion that Noom has somehow waived all objections is wrong: Noom timely served its objections on August 27, 2020, and it did not waive those objections by agreeing to cooperate with Plaintiffs and participate in this chart. |

## Definitions

These document requests ("Document Requests") incorporate by reference and use the Uniform Definitions in Discovery Requests forth in Rule 26.3 of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York.

The following definitions of particular terms used in these Document Requests are as follows:

"**Class Member**" means all individuals who are members of the proposed class(es) defined in the Second Amended Complaint.

"**Plaintiff**" or "**Plaintiffs**" means any person who joins this action as a proposed class representative.

"**possession**" when used in relation to the term "document(s)" means documents that are in your possession, custody or control and/or you agents or attorneys, including attorneys representing you in other actions.

"**prepare**" means and refers to writing, creating, proposing, drafting, editing, ghostwriting, advance knowledge, revising, or advising as to the contents or drafting of a document.

"**provide**" means to provide, to procure, to render, to furnish, to make available, to get, or to supply what is desired or needed.

"**related to**," "**relating to**," "**in relation to**," "**regarding**," means "concerning" as defined in the Uniform Definitions in Discovery Requests forth in Rule 26.3 of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York.

The "**Subject Matter of this Litigation**" means the "subject matter" listed on page 2 of Defendant's June 18, 2020 litigation hold, NOOM00000004, attached hereto as Exhibit A.

**Categories of Information Noom has Agreed to Produce:**

For the Court's convenience, Noom states that it has committed to produce the following categories of information:

- *A chart sufficient to show aggregate subscription data regarding the Class from March 2017 to the present. The chart will include how the subscription was purchased; total subscription charges broken down by state, year, annual revenue; annual amounts refunded and charged back.*
- *All communications between Noom and the Named Plaintiffs.*
- *Communications about the Named Plaintiffs prior to the filing of the lawsuit.*
- *Data regarding the Named Plaintiffs use of the Noom platform that is readily obtainable, subject to the Parties' agreement regarding the appropriate scope of production of usage data.*
- *Documents sufficient to describe the development and use of system-generated messages used in the renewal and cancellation process.*
- *A representative sample of coach communications with users regarding cancellation, autorenewal, and alleged bot coaching.*
- *Documents sufficient to show the development of any automated feature of the coaching process, and results of any experiments or testing regarding the same.*
- *Documents sufficient to show the development and use of "Eva," Noom's online concierge.*
- *Documents sufficient to show the results of any testing or experiments to defer coaching until after the trial period, if any. vast majority of all print and video advertisements circulated during the relevant period that it can locate without undue burden. This includes documents sufficient to show the video and copy advertisements that were publicly circulated on Facebook during the Relevant Period, that it can locate and produce without undue burden. Noom further agrees to produce all video and copy advertisements publicly circulated during the Relevant Period that are maintained internally within Noom that it can locate and produce without undue burden. To the extent reasonably available, Noom agrees to produce metadata sufficient to describe when the advertisement was circulated.*
- *Documents sufficient to show Direct Mailers circulated during the Relevant Period that it can collect and produce without undue burden.*
- *Documents sufficient to show scripts for radio advertisements circulated during the Relevant Period that can be collected without undue burden.*
- *Documents sufficient to show the actual autorenewal disclosures on Noom's website every three months from May 2016 through October 2020.*
- *Documents sufficient to show the actual trial disclosures every 3 months from May 2016 through October 2020.*
- *Documents sufficient to show the actual acknowledgment emails during the Relevant Period that can be collected without undue burden.*
- *Noom agrees to meet and confer with Plaintiffs regarding an appropriate method for producing documents sufficient to show the actual check-out flow and support page for specific points in time during the Relevant Period.*
- *Documents sufficient to show the non-privileged results of any testing or experiments regarding Noom's automatic renewal disclosures, cancellation requests or refund requests.*

- *Non-privileged and responsive documents that it can collect without undue burden sufficient to show the following form correspondence during the Relevant Period: subscription acknowledgement emails, renewal emails, and marketing emails.*
- *"Macros" used by the Customer Service Team that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching, to the extent reasonably available.*
- *"Knowledge articles" used by the Customer Service Team that relate to autorenewal, refunds, cancellations, and alleged bot coaching that serve as a resource for Customer Service representatives, to the extent reasonably available.*
- *Customer Service training materials that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching.*
- *Coaching Team training materials that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching.*
- *Documents sufficient to describe the development and use of system-generated messages used in the renewal, refund, and cancellation process.*
- *All Customer Service training materials that relate to difficulty accessing Noom's program through the mobile application.*
- *All knowledge articles that relate to difficulty accessing Noom's program through the mobile application.*
- *"Macros" used by the Customer Service Team that relate to difficulty accessing Noom's program through the mobile application.*
- *Design documents that it can locate and produce without undue burden regarding Noom's development of the autorenewal feature of Noom's Healthy Weight Program.*
- *Testing and experiment results that it can locate and produce without undue burden regarding Noom's development of the autorenewal feature of Noom's Healthy Weight Program.*
- *Noom agrees to meet and confer with Plaintiffs regarding the categories of usage data that are appropriate for production in this matter.*
- *Noom agrees to meet and confer with Plaintiffs on a sampling methodology for production of customer refund requests related to Noom's autorenewal policies.*
- *Noom agrees to meet and confer with Plaintiffs on a sampling methodology for production of customer refund requests related to Noom's alleged use of bot coaching.*
- *Noom's current organizational chart (it does not have historical versions).*
- *Noom agrees to meet and confer with Plaintiffs regarding a reasonable sampling of class member data.*
- *Noom agrees to meet and confer with Plaintiffs regarding production of sample of complaints regarding its automatic renewal process, refund and cancellation policies.*

# Tracking Chart of Requests Where the Parties Have a Dispute about Whether the Requests and Objections are Consistent with the Rules

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| Request No. 6: **All documents and communications considering the deceptiveness, ethics, and/or legality of Noom's conduct** that is the Subject Matter of this Litigation.<br><br>Or, instead of "Subject Matter of this Litigation":<br><br>Noom's periodic automatic enrollment subscription feature, how users can cancel their auto-enrollment or trial subscriptions, Noom's refund policies or practices, the pricing of Noom's subscriptions and trial subscriptions, Noom's practice of | This Request seeks the critical common evidence of (i) Defendants' knowledge of the consequences of the conduct that is the subject matter of this litigation, (ii) actual consumer deception, and (iii) Defendants' disregard of their knowledge of this deception. The Second Amended Complaint ("SAC") details the extraordinary consumer backlash to the conduct that is the subject matter of this litigation, including thousands of consumer complaints, the Better Business Bureau's ("BBB") warning to the consuming public about Noom, and Noom | In the parties' November 5 joint letter to the Court, Noom indicated that it would be willing to produce the following document categories that may be responsive to this Request: Noom's "autorenewal, refund, cancellation and coaching disclosures"; Noom's "internal policies regarding autorenewal, refunds, cancellations and coaching"; a "representative sampling of customer complaints"; and "documents and communications reflecting the Named Plaintiffs' experience with Noom." However, Noom has been unwilling to search for | **Noom's position:** Plaintiffs' Second Amended RFP No. 6, ***which is 102 words long***, is still non-compliant with Rules 26 and 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized category of information pursuant to Rule 34(b). Specifically this includes: (i) how users subscribe | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

[1] During the deposition of Noom employee John Riccardi, Plaintiffs' counsel orally demanded production of ***27 additional categories of information***, most of which are not called for by either their original or first or second amended Requests. Noom respectfully opposes Plaintiffs' attempt to issue oral discovery demands, which are contrary to the plain language of Rule 34(b), and also opposes their attempt to shoehorn new categories of information into existing requests that the Parties have been negotiating for several months.

