# Cooley

Aarti Reddy  
+1 415 693 2103  
areddy@cooley.com

VIA CM/ECF

December 7, 2020

Honorable Lorna G. Schofield  
United States District Court  
Southern District of New York  
500 Pearl Street  
New York, New York  10007

Re:   *Nichols v. Noom, Inc.*, Case No. 1:20-cv-03677-LGS  
      Opposition to Plaintiffs' Letter Request for Bellwether Process

Dear Judge Schofield:

Defendants Noom, Inc. and Artem Petakov ("Noom") oppose Plaintiffs' request for extraordinary departures from the applicable rules in this putative nationwide class action.

Plaintiffs brought this action alleging that millions of Noom customers across the country were uniformly deceived by Noom's autorenewal and coaching practices. They filed pursuant to Rule 23, representing to this Court that they would meet the prerequisites for alleging a nationwide class. Now, after amending their complaint twice and learning through initial discovery—itself hampered by Plaintiffs' substantial delays—of the fatal flaws in their class certification theories that will prevent them from certifying the classes as pled in the complaint, Plaintiffs have changed tack in an attempt to evade a ruling under the very standards **they chose.** They ask this Court to make an extraordinary exception to applicable rules by indefinitely deferring any global ruling on dismissal, class certification, and merits regarding Plaintiffs' nationwide class and state subclass claims. Instead, Plaintiffs want to escape their burden of showing that class certification is appropriate after a "rigorous analysis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) and litigate claims from "1 to 5" unspecified state subclasses they believe might be best for them.

If Plaintiffs wished to litigate one to five cases, they could have done so by filing a complaint on behalf of only those subclasses. They instead chose to pursue claims on behalf of a purported nationwide class and seven state subclasses. Failing to hold Plaintiffs to their choice would be unprecedented, as reflected by Plaintiffs' failure to identify even a *single case outside the mass torts or MDL context in which such a bellwether process has been implemented*.[1] It would also be grossly prejudicial to Noom, allowing Plaintiffs to avoid rulings on the pleadings or class certification, delaying full adjudication of all of Plaintiffs' claims for years, and permitting Plaintiffs to proceed with their preferred claims out of order—all while Noom continues to incur substantial costs in engaging in discovery and defending against all of Plaintiffs' claims. This Court should reject Plaintiffs' transparent and unjustified attempt to avoid judicial scrutiny of the individual issues that would preclude class certification, and allow this suit to proceed under the procedures that Plaintiffs themselves chose.

I.   **Plaintiffs' Proposal to Implement a Bellwether Process in this Consumer Fraud Autorenewal Class Action is Unsupported by Any Relevant Authority.**

---

[1] Equally unprecedented is Plaintiffs' bizarre request that this Court "dissuad[e] Noom" from re-filing its motion to dismiss because a "'bellwether process' should streamline the issues presented by this case." (ECF 114 at 1.) They cannot cite a single case that has ever applied bellwether staging at the pleadings stage, let alone one that denies leave to file a motion to dismiss on that basis.

