

January 8, 2021

**Via ECF**
Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Nichols, et al. v. Noom, Inc., et al.*, No. 20 Civ. 3677 (LGS) (KHP)

Dear Judge Parker:

On behalf of Plaintiffs and the proposed Class, we write to provide a status update on the parties' outstanding ESI protocol disputes, to submit Plaintiffs' proposed ESI protocol (attached as **Ex. A**), to provide the Court with a chart comparing the disputed provisions of the parties' respective ESI protocol proposals to aid the Court's review (attached as **Ex. B**), and to raise the issue as to whether a special master may help jumpstart ESI discovery and eliminate burdens on Your Honor.

As to the status of the parties' ESI protocol negotiations since Your Honor's last guidance at the November 10 conference, we are disappointed to report that there have been **_no_** negotiations in the last two months.  Instead, Defendants turned what should have been a straightforward telephone call into a costly game that has frozen critical document and deposition discovery. Notwithstanding our multiple meet and confer requests, defense counsel has refused for nearly a month to pick up the phone to have a conversation about the parties' disagreements.  This defense strategy is as transparent as it is classic: gum up the works and overwhelm the Court so that Defendants can withhold harmful documents and communications that counsel knows exist.

Even worse, when Plaintiffs examined the ESI protocol that Defendants asked the Court to endorse on December 7, we discovered that **Defendants had secretly changed their position on several issues** that were previously agreed upon or that Defendants had concealed in the run-up to the October 13 conference.  Unbeknownst to Plaintiffs or the Court, it turns out that while the Court was ruling on the positions that Defendants took in the ESI protocol that they proposed to Plaintiffs on September 30, Defendants had on October 11 submitted to the Court a *different* protocol.  After the November 10 conference, Defendants edited their unilaterally-modified protocol, accused Plaintiffs of delay, and on December 7 asked the Court to rubberstamp a protocol which they claimed "specifically reflect[ed] the Court's [prior] rulings."  ECF No. 120 at 2.  When Plaintiffs flagged this troubling conduct and asked to meet and confer, Noom refused based on the claim that it had already spent too much time on the ESI protocol.  Noom also provided no excuse for its disturbing behavior which is contrary to both Your Honor's exhortations to work cooperatively and the ABA Model Rules of Professional Conduct (3.4: Fairness to Opposing Party and Counsel).

It is understandable that Your Honor has grown frustrated with the continued conflict (as have Plaintiffs), which apparently led to Your Honor's directive on December 15 that the parties either work out an agreed-upon ESI protocol by today's date or "the Court will enter its own order."  One

would have expected the Court's consternation to spur Defendants to come to the table and have earnest discussions with Plaintiffs, but Defendants instead took the opposite tack, doubling down and continuing to refuse to meet and confer to work out a final ESI protocol.  Noom apparently hopes that the Court will not be willing to hear any more ESI protocol disputes or take the time to fashion an ESI protocol that reflects the concessions Plaintiffs obtained from Noom or the guidance Your Honor issued in three separate conferences.  This is not how discovery is supposed to work.  *See In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2014) ("Discovery is run largely by attorneys, and the court and the judicial process depend upon honesty and fair dealing among attorneys.").

Noom's bet is a calculated one.  Noom loses little if the Court adopts Plaintiffs' protocol or rules on the outstanding disputes outlined in the comparison chart; any losses as to the outstanding disputes would not be material to Noom.  On the other hand, if Noom's gambit is successful, Noom would get the benefit of further delay and may be able to sidestep prior rulings or concessions if the Court enters a protocol that does not incorporate the issues the parties and the Court have already addressed.  While it is unfortunate that Noom has taken this course, in a case of this magnitude—with liability in the eight or nine figures—gridlock is undoubtedly an appealing option for Defendants.

Accordingly, Plaintiffs suggest that the Court consider appointing a special master under Rule 53 or the Court's inherent authority to assist in clearing the ESI logjam.  Considering the complexity and sheer size of this lawsuit—more than 5 years' worth of ESI, millions of documents, numerous causes of action, the remaining outstanding complex document and deposition discovery, and extensive negotiations of Defendants' ESI collection, search terms, and related testing—Plaintiffs believe that the parties will need frequent and ongoing assistance to complete discovery in a timely and cost-effective manner.  A special master would likely be well-suited to provide such assistance.  Rule 53 contemplates that ESI discovery in complex cases can tax judicial resources, as it has in this case.  This is why special masters are appointed with regularity in this District as they are beneficial for easing the heavy burdens that complex ESI discovery forces upon the courts.  As Judge Shira Scheindlin (Ret.) recently noted in the article attached hereto as **Ex. C**, "these appointments are very beneficial in resolving disputes quickly, streamlining discovery, . . . and—somewhat surprisingly—reducing cost and delay." *Id.* at 1; *see also id.* at 1–2 (collecting cases where special masters were appointed in this District and others).  Indeed, as Judge Scheindlin's many years on the bench demonstrate:

> [A] special master [is] particularly useful in being available on short notice, familiar with the case from prior disputes, and generally able to rule quickly because he or she was not burdened with other courtroom commitments.

* * *

> Judges in the Second Circuit and elsewhere use special masters in circumstances where the sheer size of the case necessitates a full-time neutral working to resolve issues, or where investigation and evaluation of facts is necessary.

* * *

> [I]n the area of electronic discovery, . . . it can be invaluable to have someone available to get the parties on the same page with respect to search techniques, scope of search, and a reasonable time frame for accomplishing a search.

*Id.* at 1–2.

Thank you for the Court's attention to these matters, and we look forward to discussing the issues raised herein and in the various status letters at the January 12 status conference.

                                         Respectfully submitted,

                                         /s/ Steven L. Wittels
                                            Steven L. Wittels

cc:  All counsel of record (via ECF)