

February 3, 2021

<u>Via ECF</u>
Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Nichols, et al., v. Noom, Inc., et al.*, No. 20 Civ. 3677 (LGS) (KHP)

Dear Judge Parker:

We write jointly on behalf of Plaintiffs and the proposed Class ("Plaintiffs") and Defendants Noom, Inc. and Artem Petakov ("Defendants" or "Noom") in accordance with the Court's January 13, 2021 Order (ECF No. 145) as modified by the January 29, 2021 Order (ECF No. 176) to outline the issues to be addressed at tomorrow's February 4 telephonic conference.

   I.   **Plaintiffs' Update on the Parties' RFP Discussions**

While the parties reached agreement on certain RFPs, 12 RFPs are still disputed.  A list of these narrowed RFPs, and Noom's responses, is attached as Ex. A.  Plaintiffs believe two facts are critical for the Court's guidance on these 12 RFPs.  *<u>First</u>*, consistent with the Court's ruling on RFP Nos. 31 (customer-complaint related communications) and 33 (communications related to the BBB's warning about Noom), Plaintiffs narrowed all requests that sought "all documents and communications" to only seeking "internal reports, memoranda, PowerPoint presentations, meeting agendas or other similar materials or communications with Noom's management and/or Noom's Board of Directors."  Plaintiffs' narrowed language tracks the language Your Honor used for RFP Nos. 31 and 33.  *See* ECF No. 145 at 3.  Despite this narrowing, Noom is blocking this key discovery on the grounds that it bears solely to Noom's "intent."

*<u>Second</u>*, in addition to the fact that Your Honor already rejected this argument when the Court required Noom to produce documents responsive to the Court's version of RFP Nos. 31 and 33, Noom's position would deprive Plaintiffs of documents that are commonly produced in consumer protection litigation.  For example, on September 2, 2020, the FTC announced a $10 million civil penalty and substantial injunctive relief against the children's online learning company ABCmouse because of that company's identical tactic of combining a hidden autorenewal feature with making "it difficult for consumers to cancel."  Compl. ¶ 20, *FTC v. Age of Learning, Inc.*, No. 20 Civ. 7996 (C.D. Cal.), attached as Ex. B.  The FTC's complaint—which followed the FTC's standard civil investigatory process and sought relief under the exact same legal standards as the consumer protection claims Plaintiffs bring here—relies heavily on internal correspondence demonstrating that ABCmouse's top brass ignored many red flags showing that consumers were tricked *en masse* into purchasing ABCmouse's services.  *Id.* at ¶¶ 17–19 (quoting communications by key players regarding autorenewal practices), ¶¶ 40–42, 44 (quoting internal discussions about consumers'

"confusion and/or inability to find and complete the cancellation on-line," internal analysis that the "cancellation process is confusing," and web design meant to "lower cancellation percentage."). Plaintiffs are entitled to this exact same type of discovery.[1]

### II.   Outstanding Agenda Items from Prior Letters and the January 12 Conference

- The issues from the canceled December 10 conference, ECF No. 120: Issues 1, 3–13, 15. Issue 12(4) is replaced by item III.5 in the following section. Issues 12(5) and (6) are moot.

- The issues outstanding from the January 12 conference, ECF No. 142: Issues 2, 4. Issue 4 is Plaintiffs' request for a conference to discuss the problems with Noom's idiosyncratic interpretation of the Court's December 10 ruling regarding documents attached to emails via hyperlink. Noom employees' extensive use of embedded links in both documents and emails, combined with Defendants' refusal to provide the linked documents, is prejudicing Plaintiffs. By way of example, Plaintiffs cannot access an embedded design document and the "▮▮▮▮▮▮▮▮▮▮" in a Noom cancellation policy document with the ▮▮▮▮▮ to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C, NOOM_59313; *see also* Ex. D (link to a revenue spreadsheet in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); NOOM_59181, Ex. E (inaccessible customer service scripts in a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Other documents with unusable embedded links include a manual advising employees "[▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" NOOM_59315, and a manual describing customers requesting refunds as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ NOOM_59176. This same document advises Noom employees to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

- The parties' disputes regarding Defendants' refusal to disclose the information necessary to perform adequate sampling of customer complaints and refund requests.