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| charging for several months of services with a multi-month lump sum charge following the end of the trial period, the level of communication Noom has with consumers during the trial period, Noom's practice of utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | customer service public postings admitting that consumers are being systematically deceived. SAC ¶¶ 3, 79–85. Further, the SAC describes Noom's meticulous tracking of customer metrics including cancellation and complaint rates, credit card companies' threats to stop processing Noom's transactions because of the extraordinarily high chargeback volume, Noom's history of improperly using autoenrollment to ensnare consumers, and Noom's knowledge of consumers being inadvertently enrolled multiple times in the same plan. *Id.* ¶¶ 78–105.<br><br>The evidence sought by this discovery is common to all class members' claims and will be used to show commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). *See Sergeants* | and produce documents concerning Noom's internal deliberations and recognition of its knowledge regarding the deceptiveness, ethics, or legality of its conduct and Defendants' disregard of their knowledge of this deception. Indeed, during the parties' September 17 meet-and-confer, Noom has complained that it would supposedly encounter difficulty with instructing its contract attorneys to conduct a review of concepts like "ethics." Noom went so far as to propose that the parties should skip to crafting search terms rather than provide Plaintiffs with its position on what kinds of documents it viewed as non-germane, thereby prejudicing Plaintiffs' ability to object to those documents' exclusion, if appropriate.<br><br>While Noom has asserted various generalized objections at different times, Noom's principal objection appears to be that "Subject Matter of this | to Noom on its website and mobile application; (ii) how users can cancel their auto-enrollment and trial subscriptions; (iii) the pricing of Noom subscriptions and Noom trial subscriptions; (iv) Noom's rules, policies, and procedures regarding trial subscriptions and automatic-enrollments; (v) any arrangements with third-party providers who process or manage subscriptions and renewals; (vi) any requests from consumers for refunds or cancellations; (vii) any consumer complaints about Noom refunds, cancellations, trial subscriptions and automatic enrollments; (viii) Noom's rules, policies, and procedures regarding computerized and human coaching; (ix) Noom's development of personalized weight loss plans, including, but not limited to, any differences between these services for trial subscriptions and monthly subscriptions; (x) marketing or advertising relating to Noom's subscriptions, personalized plans | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | *Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 88 (2d Cir. 2015) ("Plaintiffs may be able to prove class-wide causation based on first-party reliance without an individualized inquiry into whether each class member relied on the defendant's misrepresentation if 'circumstantial evidence' generates a sufficiently strong inference that all class members did, in fact, rely."); *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 639–40 (5th Cir. 2016) (en banc) (That Class members are "the foreseeable victims of the alleged fraud" is the "most straightforward way of demonstrating reliance in a classwide manner . . . .").<br><br>Such evidence can also be used to show that Defendants' conduct is deceptive. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or | Litigation" references eight discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. | and coaches; (xi) sales data and subscription/consumer lists for Noom; and (xii) other financial metrics and materials showing Noom's revenue derived from subscriptions.<br><br>Plaintiffs' alternative proposal—which contains still contains 8 categories of information—is still vastly overbroad and equates to 8 separate RFPs, which are each themselves overbroad and vague.<br><br>**Subjective.** The phrase "considering the deceptiveness, ethics, and/or legality" is vague and subjective.<br><br>**Calls for ACP/AWP.** Documents considering the "legality" of Noom's conduct in this action necessarily encompasses every single document prepared or collected in anticipation of litigation.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | practice is deceptive is usually a question of fact."); *see also Ackerman v. Coca-Cola Co.*, No. 09 Civ. 0395 (JG), 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) ("[W]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides . . . ."); *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 84 n.27 (1989) ("Frequently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor. For normally the actor is presumed to have intended the natural consequences of his deeds.") (citation omitted); *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (while proof of actual deception is not necessary to show deceptive business practices, "such proof is highly probative to show that a practice is likely to mislead consumers acting | | internal analysis as to the "ethics, deceptiveness, and/or legality" as to its own conduct is not relevant to the issues to be decided on class certification. Plaintiffs' bare allegation that Noom's intent is somehow relevant to "commonality, typicality, and predominance of Plaintiffs' fraud" does not make it so, and Plaintiffs fail to cite a single case establishing that fraudulent intent is relevant to the issues to be decided on class certification.<br><br>The cases Plaintiffs cite to support their claims that their vastly overbroad RFPs are directed at issues relevant to class certification are inapposite at best and misleading at worst. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 88 (2d Cir. 2015) is a RICO mail fraud case in which the Second Circuit affirmed the district court's denial of class certification, dismissal of state law fraud claims, and grant of | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | reasonably under the circumstances."); *Lambda Elecs. Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915, 926 (S.D.N.Y. 1981) ("The best evidence of likelihood of confusion is the occurrence of actual confusion and mistakes."). | | summary judgment in the defendants' favor because individualized issues in establishing reliance predominated over common questions.  The language Plaintiffs' quote is dicta solely related to a hypothetical situation where a RICO plaintiff need not prove first-party reliance, but that reasoning is cabined to RICO causation.  Their next case, *Torres v. S.G.E. Mgmt., LLC*, 838 F.3d 629, 639-40 (5th Cir. 2016), is another RICO case and makes clear in the section that Plaintiffs quote from that RICO's lack of a first-party reliance requirement is "unlike most common law fraud claims," and thus, Plaintiffs' citation to *Sergeants Benevolent* and *Torres* are inapplicable to this context.  *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) and *Ackerman v. Coca-Cola Co.*, No. 09-0395, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) are both opinions on motions to dismiss and are unremarkable in | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | that both judges could not conclude that the representations in question were not misleading as a matter of law.  Neither case discusses the relevance of either defendant's internal documents and communications considering the deceptiveness, ethics, and/or legality of their conduct to issues on class certification, nor does either case so much as mention the concepts of commonality, typicality, or predominance in any relevant context.  Plaintiffs' remaining citations are highly misleading. *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 84 n.27 (1989) discusses the "probative evidence of intent" as it related to the State of Indiana's ***legislative intent*** in passing its RICO statute.  In *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006), the "proof of actual deception" Plaintiffs reference is cabined to determining whether a mail solicitation is deceptive as a matter of law within the meaning of Section 5 of the Federal Trade | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | Commission Act. The "best evidence of likelihood of confusion" Plaintiffs cite to in *Lambda Elecs. Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915, 926 (S.D.N.Y. 1981) is the standard for "actual confusion" in a trademark infringement action. And lastly, *Koch v. Greenberg*, No. 07-9600, 2008 WL 4778813, at *5 (S.D.N.Y. Oct. 31, 2008) was not a class action (or putative class action), and in any event, the fact that there "may be many other victims" was an issue discussed in the context of ***punitive damages***, which, along with Noom's intent, are the only two topics that the vast majority of Plaintiffs' RFPs could relate to. | |
| Request No. 7: **All documents and communications reflecting** any **analysis of or strategies** | Noom's strategy documents are expected to demonstrate the key role deceptive practices played in guiding the conduct that is the | Noom has objected to Plaintiffs' Request concerning Noom's analyses or strategy documents regarding the conduct that is the | **Noom's position:** Plaintiffs' Second Amended RFP No. 7, which is ***90 words long*** is still non-compliant with Rules 26 and | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| regarding the conduct that is the Subject Matter of this Litigation.<br><br>Or, instead of "Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, how users can cancel their auto-enrollment or trial subscriptions, Noom's refund policies or practices, the pricing of Noom's subscriptions and trial subscriptions, Noom's practice of charging for several months of services with a multi-month lump sum charge following the end of the trial period, Noom's practice of utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | subject matter of this litigation. For example, on November 6, 2020, Noom produced what is allegedly "the design document that first discussed" the product and the autorenewal practices that are challenged by Plaintiffs here. Nov. 6, 2020 Ltr from A. Reddy to S. Wittels, Ex. B. This document demonstrates (A) Noom's knowledge that consumers were not adequately alerted to the consequences of "trying" Noom (i.e. that they would be autorenewed and immediately charged a multi-month membership if they were unable to navigate Noom's highly unorthodox cancellation method), (B) that charging a higher monthly rate did not meaningfully effect the percentage of consumers that were automatically converted from trial to full subscriptions, and (C) that Noom's profitability hinged on the percentage of customers that auto-renewed. This evidence is relevant to commonality, typicality, and | subject matter of this litigation and has complained that they do not know how to craft search terms that will retrieve documents responsive to this Request. Noom has been repeatedly unwilling to propose any narrowing to this Request.<br><br>During the November 18, 2020 deposition of Noom data scientist John Riccardi, Mr. Riccardi testified that he conducted a data analysis regarding an increased customer cancellation rate earlier in 2020 and he testified that analysis involved identifying the drivers of that increased customer cancellation rate. Mr. Riccardi further testified that he had performed data studies and analyses regarding customer retention and regarding how much to charge a customer following the expiration of the trial period. During the deposition, Plaintiffs asked for production of these data analyses and studies, but as of December 3, 2020, Defendants have not | 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Overbroad/Compound.** This request asks for all documents reflecting internal "analyses or strategies" regarding ***all twelve topics identified for preservation in Noom's Litigation Hold***. There is no cognizable or reasonable limitation to this Request, as it appears to ask for "strategy documents" "data analysis" and "experiments."<br><br>Plaintiffs' alternative proposal—which contains still contains 7 categories of information—is still vastly overbroad.<br><br>This request would sweep in millions of irrelevant documents, including, for example, all analyses related to Noom's marketing or advertising as to its flagship product. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought here is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. *See Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ) (DF), 2008 WL 4778813, at *5 (S.D.N.Y. Oct. 31, 2008) (that defendant is aware of deception and that there "may be many other victims" are relevant factors in determining the egregiousness of the alleged fraud).<br><br>Additionally, Noom's 2017 "design document" proves that Noom's strategy documents contain compelling proof of deceptive conduct and it buttresses Plaintiffs' well-pled allegations that Noom knows that consumers are being deceived by the conduct that is the subject | provided a position one way or the other whether they are willing to produce these documents pursuant to this Request.<br><br>While Noom has asserted various generalized objections at different times, Noom's principal objection appears to be that "Subject Matter of this Litigation" references seven discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. | **Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Plaintiffs cannot show that every internal document or communication regarding the "Subject Matter of the Litigation" is relevant or proportional to the issues to be litigated on class certification. As noted above, in response to RFP 6, Plaintiffs' citations do not support their argument that intent-related evidence is relevant to class certification. Quite to the contrary, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** *See Weiner v. Ocwen Fin. Corp.*, No. 14-2597, 2016 WL 6897250, at *2-3 (E.D. Cal. Nov. 23, 2016) (finding that discovery into defendants' internal communications concerning its business decisions were not related to issues of class certification despite plaintiff's claims that they bore directly on defendants "classwide intent to | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
| --- | --- | --- | --- | --- |
| | matter of this litigation. SAC ¶¶ 78–105. | | fraudulently conceal" costs from consumers"); *Hemy v. Perdue Farms, Inc.*, No. 11-888, 2013 WL 5977361, at *6 (D.N.J. Nov. 7, 2013) (finding that discovery into defendant's underlying practices in alleged false advertising case were irrelevant for class certification purposes); *Harris v. comScore, Inc.*, No. 11-5807, 2012 WL 686709, at *5-7 (N.D. Ill. Mar. 2, 2012) (finding the issues of the development of defendant's software, defendant's internal emails, and defendant's relationships with its bundling partners not relevant to class certification, and finding discovery requests for defendant's internal investigations, defendant's public relations response to the litigation, defendant's development of its software, and defendant's internal communications were not relevant to issues of class certification); Federal Judicial Center, *Manual for Complex Litigation, Fourth*, § 21.14 | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | ("[d]iscovery relevant only to the merits delays the certification decision and may ultimately be unnecessary.") | |
| Request No. 8: **All documents and communications** reflecting Noom's **policies, strategies or analysis** regarding the **type, content, and level of communication Noom had with its customers** (i) before, (ii) during, and (iii) after the trial period. | This discovery is critical for class certification and merits purposes. For example, SAC ¶ 56 describes how "[e]ven though Noom sends potential customers numerous emails offering its free 14-day trial, once customers actually sign up for the trial, Noom does not follow up with any emails containing instructions on how to start the program." SAC ¶ 77 describes how at the end of the trial period, Noom sends customers who have not been using the program a message stating that "I won't be checking in anymore" and "feel free to message me whenever you want to pick things up again and we'll get you going"—in other words, that the consumer's business relationship with Noom is coming to an end. Despite this message, Noom then charges these same customers for a multi- | In the parties' November 5 joint letter to the Court, Noom indicated that it would be willing to produce the following document categories that may be responsive to this Request: Noom's "autorenewal, refund, cancellation and coaching disclosures"; and Noom's "internal policies regarding autorenewal, refunds, cancellations and coaching." However, Noom has objected to this request, which calls for additional responsive documents and communications reflecting Noom's policies, strategies, or analysis regarding the type, content, and level of communication Noom had with its customers. Noom has refused to provide any proposed narrowing of this Request. | **Noom's position:** Plaintiffs' Second Amended RFP No. 8 is still non-compliant with Rules 26 and 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Overbroad/Compound.** This request asks for all analysis of all customer communications by any consumer-facing department, including customer-service, coaching, marketing and advertising. This would sweep in thousands of irrelevant documents and is not relevant or proportional to the needs of the case.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Plaintiffs cannot show that every internal analyses regarding customer communications is relevant or | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | month subscription. Similarly, SAC ¶ 18 explains how Noom's "website and app provide no phone number, no fax number, no email address, no mailing address, and no link to customer service" and that "Noom makes it difficult for consumers to cancel their trial membership." Further, a former Noom employee has testified that Noom tested "deferred coaching," in which Noom explored whether a trial customer was more likely or less likely to continue with Noom past the trial period depending on whether Noom assigned a coach earlier or later in the trial. Sept. 30, 2020, Decl. of I. Meyer ¶ 17. SAC ¶ 66 notes the curious fact that customers receive a "receipt" email from Noom when they sign up for the trial period but that "Noom fails to send a 'receipt' at the time the first (or any subsequent) auto-enrollment fee is charged to the customer's payment method or to otherwise provide notification or confirmation of the charge." | Noom has asserted different objections to this Request at different times, but most recently, on November 3, Noom characterized the Request as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence," again failing to propose any limitation or narrowing. At that time, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." | proportional to the issues to be litigated on class certification. It has tangential relevance to commonality, typicality, and predominance and Noom's policies, strategies and analyses on this subject is solely relevant to Noom's intent. ***Numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** *See Weiner v. Ocwen Fin. Corp.*, No. 14-2597, 2016 WL 6897250, at *2-3 (E.D. Cal. Nov. 23, 2016) (finding that discovery into defendants' internal communications concerning its business decisions were not related to issues of class certification despite plaintiff's claims that they bore directly on defendants "classwide intent to fraudulently conceal" costs from consumers"); *Hemy v. Perdue Farms, Inc.*, No. 11-888, 2013 WL 5977361, at *6 (D.N.J. Nov. 7, 2013) (finding that discovery into defendant's underlying practices in alleged false | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | These allegations make clear the relevance and proportionality of the requested discovery into the type, content, and level of communication Noom had with consumers before, during, and after the trial period.<br><br>This evidence is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought here is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | | advertising case were irrelevant for class certification purposes); *Harris v. comScore, Inc.*, No. 11-5807, 2012 WL 686709, at *5-7 (N.D. Ill. Mar. 2, 2012) (finding the issues of the development of defendant's software, defendant's internal emails, and defendant's relationships with its bundling partners not relevant to class certification, and finding discovery requests for defendant's internal investigations, defendant's public relations response to the litigation, defendant's development of its software, and defendant's internal communications were not relevant to issues of class certification); Federal Judicial Center, *Manual for Complex Litigation, Fourth*, § 21.14 ("[d]iscovery relevant only to the merits delays the certification decision and may ultimately be unnecessary.")<br><br>**The Court Should Disregard the Meyer Declaration.** As | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | global matter, Noom objects that Plaintiffs rely so heavily on the declaration of Ian Meyer—citing his declaration nearly a dozen times in this document alone. That declaration is replete with inaccurate information. Noom has been unable to test the credibility of this witness because Plaintiffs have delayed producing discovery of this witness for over two months. | |
| Request No. 9:  All **documents** and **communications** produced or received by Noom **in any regulatory matter, enforcement action, litigation, arbitration, or other legal dispute** related to the Subject Matter of this Litigation.<br><br>Or, instead of "the Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, how users can cancel their auto-enrollment or trial subscriptions, Noom's refund policies or | Noom represents no responsive documents exist so Plaintiffs will not burden the Court with an explanation here. | On November 3, 2020, defense counsel represented to Plaintiffs that there have not been any regulatory matters, enforcement actions, litigations, arbitrations, or other legal disputes related to the Subject Matter of this Litigation and that therefore it has no documents responsive to this Request. | **Noom's Position.**  Noom has confirmed there are no litigation, regulatory, enforcement action or arbitration proceedings concerning automatic purchase renewal, refunds and cancellations.<br><br>Noom therefore does not believe there is any issue for the Court to resolve. | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| practices, the pricing of Noom's subscriptions and trial subscriptions, Noom's practice of charging for several months of services with a multi-month lump sum charge following the end of the trial period, the level of communication Noom has with consumers during the trial period, Noom's practice of utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | | | | |
| Request No. 11: All **documents** and **communications** regarding the role of **Noom's coach software** in membership cancellation or renewal. | Noom's "coach" bot is the only way consumers can cancel their trial membership before being auto-renewed. As a "bot," the coach is programmed to respond to prompts from customers. Plaintiffs are entitled to know exactly how the coach is programmed to respond to the variety of ways consumers may interact with the coach. Conceptually, Plaintiffs' request is no different than a request for a customer service script. Noom | On November 25, 2020—after Plaintiffs had already fully prepared the columns of this chart in response to the Court's Order, ECF No. 94, and more than three weeks after Noom had promised to provide a proposed limitation for this Request—Noom for the first time agreed "to produce documents sufficient to describe the development and use of system-generated messages used in the renewal and cancellation process." Noom | **Noom's Position.** Noom agrees to produce Documents sufficient to describe the development and use of system-generated messages used in the renewal and cancellation process. Noom also agrees to produce a representative sample of coach communications with users regarding cancelation and autorenewal.<br><br>**This RFP is Nonsensical.** Noom does not have "coach bots" and | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | elected to use a bot to interact with consumers and Plaintiffs are entitled to see exactly how that bot is programmed to work. Further, a former Noom employee has put evidence in the record that Noom tested "deferred coaching," in which Noom explored whether a trial customer was more likely or less likely to continue with Noom past the trial period depending on whether Noom assigned a coach earlier or later in the trial.  Sept. 30, 2020, Decl. of I. Meyer ¶ 17.  Evidence of deceptive coach programming would be relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X).  It would also be relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | also agreed "to produce a representative sample of coach communications with users regarding subscription cancellation and autorenewal."  In response to RFP No. 12 below, Noom has also agreed to turn over "documents sufficient to show the development of any automated feature of the coaching process, and results of any experiments or testing regarding the same[,]" as well as "documents sufficient to show the development and use of 'Eva,' Noom's online concierge[.]"<br><br>Plaintiffs understand Noom's principal objection to this Request to be that it views a request for "all documents and communications" as too broad.  However, given the parties' agreement to limit the collection to certain custodians and locations, and to employ search terms, the documents Noom would need to produce in | Noom uses human coaches to communicate with users and process cancellations.  It does not utilize coach software as contemplated by this RFP.<br><br>**Vastly Overbroad and Unduly Burdensome.** "All documents and communications" regarding the use of system generated messages in the cancellation process would sweep in millions of irrelevant documents, including every coach communication with individual users regarding the same.<br><br>**Custodian limitation.** Plaintiffs' claim that this Request will be limited because of custodians and search terms selected by the Parties is not accurate as Noom is collecting a massive volume of data and information.  Noom has already agreed to collect and run search terms on entire team drive folders, including Growth team, customer service team, and Product team folders.  In any | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | order to fulfill the Request would be significantly less than "all" responsive documents or communications that exist at the company. Under Noom's view, Plaintiffs would apparently be foreclosed from receiving emails or Slack channel discussions regarding Noom's software regarding cancellation or renewal. Plaintiffs are entitled to have Noom run search terms related to this Request against its document collection and receive responsive documents.<br><br>Noom also objects that it does not understand the term "coach software" because it does not utilize what it terms "automated coaching," a representation it made to Plaintiffs for the first time when the parties met and conferred on November 30. However, Noom does not dispute that it employs software to mediate interactions between consumers and Noom and its coaches. For example, Noom's production of system-generated | event, Plaintiffs have indicated they intend to seek leave to ***far exceed*** the ten-custodian limit, at one point suggesting it will be "fewer than 100 custodians. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | messages demonstrates that software determines whether a consumer should receive an automated response from the system or a response from a human coach. Plaintiffs are entitled to responsive discovery regarding this software, including but not limited to communications regarding how it works and why and when Noom chose to use bots, system-generated messages, and any other artificial intelligence or automated features in conjunction with its trial period and subsequent conversion into automatically renewing subscriptions, and how and why that may have changed over time. | | |