# Cooley

Honorable Lorna G. Schofield
December 7, 2020
Page Two

Plaintiffs, in an obvious attempt to avoid judicial scrutiny of the individualized issues that preclude class certification, ask this Court to graft onto this consumer fraud class action a process developed in an entirely different context for an entirely different purpose. This case is not a mass torts lawsuit; it is an autorenewal suit that alleges consumer fraud on behalf of putative classes. Yet the bellwether process was developed for—and is used almost exclusively in—multidistrict litigation involving mass tort claims "to assist in valuing cases and to encourage settlement." Alexandra D. Lahav, Bellwether Trials, 76 Geo. Wash. L. Rev. 576, 577-78 (2008). "The concept is straightforward: in a situation that has engendered hundreds of thousands of individual tort cases, the court system is swamped with potential trials; rather than run them all, run a few." 4 William B. Rubenstein, Newberg on Class Actions § 11:11 (5th ed. 2020); Monique C.M. Leahy, Use of Bellwether Trials in Mass Tort Litigation, 156 Am. Jur. Trials 219 §§ 1, 5 (2020) (similar). The use of bellwether trials in MDLs arose as an alternative to the class action procedure because of a "resistance towards the use of class actions . . . as viable means of resolving **mass tort** litigation." Zachary B. Savage, Scaling Up: Implementing Issue Preclusion in Mass Tort Litigation Through Bellwether Trials, 88 N.Y.U. L. Rev. 439, 450-51 (2013) (emphasis added). As presiding Judge Furman observed in In re GM LLC Ignition Switch Litig., bellwether trials in MDLs serve as a specialized "case management tool[]" that helps "parties . . . develop litigation frameworks that can be used in cases remanded to the originating courts." In re GM LLC Ignition Switch Litig., No. 17 Civ. 06486 (JMF), Dkt. 422, ¶ 2 (S.D.N.Y., Aug. 30, 2017) (MDL action involving product defect claims). No such considerations are present here, because Your Honor would be presiding over the nationwide class and the seven state subclasses.

It is unsurprising, then, that each of Plaintiffs' cited authorities involves the use of bellwethers in mass torts litigation, and virtually all are in the MDL context. Sloan v. GM LLC, No. 16 Civ. 07244 (EMC), 2020 WL 1955643, at n.1, *4 (N.D. Cal. Apr. 23, 2020) (parties voluntarily agreed to bellwether process in action involving manufacturing defect). In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig., No. 10 Ml. 2151 (JVS), (C.D. Cal. Nov. 9, 2011) (product liability MDL action); In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., Case No. 08 WP 65000 (same).

Not only is Plaintiffs' gambit without support in precedent, it is a stark departure from the practice of this Court, other courts in this Circuit, and courts throughout the federal judiciary—all of which routinely resolve multistate consumer fraud claims in a single consolidated proceeding.[2] Plaintiffs provide no basis for their request to depart from this universal practice.

## II. Implementing a Bellwether Process Is Contrary to Rule 42 and Would be Highly Inefficient and Unfairly Prejudicial to Noom.

The Court's authority to order bellwether trials is governed by Rule 42(b)—a standard that Plaintiffs do not cite, let alone apply, in their request. The rule provides that "separate trials" may be ordered "[f]or convenience, to avoid prejudice, or to expedite or economize." Fed. R. Civ. Proc. 42(b). Applying the proper standard, Plaintiffs' request for bellwether staging fails, because it would be extraordinarily prejudicial to

---

[2] See, e.g., Price v. L'Oreal USA, Inc., No. 17 Civ. 614 (LGS), 2018 WL 3869896, at *8 (S.D.N.Y. Aug. 15, 2018) (Schofield, J.) (simultaneously resolving nationwide class, New York, and California subclasses); see also In re Chicago Bridge & Iron Co. N.V. Sec. Litig., No. 17 Civ. 1580, 2020 WL 1329354, at *3 (S.D.N.Y. Mar. 23, 2020) (Schofield, J.); Ahern v. Apple, Inc., 411 F. Supp. 3d 541, 549-551 (N.D. Cal. 2019) (resolving claims by putative nationwide class and 14 state subclasses under 46 causes of action without resorting to bellwether); Simington v. Lease Fin. Grp., LLC, No. 10 Civ. 6052, 2012 WL 651130, at *1 (N.D.N.Y. Feb. 28, 2012) (resolving putative nationwide class bringing consumer fraud claims under the laws for 46 different state consumer fraud statutes); 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1780.1 (3d ed. 2020) (citing cases from around the federal judiciary that have resolved putative class actions without the use of bellwether staging).

# Cooley

Honorable Lorna G. Schofield
December 7, 2020
Page Three

Noom and would significantly delay resolution of the claims.