### III.   Plaintiffs' New Agenda Items for the February 4 Conference

1. Noom is refusing to provide clarifying information regarding Class Member data that it has produced in discovery. Noom's November 2020 discovery responses included membership data, refund data, and revenue data, among other information. From November 2020 through mid-January 2021, the parties worked cooperatively to enhance Plaintiffs' understanding of the data and Defendants provided additional related data. However, on January 14 Noom suddenly began

---

[1] *See, e.g., Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150, 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) ("Because [New York consumer fraud law] is modeled after the Federal Trade Commission Act, federal courts have interpreted the statute's scope [to include] the types of offenses to the public interest that would trigger Federal Trade Commission intervention . . . .").

insisting that Plaintiffs "serve formal discovery" pertaining to this exact same data. After Plaintiffs reminded Noom that Plaintiffs' questions relate to data produced in discovery, including in response to Plaintiffs' interrogatories, Noom refused to address the fact that (a) Defendants cut off their aggregate revenue, chargebacks, and refund data as of October 6, 2020; and (b) Defendants refuse to provide revenue, chargeback, and refund data that corresponds to Defendants' aggregate "app open" and "engagement" statistics.[2]

2. Defendants refuse to clarify the discrepancies between the customer data, revenue data, and refund data where Defendants' November 2020 interrogatory responses conflict with other data provided by Defendants in November and December 2020.

3. Noom maintains metrics generally known as "eRev" that project revenue and income on a per-customer basis. These metrics are likely to be relevant to class certification and liability issues. Yet Noom refuses to provide: (1) eRev's input variables; (2) corresponding probability tables or assumptions designed to measure customer tenure and/or expected payments; (3) documents describing how the eRev "logistic regression" works, *see* Schaffer Tr. 158:1-8.

4. Noom data scientist Paul Schaffer identified an analysis of the number of paying customers who never opened the Noom app. *See* Schaffer Tr. 204:22-211:12. Mr. Schaffer's testimony makes clear that this document is easy to locate. *Id.* at 210:10-21. Yet Defendants are withholding this document based on a spurious claim that they do not "believe this [document] is relevant."

5. Noom data scientist John Riccardi testified that Noom employees use Slack for sharing video and audio files. *See* Riccardi Tr. 264:20–266:3. Since Mr. Riccardi's November deposition, Plaintiffs have been asking Defendants to identify the Noom Slack channels that contain any audio or video files. But Defendants refused, insisting instead that they will *only* review audio or video files *if* those audio or video files happen to be located within a Slack conversation retrieved via search terms. As Plaintiffs explained in response, there is no reason to expect responsive and relevant audio or video files to be co-located adjacent to or nearby responsive text search terms (terms which, of course, cannot on their own retrieve **non-text** audio or video files).

Nonetheless, to reach a compromise, Plaintiffs recently offered to identify specific Slack channels that, based on their names or participants, would appear to contain relevant materials such that any audio or video files that exist therein should be reviewed for responsiveness without reliance on search terms. Defendants rejected this offered compromise, claimed that Plaintiffs' request was "premature," and said they would only be "willing to discuss" this issue (without any commitment to do so) *after* Defendants begin producing Slack messages, which is likely months down the road. Plaintiffs should be given an opportunity to identify Slack channels that, based on their names or participants, suggest that any audio or video files that exist therein are relevant.

---

[2] In addition: (c) Defendants voluntarily produced "conversion rate data" showing the number and percentage of consumers who converted from trial periods to being "successfully charged post-trial" but Defendants refuse to provide similar data for customers who cancelled before the trial ended, as well as the number of customers who cancelled, received a chargeback, were refunded, or were not successfully charged and to conform that data to the date ranges of Noom's engagement data; (d) Defendants refuse to disclose the metrics available to understand why customers may not be "successfully charged post-trial"; (e) Noom only provided aggregate "app open" and "engagement" statistics for consumers who were "successfully charged post-trial" and Defendants are refusing to provide those statistics for all customers regardless of whether they were "successfully charged post-trial."

6. Noom continues to violate Your Honor's order that it provide a list of folder names for each of the individuals listed on Defendants' ESI repository. Oct. 26 Hr'g Tr. at 24:15–25, 30:17–18.