| Request No. 12: All **documents** and **communications** reflecting Noom's **policies, strategies or analysis** regarding Noom's use of **computer, bot, and/or artificial intelligence coaches instead of or in addition to human coaches**. | Noom's strategy documents regarding its use of a bot instead of or in addition to a human coach are expected to demonstrate the important role deceptive practices played in guiding the conduct that is the subject matter of this litigation. | On November 25, 2020—after Plaintiffs had already fully prepared the columns of this chart in response to the Court's Order, ECF No. 94, and more than three weeks after Noom had promised to provide a proposed limitation for this Request— | **Noom's Position:** Noom agrees to produce documents sufficient to show the development of any automated feature of the coaching process, and results of any experiments or testing regarding the same. Noom further agrees to produce | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | For example, SAC ¶¶ 67–77 detail the various ways consumers are confused by Noom's coach-assignment practices, including Noom's failure to disclose that the only way a consumer can communicate with their coach is by downloading the app, which "fact is not disclosed to consumers at any point prior to the start of their trial period or at any point thereafter." For consumers that download the app, they are greeted by an artificial intelligence-powered "bot" named "Concierge Eva," yet it is not clear whether Eva is consumers' "coach."<br><br>The evidence sought by this Request is also relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). It is also germane to a merits ruling on fraud, deceptive | Noom for the first time agreed "to produce documents sufficient to show the development of any automated feature of the coaching process, and results of any experiments or testing regarding the same." Noom further agreed "to produce documents sufficient to show the development and use of 'Eva,' Noom's online concierge[.]"<br><br>Plaintiffs understand Noom's principal objection to this Request to be that it views a request for "all documents and communications" as too broad. However, given the parties' agreement to limit the collection to certain custodians and locations, and to employ search terms, the documents Noom would need to produce in order to fulfill the Request would be significantly less than "all" responsive documents or communications that exist at the company. Under Noom's view, Plaintiffs would apparently be foreclosed from receiving emails | documents sufficient to show the development and use of "Eva," Noom's online concierge.<br><br>**This RFP is Nonsensical.** Noom uses human coaches to communicate with users. Noom does not use "artificial intelligence coaches instead of or in addition to human coaches."<br><br>**Overbroad/Compound.** All documents and communications regarding "policies, strategies, and analysis" related to "computer, bot, and/or artificial intelligence coaches" is compound, overbroad and not relevant or proportional to the needs of the case.<br><br>**Irrelevant.** Noom plans to move to dismiss the coaching-related allegations, as not a single named Plaintiff complains of their interactions with Noom coaches.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | business practices, unjust enrichment, and conversion. | or Slack channel discussions about Noom's policies, strategies or analysis regarding Noom's use of computer, bot, and/or artificial intelligence coaches instead of or in addition to human coaches.<br><br>Plaintiffs are entitled to responsive discovery on these topics, including but not limited to communications about why and when Noom chose to use bots, system-generated messages, and any other artificial intelligence or automated features in conjunction with its trial period and subsequent conversion into automatically renewing subscriptions, and how and why that may have changed over time. | "strategies or analysis" regarding purported "bot coaching" is only relevant to Noom's intent. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence.<br><br>**Custodian limitation.** Plaintiffs' claim that this Request will be limited because of custodians and search terms selected by the Parties is not accurate as Noom is collecting a massive volume of data and information. Noom has already agreed to collect and run search terms on entire team drive folders, including Growth team and Product team folders. In any event, Plaintiffs have indicated they intend to seek leave to ***far exceed*** the ten-custodian limit, at one point suggesting it will be "fewer than 100 custodians | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| Request No. 13: **Documents sufficient to show** Noom's **analysis of or strategies regarding Noom's use of or decision not to use the terms** "coach," "concierge," "artificial intelligence," "AI," or "bot" **in communications with consumers**. | *See* RFP No. 12. Further, a former Noom employee has testified that Noom tested "deferred coaching," in which Noom explored whether a trial customer was more likely or less likely to continue with Noom past the trial period depending on whether Noom assigned a coach earlier or later in the trial. Sept. 30, 2020, Decl. of I. Meyer ¶ 17. | During the parties' October 15, 2020 meet and confer, Defendants agreed to propose a narrowed request notwithstanding their objection that there hypothetically could be irrelevant documents, for example, where two employees discussed the possibility of using the title "goal specialist" instead of "coach." On November 3, Defendants indicated that they believed that this Request "pertain[ed] to Noom's intent and Plaintiffs' claims for punitive damages," but did not indicate that they would propose a narrowing of the Request. As of December 3, 2020, defense counsel has not yet provided Plaintiffs with a proposed narrowing or other response aside from their indication in the November 5 joint letter that Noom would agree to produce "internal policies regarding . . . coaching[.]" Obviously, policy documents are not sufficient to capture the documents that this Request seeks. | **Noom's Position:** Plaintiffs' Second Amended RFP No. 13 is still non-compliant with Rules 26 and 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Vastly Overbroad and Compound.** This RFP is overbroad, not relevant and proportional to the needs of this case, and likely to sweep in millions of documents in that it seeks "analysis of or strategies regarding" five key terms (i.e., "coach" and "concierge") that are core to Noom's business.<br><br>**Irrelevant.** Noom plans to move to dismiss the coaching-related allegations, as not a single named Plaintiff complains of their interactions with Noom coaches or that they were misled by an coaching-related disclosure.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's analysis of strategies regarding | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | these terms is not relevant to any issues besides Noom's intent, and Plaintiffs' bare claim that these categories of information relate to typicality, commonality and predominance does not make it so. | |
| Request No 14: **Documents sufficient to show** Noom's **analysis of, or strategies regarding when or whether a customer would be assigned a coach** during the initial trial period and thereafter, including any testing of the impact of deferring or foregoing the assignment of a coach. | *See* RFP Nos. 12 and 13 above, including discussions of SAC ¶¶ 66–77 and the testimony of I. Meyer. | On November 25, 2020—after Plaintiffs had already fully prepared the columns of this chart in response to the Court's Order, ECF No. 94, and nearly six weeks after the parties met and conferred on this Request—Noom for the first time agreed "to produce documents sufficient to show the results of any testing or experiments to defer coaching until after the trial period, if any."<br><br>Plaintiffs understand Noom's principal objection to this Request to be that discovery into analysis (including testing and experiments) of, or strategies regarding, the assignment of a coach within the trial period would hypothetically sweep in a | **Noom's Position.** Noom agrees to produce documents sufficient to show results of any testing or experiments to defer coaching until after the trial period, if any.<br><br>**Irrelevant.** This document request is simply a fishing expedition that is not relevant or proportional to the needs of the case, as Plaintiffs do not allege that Noom has deferred or withheld coaching during or after the initial trial period, nor do Plaintiffs articulate any relevance to the actual claims or defenses at issue in this case. | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | large number of irrelevant documents. However, Plaintiffs only seek responsive documents concerning Noom's analysis of or strategies regarding whether Noom would assign a coach during the trial period, and if so, when that assignment would occur. This would include deferral of the coach availability during the trial period itself, which Noom's proposal would not capture. Such strategies and analyses are clearly germane to Plaintiffs' allegations related to Noom's cancellation process. A former Noom engineer has testified that Noom has specifically analyzed "deferred coaching," *see* Decl. of I. Meyer, ¶ 17, so the relevant documents that Plaintiffs seek here clearly exist (notwithstanding Defendants' implication that none may exist with its use of "if any"). | | |
| Request No. 20: **Documents sufficient to show all marketing Noom distributed during the Relevant Period that was** | This discovery goes to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment | On November 25, 2020, Noom advised Plaintiffs of the following: | **Noom's Position.** Noom agrees to produce documents sufficient to show the video and copy advertisements that were publicly | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| **intended to induce consumers to try Noom**, as well as **information sufficient to identify the mailing, posting, circulation, or distribution dates and scope** (i.e. any geographic or other limitations) for such marketing | (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). Marketing materials would certainly be relevant to Plaintiffs' merits claims and could impact class claims, including commonality and typicality.<br><br>The highly limited marketing Noom has produced to date shows that Noom claims to use its advanced knowledge of psychology and science to influence consumers' diet-related choices. Paragraph 5 of the SAC alleges that Defendants are using "their scientific knowledge to take advantage of the consuming public, as Defendants' entire sales and automatic renewal model is designed to exploit well-studied weaknesses in human decision-making. Defendants lure consumers to 'try' Noom with promises of a revolutionary weight loss system and then deploy a series of barriers to cancellation to trap consumers into making a lump- | "Noom agrees to documents sufficient to show the video and copy advertisements that were publicly circulated on Facebook during the Relevant Period, that it can locate and produce without undue burden. Noom further agrees to produce all video and copy advertisements publicly circulated during the Relevant Period that are maintained internally within Noom that it can locate and produce without undue burden. To the extent reasonably available, Noom agrees to produce metadata sufficient to describe when the advertisement was circulated. Noom additionally agrees to produce documents sufficient to show Direct Mailers circulated during the Relevant Period that it can collect and produce without undue burden.<br><br>Noom believes that this should encompass the vast majority of all print and video advertisements circulated during the Relevant Period. | circulated on Facebook during the Relevant Period, that it can locate and produce without undue burden. Noom further agrees to produce all video and copy advertisements publicly circulated during the Relevant Period that are maintained internally within Noom that it can locate and produce without undue burden. To the extent reasonably available, Noom agrees to produce metadata sufficient to describe when the advertisement was circulated. Noom additionally agrees to produce documents sufficient to show Direct Mailers circulated during the Relevant Period that it can collect and produce without undue burden.<br><br>Noom believes that this should encompass the vast majority of all print and copy advertisements circulated during the Relevant Period.<br><br>Noom further agrees to produce documents sufficient to show | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
| --- | --- | --- | --- | --- |
| | sum non-refundable advance payment for as many as eight months at a time, at a cost as high as $199.00." | Noom further agrees to produce documents sufficient to show scripts for radio advertisements circulated during the Relevant Period that can be collected without undue burden."<br><br>During the parties' November 30, 2020 meet-and-confer, Noom represented that its production plan outlined above includes Facebook ads, its video ad library, and ads contained in various subfolders in the Growth Team folder on Google Drive (including from social media platforms other than Facebook). Noom further represented that its collection of radio ad scripts also captures podcast ad scripts. Noom stated that it estimates that its production will cover 90-95% of all of Noom's ads during the Relevant Period. Based on these representations, Plaintiffs have no objection to Noom's proposal. | scripts for radio advertisements circulated during the Relevant Period that can be collected without undue burden.<br><br>**Overbroad and Unduly Burdensome.** A request for all marketing **"intended to induce consumers to try Noom"** is not a reasonable limitation, and this Request is facially overbroad and not relevant or proportional to the needs of the case. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| Request No. 22: **Documents sufficient to show** all pages on **Noom's website and/or the Noom app**, including prior versions sufficient to show all changes to Noom's website and/or the Noom app related to the Subject Matter of this Litigation, **including the sign-up or check-out flow**, as well as information sufficient to identify the publication dates of all such pages. | SAC ¶ 41 makes clear that "Noom's social media, online, television, radio, and print advertisements all direct consumers to visit Noom's website to learn more about its weight loss program." SAC ¶ 46 states that "[p]otential customers can sign up for Noom's 14-day trial through Noom's website or directly through their smartphones" and that "both the Noom app and the Noom website feature the same sign-up process, contained the same representations and required customers to complete the same health and fitness evaluation." SAC ¶¶ 47–66 explain how this sign up process misleads reasonable consumers. Further, a former Noom employee has testified that "Noom's sign-up flow was designed to mislead" and that "the company's communications with potential customers signing up for a Noom trial were designed to be misleading." Sept. 30, 2020, Decl. of I. Meyer ¶ 33. | On November 25, 2020, Noom agreed to produce (1) "[d]ocuments sufficient to show the actual autorenewal disclosures on Noom's website every three months from May 2016 through October 2020[;]". (2) "[d]ocuments sufficient to show the actual trial disclosures every 3 months from May 2016 through October 2020[;]" and (3) "[d]ocuments sufficient to show the actual acknowledgment emails during the Relevant Period that can be collected without undue burden."<br><br>Noom further agreed "to meet and confer with Plaintiffs regarding an appropriate method for producing documents sufficient to show the actual check-out flow for specific points in time during the Relevant Period." On November 30, 2020 the parties met and conferred and reached an agreement that Noom would produce documents sufficient to show the sign-up flow, the Noom website's | **<u>Noom's Position:</u>** Noom agrees to produce:<br><br>Documents sufficient to show the actual autorenewal disclosures on Noom's website every three months from May 2016 through October 2020.<br><br>Documents sufficient to show the actual trial disclosures every 3 months from May 2016 through October 2020.<br><br>Documents sufficient to show the actual acknowledgment emails during the Relevant Period that can be collected without undue burden.<br><br>Noom agrees to meet and confer with Plaintiffs regarding an appropriate method for producing documents sufficient to show the actual check-out flow and Support page for specific points in time during the Relevant Period. This information appears to be publicly available through the Wayback machine. | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | This discovery goes to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X).  Language on the website and the sign-up and check-out flow during the relevant period impacts the merits of Plaintiffs' claims and could impact class discovery, including commonality. | "Support" page, and a to-be-determined subset of pages linked to from the "Support" page for every 3 months from May 2016 through October 2020.<br><br>Plaintiffs object to the use of the Wayback Machine as a sufficient substitute for Noom's production obligations.  The Wayback Machine did not crawl Noom's support page (noom.com/support) at all in 2016, 2017, 2018, and the crawls in 2019 and 2020 occur sporadically; for example, the support page was not crawled at all from August through December 2019.  Furthermore, the Noom website pages linked to from the support page (*e.g.*, "My account") were not necessarily crawled at the same time, leaving Plaintiffs with an incomplete picture of Noom's support offerings at the time that the main support page was crawled. | **Vastly Overbroad and Unduly Burdensome.**  Production of "all pages of Noom's website and/or mobile app" during the Relevant Period seeks hundreds of thousands (possibly millions) of documents, as Noom is constantly iterating on its website and mobile application.  To retrieve historical versions, Noom must manually reconstruct each page of its website using source code, and responding to this request as framed would be literally impossible.<br><br>**Irrelevant.**  Plaintiff does not challenge "all pages" or Noom's website, and this request therefore seeks vast amounts of irrelevant information. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
| --- | --- | --- | --- | --- |
| | | The parties agree to continue to meet and confer on this Request, including with respect to the collection of a subset of pages linked to from the "Support" page, and thus Plaintiffs believe no judicial guidance is necessary at this time. | | |
| Request No. 23: **All documents and communications related to Noom's analyses, strategies, A/B testing, and models** regarding the **financial impact or consumer response to Noom's trial period practices, periodic automatic enrollment practices or cancellation practices**. | Noom's strategy documents are expected to demonstrate the central role deceptive practices played in guiding the conduct that is the subject matter of this litigation. For example, on November 6, 2020, Noom produced "the design document that first discussed" the product and autorenewal practices that are challenged here. As discussed above, this document demonstrates (A) Noom's knowledge that consumers were not adequately alerted to the consequences of "trying" Noom (i.e. that they would be autorenewed and immediately charged with a multi-month membership if they were unable to navigate Noom's highly unorthodox cancellation method), | On November 25, 2020, Noom agreed "to produce documents sufficient to show the non-privileged results of any testing or experiments regarding Noom's automatic renewal disclosures, cancellation requests or refund requests."<br><br>Plaintiffs understand Noom's principal objection to this Request to be that it views a request for "all documents and communications" as too broad. However, given the parties' agreement to limit the collection to certain custodians and locations, and to employ search terms, the documents Noom would need to produce in order to fulfill the Request would be significantly less than "all" | **Noom's Position.** Noom agrees to produce documents sufficient to show the non-privileged results of any testing or experiments regarding Noom's automatic renewal disclosures, cancellation requests or refund requests.<br><br>**Vastly overbroad and unduly burdensome.** This request is facially overbroad and compound—it encompasses effectively 24 categories of information by seeking all "analyses, strategies, A/B testing, and models" regarding either "the financial impact" or "consumer response" to three different practices—all which are central to Noom's business. The request would encompass, again, quite | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | (B) that charging a higher monthly rate did not meaningfully effect the percentage of consumers that were automatically converted from trial to full subscriptions, and (C) that this product's profitability hinged on the percentage of customers that auto-renewed. The evidence sought by this Request is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this Request is also germane to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion.<br><br>Additionally, Noom's 2017 "design document" proves that Noom's strategy documents contain compelling proof of deceptive conduct and it is consistent with Plaintiffs' well-pled allegations that Noom | responsive documents or communications that exist at the company. Under Noom's view, Plaintiffs would apparently be foreclosed from receiving emails or Slack channel discussions about Noom's analyses, strategies, A/B testing, and models regarding the financial impact or consumer response to Noom's trial period practices, periodic automatic enrollment practices or cancellation practices.<br><br>Noom also objects that providing discovery on financial impact is overbroad because all of the testing and experimentation it does in some way touches on the company's bottom line and that discovery would therefore hypothetically sweep in a large number of irrelevant documents. However, Plaintiffs only seek responsive documents concerning Noom's analyses, strategies, testing, and models regarding its financial impact as it relates to its trial period practices, periodic | literally hundreds of thousands of irrelevant documents in that virtually all experiments within the company consider retention and financial impact of Noom's Program. For example, if more users are cancelling for a reason totally unrelated to Noom's autorenewal disclosures, such as because they did not appreciate certain features of the product, those analyses would be encompassed in this response.<br><br>Noom's response is reasonably tailored to the issues in this case: the results of all experiments related to cancellation requests, refund requests, and autorenewal disclosures.<br><br>**Custodian limitation.** Plaintiffs' claim that this Request will be limited because of custodians and search terms selected by the Parties is not accurate as Noom is collecting a massive volume of data and information. Noom has already agreed to collect and run search | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | recognizes that consumers are being deceived by the conduct that is the subject matter of this litigation. SAC ¶¶ 78–105. | automatic enrollment practices or cancellation practices. Such discovery is clearly germane to Plaintiffs' core allegations in the SAC. Noom's proposed limitation is therefore insufficient.<br><br>For example, the limitation would not capture relevant and responsive documents about which Noom data scientist John Riccardi testified in his November 18, 2020 deposition. Mr. Riccardi's testimony referenced numerous documents that may be responsive to this Request. For example, Mr. Riccardi conducted a data analysis regarding an increased customer cancellation rate during 2020 and testified that analysis involved identifying the drivers of that increased customer cancellation rate. Mr. Riccardi further testified that he had performed data studies and analyses regarding customer retention, regarding how much to charge a customer following the | terms on entire team drive folders, including Growth team and Product team folders. In any event, Plaintiffs have indicated they intend to seek leave to ***far exceed*** the ten-custodian limit, at one point suggesting it will be "fewer than 100 custodians | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | expiration of the trial period, and in response to requests from Noom's customer service team. Mr. Riccardi also testified about the existence of a revenue forecasting model within Amazon Redshift that Noom uses to predict what expected revenue will be from users when they sign up. He also testified about potentially relevant Noom Slack channels, such as the "EX433, 7-day trial" channel and "PX Data" channel, that may relate to the analyses, strategies, testing, and modeling targeted by this request. | | |
| Request No. 24: **Exemplars of the form documents distributed to Class Members**, including without limitation welcome correspondence, emails, enrollment forms, renewal correspondence, renewal notices, and disclosure materials. | This discovery goes to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). Communications to customers clearly bear on both merits discovery and class discovery. | On November 25, 2020, Noom agreed "to conduct a reasonable search for and produce non-privileged and responsive documents that it can collect without undue burden sufficient to show the following form correspondence during the Relevant Period: subscription acknowledgement emails, renewal emails, and marketing emails." Noom further advised | **Noom's Position.** Noom agrees to conduct a reasonable search for and produce non-privileged and responsive documents that it can collect without undue burden sufficient to show the following form correspondence during the Relevant Period: subscription acknowledgement emails, renewal emails, and marketing emails. To the best of Noom's knowledge, it may be unduly | [DISPUTE] **– Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | SAC ¶ 56 describes how "[e]ven though Noom sends potential customers numerous emails offering its free 14-day trial, once customers actually sign up for the trial, Noom does not follow up with any emails containing instructions on how to start the program." SAC ¶ 77 describes how at the end of the trial period, Noom sends consumers who have not been using Noom a message stating that "I won't be checking in anymore" and "feel free to message me whenever you want to pick things up again and we'll get you going"—in other words, that the consumer's business relationship with Noom is coming to an end. Despite this message, Noom then charges these same consumers for a multi-month subscription. Similarly, SAC ¶ 18(b) explains how Noom's "website and app provide no phone number, no fax number, no email address, no mailing address, and no link to customer service" and that "Noom makes it difficult for | Plaintiffs that, "[t]o the best of Noom's knowledge, it may be unduly burdensome to reconstruct all historical versions of all form correspondence during the Relevant Period, but it is continuing to investigate this issue and agrees to meet and confer with Plaintiffs regarding any obstacles that may arise."<br><br>During the parties' October 15 meet and confer, Plaintiffs' counsel advised defense counsel that a materially similar proposed search and production sounded reasonable, but that Plaintiffs would need to understand the entire universe of form correspondence in order to fully evaluate Noom's response. In an attempt to obtain information sufficient to allow them to evaluate Noom's position with respect to this Request, Plaintiffs have requested information about the universe of available documents, *see* Request 24(a), below, and, as of December 3, | burdensome to reconstruct all historical versions of this correspondence during the Relevant Period, but it is continuing to investigate this issue and agrees to meet and confer with Plaintiffs regarding any issues that may arise. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | consumers to cancel their trial membership." Further, a former Noom employee has testified that Noom tested "deferred coaching," in which Noom explored whether a trial customer was more likely or less likely to continue with Noom past the trial period depending on whether Noom assigned a coach earlier or later in the trial. Sept. 30, 2020, Decl. of I. Meyer ¶ 17. SAC ¶ 66 notes the curious fact that consumers receive a "receipt" email from Noom when they sign up for the trial period but that "Noom fails to send a 'receipt' at the time the first (or any subsequent) auto-enrollment fee is charged to the consumer's payment method or to otherwise provide notification or confirmation of the charge." | Noom has not adequately responded. | | |