**First and foremost**, Plaintiffs' proposal would unjustly afford Plaintiffs multiple opportunities to succeed in certifying any subclass or portion of a subclass, while forcing Noom to brief multiple rounds of class certification oppositions in order to resolve the claims. Even if Noom were to prevail as to the specific subclasses in phase one, Plaintiffs would reserve the right to further litigate "dismissal, class certification, and merits phases," dragging out the case for years. The costs and delay for undertaking these repetitive, cumbersome procedures—while they are sure increase Plaintiffs' bargaining leverage against Noom—are simply unjustifiable.

**Second**, by litigating only certain state subclasses and "simplifying" the issues, Plaintiffs also seek to minimize their burden of proof and defer consideration of myriad individualized issues that preclude certification. Plaintiffs' proposal would, by design, preclude the Court from timely considering, for example, variations in state law as a basis to deny nationwide class certification—an approach that is contrary to Plaintiffs' own authorities, which hold that a "district court has a 'duty,' before certifying a class, to 'take a close look' at whether the common legal questions predominate over individual ones." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 97-8 (2d Cir. 2018) (remanding "to the district court to conduct a more thorough analysis" as to variations in state law).

**Third**, Plaintiffs have indicated they wish to proceed with litigating the California subclass first (11/20/20 email from B. Mcinturff). But their request to "apply" findings from that subclass to later proceedings is both inefficient and illogical because Plaintiffs have only asserted violations of the autorenewal statute under **California** law, which may not be applied to **non**-California subclasses. Cal. Bus. Prof. Code §§ 17600, et. seq. Plaintiffs do not allege that Noom violated any other state's automatic purchase renewal law, and it is highly unlikely that the Court's findings as to this specific statute could be applied to other subclasses in this case.

**Fourth**, Plaintiffs' request to "stage" litigation of "1 to 5" state subclasses is nonsensical and inefficient, because **there are only seven total state subclasses to litigate**—Plaintiffs have **not** pled subclasses for all "remaining 44 states."  (Ltr. at 1.) The SAC only pleads claims under Alabama, California, Washington, Texas, District of Columbia, New York, and Ohio law, and generically alleges common law claims in the alternative under "the laws of each state where defendants do business or . . . on behalf of each individual state class." Such allegations cannot sustain subclasses under the laws of the 44 unpled states, and Plaintiffs' cited authorities do not hold otherwise. *See Oliver v. Am. Express Co.*, No. 19 Civ. 566 (NGG), ECF No. 1 (separately stating claims under consumer protection laws of 32 states); *Langan*, Case No. 3:13-cv-01471-JAM, ECF No. 12 (¶ 34) (same; under consumer protection laws of 21 states).

**Finally**, while Plaintiffs propose to divide this case into successive lawsuits that will undoubtedly drag on for years, they do not propose narrowing discovery at all. Their proposal will lead to the needless protraction of discovery, which has already been obstructed by Plaintiffs' recalcitrance. Since July, Plaintiffs have engaged in a concerted effort to delay efficient resolution of the claims, already amending their complaint twice and throwing up every conceivable roadblock in discovery. For example, while discovery is scheduled to close this week, Plaintiffs declined to accept Noom's offer to adopt the Seventh Circuit Model ESI Protocol Your Honor recommended and immediately begin negotiating search terms and have, instead, bogged Noom down with costly and unnecessary disputes regarding ESI. Noom has already spent well over **600 hours** just on investigating ESI issues and negotiating its ESI protocol; Plaintiffs nevertheless still teed up an astonishing 31 disputes on that protocol in a one-sided, sixty-page chart, and continue to raise dozens of new ESI-related disputes on a weekly basis. (ECF Nos. 19, 24, 24-2, 36, 48, 49, 55, 65, 65-1, 72, 79, 86, 90, 96, 105, 113). Rather than accept Plaintiffs' invitation to introduce additional costs and delays, this Court should order discovery and litigation to proceed expeditiously.

# Cooley

Honorable Lorna G. Schofield
December 7, 2020
Page Four

Respectfully submitted,

*/s/ Aarti Reddy*_____
Aarti Reddy

239004454