IV.     **Noom's Response to Plaintiffs' Agenda Items.**

Noom submits that many of the discovery disputes that Plaintiffs have raised in their last several joint submissions are not germane to the resolution of the claims in this lawsuit and are unlikely to move discovery forward. This includes, for example, Plaintiffs' repeated re-litigation of settled ESI disputes and their request to modify a protective order so that they can obtain discovery in a state court action *they have not even filed yet*. Plaintiffs still seek to tee up 21 disputes at the upcoming conference, even though this Court has already held two conferences in the last four weeks. The sheer volume of these disputes is simply not relevant or proportional to the needs of this case. Rather than offering a point-by-point rebuttal to each of the many disputes raised in Plaintiffs' latest submission, Noom responds briefly to certain points below and will be prepared to respond on all issues during the Parties' upcoming conference.

**Plaintiffs' Motion to Compel Further Informal Discovery (Items 1-3.)** In an effort to jumpstart discovery, Noom has already provided Plaintiffs with an unusual amount of informal discovery regarding its data sources. For example, Noom has produced: (1) detailed information regarding subscription plan types; (2) more than a dozen usage metrics include app opens, conversion, and engagement metrics in response to multiple rounds of queries requested by Plaintiffs; and (3) various sets of financial metrics (e.g., revenue, refunds, cancellations, chargebacks) broken out by various types (e.g., by year, state, method of purchase). Plaintiffs do not deny this and even describe much of this data in their position statement. *See* bullet 1 in Plaintiffs' Item II above. Plaintiffs have also deposed two of Noom's data scientists for seven hours each, and asked these witnesses questions about this information.

Yet Plaintiffs remain unsatisfied and continue to propound Noom's counsel with serial demands for informal discovery—all while avoiding serving a single discovery request since *August*. Although Noom recognizes that some amount of informal discovery can be useful, it is not reasonable, fair, or consistent with Federal Rules of Civil Procedure 33 and 34 for Plaintiffs to build their case by interviewing counsel and propounding serial information demands over email. The discovery rules exist with good reason: Plaintiffs' process of gathering information informally has been highly inefficient. Because there are no discovery requests at issue, it is not even clear exactly what relief Plaintiffs are requesting from the Court. Plaintiffs often misconstrue the results of Noom's data queries and propound endless questions to clarify perceived gaps or discrepancies.

Instead of continuing to respond to these demands, Noom recently produced a list of all engagement metrics that it maintains internally and asked Plaintiffs to identify the data it would like Noom to produce so that Plaintiffs can perform their own data analyses. Alternatively, Plaintiffs may serve clear, specific interrogatories so that Noom can perform additional queries with clear parameters, to mitigate Plaintiffs' further confusion.

**Noom's ESI Repository (Items 5-6):** Plaintiffs once again challenge the sufficiency of Noom's ESI repository. The Court ruled on this issue on October 13, 2020 and Noom respectfully

submits that no good cause exists to reopen this issue.  (Oct. 13, 2020 Tr. at 7:13-15 ("the inventory is perfectly appropriate in terms of where their emails and documents for planning and so forth would be held").  In any event, since that time, Noom has already supplemented its ESI repository twice at Plaintiffs' request.

**Noom's Production of Google Drive links.  (ECF 142, Issue No. 4):**  Plaintiffs also seek to re-litigate Noom's production of embedded hyperlinks, but the Court has already entertained briefing and ruled on this issue.  ECF No. 122.  Even if these issues were not already decided and there was good cause to revisit them, Plaintiffs' position is nonsensical and inconsistent.  Plaintiffs now challenge the existence of embedded links in Google drive *documents*—but Plaintiffs previously *consented* to the format of Noom's production of these documents and only objected that the embedded links were unavailable in Google *emails*.  ECF No. 98 (joint letter stating that Plaintiffs "have agreed Noom will use the Google Vault software tool to export Google Drive documents").  The Court should refuse to entertain any further briefing or argument on this issue.

Respectfully submitted,

/s/ J. Burkett McInturff
J. Burkett McInturff

*Counsel for Plaintiffs and the Proposed Class*

/s/ Aarti Reddy
Aarti Reddy

*Counsel for Defendants Noom, Inc. and Artem Petakov*

cc: All Counsel of Record (*Via ECF*)