| Request No. 24(a): **Documents sufficient to show** all Noom's **protocols for distributing form communications to consumers** during the Relevant Period. | *See* RFP No. 24. | *See* RFP No. 24. On November 3, defense counsel advised Plaintiffs' counsel that Noom would provide a proposed narrowing or other response to Request No. 24(a) by November 6. On December 3 in the column | **Noom's Position.** After a thorough investigation, Noom is unable to locate any protocol for determining the timing and types of communications that customers receive during the Relevant Period. | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| As discussed during the October 15 meet and confer Plaintiffs believe it is likely that Noom uses a protocol for determining the timing and types of form communications to distribute to prospective customers, trial period customers, and automatically renewed customers.  Assuming Noom has such a protocol Plaintiffs believe that it will show the types of form communications and documents Noom distributed to Class Members throughout their lifecycle.  As discussed on October 15, Plaintiffs' RFP No. 24 asks for exemplars of all documents within the protocol but recognize that there documents that may not be relevant.  Defendants' proposal regarding RFP No. 24 appears facially reasonable but without knowledge as to the universe of available documents Plaintiffs cannot evaluate Defendants' proposal.  As an alternative, during the October 15 meet and confer Plaintiffs asked defense | | at right, Noom, for the first time and after the parties discussed the issue as early as October 15, informed Plaintiffs that it does not believe such a protocol exists. Plaintiffs therefore renew their alternative request, also made on October 15 and discussed in the first column, that Noom provide a list of the form correspondence used during the relevant period of which it is aware, which list was used to compile the list of form correspondence that Noom is now offering to produce in response to Request No. 24 above. The issue here is simple: Plaintiffs want to know more about the universe of available correspondence because without that knowledge, they cannot evaluate Defendants' proposal with respect to Request No. 24. | Plaintiffs have never provided any explanation for their belief that such a protocol exists. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| counsel if it could describe the universe of available documents but counsel acknowledged that it had not discussed this issue with its client. | | | | |
| Request No. 25: **Exemplars of all Noom customer service or human coach training materials or scripts**, including training materials or scripts in video or audio form, **used** by Noom **to implement or carry out the conduct that is the Subject Matter of this Litigation**.<br><br>Or, instead of "the conduct that is the Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, Noom's trial period cancellation practices or procedures, Noom's customer refund practices or procedures, and/or Noom's practices or procedures for responding to customer complaints. | The materials sought by this Request are expected to demonstrate Defendants' knowledge that consumers were confused by Defendants' conduct that is the subject matter of this litigation. SAC ¶¶ 78–105 detail the thousands of online complaints of consumers being tricked into becoming full-fledged Noom subscribers, Noom's public customer service admissions that consumers were being deceived by the conduct that is the subject matter of this litigation, how Noom meticulously tracks customer metrics including cancellation and complaint rates, credit card companies' threat to stop processing Noom's transactions because of the extraordinarily high chargeback volume, Noom's history of improperly using autoenrollment to ensnare | On November 25, 2020, Noom agreed to "locate and produce, to the extent reasonably available: (1) "Macros" used by the Customer Service Team that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching; (2) all Customer Service training materials that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching; (3) training materials for the Coaching Team that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching; and (4) a representative sample of coach communications with users that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching."<br><br>During a November 30, 2020 meet and confer, defense counsel | **<u>Noom's Position.</u>** Noom agrees to locate and produce, to the extent reasonably available: (1) "Macros" used by the Customer Service Team that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching; (2) all Customer Service training materials that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching; (3) training materials for the Coaching Team that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching; and (4) a representative sample of coach communications with users that relate to Noom's autorenewal policy, refunds, cancellations, and alleged bot coaching.<br><br>**Vastly Overbroad and Compound.** | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | consumers, and Noom's knowledge of consumers being inadvertently enrolled multiple times in the same plan. Considering these allegations, it is highly likely that Noom's customer service and human coach training materials demonstrate Noom's knowledge of consumer deception as well as their strategies for appeasing Noom's many irate customers.<br><br>In addition to merits discovery, this discovery also goes to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). | represented that Noom does not maintain customer service or human coaching "scripts" and the above-referenced training materials and "macros" are the documents in its possession that are most like the scripts requested by Plaintiffs. After subsequent review of Noom's fourth document production made on the night of November 30, Plaintiffs have additional questions about the existence of scripts and other training materials and cannot now agree to Noom's proposal without further opportunity to meet and confer and obtain clarification from Noom. | This RFP reflects four separate categories of documents: (1) customer service training materials; (2) coaching training materials; (3) customer service scripts; and (4) coaching scripts.<br><br>It separately also includes either 12 or 4 subparts, as it pertains to the referenced conduct.<br><br>**Irrelevant Information.** This request again sweeps in vast amounts of irrelevant information, including all training materials and scripts for responding to *any* customer complaints related to its subscription, even those wholly unrelated to the lawsuit. If a customer emailed to complain about her coach, that would be included in this Request. | |
| Request No. 27: All **documents** and **communications containing** and/or referencing any **forecasts, projections, or analyses of the number or percentage of trial period customers that were or were projected to be accessing** | Documents and communications analyzing the number of trial period customers that accessed or used Noom's services during and after the trial period will demonstrate Noom's knowledge of consumers using Noom's | On November 25, 2020, Noom agreed "to meet and confer with Plaintiffs regarding the categories of usage data that are appropriate for production in this matter." This response, however, provides Plaintiffs with, at most, a tiny | **Noom's position:** Noom agrees to meet and confer with Plaintiffs regarding the categories of usage data that are appropriate for production in this matter. | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| **or utilizing Noom's weight-loss services** (i) during and (ii) after the trial period. | services both during and after the trial period. SAC ¶¶ 15(c), (f), 57–58, 67–68, 85(d) detail how the conduct that is the subject matter of this litigation results in consumers not knowing how to access Noom's services. Further, SAC ¶ 90 explains that Noom had metrics to demonstrate that it "was charging customers who had not accessed or may not have even installed the Noom app." Accordingly, the discovery sought by this Request may be relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this Request may also be relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | portion of the information called for by this Request.<br><br>Plaintiffs understand Noom's principal objection to this Request to be that it views a request for "all documents and communications" as too broad. However, given the parties' agreement to limit the collection to certain custodians and locations, and to employ search terms, the documents Noom would need to produce in order to fulfill the Request would be significantly less than "all" responsive documents or communications that exist at the company. Under Noom's view, Plaintiffs would apparently be foreclosed from receiving emails or Slack channel discussions about forecasts, projections, or analyses of the number or percentage of trial period customers that were or were projected to be accessing or utilizing Noom's weight-loss services (i) during and (ii) after the trial period. | **Vastly Overbroad and Unduly Burdensome.** This Request asks for all documents and communications regarding retention/usage would again, encompass hundreds of thousands of documents and communications—many of which are totally irrelevant to this case. Noom conducts more than a thousand of experiments per year, virtually all of which examine usage and retention (i.e., whether users are retained after the trial period). The majority of these documents would have limited relevance to the case. This Request would encompass, for example, any experiment that tested any new product feature and measured usage before and after the trial, and all documents and communications regarding the same.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's internal analysis, projections and forecasts regarding customer | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | Noom also objects to producing responsive forecasts, projections, or analyses because of its view that this Request calls for experiments related in any way to retention. However, Plaintiffs only seek responsive documents concerning usage or access during the trial period and at or around the time the trial period converts into an auto-renewing subscription. Such discovery is clearly germane to Plaintiffs' core allegations in the SAC—that users who do not use or want Noom's services are nonetheless charged for a multi-month subscription.<br><br>Indeed, Mr. Riccardi testified during his November 18 deposition that one of the many goals Noom looks at is how many individuals complete their trial and become full-fledged members. Mr. Riccardi testified that he has conducted numerous related experiments. Plaintiffs have requested that documents | usage is not relevant or proportional to any issues to be decided on class certification – it is solely related to Noom's intent. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence.<br><br>**Custodian limitation:** Plaintiffs' claim that this Request will be limited because of custodians and search terms selected by the Parties is not accurate as Noom is collecting a massive volume of data and information. Noom has already agreed to collect and run search terms on entire team drive folders, including Growth team, Customer Service, and Product team folders. In any event, Plaintiffs have indicated they intend to seek leave to ***far exceed*** the ten-custodian limit, at one | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | regarding such experiments be produced, as at least some of those documents would be responsive to this Request. Mr. Riccardi's testimony makes clear that, notwithstanding Noom's objections, responsive documents exist in Noom's possession and such documents are relevant.<br><br>On November 3, 2020, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." | point suggesting it will be "fewer than 100 custodians. | |
| Request No. 28: **All documents and communications related to the selection of the particular dollar amount to be used for trial subscription and/or subscription renewal amounts**, including: (i) the reason for the particular trial subscription and/or subscription renewal amount; (ii) the purpose of selecting the particular amount of the trial subscription and/or subscription renewal cost; and (iii) analyses and/or projections of the number of customers who | SAC ¶ 93 alleges that in "2018, Noom co-founder and President Defendant Artem Petakov informed Noom employees during a Company meeting that Noom had received notice from its payment processor that because its chargeback rate for its auto-enrollment charges had been unacceptably high for a prolonged period of time, it was jeopardizing Noom's ability to stay with the payment processor and continue to accept credit cards because credit card | Noom has been unwilling to specifically search for and produce documents related to the selection of the particular dollar amount to be used for trial subscription and/or subscription renewal amounts. While Plaintiffs' counsel has explained the relevance of this Request, Noom has been repeatedly unwilling to propose any narrowing to this Request.<br><br>Mr. Riccardi testified that he has run experiments or participated in | **Noom's position:** Plaintiffs' Second Amended RFP No. 28 is still non-compliant with Rules 26 and 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Overbroad/Compound.** Noom has conducted hundreds and potentially thousands of experiments testing pricing of trial subscriptions and full subscriptions—the results of those experiments and all communications regarding the | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| would initiate a trial subscription and/or renew their Noom subscription. | companies had placed Noom on final notice." Defendant Petakov then "announced that his team had come up with a 'solution' to this problem: by charging a small-dollar amount for the previously free trial, Noom would effectively double the number of transactions processed for each auto-enrollment, which would appear to cut the chargeback rate in half." Similarly, SAC ¶ 14 describes how "Noom tells consumers 'money shouldn't stand in the way of finding a plan that finally works' and offers its weight-loss trial at either 'zero cost' or via a simulated donation that allows consumers to 'pick what you think is fair' amongst amounts ranging from less than $1 to $18.37, because "[i]t costs us just over $18 to provide each trial . . . ." For consumers who start enrolling in the trial period but do not complete it, SAC ¶ 55 explains how consumers Noom then 'waives' the initial charge. | experiments regarding how much to charge a customer following the trial period and Plaintiffs requested that those documents be produced, which would be responsive to this Request.<br><br>Noom has asserted different objections to this Request at different times, but most recently, on November 3, Noom characterized the Request as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence," again failing to propose any limitation or narrowing. At that time, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." | same would encompass potentially hundreds of thousands of documents and are not be relevant or proportional to the needs of the case.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's internal decision-making regarding pricing is not relevant to any of the issues to be decided on class certification. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | Regarding the cost of the full subscription, SAC ¶ 2 makes clear that following the trial period, Noom imposes "lumpsum charges for its entire program, extracting up to eight months of non-refundable advance payments right after the supposedly "risk-free" trial . . . ."<br><br>Further, on November 6, 2020, Noom produced "the design document that first discussed" the product and autorenewal practices that are challenged by this lawsuit. This document showed that charging a higher monthly rate did not meaningfully effect the percentage of consumers that were automatically converted from trial to full subscriptions, and that Noom's profitability hinged on the percentage of customers that auto-renewed.<br><br>The evidence sought by this Request is thus relevant to commonality, typicality, and predominance of Plaintiffs' fraud | | | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this discovery is also germane to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | | | |
| Request No. 29: **Documents sufficient to show** all of Noom's **policies and procedures** for how to handle **customer complaints**. | SAC ¶¶ 78–105 detail the thousands of online complaints of consumers who were tricked into becoming full-fledged Noom subscribers, Noom's public customer service admissions that consumers are being deceived by the conduct that is the subject matter of this litigation, how Noom meticulously tracks customer metrics including cancellation and complaint rates, and Noom's knowledge of consumers being inadvertently enrolled multiple times in the same plan.<br><br>These materials are expected to demonstrate Defendants' knowledge of consumers being confused by the conduct that is | On November 25, 2020, Noom agreed to "to locate and produce, to the extent reasonably available: (1) all Customer Service training materials that relate to autorenewal, refunds, cancellations, and alleged bot coaching; (2) all knowledge articles that relate to autorenewal, refunds, cancellations, and alleged bot coaching that serve as a resource for Customer Service representatives; and (3) "Macros" used by the Customer Service Team that relate to autorenewal, refunds, cancellations, and alleged bot coaching."<br><br>During a November 30, 2020 meet and confer, defense counsel represented that Noom's training | **Noom's Position.** Noom agrees to locate and produce, to the extent reasonably available: (1) all Customer Service training materials that relate to autorenewal, refunds, cancellations, and alleged bot coaching; (2) all knowledge articles that relate to autorenewal, refunds, cancellations, and alleged bot coaching that serve as a resource for Customer Service representatives; and (3) "Macros" used by the Customer Service Team that relate to autorenewal, refunds, cancellations, and alleged bot coaching.<br><br>**Overbroad and Vague.** This request would again sweep in large amounts of irrelevant | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | the subject matter of this litigation.  Such evidence is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X).  This evidence is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | materials are the equivalent of policies and procedures and that the documents it intends to produce are the sum-total of policy and procedure documents addressing the topics enumerated in its proposal and that therefore no separate policy and procedure documents exist.  Based on these representations, Plaintiffs have no objection to Noom's proposal.<br><br>Previously, in the parties' November 5, 2020 joint letter to the Court, Noom had indicated that it would be willing to produce Noom's "internal policies regarding . . . refunds[ and] cancellations[.]"  Plaintiffs assume that the "internal policies" that Noom referenced on November 5 are the Customer Service training materials they are now agreeing to produce and that there are no other "internal policies regarding . . . refunds[ and] cancellations" in addition to what Noom is now saying it will produce in response to this Request. | information, in that it seeks all policies and procedures regarding complaints, regardless of whether those complaints pertain to autorenewals, refunds, cancellations and alleged bot coaching. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | | |
| Request No. 31: **All documents and communications related to Noom consumers' complaints pertaining to the Subject Matter of this Litigation**. Please note that this request includes, but is not limited to, documents concerning: (a) internal correspondence regarding customer complaint rates; (b) escalations of customer complaints regarding any of the identified topics; (c) customer complaints regarding any of the identified topics that reached Defendant's founders and/or executive leadership; (d) analyses, studies, and/or reports of customer service data pertaining to customer complaints; or (e) reactions of Noom customer service employees to the volume, frequency, substance, and/or tone of customer complaints regarding any of the identified topics. Excluded from this Request are customer complaints themselves, | *See* RFP No. 29. | In the parties' November 5 joint letter to the Court, Noom indicated that it would be willing to produce a "representative sampling of customer complaints[.]" However, this category of documents is responsive to Request No. 30 and is specifically excluded from Request No. 31.<br><br>While Noom has asserted various generalized objections at different times, Noom's principal objection appears to be that "Subject Matter of this Litigation" references seven discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. Noom also objected on November 3 that this Request is "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence." Noom | **Noom's position:** Plaintiffs' Second Amended RFP No. 31 is still non-compliant with Rules 26 and 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Vastly Overbroad, Compound and Unduly Burdensome.** This RFP contains ***60 subparts***, in that it requests five non-exhaustive categories of documents, each in turn encompassing 12 categories of information. This RFP would require Noom to collect and search millions of documents to identify and produce individual employees "reactions" to customer complaints.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Plaintiffs cannot show that individual employees' thoughts or impressions are relevant to the issues to be resolved on class certification. These categories of | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| which are addressed in the prior Request.<br><br>Or, instead of "the Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, canceling their auto-enrollment or trial subscriptions, customer refund requests, the pricing of Noom's subscriptions and trial subscriptions, charging for several months of services with a multi-month lump sum charge, utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | | admitted that the Request pertained to "Noom's intent and Plaintiffs' claims for punitive damages." However, it did not propose any narrowing of this Request beyond identifying on November 5 the sampling it was willing to produce. | information are solely related to intent. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence. such broad-intent related evidence. | |
| <u>Request No. 32</u>: All documents and communications related to Noom's customer satisfaction metrics, including but not limited to Noom's Net Promoter Score, its Better Business Bureau rating, and its Trust Pilot score. | SAC ¶ 91 alleges that "[w]hen asked about the Company's low [Net Promoter Score], Noom management told employees not to work on improving it because the Company was focusing on acquiring more users instead." | Plaintiffs had previously understood Noom's principal objection to this Request to be relevance; based on the parties' October 21 meet-and-confer, Plaintiffs understood Noom to have agreed to propose a narrowing. However, on | <u>**Noom's position**</u>: Noom is continuing to investigate the feasibility of providing a response to Plaintiffs' oral request for Noom's ***internal*** "customer satisfaction metrics," made for the first time (among 26 other requests) at the November | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | Trust Pilot is a consumer review platform.<br><br>These materials are expected to demonstrate Defendants' knowledge of consumers being confused by the conduct that is the subject matter of this litigation.  Such evidence is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X).  This evidence is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | November 3, defense counsel did not include this Request in the list of requests for which it promised a proposed narrowing or other response; nor was it included in the list of Requests that, despite Plaintiffs' revisions, defense counsel continued to find "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence."  Rather, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages."  Plaintiffs are thus uncertain whether Noom continues to object to this Request or whether it is now willing to produce documents in response.<br><br>During the November 18, 2020 deposition of Noom data scientist John Riccardi, Mr. Riccardi referenced code in "Looker" that Noom employees "write . . . to define . . . how metrics should be calculated."  This code may relate to Noom's customer | 18 deposition of John Riccardi. Noom submits that "All documents and communications" related to Noom's *public* customer satisfaction metrics, as called by this Request, is not relevant or proportional.<br><br>**Vastly overbroad and unduly burdensome.**  This request would again sweep in large amounts of irrelevant information, in that it seeks all documents concerning any ***public*** customer satisfaction ratings metrics over a three-year period, regardless of whether those metrics were generated internally or related to autorenewal, refunds, cancellations or alleged bot coaching.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Plaintiffs cannot show that "all documents and communications" regarding public and internal customer satisfaction metrics are relevant to the issues to be resolved on | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | satisfaction metrics and the determinations of such metrics. Mr. Riccardi also testified as to the existence of "customer satisfaction score" data contained in Amazon Redshift, which may be responsive to this Request. Plaintiffs called for the production of the code and customer satisfaction score data during the deposition. As of December 3, 2020, Defendants have indicated only that they were investigating whether they would provide "a response" on its willingness to produce "***internal*** 'customer satisfaction metrics,'" pursuant to this Request. (Emphasis in original). | class certification. These categories of information are solely related to intent. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence. | |
| Request No. 33: All **documents** and **communications** regarding the **Better Business Bureau's August 19, 2020 warning about Noom**.[2] | SAC ¶ 3 describes how on August 19 the Better Business Bureau issued a nationwide warning that "customers have submitted well over a thousand complaints alleging that the | Plaintiffs had previously understood Noom's principal objections to this Request to be relevance and proportionality. After discussing this Request during the parties' October 21 | **Noom's position:** Plaintiffs' Second Amended RFP No. 33 is not relevant or proportional and the Court should not compel a response to it. | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

[2] BBB Warning: Consumers Lose More than Weight with Popular Noom Health App (Aug. 19, 2020), https://www.bbb.org/article/news-releases/22930-bbb-warning-consumers-lose-more-than-weight-with-popular-noom-health-app (last visited Dec. 3, 2020).

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | company offers misleading free trials, and that subscriptions are difficult to cancel." The BBB's warning explains that "consumers reportedly try to cancel the trial offer before it ends but still end up being billed for the subscription" and that Noom refuses to "to address the underlying cause" of customers' complaints. *Id.*<br><br>Non-privileged documents and communications regarding the BBB's warning will likely show that Defendants knew that their conduct was deceptive and will show Noom employees' reflections on the propriety of the conduct that is the subject matter of this litigation. The record demonstrates that at least one of Defendants' former employees witnessed acts of intentional consumer deception. The discovery sought by this Request is thus relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), | meet and confer, Plaintiffs understood Noom to have agreed to propose a substantive response and any proposed limitations. However, on November 3, defense counsel did not include this Request in the list of requests for which it promised a proposed narrowing or other response; nor was it included in the list of Requests that, despite Plaintiffs' revisions, defense counsel continued to find "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence." Rather, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." Plaintiffs are thus uncertain whether Noom continues to object to this Request or whether it is now willing to produce documents in response. | **Not relevant or proportional, calls for ACP/AWP**. This request is not relevant or proportional in that the Better Business Bureau's communication to Noom was issued after the lawsuit was filed and the request is unduly burdensome because many of the documents this request seeks will be privileged or protected by the attorney work-product privilege.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Plaintiffs cannot show that "All" of Noom's internal communications about the Better Business Bureau warning are relevant to the issues to be resolved on class certification, they are solely related to Noom's intent. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | conversion (Count XIII), and state consumer protection claims (Counts I, III–X). This evidence is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | | view that they are entitled to such broad-intent related evidence. | |
| Request No. 34: All **documents and communications** regarding **the August 19, 2020 message from Noom CEO Saeju Jeong**.[3] | On the same day as the BBB's warning described immediately above, Noom's CEO issued a message "to directly address some of the recent attention around our cancellation and refund experience." This message contains the following relevant statements:<br><br>(1) Noom is "significantly expanding the size of our customer support team and expanding the number of support channels where customers can reach us."<br><br>(2) It's okay if you decide Noom no longer works for you. We | Plaintiffs had previously understood Noom's principal objections to this Request to be relevance and proportionality. After discussing the Request during the parties' October 21 meet and confer, Plaintiffs understood Noom to have agreed to propose a narrowing. However, on November 3, defense counsel did not include this Request in the list of requests for which it promised a proposed narrowing or other response; nor was it included in the list of Requests that, despite Plaintiffs' revisions, Noom said it found "overbroad, unduly burdensome, not sufficiently particularized and | **Noom's position:** Plaintiffs' Second Amended RFP No. 34 is not relevant or proportional and the Court should not compel a response to it.<br><br>**Not relevant or proportional, calls for ACP/AWP**. This request is not relevant or proportional in that Seaju Jeong's message was authored after the lawsuit was filed and the request is unduly burdensome because many of the documents this request seeks will be privileged or protected by the attorney work-product privilege. | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

[3] https://web.noom.com/in-the-news/2020/08/a-message-from-ceo-saeju-jeong/#:~:text=I%20am%20inspired%20both%20by,That%20is%20who%20we%20are (last visited Dec. 3, 2020).

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | understand that things happen—maybe you forgot to cancel in time, or even realized that Noom is not for you a few days late. That's okay.<br><br>The message also links to Noom's refund policy which states "[u]ninstalling the app doesn't automatically cancel your subscription — you'll still get charged. So please let your Coach (Goal Specialist) know that you'd like to cancel before deleting the Noom app."<br><br>This discovery is relevant and proportional for the same reasons as RFP No. 33. | not reasonably calculated to lead to admissible evidence." Rather, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." Plaintiffs are thus uncertain whether Noom continues to object to this Request or whether it is now willing to produce documents in response. | **Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Plaintiffs cannot show that Noom's internal communications about the Better Business Bureau communication or Saeju Jeong's communication are relevant to the issues to be resolved on class certification, they are solely related to intent. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence. | |
| Request No. 36: **Documents sufficient to show Noom's policies and procedures regarding cancellations or refunds** requested by customers who were charged as a result of Noom's automatic renewal practices, including: (i) handling requests for cancellations and/or refunds; and (ii) scripts or other outlines to follow when | SAC ¶¶ 78–105 detail the thousands of online complaints of consumers being tricked into becoming full-fledged Noom subscribers, Noom's public customer service admissions that consumers were deceived by the conduct that is the subject matter of this litigation, how Noom meticulously tracks customer metrics including cancellation | On November 25, Noom agreed "to locate and produce, to the extent reasonably available: (1) all Customer Service training materials that relate to autorenewal, refunds, and cancellations; (2) all knowledge articles that relate to autorenewal, refunds, and cancellations that serve as a resource for Customer Service representatives; and (3) | **Noom's position:** Second Amended RFP No. 36 is duplicative of RFPs 11, 25 and 29<br><br>Noom agrees to locate and produce, to the extent reasonably available: (1) all Customer Service training materials that relate to autorenewal, refunds, and cancellations; (2) all | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| responding to requests for cancellations and/or refunds; and (iii) whether and why any cancellation requests would be handled by customer service representatives or through an automated process. | and complaint rates, and Noom's knowledge of consumers being inadvertently enrolled multiple times in the same plan.<br><br>Materials responsive to this Request are relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). This evidence is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | 'Macros' used by the Customer Service Team that relate to autorenewal, refunds, and cancellations." Noom further agreed "to produce documents sufficient to describe the development and use of system-generated messages used in the renewal and cancellation process." On November 30, Noom added "refund" to the foregoing sentence based on Plaintiffs' request, such that it now agrees "to produce documents sufficient to describe the development and use of system-generated messages used in the renewal, **refund**, and cancellation process."<br><br>During a November 30, 2020 meet and confer, defense counsel represented that Noom's training materials are the equivalent of policies and procedures and that the documents it intends to produce are the sum-total of policy and procedure documents addressing the topics enumerated in its proposal and that therefore | knowledge articles that relate to autorenewal, refunds, and cancellations that serve as a resource for Customer Service representatives; and (3) "Macros" used by the Customer Service Team that relate to autorenewal, refunds, and cancellations. Noom further agrees to produce documents sufficient to describe the development and use of system-generated messages used in the renewal, refund and cancellation process. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | no separate policy and procedure documents exist. Noom further represented that the training materials contain Noom's criteria for issuing a refund. After subsequent review of Noom's fourth document production made on the night of November 30, Plaintiffs have additional questions about the existence of scripts and other training materials and cannot now agree to Noom's proposal without further opportunity to meet and confer and obtain clarification from Noom. | | |
| Request No. 37: **Documents sufficient to show Noom's policies and procedures regarding how a customer could access Noom's services**, including: (i) handling requests for information about accessing Noom's services; (ii) scripts or other outlines to follow when responding to requests for assistance accessing Noom's services; and (iii) customer complaints regarding inability to access Noom's services. | SAC ¶¶ 15(c), (f), 57–58, 67–68, 85(d) detail how the conduct that is the subject matter of this litigation results in consumers not knowing how to access Noom's services. Further, SAC ¶ 90 explains that Noom had metrics to demonstrate that it "was charging customers who had not accessed or may not have even installed the Noom app." Accordingly, the discovery sought by this request may be relevant to commonality, | On November 25, Noom agreed "to locate and produce, to the extent reasonably available: (1) all Customer Service training materials that relate to difficulty accessing Noom's program through the mobile application; (2) all knowledge articles that relate to difficulty accessing Noom's program through the mobile application; and (3) 'Macros' used by the Customer Service Team that relate to difficulty accessing Noom's | **Noom's position:** Noom agrees to locate and produce, to the extent reasonably available: (1) all Customer Service training materials that relate to difficulty accessing Noom's program through the mobile application; (2) all knowledge articles that relate to difficulty accessing Noom's program through the mobile application; and (3) "Macros" used by the Customer Service Team that relate to difficulty accessing Noom's | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this discovery may also be relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | program through the mobile application."<br><br>During the parties' November 30, 2020 meet and confer, Defendants represented that they would interpret "difficulty accessing" to include inquiries about accessing Noom's services via the Noom app and about accessing Noom's services via Noom's website. Based on this representation, Plaintiffs have no objection to Noom's proposal. | program through the mobile application.<br>**Irrelevant.** This document request is another a fishing expedition that is not relevant or proportional to the needs of the case, as not a single plaintiff alleges they were confused about how to access Noom's services. | |
| Request No. 38: **All documents and communications related to Noom's review of, consideration of, and/or analysis of the percentage or number of automatic renewal customers who never utilized any of Noom's services** (i) before, and/or (ii) after the expiration of the trial period. | Documents and communications analyzing the number of automatic renewal customers that never used Noom's services during and after the trial period will demonstrate Noom's knowledge of consumers not using Noom's services both during and after the trial period. SAC ¶¶ 15(c), (f), 57–58, 67–68, 85(d) detail how the conduct that is the subject matter of this litigation results in consumers not knowing how to access Noom's services. Further, SAC ¶ 90 | In an October 23 meet and confer, defense counsel advised Plaintiffs' counsel that they had a better understanding of the Request based on discussions of other Requests that occurred during the call. Defense counsel advised Plaintiffs' counsel that they would review the Request internally and get back to Plaintiffs. However, on November 3, Noom characterized the Request as "overbroad, unduly burdensome, not sufficiently particularized and not | **Noom's position:** Noom agrees to meet and confer with Plaintiffs regarding the categories of usage data that are appropriate for production in this matter.<br><br>**Vastly overbroad and not proportional.** This Request for all documents and communications regarding lack of usage before and after the trial period, and would again, encompass hundreds of thousands of documents and communications—many of | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | explains that Noom had metrics to demonstrate that it "was charging customers who had not accessed or may not have even installed the Noom app." Accordingly, the discovery sought by this request may be relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this discovery may also be relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | reasonably calculated to lead to admissible evidence," and failed to propose any limitation or narrowing. At that time, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages."<br><br>Noom's clarification of its position and its offer to meet and confer, provided to Plaintiffs on December 3, 2020 in the column at right, are insufficient to resolve the parties' dispute. While Noom admits that usage data is germane and discoverable, it continues to refuse to provide documents and communications about this data. | which are totally irrelevant to this case. Noom conducts over a thousand experiments per year, virtually all of which examine usage in some fashion. The majority of these documents would have limited relevance to the case. This Request would encompass, for example, any experiment that tested any new product feature and measured lack of usage before and after the trial, and all documents and communications regarding the same.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's internal analysis, projections and forecasts regarding customer usage is solely related to intent and not relevant or proportional to any issues to be decided on class certification. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence. | |
| Request No. 39: **All documents and communications related** to Noom's **tracking of the "One Metric That Matters"** as it pertains to Noom's periodic automatic renewal policy. | The One Metric That Matters ("OMTM") tracks each time a customer has a meaningful interaction with Noom's app, such as logging a meal or messaging the coach. This discovery is expected to demonstrate Defendants' knowledge of consumers being confused by the conduct that is the subject matter of this litigation. Such evidence is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). This evidence is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | Plaintiffs had previously understood Noom's principal objections to this Request to be relevance and proportionality. However, on November 3, defense counsel did not include this Request in the list of Requests that, despite Plaintiffs' revisions, defense counsel continued to find "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence[;]" nor did defense counsel include this request in the list of requests for which it promised a proposed narrowing or other response. Rather, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." Plaintiffs are thus uncertain whether Noom continues to object to this Request or whether it is now | **Noom's position:** Noom agrees to meet and confer with Plaintiffs regarding the categories of usage data that are appropriate for production in this matter.<br><br>**Vastly overbroad and not proportional**. This Request for all documents and communications regarding the OMTM would again, encompass hundreds of thousands of documents and communications—many of which are totally irrelevant to this case. Noom conducts over a thousand experiments per year, many of which examine the OMTM. The majority of these documents would have limited relevance to the case. This Request would encompass, for example, any experiment that tested any new product feature related to automatic renewals and | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | willing to produce documents in response to it.<br><br>Additionally, during the November 18, 2020 deposition of Noom data scientist John Riccardi, Mr. Riccardi referenced code "[i]n Looker" that Noom employees "write . . . to define . . . how metrics should be calculated."  This code may relate to Noom's tracking of the OMTM.  Plaintiffs called for the production of that code during the deposition.  As of December 3, 2020, Defendants have not provided a position one way or the other whether they are willing to produce the code pursuant to this Request.  Separately, Mr. Riccardi was asked about a Slack channel he belonged to entitled "omtm."  While he could not recall anything about the Slack channel, Plaintiffs requested production of that Slack channel in accordance with this Request.<br><br>Noom's clarification of its position provided to Plaintiffs on | measured the OMTM in response, and all documents and communications regarding the same.  Noom's "periodic automatic renewal policy" is its flagship product and not any kind of limitation on this Request.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's internal analysis, projections and forecasts regarding customer usage is solely related to intent and is not relevant or proportional to any issues to be decided on class certification.<br><br>**Plaintiffs' oral document request for source code is improper.**  Plaintiffs have not remotely demonstrated the relevance of source code, other than their highly speculative inference that it "may relate to Noom's tracking of OMTM."  As Noom has already explained to Plaintiffs, their request is contrary to well-settled authority that source code is only to be | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
| --- | --- | --- | --- | --- |
| | | December 3, 2020 is insufficient to resolve the parties' dispute. While Noom admits that usage data is germane and discoverable, it continues to refuse to provide documents and communications about the OMTM. | produced absent some showing that the evidence is not available in another form. *See Viacom Int'l, Inc. v. Youtube Inc.*, 253 F.R.D 256, 260-261 (S.D.N.Y. 2008) (denying motion to compel production of source code, even where protective order existed, because the protective order was "nevertheless not as safe as nondisclosure" and "there [was] no reason to rely on [it] without a preliminary proper showing justifying the production" of the source code); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-02965, at *4 (N.D. Cal. Mar. 16, 2015) (denying motion to compel source code where it "would be duplicative of discovery" the plaintiff already possessed and the risk to defendant "resulting from the exposure of its valuable proprietary information [was] significant"); *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12-mc-193, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013) (denying motion to compel production of source code noting | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | that it is "the most sensitive and confidential property of" the respondent and "extreme measures are ordered to protect their confidentiality); *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) ("[I]t is well recognized among lower courts that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property"); | |
| Request No. 40: **All documents and communications** related to Noom's **review of, consideration of, or analyses of the "open ping rate"** as it pertains to Noom's periodic automatic renewal policy. | SAC ¶ 90 explains that Noom tracks the "open ping rate," which revealed, on a daily basis, whether each customer has opened their Noom app. This metric demonstrates that Noom "was charging customers who had not accessed or may not have even installed the Noom app." *Id.*<br><br>The discovery sought by this request is germane for the same reasons as discussed in RFP No. 39. | Plaintiffs had previously understood Noom's principal objections to this Request to be relevance and proportionality. However, on November 3, defense counsel did not include this Request in the list of Requests that defense counsel identified as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence[;]" nor did defense counsel include this Request in the list of requests for which it | **Noom's position:** Noom agrees to meet and confer with Plaintiffs regarding the categories of usage data that are appropriate for production in this matter.<br><br>**This Request is Nonsensical**. Based on its internal investigations, "open ping rate" is not a metric or indicator of any business-level decision and is not a term that Noom employees were generally familiar with. | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | promised a proposed narrowing or other response. Rather, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." Plaintiffs are thus uncertain whether Noom continues to object to this Request or whether it is now willing to produce documents in response to it.<br><br>Additionally, during the November 18, 2020 deposition of Noom data scientist John Riccardi, Mr. Riccardi referenced code "[i]n Looker" that Noom employees "write . . . to define . . . how metrics should be calculated." This code may relate to Noom's review of the open ping rate. Plaintiffs called for the production of that code during the deposition. As of December 3, 2020, Defendants have not provided a position one way or the other whether they are willing to produce the code pursuant to this Request. | **Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's internal analysis, projections and forecasts regarding customer usage is solely related to intent, and is not relevant or proportional to any issues to be decided on class certification. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | Noom's clarification of its position provided to Plaintiffs on December 3, 2020 is insufficient to resolve the parties' dispute. While Noom admits that usage data is germane and discoverable, it continues to refuse to provide documents and communications about the "open ping rate." | | |
| Request No. 41: **All documents and communications** related to Noom's **review of, consideration of, and/or analysis of the percentage or number of customers who were charged for Noom's services that were not periodically automatically enrolled**, but were instead required by Noom to affirmatively request enrollment following expiration of the trial period. | The conduct challenged in this litigation results in trial period customers becoming full-fledged customers against their wishes. Documents and communications analyzing the conversion rate of trial period customers who were *not* automatically enrolled but were instead required to affirmatively request enrollment are expected to demonstrate Noom's awareness of the fact that without autorenewal, far fewer trial period consumers would have become full-fledged subscribers. For example, on November 6, 2020, Noom produced "the design document that first discussed" the product and autorenewal practices that are challenged by this lawsuit. | During the parties' October 23, 2020 meet and confer, while Plaintiffs' counsel proposed modifications to the Request that would reflect information that Noom had provided about the initiation of periodic automatic renewal model, defense counsel continued to object to the narrowed Request on the grounds that the Request supposedly pertains to tertiary issues. On November 3, 2020, Noom objected that the Request is "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence," failing to provide a proposed limitation. Noom also acknowledged that the Request pertains to "Noom's | **Noom's position**: This RFP is nonsensical, not relevant or proportional to the needs of the case, and not related to any claims or defenses in this action.<br><br>**Vague/Nonsensical.** Based on its investigations, Noom is not presently aware of any version of the Program in which a user was "required by Noom to affirmatively request enrollment."<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** "Review, consideration of, and/or analysis of the percentage of customers who were charged" for Noom's program who had to affirmatively | [DISPUTE] **– Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | This document demonstrates that Noom knew from the get-go that its profitability hinged on the percentage of customers that auto-renewed.<br><br>The evidence sought by this discovery is therefore relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this discovery is also germane to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | intent and Plaintiffs' claims for punitive damages." | request enrollment is not relevant to any issues to be litigated at class certification[.]" At most, it is tangentially relevant to Noom's intent in implementing autorenewal, but that issue will not be litigated on class certification. In any event, Noom has already committed to produce documents regarding the development of its autorenewal program (RFP 43.) | |
| Request No. 42: All **documents constituting or otherwise concerning marketing studies or analyses, consumer studies or analyses, or focus group studies or analyses** conducted by or at the direction of Noom or otherwise reviewed or considered by Noom **regarding the Subject Matter of this Litigation.** | Plaintiffs expect that marketing or consumer studies that Noom conducted or otherwise considered regarding the subject matter of this litigation will support Plaintiffs' claim that Noom's automatic renewal practices "exploit[] a series of well-known biases that influence consumer decision-making" and have "a common and predictable | During the parties' October 23 and 29, 2020 meet and confers, defense counsel objected that the Request would somehow capture *any* marketing ever conducted by Noom during the Relevant Period notwithstanding the fact that the Request is limited to studies or analyses regarding the Subject Matter of this Litigation. Defense counsel also | **Noom's position:** Plaintiffs' Second Amended RFP No. 42, ***which is 116 words long***, is still non-compliant with Rules 26 and 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| Or, instead of "Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, how users can cancel their auto-enrollment or trial subscriptions, requests from Noom consumers for refunds owing to unintended autorenewal including complaints about not receiving refunds, the pricing of Noom's subscriptions and trial subscriptions, charging for several months of services with a multi-month lump sum charge, utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | outcome" of "entangling consumers into unintended purchases of Noom's weight-loss service." SAC ¶ 13.<br><br>The evidence sought by this discovery is therefore relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this discovery is also germane to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | hypothesized that a study might exist as to whether consumers respond better to an ad that says "Noom" versus "Noom, Inc." and that such a hypothetical example may be responsive to the Request but not relevant. However, defense counsel's Noom/Noom, Inc. hypothetical example would not be responsive to the Request as drafted because that would not be an analysis or study regarding the Subject Matter of this Litigation, as defined at left. Noom did not present Plaintiffs with any actual examples of irrelevant documents that would be captured by this Request.<br><br>Additionally, on November 3, 2020, Noom objected that the Request is "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence," failing to provide a proposed limitation. Noom also acknowledged that the Request pertains to "Noom's intent and | that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized category of information pursuant to Rule 34(b).<br><br>Plaintiffs' alternative proposal—which contains still contains 10 categories of information—is still vastly overbroad and equates to 10 separate RFPs, which are each themselves overbroad, unduly burdensome, irrelevant, and not proportional.<br><br>**Irrelevant and not proportional.** Plaintiffs do not identify a single advertisement that they claim was false or misleading and not a single plaintiff alleges they were misled by a specific advertisement. Additionally, this request would sweep in vast amounts of irrelevant information, including all marketing/consumer/focus group studies regarding any aspect of Noom's program, such as, for example, whether users | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | Plaintiffs' claims for punitive damages."<br><br>Noom's principal objection appears to be that "Subject Matter of this Litigation" references seven discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively.<br><br>On November 5, Noom indicated that it would be willing to produce documents regarding Noom's "marketing and advertising," but that indication is too vague for Plaintiffs to determine whether Noom is referring to any documents that may be responsive to this Request. | were more persuaded by ads that used orange versus purple font.<br><br>**Duplicative.** Noom is already agreeing to produce all marketing that it can locate without undue burden, and this Request is unnecessary and vastly overbroad.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Noom's internal analysis, and marketing studies are solely related to intent and are not relevant or proportional to any issues to be decided on class certification. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence. | |
| Request No. 43: All **documents and communications regarding Noom's decision to begin** | Documents regarding Noom's decision to begin using automatic renewal are expected to | On November 25, 2020, Noom agreed "to produce design documents and testing and | **Noom's position**: Noom agrees to produce design documents and testing and experiment results | [DISPUTE] **– Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| **utilizing the automatic renewal feature** as part of selling access to Noom's weight loss services. | demonstrate that from the very beginning, Defendants' automatic renewal practices were not understood by consumers and thus immediately resulted in unintended enrollment. For example, the 2017 "design document" Noom produced on November 6 makes clear that without autorenewal the product unintentionally purchased by the Named Plaintiffs would not have been profitable. The design document also admits that consumers do not understand the implications of Noom's autorenewal policy, as autorenewal was found to not discourage trial period enrollments.<br><br>The evidence sought by this discovery is therefore relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this | experiment results that it can locate and produce without undue burden regarding Noom's development of the autorenewal feature of Noom's Healthy Weight Program."<br><br>Plaintiffs understand Noom's principal objection to this Request to be that it views a request for "all documents and communications" as too broad. However, given the parties' agreement to limit the collection to certain custodians and locations, and to employ search terms, the documents Noom would need to produce in order to fulfill the Request would be significantly less than "all" responsive documents or communications that exist at the company. Under Noom's view, Plaintiffs would apparently be foreclosed from receiving emails or Slack channel discussions regarding Noom's decision to begin utilizing the automatic renewal feature. Plaintiffs are entitled to have Noom run search | that it can locate and produce without undue burden regarding Noom's development of the autorenewal feature of Noom's Healthy Weight Program.<br><br>**Overbroad/Not Relevant or Proportional to the Issues to be Be Litigated on Class Certification.** "All documents and communications regarding Noom's decision" to begin implementing autorenewal seeks a significant number of documents and communications that are solely related to Noom's intent and are not relevant or proportional to the issues to be litigated at Class Certification.<br><br>**Custodian limitation.** Plaintiffs' claim that this Request will be limited because of custodians and search terms selected by the Parties is not accurate as Noom is collecting a massive volume of data and information. Noom has already agreed to collect and run search terms on entire team drive | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | discovery is also germane to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | terms related to this Request against its document collection and receive responsive documents.<br><br>On November 3, 2020, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." | folders, including Growth team and Product team folders. In any event, Plaintiffs have indicated they intend to seek leave to ***far exceed*** the ten-custodian limit, at one point suggesting it will be "fewer than 100 custodians." | |
| Request No. 44: All **communications from or to Noom's customers who requested a refund and/or re-rate for partial or full amounts paid for Noom's services following automatic enrollmen**t, including recordings, transcriptions, email correspondence, and letters. As discussed during the September 17, 2020 meet and confer, the parties may be able to use a statistically significant sample to limit the burden of Defendant producing the customer complaints received by Noom related to the Subject Matter of this Litigation. For purposes of responding to this Request, | These communications are expected to demonstrate Defendants' knowledge of consumers being confused by the conduct that is the subject matter of this litigation. Such evidence is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). This evidence is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. Noom's data scientist Mr. Riccardi testified that this information concerning customer complaints was kept via | During the parties' October 29 meet and confer, Defendants objected to producing all responsive documents and the parties agreed to proceed by way of a mutually-agreeable sampling protocol. Defendants committed to providing a description of its refund request data, a description of the size of the data set to be sampled, as well as any gaps or other issues with the data. On November 3, 2020, defense counsel reiterated the parties' commitment to meet and confer to define a mutually-agreeable sampling methodology. However, as of December 3, 2020, Defendants have not proposed any sampling | **Noom's position**: Noom agrees to meet and confer with Plaintiffs on a sampling methodology for production of customer refund requests related to Noom's autorenewal policies or alleged use of bot coaching.<br><br>**Vastly Overbroad and Unduly Burdensome.** All communications regarding customers from or to customers who requested a refund would encompass hundreds of thousands of communications and is not relevant or proportional to the needs of the case. | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| Defendant may redact personally identifying information (*i.e.*, name, address, phone number, social security number) for Noom customers who are non-Plaintiffs so long as Defendant includes a unique identifier code for each customer in place of any personally identifying information. | Zendesk and that each customer service ticket is a line of data in Noom's systems. He also confirmed that the actual complaints were recorded in the system. | methodology or provided any additional information regarding their customer complaint data.<br><br>On December 3, in the column at right and eleven weeks after the parties first discussed the issue, Noom stated that it will undertake a sampling of "customer refund requests related to Noom's autorenewal policies or alleged use of bot coaching." Plaintiffs are unable to evaluate that response without the information on Noom's refund request data that it previously agreed to provide on October 29, 2020. | | |
| <u>Request No. 45</u>: All **documents or communications** (including with third parties) **concerning Noom's issuance of refunds, or its refusal to issue refunds**, to its customers based in whole or in part on the conduct that is the Subject Matter of this Litigation. Excluded from this Request are direct communications with customers who requested | SAC ¶¶ 78–105 detail the thousands of online complaints of consumers being tricked into becoming full-fledged Noom subscribers, Noom's public customer service admissions that consumers are being deceived by the conduct that is the subject matter of this litigation, how Noom meticulously tracks customer metrics including cancellation and complaint rates, | On November 5, 2020, Defendants indicated in the parties' joint letter that it would agree to produce evidence regarding Noom's refund disclosures, Noom's internal policies regarding refunds, a representative sampling of customer complaints, and "documents and communications reflecting the Named Plaintiffs' experience with Noom." | **<u>Noom's position:</u>** Plaintiffs' Second Amended RFP No. 45 is still non-compliant with Rules 26 and 34 and the Court should not compel a response to it.<br><br>Subject to the foregoing and subsequent objections, Noom agrees to produce a representative sample of refund requests related to Noom's | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| refunds, which are addressed in Request No. 44 above.<br><br>Or, instead of "the conduct that is the Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, Noom's charging for several months of services with a multi-month lump sum charge, Noom's utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | and Noom's knowledge of consumers being inadvertently enrolled multiple times in the same plan.<br><br>Further, Noom's current refund policy states that "[u]ninstalling the app doesn't automatically cancel your subscription — you'll still get charged. So please let your Coach (Goal Specialist) know that you'd like to cancel before deleting the Noom app."<br><br>Documents and communications concerning Noom's issuance of refunds are expected to demonstrate Defendants' knowledge of consumers being confused by the conduct that is the subject matter of this litigation. Such evidence is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). This evidence | However, Defendants do not appear to agree to produce other documents responsive to this Request, including, for example, internal documents about Noom's decision to grant or refuse refund requests based on the conduct that is the subject matter of this litigation.<br><br>Noom's principal objection appears to be that "Subject Matter of this Litigation" references four discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. Noom has also indicated that it objects as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence."<br><br>During the parties' October 29, 2020 meet-and-confer, Noom stated its position was that this Request is overbroad and would capture irrelevant documents, | autorenewal policies or alleged use of bot coaches.<br><br>**Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized category of information pursuant to Rule 34(b).<br><br>Plaintiffs' alternative proposal—which still contains 4 categories of information—is still vastly overbroad and equates to 4 separate RFPs, which are each themselves overbroad, unduly burdensome, irrelevant, and not proportional. Additionally, not a single Named Plaintiff alleges being misled by any advertising, multi-month lump sum charges, or computerized or bot coaching.<br><br>**Irrelevant and not proportional**. All documents and communications regarding Noom's issuance of refunds is | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion.<br><br>Based on Mr. Riccardi's testimony, Noom tracks via Zendesk the customer complaints and refund requests it receives. That data and information responsive to this Request could be analyzed to determine in which situations Noom granted refunds and where it refused refunds in response to refund requests. The deponent acknowledged that the reasons the customer gave for requesting the refund would be included somewhere in the Zendesk data. Plaintiffs specifically requested production of that data during Mr. Riccardi's deposition. | although Noom did not specify the actual categories of irrelevant documents that would be captured. Although Plaintiffs described to defense counsel examples of relevant documents that would be responsive to this RFP—including customer service personnel internally discussing the fact that many customers were upset about Noom's policy of refusing refunds, internal documents allowing exceptions to Noom's no-refund policy, or projections of the volume of refund requests in connection with implementation of questionable practices similar to those identified by the whistleblower—Noom said its position was that the Request was nonetheless too broad. Noom has since acknowledged that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages."<br><br>On December 3, Noom stated in the column at right that it is willing to produce for this | not relevant or proportional to the needs of the case in that it sweeps in potentially every document discussing a refund at Noom, including among each and every coach, customer service representative or third party that assists Noom in handling customer complaints.<br><br>**Duplicative.** Noom is already providing Plaintiffs with all coaching and customer service training materials, macros, knowledge articles that relate to refunds, cancellations and autorenewal, as well as a sample of additional customer communications with coaches and customer service representatives re: same.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** All documents and communications regarding Noom's issuance of refunds is not relevant or proportional to any issues to be decided on class certification, | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | Request the same sample as produced in response to Request No. 44. That, however, is not what this Request calls for. | and is instead solely relevant to Noom's intent. As noted above, ***numerous courts have held that such broad, intent-related evidence is not relevant to class certification in consumer fraud cases.*** None of Plaintiffs' cases support their view that they are entitled to such broad-intent related evidence. | |
| Request No. 46: **All documents evidencing or relating to strategies, analyses, studies, or models concerning the financial impact to Noom** of the conduct that is the Subject Matter of this Litigation.<br><br>Or, instead of "Subject Matter of this Litigation":<br><br>Noom's periodic automatic enrollment subscription feature, Noom's willingness to comply with customer cancellation or refund requests, the pricing of Noom's subscriptions and trial subscriptions, charging for several months of services with a | Noom's financial strategy documents are expected to demonstrate the critical role deceptive practices played in guiding the conduct that is the subject matter of this litigation. For example, on November 6, 2020, Noom produced "the design document that first discussed" the product and autorenewal practices that are challenged by this lawsuit. This document demonstrates that charging a higher monthly rate did not meaningfully effect the percentage of consumers that were automatically converted from trial to full subscriptions, and that this product's | Noom's principal objection here appears to be that "Subject Matter of this Litigation" references six discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. Noom has also indicated that it objects to this Request as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence." Noom has admitted that this Request pertains to Noom's intent and Plaintiffs' claims for punitive damages but has nonetheless not indicated | **Noom's position:** Plaintiffs' Second Amended RFP No. 46 is still non-compliant with Rules 26 and 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized category of information pursuant to Rule 34(b). | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| multi-month lump sum charge, the level of communication Noom had with consumers during the trial period, or utilizing a computerized bot instead of a human coach during the trial period. | profitability hinged on the percentage of customers that auto-renewed. Additionally, this document shows that Noom's strategy documents contain compelling proof of deceptive conduct and is consistent with Plaintiffs' well-pled allegations that Noom is well aware that consumers are being deceived by the conduct that is the subject matter of this litigation. SAC ¶¶ 78–105.<br><br>Mr. Riccardi testified as to his analysis of the financial transactions table, which compiles information concerning when customers were billed and how much they were billed, among other things. Analyses, studies, or models utilizing the data from that table that concerns the financial impact to Noom of the subject matter of the litigation would be relevant here.<br><br>Noom's financial strategy documents are thus relevant to commonality, typicality, and | what documents, if any, it is willing to produce in response to this Request.<br>During the parties' October 29, 2020 meet-and-confer, Noom stated that it believed that there is also a supposed "relevance issue" with respect to this Request because seeking or making profits is lawful and suggested that the Request might be less objectionable if it were cast in terms of financial strategies related to "deception." But Plaintiffs explained that responsive documents evidencing that Noom's strategies, analyses, studies, or models were did not account for the conduct challenged in this litigation still be relevant to the parties' claims or defenses because such documents would be evidence of non-fraudulent intent. Noom also hypothesized about types of irrelevant documents that might be captured by this request, such as analyses regarding the choice of color to use on the Noom website, but (1) this hypothetical | Plaintiffs' alternative proposal—which contains still contains 6 categories of information—is still vastly overbroad and equates to 6 separate RFPs, which are each themselves overbroad, unduly burdensome, irrelevant, and not proportional.<br><br>**Overbroad and vague**. This request as written seeks potentially every internal document reflecting financial information, which is conceivably almost every document created by the Growth, Product and Finance teams. Moreover, the request is impossible to discern and is impermissibly vague.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** All documents evidencing or relating to strategies, analyses, studies, or models concerning the financial impact to Noom also are not relevant or proportional to any issues to be decided on class | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). The evidence sought by this discovery is also germane to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | is not responsive to this request; (2) Noom did not propose any narrowing of the Request based on the existence of such hypothetical documents; and (3) Noom did not indicate whether it had investigated whether any such documents actually existed in its possession, indicating that its objection is purely hypothetical. | certification and only relate to damages. | |
| Request No. 47: **Documents sufficient to show the relationship between Noom and any subsidiary, or affiliate companies or entities**, including all departments and divisions. | Noom has confirmed that no responsive documents exist in Noom's possession, custody, or control and, as a result, Plaintiffs will not press this Request further. | On November 25, 2020, Noom advised Plaintiffs that "Noom does not have any US-based subsidiary or affiliate companies to identify in response to this Request[,]" and that therefore no responsive documents exist. Based on these representations, Plaintiffs will not pursue the production of documents pursuant to this Request. | **Noom's position:** Noom does not have any US-based subsidiary or affiliate companies to identify in response to this Request. | **No judicial guidance needed at this time.** |
| Request No. 48: **Documents sufficient to identify the officers, managers, employees, team(s), department(s), group(s) and division(s) involved** at any time during the Relevant Period in any facet of **the Noom conduct that is the** | This discovery seeks the identities of individuals with potentially discoverable information. Disclosure of potentially relevant discovery sources is so ingrained that the 2015 Amendments to Rule 26(b)(1) removed the language | Noom's principal objection here appears to be that "Subject Matter of this Litigation" references seven discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter | **Noom's position:** Noom has produced a 300+ page organizational chart. It does not have historical organizational charts and will not be able to assemble one without significant time and expense. The Court should not compel a further | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| **Subject Matter of this Litigation**. Such documents may include organizational charts, contact lists, phone lists, and email lists.<br><br>Or, instead of "Subject Matter of this Litigation:"<br><br>periodic automatic enrollment subscription feature, customer cancellations or refunds, the pricing of Noom's subscriptions and trial subscriptions, charging for several months of services with a multi-month lump sum charge, the level of communication Noom had with consumers during the trial period, utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | explicitly permitting discovery of "the existence, description, nature, custody, condition and location" of discoverable information because "[d]iscovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples." 2015 Amendment – Advisory Committee Notes.<br><br>During the deposition of Noom data scientist John Riccardi on November 18, 2020, an excerpt of a document derived from the Workday HR software that showed various Noom employees was shown to the witness. Since the witness complained that the text was unclear, Plaintiffs requested that the document be reproduced with better clarity. In any event, the fact that Defendants were able to easily identify organizational charts that they had ready to produce indicates that their burden is minimal in complying with this Request. | of the litigation even more expansively.<br><br>Defense counsel advised Plaintiffs on November 3, 2020 that they would provide a proposed narrowing by November 6, 2020. However, as of December 3, 2020, defense counsel has not yet provided a proposed narrowing. Furthermore, it has been two weeks since Noom's data scientist John Riccardi testified that the "300+ page organizational chart" Noom recently produced is pixelated and difficult to read, but Noom has yet to reproduce the document in a legible format.<br><br>Plaintiffs remain surprised that no historical organization charts exist. Indeed, Noom's response, provided on December 3, 2020, in the column at right, admits that "phone and email lists of current employees" exist. At this juncture Plaintiffs do not request that Noom be ordered to | response to the remainder of RFP No. 48, which is objectionable for myriad reasons.<br><br>**Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized category of information pursuant to Rule 34(b).<br><br>Plaintiffs' alternative proposal—which contains still contains 7 categories of information—is still vastly overbroad and equates to 7 separate RFPs, which are each themselves overbroad, unduly burdensome, irrelevant, and not proportional.<br><br>**Unduly burdensome, not relevant or proportional**. It would be unduly burdensome for Noom to construct an organization chart to identify every employee that was involved "in any facet of the | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | "assemble' or "construct" an "organizational chart," but rather that it produce the responsive documents in its possession. Noom's grounds for refusing to produce the phone and emails lists—that current employees "are represented by counsel and should be contacted solely through counsel"—is irrelevant as these lists are not being requested for purposes of contacting current employees, but rather for identifying discoverable information for purposes of this litigation. | Noom conduct that is the subject matter of the litigation." This would encompass every customer service representative and every one of Noom's thousands of human coaches.<br><br>**Irrelevant.** The phone and email lists of current employees are not relevant, as they are represented by counsel and should be contacted solely through counsel. | |
| Request No. 49: All **documents produced by, provided to, shown to, or otherwise shared with Noom's Board of Directors** that discuss or reference the Noom conduct that is the **Subject Matter of this Litigation.**<br><br>Or instead of "Subject Matter of this Litigation:"<br><br>periodic automatic enrollment subscription feature, how users | Documents concerning the subject matter of this litigation that were shared with Noom's Board of Directors are intended to determine what the Board knew and when it knew it. Plaintiffs believe that the Board was aware of multiple of the red flags Plaintiffs have unearthed thus far. These red flags are detailed in SAC ¶¶ 78–105, which describe the thousands of online complaints of consumers being tricked into becoming full- | Noom's principal objection here appears to be that "Subject Matter of this Litigation" references seven discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. Noom has also indicated that it objects to this Request as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible | **Noom's position:** Plaintiffs' Second Amended RFP No. 49 is still non-compliant with Rules 26 and 34 and Noom respectfully requests a protective order as to this RFP.<br><br>**Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| can cancel their auto-enrollment or trial subscriptions, requests from Noom consumers for refunds including complaints about Noom refunds, the pricing of Noom's subscriptions and trial subscriptions, Noom's charging for several months of services via a multi-month lump sum charge, the level of communication Noom had with consumers during the trial period, Noom's utilizing a computerized bot instead of a human coach during the trial period, Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | fledged Noom subscribers, Noom's public customer service admissions that consumers were deceived by the conduct that is the subject matter of this litigation, how Noom meticulously tracks customer metrics including cancellation and complaint rates, and Noom's knowledge of consumers being inadvertently enrolled multiple times in the same plan.<br><br>Evidence of the Board's knowledge is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). This evidence is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | evidence." Noom has admitted that this Request pertains to Noom's intent and Plaintiffs' claims for punitive damages but has nonetheless not indicated what documents, if any, it is willing to produce in response to this Request.<br><br>During the parties' October 29, 2020 meet-and-confer, Noom stated that in its view, this discovery would capture a large volume of documents and reach "everything that's ever happened with the board" notwithstanding the limitations written into the Request. However, defense counsel has not even indicated whether it has investigated the volume or categories of responsive Board documents that exist in its possession, suggesting that Noom's objection is purely hypothetical. | category of information pursuant to Rule 34(b).<br><br>Plaintiffs' alternative proposal—which contains still contains 8 categories of information—is still vastly overbroad and equates to 8 separate RFPs, which are each themselves overbroad, unduly burdensome, irrelevant, and not proportional.<br><br>The RFP is not reasonably limited and seeks virtually all documents shared with the Board at any point during the Relevant Period.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** All documents produced by, provided to, shown to, or otherwise shared with Noom's Board of Directors that discuss or reference the Noom conduct that is the Subject Matter of this Litigation only seeks information as to what Noom's board of directors "knew," and is thus not | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | relevant to any issues to be decided on class certification, and is only directed at intent. | |
| Request No. 50: **A copy of (1) each net worth or financial statement reflecting, describing, or identifying Noom's assets, liabilities, and/or income prepared by or on behalf of Noom** at any time since the start of the Relevant Period, including but not limited to any loan applications, credit applications, or refinancing applications; **(2) Noom's tax returns** during the Relevant Period; (3) **all appraisals** conducted at any time during the Relevant Period of all real property held in part or in full by Noom; and (4) **documents sufficient to determine the balances of accounts held by Noom as of each January 1** during the Relevant Period, including savings, checking, annuities, mutual funds, stocks, bonds, derivatives, or any other type of account in which Noom held or holds assets. | This discovery is relevant to Plaintiffs' claim for punitive damages. It is well-settled that a defendant's financial status is relevant to determining punitive damages. *Whitney v. Citibank, N.A.,*782 F.2d 1106, 1119 (2d Cir. 1986) (stating that "[i]n determining the amount and effectiveness of exemplary damages to be awarded against a defendant, the court may take into consideration the defendant's wealth or net worth"). Further, "pretrial discovery of financial documents may be appropriate even in the absence of a showing that punitive damages are warranted." *Fierro v. Gallucci*, No. 06 Civ. 5189 (JFB) (WDW), 2009 WL 606191, at *1 (E.D.N.Y. Mar. 9, 2009). (Plaintiffs nevertheless recognize that "[c]ourts in this circuit are split on the issue of allowing pretrial disclosure of financial information relevant to | Noom indicated on November 3 that it objects to this Request as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence." Noom has admitted that this Request pertains to Noom's intent and Plaintiffs' claims for punitive damages but has nonetheless not indicated what documents, if any, it is willing to produce in response to this Request. Noom has been unwilling to propose any limitation or narrowing of this Request. | <u>**Noom's position:**</u> RFP 50 does not seek information that is relevant or proportional to the issues to be litigated on class certification, and by Plaintiffs' own admission, is solely relevant to punitive damages. The Court should not compel a response at this time.<br><br>**Overbroad/Compound**. Plaintiffs' request seeks four separate categories of information which equate to four separate RFPs, all of which are overbroad and not relevant or proportional to the claims and defenses in this case.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Plaintiffs do not make an attempt to argue that this request seeks information relevant to class certification. The request is harassing and improper at this stage. | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | a determination of punitive damages." *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921, at *16 (S.D.N.Y. Apr. 5, 2010) (collecting cases).) | | | |
| Request No. 51: All **documents in Noom's books and records** during the Relevant Period **that contain information related to the Subject Matter of this Litigation.**<br><br>Or, instead of "Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, how users can cancel their auto-enrollment or trial subscriptions, requests from Noom consumers for refunds including complaints about Noom refunds, the pricing of Noom's subscriptions and trial subscriptions, charging for several months of services with a multi-month lump sum charge, the level of communication Noom had with consumers during the trial period utilizing a | *See* RFP Nos. 49 and 50. | Noom's principal objection here appears to be that "Subject Matter of this Litigation" references eight discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. Noom has also indicated that it objects to this Request as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence." Noom has admitted that this Request pertains to Noom's intent and Plaintiffs' claims for punitive damages but has nonetheless not indicated what documents, if any, it is willing to produce in response to this Request. | **Noom's position:** RFP 51 does not seek information that is relevant or proportional to the issues to be litigated on class certification, and by Plaintiffs' own admission, is solely relevant to punitive damages. The Court should not compel a response at this time.<br><br>**Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized category of information pursuant to Rule 34(b).<br><br>Plaintiffs' alternative proposal—which contains still contains 7 categories of information—is still vastly overbroad and equates to 7 | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| computerized bot instead of a human coach during the trial period, Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | | | separate RFPs, which are each themselves overbroad, unduly burdensome, irrelevant, and not proportional.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** Plaintiffs do not make an attempt to argue that this request seeks information relevant to class certification. The request is harassing and improper at this stage. | |
| Request No. 52: All codes of business conduct, codes of ethics, or business integrity policies pertaining to Noom. | Whether Defendants complied with Noom's own internal policies is relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). This evidence is also relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | During the parties' October 29 meet-and-confer, despite Plaintiffs' counsel's explanation of the relevance of the requested discovery, Noom continued to object to the relevance of this Request and refused to produce discovery or propose a limitation of this Request. On November 3, 2020, Noom admitted that the Request pertains to "Noom's intent and Plaintiffs' claims for punitive damages." However, Noom did not further object to the Request or indicate what documents it is willing to | **Noom's position:** Plaintiffs' Second Amended RFP No. 52 is still non-compliant with Rules 26 and 34 and the Court should not compel a response to it.<br><br>**Not relevant or proportional, vague**. This request seeks documents that are plainly irrelevant to the claims and defenses in this case. This request is also vague as to the terms "codes of business conduct" and "business integrity policies." | **[DISPUTE] – Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | produce in response to the Request, if any. | **Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** All codes of business conduct, codes of ethics, or business integrity policies also are not relevant or proportional to any issues to be decided on class certification and are only tangentially relevant, if at all, to Noom's intent. | |
| Request No. 53: **All documents provided to or communications with actual or prospective investors** that describe or otherwise reference the Subject Matter of this Litigation.<br><br>Or, instead of "the Subject Matter of the Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, how users can cancel their auto-enrollment or trial subscriptions, requests from Noom consumers for refunds including complaints about Noom refunds, the pricing of Noom's subscriptions and trial subscriptions, charging for several months of services with a | Documents and communications with actual or prospective investors regarding the subject matter of this litigation are expected to demonstrate the key role deceptive practices played in guiding the conduct that is challenged in this litigation. These unvarnished, dollars and cents assessments of Defendants' business practices are anticipated to contain powerful proof of Defendants' knowing deception of the consuming public. For example, SAC ¶ 10 excerpts an article by the boutique investment research firm Nanalyze that highlights how Noom's trial period cancellation process is both wildly | Noom's principal objection here appears to be that "Subject Matter of this Litigation" references eight discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. Noom has also indicated that it objects to this Request as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably calculated to lead to admissible evidence." Noom has admitted that this Request pertains to Noom's intent and Plaintiffs' claims for punitive damages but has nonetheless not indicated what documents, if any, it is | **Noom's position:** RFP 51 does not seek information that is relevant or proportional to the issues to be litigated on class certification, and by Plaintiffs' own admission, is solely relevant to Noom's "knowing deception." The Court should not compel a response at this time.<br><br>**Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized category of information pursuant to Rule 34(b). | [DISPUTE] **– Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| multi-month lump sum charge, the level of communication Noom had with consumers during the trial period utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | inconsistent with consumer expectation and highly lucrative:<br><br>"If you want to cancel, you don't go to "Settings – My Account – Cancel Subscription." You don't get to give up that easy. In order to cancel the app, you need to contact your virtual trainer and tell them you're a big pansy . . . . That's a genius move that will only serve to increase customer retention . . . ."<br><br>During his deposition, Noom data scientist John Riccardi testified that Noom's data analysis team's work is sometimes shared with Noom investors, including investors from Sequoia Capital.<br><br>This evidence is relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | willing to produce in response to this Request.<br><br>During the parties' October 29, 2020 meet-and-confer, despite Plaintiffs' explanation of the need for this discovery, Noom insisted that the Request supposedly had no obvious nexus to the claims. In any event, Mr. Riccardi's testimony in the interim has provided a sufficient nexus. | Plaintiffs' alternative proposal—which contains still contains 7 categories of information—is still vastly overbroad and equates to 7 separate RFPs, which are each themselves overbroad, unduly burdensome, irrelevant, and not proportional.<br><br>**Not relevant or proportional, unduly burdensome**. This request plainly sweeps in irrelevant documents as this request could conceivably request every document Noom has ever shared with an actual or prospective investor.<br><br>**Not Relevant or Proportional to the Issues to be Litigated at Class Certification.** All documents provided to or communications with actual or prospective investors also are not relevant or proportional to any issues to be decided on class certification and are only tangentially relevant, if at all, to Noom's intent. The document that Plaintiffs point to is publicly | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | | available and it is not clear how it is relevant to their request. | |
| Request No. 55: All **documents concerning any settlements, mediations, or arbitrations of any claims brought against Noom by any non-Plaintiff** in a court or other forum **relating to the Subject Matter of the Litigation.** This Request is not intended to include refunds paid by Noom directly to Noom customers in response to their written or verbal informal refund requests provided in writing, electronically or orally to Noom.<br><br>Or, instead of "the Subject Matter of the Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, cancellation policies or procedures, the pricing of Noom's subscriptions and trial subscriptions, Noom's charging for several months of services with a multi-month lump sum charge, the level of | Noom appears to be representing that no responsive documents exist, so Plaintiffs will not burden the Court with an explanation here. | On November 3, 2020, defense counsel informed Plaintiffs that it does not believe that Noom has in its possession, custody, or control any documents responsive to this Request. | **Noom's position**: Noom has confirmed that there are no other litigations, regulatory or enforcement actions, mediations, or arbitrations concerning automatic purchase renewal, refunds, or cancellations.<br><br>Noom respectfully submits there is no further issue to be litigated at this time. | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| communication Noom had with consumers during the trial period, Noom's utilizing a computerized bot instead of a human coach during the trial period, Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches, and/or Noom's revenue derived from subscriptions. | | | | |
| Request No. 56: **All documents received by Noom pursuant to any Freedom of Information Act request or subpoena, discovery request, or similar process issued to any third party** pertaining to or referencing the Subject Matter of this Litigation.<br><br>Or, "instead of the Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, how users can cancel their auto-enrollment or trial subscriptions, requests from Noom consumers for refunds including complaints | If responsive documents exist in Defendants' possession, they will help streamline discovery, will assist Plaintiffs in designing search terms, and pose virtually no additional expense to Noom. | On November 3, 2020, defense counsel represented that there have not been any FOIA requests or subpoenas, discovery requests, or similar process issue to a third party concerning the subject matter of this litigation and thus that no responsive documents exist in Noom's possession. | **Noom's position**:  Noom has confirmed that there are no other Freedom of Information Act requests, subpoenas, discovery requests, in any litigations, regulatory or enforcement actions, mediations, or arbitrations concerning automatic purchase renewal, refunds, or cancellations.<br><br>Noom respectfully submits there is no further issue to be litigated at this time. | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| about Noom refunds, the pricing of Noom's subscriptions and trial subscriptions, charging for several months of services with a multi-month lump sum charge, the level of communication Noom had with consumers during the trial period, utilizing a computerized bot instead of a human coach during the trial period, Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches, and/or Noom's revenue derived from subscriptions. | | | | |
| Request No. 57: **For any former Noom employee who** while working at Noom during the Relevant Period **contributed in any way to Noom's conduct that is the Subject Matter of this Litigation**, produce **documents** in Defendant's possession, to the extent they exist, **sufficient to identify each former employee's (1) name, (2) last known contact information** (including address, | This Request seeks the identities of individuals with potentially discoverable information. Disclosure of potentially relevant discovery sources is so ingrained that the 2015 Amendments to Rule 26(b)(1) removed the language explicitly permitting discovery of "the existence, description, nature, custody, condition and location" of discoverable information because "[d]iscovery of such matters is so | Noom's principal objection here appears to be that "Subject Matter of this Litigation" references eight discrete items, notwithstanding the fact that Noom's own litigation hold notice defines the subject matter of the litigation even more expansively. Noom has also indicated that it objects to this Request as "overbroad, unduly burdensome, not sufficiently particularized and not reasonably | **Noom's position:** Plaintiffs' Second Amended RFP No. 53 is still non-compliant with Rules 26 and 34 and the Court should not compel a response to it. Noom has already produced an organizational chart and does not have historical organizational charts and would not be able to create one without significant time and expense. The Court should not compel a further response to this RFP. | [DISPUTE] – **Judicial guidance needed on reconciling the parties' differences.** |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| phone, mobile, and email, if available), **and (3) title(s) held** at Noom during the Relevant Period.<br><br>Or, instead of "Noom's conduct that is the Subject Matter of this Litigation:"<br><br>Noom's periodic automatic enrollment subscription feature, user cancellation policies or procedures, responding to Noom customer refund requests, the pricing of Noom's subscriptions and trial subscriptions, Noom's charging for several months of services with a multi-month lump sum charge, the level of communication Noom had with consumers during the trial period, Noom's utilizing a computerized bot instead of a human coach during the trial period, or Noom's marketing or advertising relating to Noom's subscriptions, personalized plans, or coaches. | deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples." 2015 Amendment – Advisory Committee Notes. | calculated to lead to admissible evidence" and has not indicated what documents, if any, it is willing to produce in response to this Request and has not identified any proposed narrowing of the Request.<br><br>During the parties' October 29 meet-and-confer, in an attempt to probe the extent of Noom's objections, Plaintiffs' counsel asked defense counsel whether Noom would object to providing the titles and last known contact information of a finite set of former employees. Defense counsel advised that it would not object if such information were requested in the form of an interrogatory, but that Noom would continue to object so long as the Request is phrased as a document request. Noom's counsel had apparently not investigated whether there were responsive documents that contained the requested information, suggesting that their objections were speculative. | **Overbroad/Compound.** "The Subject Matter of the Litigation" is absurdly broad in that it refers to ***all twelve topics identified for preservation in Noom's Litigation Hold***, and is thus not a remotely particularized category of information pursuant to Rule 34(b). The phrase "contributed in any way" is also extraordinarily broad and when combined with "Subject Matter of this Litigation," would encompass essentially every employee at Noom over the last three years.<br><br>**Duplicative**. This request is duplicative of RFP No. 48.<br><br>**Unduly burdensome, not relevant or proportional**. This request is also unduly burdensome and not relevant or proportional in that it encompasses identification of all of Noom's customer service agents and thousands of human coaches over a multi-year period. | |

| Plaintiffs' Revised Rule 34 Request | Element(s) of Claim(s) or Potential Defense(s) as to Which the Request Relates | Plaintiffs' Understanding of Noom's Position | Noom's Clarification of Plaintiffs' Understanding[1] | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|
| | | With respect to Noom's claim at right that it has already produced an "organizational chart[,]" it has been two weeks since Noom's data scientist John Riccardi testified that the "300+ page organizational chart" Noom recently produced is pixelated and difficult to read, but Noom has yet to reproduce the document in a legible format.<br><br>Noom's additional objections in its column at right, run counter to defense counsel's commitment at the parties October 29 meet and confer, wherein defense counsel advised Plaintiffs that Noom would provide the requested information if requested via an interrogatory. Noom now seems to be taking the position that this information is not discoverable, a complete reversal of its October 29 position. | | |

# Tracking Chart of for Requests with Resolutions or Crystalized Disputes

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| Request No. 1: (a) All documents and communications *between* Noom and Plaintiffs (including documents and communications reflecting notes of communications with Plaintiffs); (b) all data Noom maintains on Plaintiffs; and (c) all documents and communications *about* Plaintiffs (i) before, and (ii) after the lawsuit was filed. | **(b)** – It is highly likely that Noom identifies and sorts consumers based on the data it collects. Disclosure of the categories of data Noom collects (for example, whether the consumer has downloaded Noom's app, or Noom's categorization of the consumer's reason for cancelling or requesting a refund) will be helpful in defining the Class and potential subclasses, and will show that Defendants treat consumers in uniform ways that support the aggregate adjudication of these consumers' claims. Noom data scientist David Riccardi testified on November 18 that Noom collects extensive data of what Noom users do in the application, which Noom keeps in Amazon Redshift | (b) Noom is willing to meet and confer with Plaintiffs regarding the appropriate usage data to produce for the Named Plaintiffs, provided that Plaintiffs withdraw their objections to producing usage data in their own discovery responses. *See* Responses and Objections to RFP 14 ("Plaintiff's use or lack of use of certain Noom app features [] have no bearing the claims or defenses in this matter" including "step counting or the meal logging features").<br><br>(c)(ii) production of communications *about* the Named Plaintiffs after the lawsuit was filed is not relevant or proportional and is likely to sweep in vast amounts of privileged | Noom will conduct a reasonable search and produce non-privileged documents that show (i) all communications between Noom and the Named Plaintiffs; (ii) communications about the Named Plaintiffs prior to the filing of the lawsuit; (iii) data regarding the Named Plaintiffs use of the Noom platform that is readily obtainable, subject to the Parties' agreement regarding the appropriate scope of production of usage data.<br><br>(On November 25, Noom produced an initial description of usage data to Plaintiffs and Plaintiffs have now conducted two depositions of Noom's data scientists asking numerous | The Plaintiff data that Noom tracks—as app downloads, app open, app deletion, and the "one metric that matters" or "OMTM" (which tracks "meaningful" interactions with the app)—are relevant to Plaintiffs' claims that Noom (i) has substantial data demonstrating it was charging consumers after the end of the trial period who were not using Noom's services, (ii) Noom's nondescript autoenrollment features, conduct during the trial period (radio silence), and idiosyncratic cancellation method are not consistent with ordinary consumer behavior as demonstrated by Noom's own data. Further, Noom contends that the Class should not include customers who | Resolved that Defendants will produce documents and communications responsive to (a) and (c)(i).<br><br>**[DISPUTE]** – The parties disagree regarding (b) and (c)(ii). |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | and/or in Mixpanel. At the deposition, Plaintiffs requested production of Noom's data from Amazon Redtable, which would be responsive. Mr. Riccardi also testified that he was familiar with a "signups table" which includes one row for each person who signed up with Noom, the date they signed up with Noom, their state, and language spoken, among other items. Mr. Riccardi also testified that Noom has data engineers that know all of the categories of data that Noom collects for its customers. Further, analysis of the data Defendants maintain on Plaintiffs and Class members will likely reveal evidence that can be used to demonstrate consumers' reasonable reliance on Defendants' deceptive conduct, a key showing for class certification of | information that must be reviewed and logged. | questions about usage data). | knowingly assented to Noom's charges after the end of the trial period. This data will potentially help to identify these "happy customers" and thus assist the parties and the Court in defining the Class and adjudicating the issue of whether Noom's conduct is deceptive. Based on Mr. Riccardi's testimony, including regarding Noom's signups table, it is obvious that this data sought here is readily accessible to Noom and would not be burdensome to produce. Regarding this Request's adding to Defendants' privilege log burden, the Court has already substantially narrowed Defendants' privilege log burden by allowing it to log post-lawsuit communications with Noom's attorneys via a bucketing methodology. Noom's "parity" argument | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | Plaintiffs' common law fraud claims, SAC, Count XI. *See Sergeants Benevolent Ass'n*, 806 F.3d at 88 ("Plaintiffs may be able to prove class-wide causation based on first-party reliance without an individualized inquiry into whether each class member relied on the defendant's misrepresentation if 'circumstantial evidence' generates a sufficiently strong inference that all class members did, in fact, rely.").<br><br>Similarly, this data will help Plaintiffs demonstrate a common pattern of consumer deception, which will serve to overcome minor variations in the conduct that is the subject matter of this litigation.<br><br>Also, class data of this type (*see* RFP No. 4) is specifically envisioned as | | | cannot be credited where Noom has the resources to track usage data that Noom consumers do not. In any event, it is not appropriate to object to a discovery request by pointing fingers at how the opposing parties responded to discovery requests. *See, e.g.*, *Genentech, Inc. v. Trustees of Univ. of Pa.*, No. 10 Civ. 02037, 2011 WL 7074208, at *1 (N.D. Cal. June 10, 2011) ("A party may not withhold relevant discovery simply on the basis that the other side has not been forthcoming with discovery. A party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent. Nor may a party condition its compliance with its discovery obligations on receiving discovery from its opponent."). | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | being shared between the parties under Judge Schofield's Individual Rules § III.C.5. That rule says that a party moving for preliminary approval of a class action settlement must have individualized data "per class member" in order to properly estimate damages for each class member.<br><br>Finally, this data is likely to demonstrate that Defendants recognized that consumers were being misled by the practices challenged in this lawsuit, which is relevant to Plaintiffs' state law consumer fraud claims (SAC, Counts I, III–X). *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d at 543 ("[W]hether a particular act or practice is deceptive is usually a question of fact."); *see also Ackerman*, 2010 WL 2925955, at *17 | | | On December 3, 2020, Noom changed its position with respect to 1(b). After refusing for months to provide this discovery, today Noom offered to meet and confer with Plaintiffs regarding the requested data if Plaintiffs agree to re-define the term "usage data" to include the Named Plaintiffs' interactions with the app, such as their use of step counting or the meal logging features, that (1) have no bearing on the case; and (2) Noom possesses and therefore has no need to collect from Plaintiffs. Noom's eleventh-hour reversal of the position it held for several months is simply intended as make-work for Plaintiffs. There is no reason for Plaintiffs to have to collect the exact | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | ("[W]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides . . . ."). Evidence of Defendants' knowledge of consumer deception is powerful common proof relevant to all class members' claims, including their fraud (Count XI), unjust enrichment (Count XII), conversion (Count XII), and state consumer protection claims (Counts I, III–X). *Torres*, 838 F.3d at 639–40 (That Class members are "the foreseeable victims of the alleged fraud" is the "most straightforward way of demonstrating reliance in a classwide manner . . . ."). As discussed above, Plaintiffs' detailed SAC makes clear that "Noom closely tracks even the | | | data Noom already possesses. | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
| --- | --- | --- | --- | --- | --- |
| | most minute customer metrics, many of which show that customers' enrollment into Noom's monthly plans was involuntary and/or unwitting." SAC ¶ 86. *See also id.* ¶¶ 88, 90–92 (discussing other metrics that Noom tracks).<br><br>**(c)(ii)** – Non-privileged post-lawsuit communications regarding Plaintiffs and their allegations will likely show that Defendants knew that their conduct was deceptive and reveal Noom employees' reflections on the propriety of the conduct that is the subject matter of this litigation. The record already demonstrates that at least one of Noom's former employees was not surprised by this litigation, has witnessed acts of intentional consumer | | | | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | deception, and came forward to reveal those deceptive acts once he learned of this lawsuit, Sept. 30, 2020 Decl. of I. Meyer, *passim*; *see also Fort Wayne Books*, 489 U.S. at 84 n.27 ("Frequently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor.") (citation omitted); *see also FTC v. Cyberspace.com LLC*, 453 F.3d at 1201 (while proof of actual deception is not necessary to show deceptive business practices, "such proof is highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances."). Moreover, the SAC contains 13 pages of | | | | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | allegations detailing various indicia of Defendants' knowledge of the deceptiveness of the conduct that is the subject matter of this litigation. SAC ¶¶ 78–105. | | | | |
| Request No. 3: Produce an extract from Defendant's database or other records showing all amounts Noom charged to each Class Member (with anonymous unique identifier to protect Class Member privacy) and the dates of any charges. During the September 17, 2020 meet and confer defense counsel mentioned that Noom may sell other items (Bluetooth scales, etc.) that should not be included and Plaintiffs are consulting with Defendants as to whether Defendants are willing to produce a list of all transaction items in Noom's records so that counsel may meet and | Plaintiffs will use this aggregate billing data to construct their class-wide damages model. Statistical analysis of this data will also likely yield common evidence that can be used to demonstrate commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X). Such statistical evidence can also be used to demonstrate that Defendants' conduct deceived reasonable consumers acting reasonably. This data will also likely shed light on | Not relevant or proportional; overbroad; unduly burdensome. Plaintiffs themselves state they will use "aggregate billing data to construct their class-wide damages model," and they have never articulated why they need granular information regarding the transactions of every single Noom customer during the Relevant Period. | Absent a showing of relevance, Noom will not produce individualized Class Member data as to each Class Member during the Relevant Period. Such a Request is a truly extraordinary volume of data that is not relevant or proportional to the needs of the case. Noom agrees to produce a chart sufficient to show Aggregate subscription data regarding the class from March 2017 to October 6, 2020. The chart will include how the subscription was purchased; total subscription charges broken down by state, year, annual revenue; annual | Class data of this type is commonly provided in class actions of this nature. This data (i) is necessary for Plaintiffs to construct their class-wide damages model, (ii) will allow Plaintiffs to perform analyses that may contribute to liability findings, and (iii) will shed light on Plaintiffs' allegations that for at least some time during the Class period Noom was shaving a day off of the 14-day trial period. Additionally, this data is required by Judge Schofield's Individual Rules § III.C.5. That rule says that a party moving for preliminary approval of a class action settlement | **[DISPUTE]** – The parties disagree as to whether the requested data is discoverable and whether Defendants' proposed alternative is sufficient. |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| confer on which data is relevant in this litigation. | Plaintiffs' allegations that for some portion of the relevant period Noom shaved a day off of the 14-day trial period. *See* Sept. 30, 2020, Decl. of I. Meyer ¶ 29 (Noom "shaved a day off of the trial period so even customers who knew to track the deadline were getting converted and charged for [a full] subscription.").<br><br>Further, Noom contends that the Class should not include customers who knowingly assented to Noom's charges after the end of the trial period. This data could potentially help to identify these "happy customers" and thus assist the parties and the Court in defining the Class.<br><br>Mr. Riccardi testified on November 18, 2020 that he was familiar with Noom's | | amounts refunded and charged back.<br><br>The rule that Plaintiffs cite contemplates the calculation of average damages per class member based on the size of the class and aggregate damages, which is made clear when reading the entire sentence in context. *See* Schofield, J. Indiv. R. of Practice III.C.5(g) ("Any party moving for preliminary approval of class action settlement must disclose the proposed plan of allocation and provide . . . the anticipated recovery in dollars and as a percentage of the plaintiff's estimated damages for the class and any subclass in the aggregate and per class member, including any assumptions used in calculating these amounts.") | must have individualized data "per class member" in order to properly estimate damages for each class member.<br><br>Further, Noom contends that the Class should not include customers who knowingly assented to Noom's charges after the end of the trial period. This data will potentially help to identify these "happy customers" and thus assist the parties and the Court in defining the Class and adjudicating the issue of whether Noom's conduct is deceptive. Defendants' proposal is helpful for settlement purposes but not for liability and class certification issues. Finally, Mr. Riccardi's testimony regarding his familiarity with the financial transactions table confirms that this data will | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | financial transactions table, which includes customer billing data. | | | not be burdensome for Noom to produce here. | |
| Request No. 4: For each Class Member produce the same data Defendant produces for Plaintiffs in response to Document Request No. 1(b). Plaintiffs are willing to narrow the data encompassed by this request and consider a mutually agreed upon sampling methodology to extract a sufficient sample of data responsive to this Request but first need information regarding the available data and the data set from which any sample would be derived. | *See* RFP No. 1(b). | [Intentionally left blank pending further discussion of this request] | Noom is willing to meet and confer with Plaintiffs regarding a reasonable sampling of class member data. | The parties further discussed a sampling methodology during their October 29 meet and confer and Defendants committed to providing a description of the data it maintains on Class members, a description of the size of the data set to be sampled, as well as any gaps or other issues with the data. | **No judicial guidance needed at this time.** |
| Request No. 5: Data or documents sufficient to identify the state of residency of each Class Member, the dates of enrollment of each Class Member, and the method of each Class Member's | *See* RFP No. 3. | Not relevant or proportional; overbroad; unduly burdensome. | Absent a showing of relevance, Noom will not produce individualized Class Member data. Noom agrees to produce a chart sufficient to show Aggregate subscription data regarding the class | *See* Plaintiffs' above responses to RFP Nos. 3 and 4. As discussed above, Mr. Riccardi's testimony appears to indicate that this data is readily available to Noom. | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| enrollment. As discussed during the September 17, 2020 meet and confer, Plaintiffs are willing to accept this data in the same spreadsheet form as the data Defendant produces in response to Request No. 3. Please also note, that the data Defendant produces in response to Document Request No. 4 may subsume the data sought by this Request. | | | from March 2017 to the present. The chart will include how the subscription was purchased; total subscription charges broken down by state, year, annual revenue; annual amounts refunded and charged back. | | |
| Request No. 10: The source code for Noom's coach software related to membership cancellation, renewal, and refunds. | Noom's "coach" bot is the only way consumers can cancel their trial membership before being auto-renewed. As a "bot," the coach is programmed to respond to prompts from customers. Plaintiffs are entitled to know exactly how the coach is programmed to respond to the variety of ways consumers may interact with the coach. Conceptually, Plaintiffs' request is no different than | Not relevant or proportional; Plaintiffs have not narrowed this request. | Noom strongly objects to this request, which seeks highly proprietary information and is not relevant or proportional to the needs of the case. Plaintiffs have not demonstrated why they could possibly need the source code for Noom's coach software, given all of the other substantial document commitments Noom has made. Plaintiffs' request for source code is contrary to | As discussed at left, Plaintiffs are entitled to know exactly how the coach is programmed to respond to the variety of ways consumers may talk to the coach. Plaintiffs' request is no different than a request for a customer service script. Plaintiffs are entitled to see exactly how the coach bot is programmed to work. Further, there is evidence that Noom tested the effect of the timing of the coach's | **[DISPUTE]** – The parties disagree as to whether this data is discoverable. |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | a request for a customer service script. Noom elected to use a bot to interact with consumers and Plaintiffs are entitled to see exactly how that bot is programmed to work. Further, a former Noom employee has put evidence in the record that Noom tested "deferred coaching," in which Noom explored whether a trial customer was more likely or less likely to continue with Noom past the trial period depending on whether Noom assigned a coach earlier or later in the trial. Sept. 30, 2020, Decl. of I. Meyer ¶ 17. Evidence of deceptive coach programming would be relevant to commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer | | the general rule that source code should only be produced as a last resort, based on a strong showing of need. *See Synopsys, Inc. v. ATopTech, Inc.*, No. 13-02965, at *4 (N.D. Cal. Mar. 16, 2015) (denying motion to compel source code where it "would be duplicative of discovery" the plaintiff already possessed and the risk to defendant "resulting from the exposure of its valuable proprietary information [was] significant"); *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12-mc-193, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013) (denying motion to compel production of source code noting that it is "the most sensitive and confidential property of" the respondent and "extreme measures are ordered to protect their confidentiality); *Viacom Int'l, Inc. v. Youtube Inc.*, | involvement on customer engagement and potentially membership renewal. | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | protection claims (Counts I, III–X). It would also be relevant to a merits ruling on fraud, deceptive business practices, unjust enrichment, and conversion. | | 253 F.R.D 256, 260-261 (S.D.N.Y. 2008) (denying motion to compel production of source code, even where protective order existed, because the protective order was "nevertheless not as safe as nondisclosure" and "there [was] no reason to rely on [it] without a preliminary proper showing justifying the production" of the source code); *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) ("[I]t is well recognized among lower courts that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property"). | | |
| Request No 15: Documents sufficient to show Noom's presentation of the terms of its automatic renewal offer | No dispute. | See responses and objections to RFP No. 19. | Defendant will conduct a reasonable search and produce non-privileged and responsive documents that | No dispute. | **Full Resolution.** |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| to Class Members in California. | | | it can collect without undue burden sufficient to show the automatic renewal offer terms presented to putative California Class members in the Noom purchase flow during the Relevant Period. | | |
| Request No. 16: Documents sufficient to show Noom's acquisition of California Class Members' affirmative consent to Noom's automatic renewal offer. | No dispute. | See responses and objections to RFP No. 20. | Defendant will conduct a reasonable search and produce non-privileged and responsive documents that it can collect without undue burden sufficient to show Noom's acquisition of affirmative consent in the Noom purchase flow from putative California Class members during the Relevant Period. | No dispute. | **Full Resolution.** |
| Request No. 17: Documents sufficient to show Noom's provision of an acknowledgement to Class Members in California that includes the terms of Noom's automatic renewal offer, cancellation policy, the information regarding how to cancel. | No dispute. | See responses and objections to RFP No. 21. | Defendant will conduct a reasonable search and produce non-privileged and responsive documents that it can collect without undue burden sufficient to show Noom's acknowledgement email containing the terms of the | No dispute. | **Full Resolution.** |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | | | automatic renewal offer transmitted to putative California Class during the Relevant Period. | | |
| Request No. 18: Documents sufficient to show Noom's provision to Class Members in California of a toll-free telephone number, electronic mail address, a postal address or mechanism for cancellation. | No dispute. | See responses and objections to RFP 22. | Defendant will conduct a reasonable search and produce non-privileged and responsive documents that it can collect without undue burden sufficient to show Noom's disclosures related to cancellation during the Relevant Period. | No dispute. | **Full Resolution.** |
| Request No. 19: Documents sufficient to show whether Noom allowed California Class Members the ability to cancel exclusively online. | No dispute. | See responses and objections to RFP 23. | Defendant will conduct a reasonable search and produce non-privileged and responsive documents that it can collect without undue burden sufficient to show Noom's disclosures related to cancellation during the Relevant Period. | No dispute. | **Full Resolution.** |
| Request No. 30: All complaints, in whatever form (written or oral), received by Noom related to the Subject Matter of this Litigation. As discussed during the | Noom agreed on October 21 to propose a sampling methodology for purposes of this RFP. During the parties' October 21 meet-and-confer, Noom committed to providing | See Responses and Objections to RFP No. 36. | Defendant agrees to meet and confer with Plaintiffs regarding production of sample of complaints regarding its automatic renewal process, refund and cancellation policies. | Based on Mr. Riccardi's deposition testimony, it should not be difficult or burdensome to produce the responsive customer complaint sampling being discussed here. | **No judicial guidance needed at this time.** |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| September 17, 2020 meet and confer, the parties may be able to use a statistically significant sample to limit the burden of Defendant producing the customer complaints received by Noom related to the Subject Matter of this Litigation. | Plaintiffs with a description of its customer complaint data, a description of the size of the data set to be sampled, as well as any gaps or other issues with the data. As of November 17, Defendants have not proposed a sampling methodology to Plaintiffs or otherwise provided any information regarding their customer complaint data. Noom data scientist John Riccardi testified at his November 18 deposition that he was familiar with customer complaints being kept in a data table that presents a row for each support ticket created for a customer and that data is imported from Zendesk and the table includes, among other things, a description of the customer complaint and the date/time when the support ticket was opened. | | | | |

| Plaintiffs' Revised Rule 34 Request | Connection to Plaintiffs' Claims and Relevant Issues | Defendants' Objection(s) to Plaintiffs' Revised Request | Defendants' Proposed Limitation(s) to the Request | Plaintiffs' Response | Resolution (Full or in Need of Judicial Resolution) |
|---|---|---|---|---|---|
| | As discussed above, the SAC details the extraordinary consumer backlash to the conduct that is the subject matter of this litigation, including thousands of consumer complaints, the BBB's warning to the consuming public about Noom, and Noom customer service public postings admitting that consumers are being systematically deceived. SAC ¶¶ 3, 79–85.<br><br>The data sought here will be used to show commonality, typicality, and predominance of Plaintiffs' fraud (Count XI), unjust enrichment (Count XII), conversion (Count XIII), and state consumer protection claims (Counts I, III–X).  Such evidence can also be used to show that Defendants' conduct is deceptive. | | | | |