UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                      :

MOJO NICHOLS, SUSAN BREWSTER,      :     1:20-CV-03677 (LGS) (KHP)
DUANE DEA, MARYANNE DERACLEO,   :
KAREN KELLY, REBECCA RICHARDS,   :
JENNIFER SELLERS, and STACY       :
SPENCER,                           :
                                      :
Individually and on Behalf of All Others  :
Similarly Situated,                 :
                                      :
                      Plaintiffs,   :
                                      :
                 v.                :
                                      :
NOOM, INC., ARTEM PETAKOV, and    :
JOHN DOES 1 TO 5,             :
                                      :
                      Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION
COMPLAINT PURSUANT TO RULES 12(f), 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

I.    NOOM. ....................................................................................................... 2

    A.    Noom's Program. .............................................................................. 2

    B.    Signing up for Noom. ......................................................................... 3

    C.    The Named Plaintiffs' Noom Experiences. ......................................... 5

    D.    Procedural History. ............................................................................ 7

LEGAL STANDARDS ........................................................................................ 7

ARGUMENT ...................................................................................................... 8

I.    THE TAC SHOULD BE STRICKEN UNDER RULE 12(F) BECAUSE IT IS NOT A "SHORT AND PLAIN STATEMENT OF THE CLAIM" AS REQUIRED BY RULE 8. .................. 8

II.   ALL OF PLAINTIFFS' CLAIMS FAIL FOR LACK OF PARTICULARITY. ..................... 9

    A.    Virtually All of the Claims Sound in Fraud and Are Subject to Rule 9(b). ........... 9

    B.    No Plaintiff Satisfies the Applicable Pleading Requirements. ........................... 10

    C.    The GBL Claims (Count 1) Are Also Deficiently Pled. .................................... 15

    D.    Plaintiffs' Claims Against Artem Petakov Are Also Deficiently Pled. ............... 16

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE 47 JURISDICTIONS WITH NO REPRESENTATIVE PLAINTIFF. ............................................................. 17

IV.   PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS. .................................... 18

    A.    No Plaintiff Has Standing to Seek Injunctive Relief. ...................................... 18

    B.    The California Plaintiffs' Statutory Claims Fail for Additional Reasons. ........... 20

        1.    The California Plaintiffs fail to state claims for equitable relief (Counts 2-6). .............................................................................. 20

        2.    The California Plaintiffs fail to state claims under the FAL (Count 2). ........................................................................................ 23

        3.    The California Plaintiffs fail to state a claim under the CLRA (Counts 5-6). ................................................................................ 23

        4.    The California Plaintiffs fail to state a claim under the California Weight Loss Contracts Law (Count 7). ........................................... 24

        5.    California Plaintiffs fail to state a claim under the Bot Disclosure Law (Count 4). ....................................................................... 25

    C.    The Named Plaintiffs' Common Law Claims Fail for Additional Reasons. ........ 26

# TABLE OF CONTENTS
(continued)

**Page**

|   |   |   |   |
|---|---|---|---|
| | 1. | Plaintiffs fail to state a claim for unjust enrichment. | 26 |
| | 2. | Plaintiffs fail to state a claim for money had and received. | 27 |
| | 3. | Plaintiffs fail to state a claim for conversion. | 28 |
| D. | | Plaintiffs' Claims Under At Least Eight States Are Barred by Class Action Waivers or Notice Requirements (Counts 10, 11, 15, 20, 28, 36, 48, 50). | 29 |

**CONCLUSION** .......................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*A.IA. Holdings, S.A. v. Lehman Bros., Inc.*,
No. 97-4978, 1998 WL 159059 (S.D.N.Y. Apr. 1, 1998) .......................................................11

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...............................................................................15

*Adams v. Cole Haan, LLC*,
No. Sacv 20-913 JVS, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)..............................21, 22

*In re Arris Cable Modem Consumer Litigation*,
No. 17-cv-1834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018)......................................11, 12, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................8

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)...........................................................................................19

*BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC*,
No. 13-0638, 2013 WL 6003701 (S.D.N.Y. Nov. 13, 2013), *vacated in part
on other grounds*, 603 F. App'x 57 (2d Cir. 2015)..................................................................12

*Brown v. Sandimo Materials*,
250 F.3d 120 (2d Cir. 2001)...........................................................................................26

*Brumfield v. Trader Joe's Co.*,
No. 17-3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018)..................................................27

*Camp v. Ala. Telco Credit Union*,
No. 2:12-cv-2237, 2013 WL 2106727 (N.D. Ala. May 13, 2013) ........................................29

*Chambers v. NASA Fed. Credit Union*,
222 F. Supp. 3d 1 (D.D.C. 2016)...................................................................................28

*Daly v. Castro Llanes*,
30 F. Supp. 2d 407 (S.D.N.Y. 1998)................................................................................26

*Delgado v. Ocwen Loan Servicing, LLC*,
No. 13-4427, 2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ...................................................30

*Dominguez v. Banana Republic, LLC*,
No. 1:19-cv-10171, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) ........................................19

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Elkind v. Revlon Consumer Prods. Corp.*,
   No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015)....................................19

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
   400 F. App'x 611 (2d Cir. 2010) ....................................................................20, 26

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
   No. 13-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)....................................9

*In re Frito-Lay N.A., Inc. All Nat. Litig.*,
   No. 12-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...................................12

*In re Fyre Festival Litig.*,
   399 F. Supp. 3d 203 (S.D.N.Y. 2019)...................................................................12

*Gale v. Int'l Bus. Machs. Corp.*,
   781 N.Y.S.2d 45 (App. Div. 2004)........................................................................15

*Gascho v. Global Fitness Holdings, LLC*,
   863 F. Supp. 2d 677 (S.D. Ohio 2012) .................................................................29

*In re Gen. Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017)...................................................................27

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. CV 20-769, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020)................................21

*Gomez v. Jelly Belly Candy Co.*,
   No. EDCV17-00575, 2017 WL 8941167 (C.D. Cal. Aug. 18, 2017) ......................21

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   988 F. Supp. 2d 434 (D. Del. 2013), *vacated in part on other grounds*, 806
   F.3d 105 (3d Cir. 2015)........................................................................................24

*Greene v. Gerber Prods. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ....................................................................30

*Hanna v. Walmart Inc.*,
   No. 5:20-cv-01075, 2020 WL 7345680 (C.D. Cal. Nov. 4, 2020) ..........................21

*Haywood v. Massage Envy Franchising, LLC*,
   887 F.3d 329 (7th Cir. 2018) ...............................................................................15

*Headfirst Baseball LLC v. Elwood*,
   168 F. Supp. 3d 236 (D.D.C. 2016) ......................................................................29

**TABLE OF AUTHORITIES**
(continued)

Page

*Healy v. Beer Inst.*,
    491 U.S. 324 (1989).................................................................................................17

*Hernandez v. BMNY Contracting Corp.*,
    No. 17-9375, 2019 WL 418498 (S.D.N.Y. Jan. 17, 2019) .....................................13

*Holve v. McCormick & Co.*,
    334 F. Supp. 3d 535 (W.D.N.Y. 2018)...................................................................20

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ..........................................................................9

*Hunt v. Enzo Biochem, Inc.*,
    471 F. Supp. 2d 390 (S.D.N.Y. 2006).....................................................................16

*Huu Nguyen v. Nissan N. Am., Inc.*,
    No. 16-05591, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017)...............................27

*I.B. v. Facebook, Inc.*,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) ....................................................................24

*Izquierdo v. Mondelez Int'l, Inc.*,
    No. 16-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016).................................20

*Johnson v. Pluralsight, LLC*,
    728 F. App'x 674 (9th Cir. 2018) ...........................................................................23

*Kandel v. Brother Int'l Corp.*,
    No. 08-1040, 2009 WL 9100406 (C.D. Cal. Feb. 13, 2009) .................................28

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*,
    No. 11-8196, 2014 WL 4401275 (S.D.N.Y. Sept. 4, 2014) ..................................28

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ..........................................................................................20

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ............................................................................................25

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
    897 F.3d 88 (2d Cir. 2018)...............................................................................17, 18

*Lisk v. Lumber One Wood Preserving, LLC*,
    792 F.3d 1331 (11th Cir. 2015) ..............................................................................30

# TABLE OF AUTHORITIES
(continued)

**Page**

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   306 F. Supp. 3d 629 (S.D.N.Y. 2018)........................................................................9

*Lopez v. Stages of Beauty, LLC*,
   307 F. Supp. 3d 1058 (S.D. Cal. 2018)..................................................................23

*LRC Realty, Inc. v. B.E.B. Props.*,
   No. 2016-G-0076, 2020 WL 7863159 (Oh. Ct. App. Dec. 31, 2020) ...................28

*In re MacBook Keyboard Litig.*,
   No. 5:18-cv-2813, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .........................21

*Magi XXI, Inc. v. Stato Della Cita Del Vaticano*,
   22 F. Supp. 3d 195 (E.D.N.Y. 2014) ....................................................................28

*Matsumura v. Benihana Nat'l Corp.*,
   542 F. Supp. 2d 245 (S.D.N.Y. 2008).................................................................9, 10

*Mayron v. Google LLC*,
   54 Cal. App. 5th 566 (2020) ..................................................................................23

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ...............................................................................9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
   No. 91 Civ. 2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ............................16

*Morrison v. Nat'l Australia Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008)....................................................................................8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*,
   720 F. Supp. 284 (S.D.N.Y. 1989).........................................................................17

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
   9 Cal. 5th 279 (2020) .............................................................................................20

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)...................................................................................18

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...............................................................................................20

*Oden v. Boston Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ..............................................................11, 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Pernice v. Bovim*,
   No. 15-541, 2015 WL 5063378 (D.D.C. Aug. 26, 2015) ......................................................27

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017) ..................................................................................17

*Pungitore v. Barbera¸*
   506 F. App'x 40 (2d Cir. 2012) ...........................................................................................18

*Richards v. Direct Energy Services, LLC*,
   915 F.3d 88 (2d Cir. 2019) ...................................................................................................18

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
   407 F. Supp. 3d 1216 (N.D. Ala. 2019) ..............................................................................28

*Sanders v. Grenadier Realty, Inc.*,
   367 F. App'x 173 (2d Cir. 2010) .........................................................................................13

*Santos v. Ohio Bureau of Workers' Comp.*,
   801 N.E.2d 441 (Ohio 2004) ...............................................................................................27

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
   No. 15 Civ. 6549, 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ..........................................17

*Skouras Theatres Corp v. Radio-Keith-Orpheum Corp.*,
   19 F.R.D. 151 (S.D.N.Y. 1953) .............................................................................................8

*Small v. Lorillard Tobacco Co.*,
   720 N.E.2d 892 (N.Y. 1999) ................................................................................................16

*Song Fi, Inc. v. Google, Inc.*,
   No. 14-5080, 2016 WL 1298999 (N.D. Cal. Apr. 4, 2016) ..................................................24

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...................................................................................20, 21, 22

*Speedfit LLC v. Chapco Inc.*,
   No. 15-1323, 2016 WL 5793738 (E.D.N.Y. June 29, 2016) .................................................13

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................................10

*Turnier v. Bed Bath & Beyond*,
   No. 3:20-cv-00288-L-MSB, 2021 WL 409720 (S.D. Cal. Feb. 5, 2021) ..........................22, 23

# TABLE OF AUTHORITIES
(continued)

**Page**

*United States v. Spectrum Painting Corp.*,
  No. 19-2096, 2020 WL 5026815 (S.D.N.Y. Aug. 25, 2020)..................................26

*UPS Store, Inc. v. Hagan*,
  99 F. Supp. 3d 426, 431 (S.D.N.Y. 2015)...................................................................8

*Vaccariello v. XM Satellite Radio, Inc.*,
  295 F.R.D. 62 (S.D.N.Y. 2013) ................................................................................19

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y.1997) .................................................................................13

*Woods v. Maytag Co.*,
  No. 10-0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) .........................12, 13, 15

*Worldwide Travel, Inc. v. Travelmate US, Inc.*,
  No. 14-00155, 2015 WL 1013704 (S.D. Cal. Mar. 9, 2015) ....................................29

*Wornow v. Register.Com, Inc.*,
  778 N.Y.S.2d 25 (App. Div. 2004) ...........................................................................29

*Wright v. Publishers Clearing House, Inc.*,
  372 F. Supp. 3d 61 (E.D.N.Y. 2019) ........................................................................15

*Wu v. iTalk Global Comm'ns, Inc.*,
  Case No. 20-cv-07150-PSG (C.D. Cal. Feb. 2, 2021) .............................................22

*Young v. Young*,
  191 P.3d 1258 (Wash. 2008)....................................................................................27

*Yunker v. Pandora Media, Inc.*,
  No. 11-03113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .................................24

*Zorilla v. Uber Techs., Inc.*,
  No. 4:16-CV-615, 2018 WL 8732106 (S.D. Tex. Mar. 15, 2018) ...........................29

**Statutes**

Ala. Code Ann. § 8-19-10(f)..........................................................................................29

Ark. Code Ann. § 4-88-113(f)(1)(B) .............................................................................30

**TABLE OF AUTHORITIES**
(continued)

**Page**

Cal. Bus. & Prof. Code
  § 17200...........................................................................................................................25
  § 17600 *et seq.*................................................................................................................23
  § 17941...........................................................................................................................25

Cal. Civ. Code
  § 1694.5(a)......................................................................................................................24
  § 1694.8(b)......................................................................................................................24
  § 1694.9...........................................................................................................................24
  § 1770(a).........................................................................................................................23

Ga. Code Ann. § 10-1-399(a)............................................................................................30

La. Rev. Stat. § 1409(A)...................................................................................................30

Mont. Code Ann. § 30-14-133..........................................................................................30

SC Code 39-5-140..............................................................................................................30

Tenn. Code Ann. § 47-18-109...........................................................................................30

## PRELIMINARY STATEMENT

Noom, Inc. ("Noom") is one of the most popular health apps in the world. Plaintiffs attempt to malign Noom through false and misleading allegations in their Third Amended Complaint ("TAC"), but the truth is that users, not to mention health experts, love Noom. In fact, as longwinded as the nearly two hundred-page TAC is, it nowhere disputes that Noom has helped millions of people successfully lose weight.

Even taking Plaintiffs' baseless allegations as true—though, of course, Noom vehemently disputes their truth—the TAC remains fatally flawed.  Plaintiffs appear to realize the same: Each time Noom has brought a motion to dismiss, Plaintiffs have avoided adjudication of the insufficiency of their pleading through amendment or repeated requests to delay resolution of most of their claims indefinitely, in favor of a "bellwether" process. Plaintiffs now resort to a blunderbuss approach by alleging no fewer than *279* separate counts across *915* paragraphs. This is not a serious statement of viable claims, but a strategy designed to overwhelm the pleading process with so many counts and allegations that the Court will be more inclined to allow a future bellwether motion or defer ruling on the viability of the claims. This approach should not be rewarded. The TAC and each cause of action pled within it fails to state a claim and should be dismissed.

As an initial matter, this sprawling pleading violates Federal Rule of Civil Procedure 8, which requires "a short and plain statement" of the claims. It should be dismissed on that basis alone, as neither Noom nor the Court should be required to wade through hundreds of meandering allegations to make sense of the claims alleged.

Should the Court choose to consider Plaintiffs' claims, each of them should nevertheless be dismissed because Plaintiffs do not allege their own experiences with the required particularity. Almost none of the TAC's numerous allegations of Noom's alleged "deception" are tethered to

any Plaintiff's actual experience using Noom. The TAC does *not* allege that Noom deceived any of the eight named Plaintiffs regarding its automatic renewal policy, its marketing and advertising practices, or its product features. As just one example, no Plaintiff identifies a single advertisement or disclosure that purportedly misled her—in fact, three Plaintiffs even concede they understood Noom's automatic renewal policies and attempted to cancel during the trial period. Plaintiffs' allegations are nonsensical and fall short of applicable pleading requirements, and their claims fail.

Plaintiffs also attempt to bring hundreds of claims under the laws of states and territories where they are not residents. But these jurisdictions have no nexus with Plaintiffs' purchases of Noom and Plaintiffs cannot state claims under their laws.

Plaintiffs' claims fail for myriad other reasons. No Plaintiff has standing to pursue injunctive relief. Plaintiffs' claims for equitable relief under the California Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") should be dismissed because the TAC *also* seeks damages for their alleged injuries from Noom's autorenewal practices, and Plaintiffs thus cannot plead they lack an adequate remedy at law; the CLRA also does not apply to software programs such as Noom; Plaintiffs cannot plead a claim under the California Autorenewal Law ("ARL") because there is no private right of action; and finally, Plaintiffs seek to advance class claims under at least seven statutes that preclude such claims, and plead myriad common law claims that do not comport with the facts of this case.

For these and other reasons, Plaintiffs' TAC should be dismissed in its entirety.

## STATEMENT OF FACTS

### I.   NOOM.

#### A.   Noom's Program.

Noom, which has been downloaded by millions of users globally, is overwhelmingly popular and is one of the few science-driven weight loss programs that has been proven to actually

work. (TAC ¶ 1.) While Plaintiffs try to depict Noom as a "scam,"[1] Noom has a 4.7 star rating on the Apple app store based on hundreds of thousands of reviews, and has been endorsed by dozens of third parties.[2] Medical experts who have studied Noom agree that the program helps users lose weight and stay healthy—in fact, Noom was the first virtual program to be approved by the Center for Disease Control as a treatment for diabetes.[3]

Noom's innovative mobile app offers many features that allow users to, among other things, log their meals, track their weight, read psychology-based articles, and track their fitness goals. (TAC ¶ 84.) The app also includes an instant messaging feature through which users can ask questions. (*Id*.) For certain common inquiries, including cancellation of a Noom subscription, Noom automatically directs the user to the appropriate instructions or links. (*Id.* ¶ 88.)

**B.      Signing up for Noom.**

As is common with weight loss programs, to get started, users complete an intake evaluation on Noom's website or mobile application. (TAC ¶¶ 62, 64.) Users can then sign up for a low-cost trial period by entering their payment information in the check-out flow of the mobile app or website. (*Id.* ¶ 66.) Noom informs users before the transaction is completed, and reiterates in bolded font in a confirmatory email sent immediately after sign up, that a user's trial

---

[1] While Plaintiffs repeatedly cite approximately 2,300 complaints with the Better Business Bureau as their primary proof of Noom's supposed deception (*e.g.*, TAC ¶ 94), their own allegations demonstrate that these complaints comprise less than 0.005% of all users who have downloaded the program.

[2] *E.g.*, Anna Hecht, Meet Noom: The revolutionary health and wellness program you have to try, (last updated Apr. 5, 2019), https://www.cnn.com/2019/04/02/cnn-underscored/noom-weight-loss-app-shop/index.html; Barbara Brody, How to Find the Weight-Loss Plan That Will Work for You, (last updated Apr. 11, 2019), https://www.rd.com/list/weight-loss-plan/.

[3] Sang Ouk Chin, et al., Successful weight reduction and maintenance by using a smartphone application in those with overweight and obesity, 6 SCIENTIFIC REPORTS 34563 (2016), https://www.nature.com/articles/srep34563; Press Release, Noom, Noom's Diabetes Prevention Program is the First Fully Mobile Program to Receive Official Recognition by the CDC (Apr. 11, 2017), https://web.noom.com/press-releases/2017/04/noomsdiabetes-prevention-program-first-fully-mobile-program-receive-official-recognition-cdc/.

will convert into an ongoing subscription if she does not cancel before the trial ends. (*Id.* ¶ 74.)

As shown in the very screenshot Plaintiffs include in the TAC, Noom states, prior to sign-up, the exact date that the trial will end and convert to a full subscription plan. (*Id.* ¶ 68.) In that text, shown below, Noom discloses above the purchase button: "**Your 14-day trial will last until December 20th, 2019.** You can cancel anytime before then and will not be charged the full program amount." (*Id.* (emphasis in original).) The same disclosure goes on to state: "If you decide Noom is right for you, **on December 20th, 2019, you will be charged one payment of $99** for your 2 month course ($49.50/month)." (*Id.* (emphasis in original).)



Users who sign up for a Noom trial also receive a confirmation email that includes the same cancellation and renewal terms set forth above. (*Id.* ¶ 74.) The TAC includes a screenshot of several Plaintiffs' confirmatory emails, each of which shows that Noom discloses the date the trial will end, and that Noom automatically charges renewing payments after the trial period. (*Id.*

¶¶ 74, 123, 145, 155, 166, 177, 188.) The email goes on to repeat the full disclosure provided at the time of purchase in unequivocal bolded font and further states that users can cancel within the 14-day trial period without being charged the full plan amount. (*Id.*)

Noom also makes it easy for users to cancel—before their trial converts to an ongoing subscription and afterwards. Noom makes clear at the time of purchase, in the confirmation email, and on its website that users can cancel anytime, thereby preventing future renewals. (*See, e.g.*, *id.* ¶ 68 (showing purchase screen with quote "cancel anytime").) If a user decides to cancel, all she needs to do is say so through Noom's messaging interface (i.e. "let [their] coach know"). (*Id.*) Noom also provides a link that walks a user through each cancellation step. (*Id.* ¶ 89.)

### C.    The Named Plaintiffs' Noom Experiences.

The TAC pleads claims on behalf of eight Plaintiffs from six states and the District of Columbia. The first 47 pages of the TAC asserts various false and misleading allegations against Noom[4]—i.e., that Noom's advertising and autorenewal disclosures were deceptive; that Noom did not inform users that they must cancel within the trial period to avoid being charged a subscription fee; that Noom's cancellation process was confusing; and that Noom deceived users by employing "bot" coaches. (TAC ¶¶ 1-120.) However, none of the eight Plaintiff's descriptions of their actual experiences using Noom supports these claims.

*Advertising and Marketing. First*, not a single Plaintiff alleges a specific advertisement they saw or heard that prompted them to sign up for Noom. Instead, they all offer the same copy-and-paste allegation that they "heard" or "saw" unspecified ads at some unspecified time and

---

[4] While not at issue at this juncture, the Court should be aware that the TAC repeatedly misstates internal data produced by Noom. For example, the TAC states that ███████████████████████████████████████ and that ████ ██████████ (TAC ¶¶ 47, 49, 51.) These assertions are patently false, as Plaintiffs have since accepted.

place. (TAC ¶¶ 121, 132, 143, 153, 164, 175, 186, 197.) Similarly, each Plaintiff also claims she was "misled by the representations and omissions outlined above"—but there do not appear to be any such "representations" pled in the hundreds of paragraphs "above," as the TAC does not identify a *single* advertisement or marketing material Plaintiffs claim to be deceptive.

*Autorenewal Disclosures. Second*, not a single Plaintiff identifies the purchase flow that they supposedly found misleading. Instead, each Plaintiff alleges "[u]pon information and belief, the relevant representations in the sign-up flow on the app were in all material respects the same as those seen by the other named Plaintiffs." (*Id.* ¶¶ 121, 132, 143, 153, 164, 175, 186, 197.) Yet, ***half of the Plaintiffs do not appear to have been confused at all***: three Plaintiffs (Richards, Sellers, and Nichols) admit they tried to cancel within the trial period, making clear they each understood their obligation to do so. (*Id.* ¶¶ 125, 179, 190.) And Plaintiff Deracleo was charged for her subscription and cancelled it ***on the very day she first pled claims in this action***, raising serious questions as to what role Plaintiffs' counsel played in her incurring these alleged injuries.[5] (TAC ¶¶ 158, 160; ECF No. 22.)

Likewise, no Plaintiff offers any details about their own experience with Noom's cancellation process. The same three Plaintiffs who understood their obligation to cancel during the trial period (Nichols, Richards, and Sellers) each plead that they "attempted to cancel within the trial period but w[ere] unable to do so," and leave it at that. (TAC ¶¶ 125, 179, 190.) No other Plaintiff describes cancelling Noom, and no Plaintiff claims that they believed that deleting the app would result in cancellation.

*Product Features. Third*, no Plaintiff offers specifics about their use of the Noom app. Not a single Plaintiff alleges having any interaction with the coaching platform, let alone alleges

---

[5] As discussed below, while several Plaintiffs also purport to attach a screenshot of their email receipt, no Plaintiff alleges having read or relied on this email receipt in any fashion. *Infra* Part II. B.

they were unable to communicate with a coach; were not assigned a coach; received messages about their subscription or the cancellation process from a coach; believed that "Eva" was a coach; or received "false promises [] concerning the degree of 'personalization'" offered to them. (*Id.* ¶¶ 92, 225(e), 241(e), 253(e), 300(e), 309(e), 320(e), 329(e), 338(e).)

Further, not a single Plaintiff alleges that they did not own an app-enabled smart phone or were unable to access Noom's services—in fact, almost all of the Plaintiffs admit they downloaded and accessed the app without issue. (*Id.* ¶¶ 124, 135, 156, 178, 189, 200.) And, no Plaintiff alleges downloading or using multiple Noom accounts. (*Id.* ¶¶ 53, 100, 112.)

### D.   Procedural History.

This lawsuit was filed by California Plaintiff Geraldine Mahood in May 2020, who asserted, *inter alia*, that Noom violated California's ARL.[6] On January 12, 2021, Plaintiffs sought leave to amend their Complaint for a third time in six months. Noom did not oppose and Magistrate Judge Parker granted the amendment, while denying Plaintiffs leave to amend further absent good cause. (January 12, 2021 Tr. at 29:24-30:3, 31:3-5.)

While still at core a complaint based on Noom's purportedly deficient autorenewal disclosures, Plaintiffs' TAC now purports to describe 14 different categories of "deception" and asserts 279 claims against Noom based on the laws of 54 jurisdictions. As none of Plaintiffs' pleadings have ever been tested on a motion to dismiss, the TAC is effectively a culmination of every baseless suspicion about Noom that Plaintiffs hope to develop through discovery.

## LEGAL STANDARDS

***Rule 12(b)(6).*** A complaint must be dismissed if it does not allege facts sufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The pleading must not allege

---

[6] Plaintiff Mahood voluntarily dismissed her claims after Noom submitted evidence on a 12(b)(1) motion demonstrating she had falsely pled she had to wait months for a refund, when she received a refund immediately after being charged, and months before filing suit. (ECF Nos. 61, 93.)

conduct that is "conceivable"; it must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009) (quoting *Twombly*, 550 U.S. at 570).

**Rule 12(b)(1).** Rule 12(b)(1) dismissal is appropriate when the district court lacks subject matter jurisdiction to resolve a claim. "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

**Rule 12(f).** Pursuant to Rule 12(f), the "[t]he court [on its own] may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter" at any time.

## ARGUMENT

The TAC suffers from many insurmountable flaws. Plaintiffs' pleading is unreasonably long, and should be stricken in its entirety for that reason alone, but yet simultaneously lacks the requisite particularity under Rule 9(b) and similar standards. Most of the claims in the TAC fail for the independent reason that there is no named Plaintiff to allege them. Even beyond these issues, Plaintiffs' claims fail for many other reasons under various state laws.

## I.    THE TAC SHOULD BE STRICKEN UNDER RULE 12(F) BECAUSE IT IS NOT A "SHORT AND PLAIN STATEMENT OF THE CLAIM" AS REQUIRED BY RULE 8.

Federal Rule of Civil Procedure 8 requires a complaint to be a "short and plain" statement of the claim plaintiff is pursuing. As a result, where a complaint is so lengthy that it would be unreasonably burdensome for a defendant to respond, courts may dismiss the complaint entirely. *See UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 431, 442 (S.D.N.Y. 2015) (directing party to re-plead "sprawling 175-paragraph Complaint"). The TAC far exceeds what is reasonable under Rule 8—containing **915** paragraphs and nearly **50,000** words that fills 180 pages. *See Skouras Theatres Corp v. Radio-Keith-Orpheum Corp.*, 19 F.R.D. 151, 152 (S.D.N.Y. 1953) (dismissing a complaint consisting of "35,000 words . . . 124 printed pages containing 291 separately numbered

paragraphs of which many contain numerous lengthy subparagraphs"); *In re Merrill Lynch & Co.,* *Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (dismissing complaint spanning 98 pages and 367 paragraphs and stating that it violated "the requirement in Rule 8(e) that pleadings be simple, concise, and direct" (citation omitted)). Notably, Plaintiffs have not performed even the most basic diligence in preparing their pleading, including, for example, by vetting which consumer fraud statutes actually permit class actions. *Infra* IV. D. Neither the Court nor Noom should have to wade through hundreds of paragraphs of allegations to decipher the claims at issue, and the TAC should be stricken in its entirety for this reason alone.

## II.   ALL OF PLAINTIFFS' CLAIMS FAIL FOR LACK OF PARTICULARITY.

Plaintiffs' hundreds of incendiary and irrelevant allegations regarding Noom are an attempt to mask the TAC's lack of substance. Because no Plaintiff supports her claims with specific allegations as to her experience or how she was supposedly misled, the TAC should be dismissed.

### A.   Virtually All of the Claims Sound in Fraud and Are Subject to Rule 9(b).

Almost all of Plaintiffs' claims must satisfy Rule 9(b) pleading standards. Any cause of action that bears a "close legal relationship to fraud" **or** that is predicated on allegations of fraudulent conduct is subject to Rule 9(b), "regardless of whether fraud is an element of the claim." *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008). Relevant here, if a complaint alleges a "course of fraudulent conduct," each claim that relies on these common allegations must meet Rule 9(b)'s requirements. *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 54 (E.D.N.Y. 2014) (citation omitted) (applying 9(b) to California CLRA, UCL, and FAL claims premised on course of fraudulent conduct); *see also Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 640 n.5 (S.D.N.Y. 2018) (similar); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-2450, 2015 WL 7018369, at *12-14 (S.D.N.Y. Nov. 12, 2015) (applying 9(b) where plaintiffs' claims were based on a course of

conduct and did not distinguish between fraud claims and non-fraud claims).[7]

Plaintiffs allege a unified course of fraudulent conduct in which Noom allegedly intended to convince users to sign up for Noom and then impede cancellation of their subscriptions. (TAC ¶¶ 9, 10.) Each of Plaintiffs' claims is, in turn, premised on this alleged course of fraudulent conduct. For example, Plaintiffs allege that Noom violated the DCCPPA by, among other accusations: (1) engaging in a misleading marketing and billing program; (2) failing to make adequate disclosures regarding "charges that will be imposed;" and (3) failing to disclose all the material terms of enrolling in a Noom trial and the cancellation process. (*Id.* ¶ 309.) These allegations reflect "quintessential averment[s] of fraud," *Matsumura*, 542 F. Supp. 2d at 253, and appear throughout Plaintiffs' state consumer protection claims. (TAC ¶¶ 241 (FAL), 252 (UCL), 279 (CLRA), 300 (WCPA), 320 (OCSPA), 329 (ADTPA), 338 (TDTPA).) Plaintiffs allege similar conduct as a basis for their common law claims. (*See id.* ¶¶ 865, 890 (common law fraud); 870, 873-874, 895, 898-899 (unjust enrichment); 875, 878, 901, 905 (conversion); 882, 909 (money had and received).) These claims are each premised on the same alleged fraudulent scheme and are therefore subject to Rule 9(b).

## B.      No Plaintiff Satisfies the Applicable Pleading Requirements.

Although the gravamen of Plaintiffs' claims is that they were misled by Noom's automatic purchase renewal practices, Plaintiffs lodge a series of disjointed allegations relating to: (1) Noom's marketing or advertising; (2) Noom's automatic renewal disclosures; and (3) aspects of Noom's product (e.g., coaching). As to each, Plaintiffs fail to meet their pleading burden.

***Advertising and Marketing.*** These claims fail under Rule 9(b) because no Plaintiff alleges

---

[7] Defendants acknowledge that courts in this circuit have specifically recognized an exception to this practice GBL Section 349 claims are subject to a unique specificity requirement, discussed *infra* Part II. C, instead of Rule 9(b). *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014).

that she saw, read, heard, or relied on any specific advertisement or marketing material. Rather, their allegations are a transparent copy-paste job that recite the same two sentences regarding each Plaintiff's interaction with Noom's platform: (1) she "saw" or "heard" ads for Noom, at some unspecified time and place; and (2) she was "[m]isled by the representations and omissions outlined above[.]" (TAC ¶¶ 121-22, 132-33, 143-44, 153-54, 164-65, 175-76, 186-87, 197-98.) At a minimum, each Plaintiff must specify *which* statement she read and supposedly relied on and describe the who, what, where, when, and why of that reliance. *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 897-98 (E.D.N.Y. 2018). No Plaintiff does so, and each claim should be dismissed on that basis. *See A.IA. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-4978, 1998 WL 159059, at *7 (S.D.N.Y. Apr. 1, 1998) (complaint was deficient where it did not allege "particular fraudulent acts [defendant] committed with respect to any particular plaintiff," but instead "describe[d] a generic fraud, *as if each plaintiff's case [wa]s identical to every other case*") (emphasis added).

*In re Arris Cable Modem Consumer Litigation*, No. 17-cv-1834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) is instructive. There, the plaintiffs asserted that defendant misrepresented the speed and reliability of its modem and generally alleged that they relied on defendant's misrepresentations in purchasing the device. *Id.* at *2-3. The Court dismissed the UCL, CLRA and FAL claims under Rule 9(b), even though the complaint identified "a range of statements on Arris's website, on Amazon.com, and on the Modem's packaging that Plaintiffs allege[d] [were] misleading." *Id.* at *9. It held that these allegations were insufficient because plaintiffs "have not specified which statements any of them saw or relied on in deciding to buy the Modems," which "inhibit[ed] [defendant's] ability to defend against the charge." *Id.*

The same result follows here—indeed, the TAC is even ***more*** deficient than the complaint at issue in *Arris*, as Plaintiffs here have not identified even a single allegedly deceptive

advertisement or marketing material. Each Plaintiffs' failure to identify the specific actionable misrepresentation or omission that they saw/read/heard and subsequently relied on is fatal to their claims—and the hundreds of allegations in the TAC that are wholly untethered to their actual experiences using Noom cannot save them. *In re Arris*, 2018 WL 288085, at *9; *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 216-17 (S.D.N.Y. 2019) (dismissing claims where complaint lacked particularized facts showing that plaintiffs saw and relied on a particular statement); *Oden*, 330 F. Supp. 3d at 897-98 (similar); *In re Frito-Lay N.A., Inc. All Nat. Litig.*, No. 12-2413, 2013 WL 4647512, at *24-25 (E.D.N.Y. Aug. 29, 2013) (similar).[8]

*Autorenewal Disclosures.* Plaintiffs' allegations regarding Noom's automatic renewal disclosures are also deficiently pled under Rule 9(b), *or even Rule 8*. Instead of properly alleging what purchase flow screens they saw and supposedly relied on, the Plaintiffs plead "[u]pon information and belief, the relevant representations in the sign-up flow . . . were in all material respects the same" as those seen by other Plaintiffs. (TAC ¶¶ 121, 132, 143, 153, 164, 175, 186, 197.) Yet no named Plaintiff alleges which representations she saw in the sign up flow, and instead simply guesses it was the same as the purchase flow shown in the TAC. (TAC ¶¶ 60-70).

Under Rule 9(b), "[f]raud allegations cannot ordinarily be based 'upon information and belief,' except as to 'matters peculiarly within opposing party's knowledge.'" *Woods v. Maytag Co.*, No. 10-0559, 2010 WL 4314313, at *6 (E.D.N.Y. Nov. 2, 2010) (citation omitted). Here, since Plaintiffs allegedly all signed up for Noom, they undeniably had prior access to these facts.

---

[8] Plaintiffs cannot excuse this lack of detail by arguing that each Plaintiff saw representations that were "the same as those seen by the other named Plaintiffs." (*E.g.*, TAC ¶¶ 121, 132, 143, 153, 164, 175, 186, 197). "A plaintiff that fails to plead its fraud claims with sufficient particularity cannot avoid dismissal simply by placing its claims in the same complaint as another plaintiff's claims that do satisfy the Rule." *BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC*, No. 13-0638, 2013 WL 6003701, at *3 (S.D.N.Y. Nov. 13, 2013) (dismissing claims under Rule 9(b)), *vacated in part on other grounds*, 603 F. App'x 57 (2d Cir. 2015).

Moreover, by alleging they were misled by Noom's **public** disclosures, Plaintiffs have "conceded that this information was publicly accessible," thereby precluding allegations premised on information and belief. *Id.; see also Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y.1997) (holding that the Plaintiff was not permitted to plead on information and belief as to public advertisements Plaintiff purportedly relied on).

Indeed, even under the more relaxed Rule 8 standard, Plaintiffs may not allege on information and belief public facts that are in their own possession.[9] *Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 n.2 (2d Cir. 2010) (pleading on information and belief is not appropriate "if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge"); *Hernandez v. BMNY Contracting Corp.*, No. 17-9375, 2019 WL 418498, at *2 (S.D.N.Y. Jan. 17, 2019) (same). No party is more equipped to know which buyflow Plaintiffs experienced than Plaintiffs themselves. All of the Plaintiffs have failed to make **any** valid allegations about the purchase flow they viewed, and therefore cannot state any claim premised on any alleged deficiencies regarding the same. *See Speedfit LLC v. Chapco Inc.*, No. 15-1323, 2016 WL 5793738, at *9 (E.D.N.Y. June 29, 2016) (declining to consider allegations made upon information and belief where information was within the plaintiff's knowledge).

Plaintiffs' inability to plead these most basic facts related to their claim is especially problematic because at least three Plaintiffs (Nichols, Richards, and Sellers) admit attempting to cancel within the trial period—effectively conceding they were **not** misled by the unspecified autorenewal disclosures. (*Id.* ¶¶ 125, 179, 190.) Yet instead of remedying this threshold pleading defect, which has persisted through each iteration of Plaintiffs' complaint, Plaintiffs have only

---

[9] Plaintiffs nonsensically allege various other facts within their possession "upon information and belief," including that "Plaintiff Dea did not download the Noom app," and "never accessed his Noom app" (TAC ¶¶ 146, 150), and that "Noom sent [Plaintiff Spencer] the contradictory and confusing 'receipt' email discussed above" (TAC ¶ 199).

amended the TAC to reference a so-called autorenewal receipt email allegedly sent to Plaintiffs Richards, Brewster, Nichols, Dea, Deracleo, Kelly, and Sellers. (TAC ¶¶ 74-80, 123, 145, 155, 166, 177, 188.)[10]   These allegations do not save Plaintiffs' claims for two reasons. To start, this email was sent to Plaintiffs *after* they signed up for Noom and thus cannot form the basis for any claims related to their reliance on the autorenewal disclosures shown to them at the point of purchase. Furthermore, no ***Plaintiff alleges that she even read, much less relied on, the receipt email***. (*E.g.*, TAC ¶¶ 123, 134, 145, 155, 166, 177, 188, 199.) Nor can the Court plausibly infer reliance, given the Plaintiffs' other allegations that this "email is certain to be overlooked," and will often appear "only in the recipient's 'Promotions' or 'Spam' folder." (TAC ¶ 75.) Thus, Plaintiffs have still not pled their autorenewal claims with specificity, and they must be dismissed. *In re Arris*, 2018 WL 288085, at *9.

> ***Product features***. Plaintiffs' claims related to Noom's product features similarly fail under both Rule 9(b) and Rule 8. The TAC generally alleges that Noom employs "bot" coaches, that users experience difficulty accessing Noom's product because it is only available through the app, and that users are confused as to whether they can cancel their program by deleting the Noom app. (TAC ¶¶ 10, 18, 72.) These allegations are speculative and conclusory, and are thus insufficiently pled.[11] And further compounding these deficiencies, not a single Plaintiff alleges being deceived by any of these aspects of the Noom program. No Plaintiff alleges interacting with a bot coach or online concierge; having difficulty accessing Noom's product because it was only available

---

[10] Plaintiff Spencer fails to plead falsity or reliance as to this email, because she alleges receiving it but does not allege what that email said, *or* that she read or relied on it. (TAC ¶ 199.)

[11] *See, e.g.*, TAC ¶¶ 10 ("[u]nlike other apps . . . Noom also does not allow customers to cancel by simply deleting the Noom app from their phone"); 18 ("many customers . . . do not even understand that they have been assigned a 'coach' or know who their 'coach' is because the 'coach' is actually an artificial intelligence 'bot'"); 83 ("[n]ew trial customers are thus left in the dark to figure out. . . that Noom's entire program exists only on the app . . . .")).

through an app; or attempting to cancel her Noom program by deleting the app. (TAC ¶¶ 121-207.) Plaintiffs' failure to allege these basic details of causation and injury are fatal to the claims. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334 (7th Cir. 2018) (affirming dismissal of consumer fraud claims premised on defendant's advertisement of a one-hour massage because there was "no allegation in the complaint that [plaintiff's] belief about the length of the massage" caused her supposed injury).

### C.    The GBL Claims (Count 1) Are Also Deficiently Pled.

Although Section 349 GBL claims are not typically subject to Rule 9(b), they still must be pled with specificity—a standard that New York Plaintiff Deracleo cannot meet. *Woods*, 2010 WL 4314313, at *16. To state a Section 349 claim, "each plaintiff must 'individually plead [each of] the disclosures he or she received were inadequate, misleading, or false,'" and in doing so, must "identify the specific advertisements seen by each plaintiff" and provide an explanation as to why those advertisements were false or misleading. *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 66-67 (E.D.N.Y. 2019); *see also Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234-35 (E.D.N.Y. 2013) (dismissing Section 349 claim that "contain[ed] only general allegations about disclosures to all Plaintiffs, and d[id] not contain any allegations about the specific disclosures" the individual plaintiff received); *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (App. Div. 2004) (affirming dismissal of GBL claim for failure to plead causation with specificity). Since Plaintiff Deracleo fails to identify the specific statements on which she relied and how she was purportedly misled, her GBL claims also fail.

Likewise, Plaintiff Deracleo cannot rely on any allegations related to bot coaching or alleged difficulty accessing or cancelling the program as the basis for her GBL claim. To state a GBL claim, the plaintiff must plead "connection between the misrepresentation and [some] harm

from, or failure of, the product." *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (1999). As she too has not pled if and how this supposed deception injured her, the claim must be dismissed.

### D.     Plaintiffs' Claims Against Artem Petakov Are Also Deficiently Pled.

Plaintiffs' claims against Artem Petakov, Noom's President, also fail because their allegations are almost exclusively "sweeping references to the collective fraudulent actions of multiple defendants [which] will not satisfy the particularity requirements of 9(b)." *Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d 390, 400 n.71, 408 (S.D.N.Y. 2006) (dismissing fraud claims against individual officers based on "impermissibly vague" allegations); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) (Rule 9(b) requires that "each defendant . . . be advised of the fraud claims against him").

Here, the TAC indiscriminately asserts all claims against "Defendants." (*E.g.*, TAC ¶¶ 1, 2, 208.) Plaintiffs do not attribute a single alleged misstatement to Mr. Petakov, nor do they allege that Mr. Petakov designed or was otherwise involved in developing Noom's autorenewal disclosures, refund, or cancellation policies. Indeed, the TAC's only allegations that are specific to Mr. Petakov have no apparent nexus to the fraud claims, such as: (1) Mr. Petakov's coursework at Princeton, as described on his LinkedIn page (TAC ¶ 7); (2) cherry-picked quotes from media sources (*id.* ¶ 4); (3) a presentation Mr. Petakov purportedly gave at some unspecified time and place which "acknowledge[d] several key aspects of human decision making" (*id.* ¶ 8); (4) Mr. Petakov's "close[] involve[ment] in the oversight of . . . Noom's business practices," (*id.* ¶ 38); and (5) Mr. Petakov's announcement that the company would offer autorenewing subscriptions and would be charging a fee for trial subscriptions (*id.* ¶¶ 43, 108, 110). These allegations fall far short of pleading specific, actionable representations or other fraudulent conduct attributable to Mr. Petakov, and "under New York law, an officer or director is not, merely by virtue of his office,

liable for the tortious acts of the corporation." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 493-94 (S.D.N.Y. 2017) (citation omitted) (dismissing complaint that "contain[ed] no particularized factual allegations to support these conclusory assertions" of fraud by an individual).

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE 47 JURISDICTIONS WITH NO REPRESENTATIVE PLAINTIFF.

Plaintiffs are residents of Alabama (Sellers), California (Dea, Kelly), New York (Deracleo), Ohio (Richards), Texas (Spencer), Washington (Brewster), and Washington D.C. (Nichols). (TAC ¶¶ 29-36.) However, each of these Plaintiffs alleges claims under consumer protection statutes and the common law of forty-four *other* states and three territories, without alleging a nexus of any kind with these jurisdictions. (*Id.* ¶¶ 346-862.) Plaintiffs' failure to allege that the laws of these states actually apply to their relationship with Noom is dispositive of their claims. It is well-settled that a state law that attempts to control commerce "occurring wholly outside the boundaries of a State" is invalid under the Commerce Clause. *See, e.g.*, *Healy v. Beer Inst.*, 491 U.S. 324, 335–336 (1989); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 720 F. Supp. 284, 289 (S.D.N.Y. 1989) (invaliding consumer protection statute that attempted to regulate out-of-state commerce). As such, these claims fail under Rule 12(b)(6).

Noom expects Plaintiffs will cite *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88 (2d Cir. 2018), to argue they can allege claims on behalf of putative class members in other states. But that decision held only that whether a named plaintiff could represent a class of residents of another state should be resolved as question of predominance under Rule 23, and not of Article III standing. *Id.* at 95-96. This is a motion on the pleadings and what matters here is that Plaintiffs themselves have not stated the alleged claims, and they are barred from pursuing them. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15 Civ. 6549, 2018 WL 7197233, at *21 (S.D.N.Y. Dec. 26, 2018) ("Nothing in *Langan* . . . precludes a

defendant from moving to dismiss a CAFA plaintiff's claims under a particular statute pursuant to Rule 12(b)(6), on the grounds that the plaintiff fails to state a claim for its own account . . . .").

In fact, the Second Circuit took up exactly this issue in *Richards v. Direct Energy Services, LLC*, 915 F.3d 88, 106 (2d Cir. 2019). The court affirmed dismissal where a named plaintiff attempted to bring claims under another state's consumer protection statute. It found that even if the plaintiff had Article III standing to pursue such claims on behalf of residents of the state, the claims nonetheless failed ***under Rule 12(b)(6)*** because the Commerce Clause precluded them as extraterritorial—*i.e.* plaintiff could not state the claims in his individual capacity and that was all that mattered for resolution of the motion to dismiss. *Id.* at 105-06. Just as in *Richards*, the majority of Plaintiffs' claims must be dismissed because no Plaintiff can state those claims.[12]

## IV.    PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS.

### A.    No Plaintiff Has Standing to Seek Injunctive Relief.

"Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Pungitore v. Barbera¸* 506 F. App'x 40, 41 (2d Cir. 2012). No Plaintiffs' allegations meet this standard—a fact they have effectively conceded by pursuing the same injunctive relief claims in state court.[13] Plaintiffs' injunctive relief claims should thus be dismissed under Rule 12(b)(1).

***First***, each Plaintiff pleads the same boilerplate allegations that fall far short of either Rule 8 or Rule 9(b) pleading standards. Specifically, each claims that they "intend[] to continue to pursue a healthy diet and lifestyle and may purchase services, including Defendant's, in

---

[12] Specifically, the consumer protection statutes in Counts 13-59, as well as the state common law claims alleged as Counts 60-275, must be dismissed to the extent they are premised on the common law of states other than those Plaintiffs are resident in.

[13] Plaintiffs have represented to Judge Parker that they will be filing state court actions asserting the same injunctive relief claims against Noom that they are pursuing in this case. (ECF No. 142 at 3.)

furtherance of that pursuit, as long as she can gain some confidence in Noom's representations about its services." (TAC ¶¶ 131, 142, 152, 163, 174, 185, 196, 207.) These allegations are deficient—particularly given Plaintiffs' simultaneous claim that they "did not want to continue with Noom" after trying the app. (*E.g.*, TAC ¶¶ 124, 135). *See Dominguez v. Banana Republic, LLC*, No. 1:19-cv-10171, 2020 WL 1950496, at *4 (S.D.N.Y. Apr. 23, 2020) ("copy-and-paste" allegations of future harm and plaintiff's "fail[ure] to allege any nonconclusory facts of a real or immediate threat of injury" deprived Plaintiff of standing).

**Second**, Plaintiffs' purported basis for enjoining Noom is that they were "unaware that Noom would use [their] payment information to process unauthorized advance charges for a recurring non-refundable membership." (*E.g.*, TAC ¶ 198.) However, because Plaintiffs are "now aware of the alleged misrepresentations that they challenge, [] there is no danger that they will again be deceived by them." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015); *see also Berni v. Barilla S.p.A.*, 964 F.3d 141, 148 (2d Cir. 2020) (past purchasers had no standing to pursue injunctive relief because any future purchases will be "with exactly the level of information that they claim they were owed from the beginning"); *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (plaintiff could not seek injunctive relief because he "has demonstrated that he is now keenly aware of XM's renewal practices and policies, and as such, he is very unlikely to suffer" future injury).

**Third**, Plaintiffs' claims of future harm are conditional: each Plaintiff alleges he or she "may purchase services, including Defendant's . . . *as long as* [s/he] can gain some confidence in Noom's representations . . . ." (*E.g.*, TAC ¶ 196 (emphasis added).) Because Plaintiffs effectively concede they do not plan to use Noom absent some modification of the program, they cannot plead a real or immediate threat of injury. *See, e.g.*, *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535,

552 (W.D.N.Y. 2018) (dismissing injunctive relief claims based on plaintiff's allegation she would purchase the disputed product in the future only if the defendant altered its branding); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-04697, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) (dismissing claims for injunctive relief where plaintiff alleged he "would still be willing to purchase the current formulation" of the product "so long as [the defendant] engages in corrective advertising").

For each of these reasons, all claims for injunctive relief should be dismissed.

**B.    The California Plaintiffs' Statutory Claims Fail for Additional Reasons.**

**1.    The California Plaintiffs fail to state claims for equitable relief (Counts 2-6).**

Plaintiffs Kelly and Dea's UCL and FAL claims and their CLRA claims for restitution and injunctive relief must be dismissed because these claims are equitable in nature. Plaintiffs do not allege "the basic requisite[] [for] the issuance of equitable relief," namely, "the inadequacy of remedies at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)); *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 614 (2d Cir. 2010) (affirming dismissal of equitable claim for relief where adequate remedy existed at law).[14]

The Ninth Circuit has recently made clear that a plaintiff "must establish that she lacks an adequate remedy at law before securing" relief under the UCL. *Sonner*, 971 F.3d at 844. In *Sonner*, the plaintiff had sought damages under the CLRA along with restitution under the UCL and CLRA. *Id.* at 838. Immediately before trial, the plaintiff amended her complaint to drop the CLRA damages claim, such that only the equitable claims for restitution remained. *Id.* The district court, however, dismissed the restitution claims under Rule 12(b)(6) on the ground that the plaintiff could

---

[14] UCL and FAL actions such as this one are "equitable in nature; damages cannot be recovered." *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 301 (2020) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)).

not "establish that she lacked an adequate legal remedy," *id.*, and the Ninth Circuit affirmed, *id.* at 845. The Ninth Circuit held "that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA . . . ." *Id.* at 844. It then reasoned that the plaintiff did not satisfy this prerequisite because the complaint failed to "allege that [she] lack[ed] an adequate legal remedy" and the plaintiff had sought "the same sum in equitable restitution . . . as she requested in damages to compensate her for the same past harm." *Id.*

Applying *Sonner*, courts routinely dismiss UCL, FAL and CLRA claims when the plaintiff fails to plausibly allege the lack of an adequate legal remedy. *See, e.g.*, *In re MacBook Keyboard Litig.*, No. 5:18-cv-2813, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) (dismissing UCL claims with prejudice under *Sonner* and holding that "[b]ecause Plaintiffs' claims rest on their alleged overpayments and Apple's failure to issue refunds, the Court finds that monetary damages would provide an adequate remedy for the alleged injury."); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-769, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (dismissing UCL claims with prejudice because "there is nothing in the SAC to suggest that monetary damages would not make Plaintiff or the putative class whole"); *Hanna v. Walmart Inc.*, No. 5:20-cv-01075, 2020 WL 7345680, at *6 (C.D. Cal. Nov. 4, 2020) (similar); *Adams v. Cole Haan, LLC*, No. Sacv 20-913 JVS, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (similar); *see also Gomez v. Jelly Belly Candy Co.*, No. EDCV17-00575, 2017 WL 8941167, at *2 (C.D. Cal. Aug. 18, 2017) (pre-dating *Sonner*, but dismissing with prejudice UCL, FAL and CLRA equitable claims that were "based on the exact same conduct as [plaintiff's] negligent misrepresentation claim").

Here, the gravamen of Plaintiffs' claims is that Noom violated the California ARL. Notably, multiple very recent decisions have confirmed that *Sonner* requires dismissal of these

claims under the same statutes at issue in this case. *See Turnier v. Bed Bath & Beyond*, No. 3:20-cv-00288-L-MSB, 2021 WL 409720, at *5 (S.D. Cal. Feb. 5, 2021) (dismissing UCL claim in ARL action where plaintiff failed to plead an inadequate remedy at law); *Wu v. iTalk Global Comm'ns, Inc.*, Case No. 20-cv-07150-PSG (C.D. Cal. Feb. 2, 2021) (same) (Exhibit A to Declaration of Aarti Reddy ("Ex. A")).

*Wu v. iTalk* is directly on point. There, the plaintiffs alleged that defendant violated the California's ARL by failing to offer an option to cancel their services online and automatically enrolling them into services without affirmative consent. Ex. A. at 2. The Court rejected plaintiffs' argument that *Sonner* was distinguishable because the plaintiffs sought both restitution and injunctive relief, reasoning as follows:

> At bottom, the harm alleged by Plaintiffs is that Defendant charged them for services that they either did not want or did not agree to purchase. . . . Plaintiffs have not explained why their potential future monetary harm caused by Defendant—if they choose to continue using Defendant's services—will be irreparable. Indeed, lost money is exactly the type of harm that money damages can adequately remedy[.] (*Id.* (citing *Adams*, 2020 WL 5648605, at *3).)

The same result follows here. Plaintiffs seek restitution and injunctive relief under the UCL, FAL and CLRA largely based on their claims that they have "lost money" because Noom "us[ed] a billing mechanism that automatically charges customers without their awareness or consent." (TAC ¶¶ 253(b); 258.) And as explained, their claims for injunctive relief are conclusory at best, as each plaintiff offers the same bare allegation of conjectural future harm. *Supra* Part IV. A; *Adams*, 2020 WL 5648605, at *2 (plaintiff's "conclusory statements about irreparable injury" were insufficient to survive motion to dismiss). Plaintiffs cannot establish the inadequacy of legal remedies because they have already claimed damages under other theories, including the CLRA and common law fraud claims, for the ***exact same conduct*** that is the basis of their equitable relief claims. (TAC ¶¶ 865, 868.) Accordingly, because plaintiffs have already pled that damages would

satisfy their injuries under each theory of deception pled in the TAC, Plaintiffs' equitable claims under the CLRA must be dismissed, and the UCL and FAL claims must be dismissed in their entirety and with prejudice. Ex. A at 6 (dismissing similar claims with prejudice).

### 2. The California Plaintiffs fail to state claims under the FAL (Count 2).

Plaintiffs Kelly and Dea also assert a claim directly under California's Automatic Purchase Renewal Statute, Cal. Business and Prof. Code § 17600 *et seq*., which is part of the FAL. However, that claim is barred under California law, as the California Court of Appeal has held unequivocally that there is no private right of action under this statute. *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 573-74 (2020) ("Seeing no clear indication of intent to create a private right of action in either the statutory text or its legislative history, we conclude there is no such right under the automatic renewal law."); *Turnier*, 2021 WL 409720, at *1 (same); *see also Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir. 2018) ("Because there is no private cause of action under the ARL, the district court [may] properly dismiss[] [Plaintiffs'] ARL claim."); *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1068-69 (S.D. Cal. 2018) (same). This cause of action therefore must be dismissed in its entirety.

### 3. The California Plaintiffs fail to state a claim under the CLRA (Counts 5-6).

Plaintiffs Kelly and Dea also fail to state any claim under the CLRA because Noom is not a good or service under the statute. (TAC ¶¶ 260-271.) A CLRA claim must involve "goods or services" within the meaning of that law. *See* Cal. Civ. Code § 1770(a). Here, rather than alleging that Noom is a "good" or "service," Plaintiffs contend that Noom offers "impersonal, automated messages powered by artificial intelligence which can only be accessed through Noom's smartphone app." (*See* TAC ¶ 18 (stating that users "do not even understand that they have been assigned a coach . . . because the 'coach' is actually an artificial intelligence bot"); ¶¶ 118-120

(explaining that Noom uses "artificial intelligence technology" that "customers are not paired with a human coach" and "their 'coach' is a bot").) These allegations preclude application of the CLRA, as it is settled law that software apps and websites are neither goods nor services under that statute. *See, e.g.*, *Song Fi, Inc. v. Google, Inc.*, No. 14-5080, 2016 WL 1298999, at *11 (N.D. Cal. Apr. 4, 2016) (holding that plaintiff failed to allege facts to show use of YouTube as a service); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 988 F. Supp. 2d 434, 451 (D. Del. 2013), *vacated in part on other grounds*, 806 F.3d 105 (3d Cir. 2015) ("[t]he California case law is clear that software and software activity are not covered by the CLRA") (collecting authorities).[15]

Although Plaintiffs may argue that Noom is a "service" under the CLRA because it offers "personalized coaching," their own allegations contradict this argument. (TAC ¶ 18 (stating that Noom sends users "impersonal, automated messages" exclusively through a "smartphone app").) Having alleged that Noom deceives users by offering them "bot" coaches, Plaintiffs cannot take a contrary position merely to save their CLRA claim. *Yunker*, 2013 WL 1282980, at *12-13 (rejecting CLRA claim where allegations undermined that the product was a service).

### 4. The California Plaintiffs fail to state a claim under the California Weight Loss Contracts Law (Count 7).

Plaintiffs Kelly and Dea do not state a claim under the California Weight Loss Statute.[16] To start, the statute, passed in 1989, regulates weight loss "center[s]" and "program[s]" in California and includes provisions governing refunds when a user moves away from a center. *See* Cal. Civ. Code §§ 1694.5(a), 1694.8(b). Noom, an out-of-state company that offers a digital app, is neither, and Noom is aware of no authority applying the law to Internet companies like Noom.

---

[15] *See also Yunker v. Pandora Media, Inc.*, No. 11-03113, 2013 WL 1282980, at *12-13 (N.D. Cal. Mar. 26, 2013) (dismissing CLRA claim because Pandora app was not a good or service under CLRA); *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1007 (N.D. Cal. 2012) (Facebook credits were neither a good nor a service but "intangible interests").

[16] The TAC asserts this theory only as a standalone claim (Count 7).

Even assuming the statute applied to Noom, Plaintiffs' claim seems to be that they should have been allowed to cancel within three business of days of signing up for Noom. (TAC ¶ 288.) But Plaintiffs were given more than three days to do so; they could cancel at ***any time*** during a fourteen-day trial to avoid being charged for a subscription. (TAC ¶ 68.) Moreover, neither California Plaintiff alleges that she *wanted* to cancel during her first three days, let alone was prevented from doing so, and therefore both fail to allege an injury of any kind. And identifying a violation of the statute alone is not enough—only a buyer "injured by a violation" may bring a claim for relief. *See* Civil Code § 1694.9. This lack of injury also deprives the California Plaintiffs of Article III standing and, should they attempt to amend, statutory standing under the UCL. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011) (holding statutory standing under the UCL requires a causal connection between the challenged conduct and an economic injury).

### 5. California Plaintiffs fail to state a claim under the Bot Disclosure Law (Count 4).

Even if the Court does not dismiss the UCL claim in its entirety, it should still dismiss Plaintiffs' bot disclosure law claim as a predicate violation of that statute. (TAC ¶¶ 21, 251 (alleging violations of Cal. Bus. & Prof. Code § 17941 and Cal. Bus. & Prof. Code § 17200, which prohibits "any unlawful, unfair or fraudulent business act or practice").) That law prohibits using a bot "to communicate or interact with another person in California online, ***with the intent to mislead*** the other person about its artificial identity ***for the purpose of knowingly deceiving*** the person about the content of the communication in order to incentivize a purchase or sale of goods or services in a commercial transaction[.]" Cal. Bus. & Prof. Code § 17941 (emphasis added).

Plaintiffs' BDL claim is subject to Rule 9(b) because it sounds in fraud and is based on the same set of facts as their other fraud claims. *See supra* Part II. Specifically, Plaintiffs assert that their BDL claim is based on Noom's alleged "***intent to mislead*** consumers into believing that

Noom's services included a personal human coach"—the same facts that underlie their fraud claims. (*See* TAC ¶¶ 251 (emphasis added); 865(l) (alleging omission of "the fact that customers would not be assigned a human coach" in support of common law fraud claim).)

Applying Rule 9(b) standards, Plaintiffs' allegations are clearly deficient. The TAC offers no factual basis for the BDL claim and essentially parrots the statutory requirements. (TAC ¶ 251.) While the TAC generally alleges that "users are first connected and able to send messages to an artificial intelligence-powered 'bot' named 'Concierge Eva'" (TAC ¶ 84), not a single plaintiff alleges interacting with Noom's online concierge or any Noom coach, claims they were misled by such an interaction, or that Noom "inten[ded]" to mislead them "for the purpose of knowingly deceiving" them into making a purchase. *Supra* Part II. As such, Plaintiffs have not pled that Noom violated the BDL, and this portion of the UCL claim must be dismissed.

### C.    The Named Plaintiffs' Common Law Claims Fail for Additional Reasons.

As discussed above, all common law claims sound in fraud and fail under Rule 9(b),[17] and the Plaintiffs also cannot state a claim under the laws of 47 jurisdictions that have no nexus to their claims. *Supra* Part II, III. Plaintiffs' common law claims also fail for multiple additional reasons.

#### 1.    Plaintiffs fail to state a claim for unjust enrichment.

As discussed, Plaintiffs may only seek equitable relief where they fail to plead an adequate remedy at law. *Supra* Part IV. B.1; *Brown v. Sandimo Materials*, 250 F.3d 120, 128 (2d Cir. 2001) ("equitable relief is available only if plaintiffs' legal remedies are inadequate"); *Fed. Treasury Enterprise Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613-14 (2d Cir. 2010).

Applying this principle, Plaintiffs' unjust enrichment claims all fail. The TAC refers to the

---

[17]The common law claims are subject to Rule 9(b). *United States v. Spectrum Painting Corp.*, No. 19-2096, 2020 WL 5026815, at *16 (S.D.N.Y. Aug. 25, 2020) (dismissing claim for money had and money received for failure to meet standard of Rule 9(b)); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (dismissing unjust enrichment and conversion claims for same).

same factual allegations as the basis for Plaintiffs' unjust enrichment and statutory and tort claims, (*see, e.g.*, TAC ¶¶ 870, 872-873), and seeks identical relief for those claims, (*compare* TAC ¶ 874 (seeking restitution under unjust enrichment) *with* TAC ¶¶ 228, 236 (seeking refunds under the GBL and ARL); 245, 259 (seeking restitution under the FAL and UCL)). As this Court has held, where the unjust enrichment claim is "premised on the same alleged misrepresentation" that is the basis of plaintiff's statutory and tort claims, "an adequate remedy exists at law." *Brumfield v. Trader Joe's Co.*, No. 17-3239, 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018) (Schofield J.) (dismissing New York and California unjust enrichment claims); *Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-05591, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (dismissing California unjust enrichment claim that was duplicative of UCL claims); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 404, 455 (S.D.N.Y. 2017) (applying same legal rule under Texas and Alabama law); *Pernice v. Bovim*, No. 15-541, 2015 WL 5063378, at *6 (D.D.C. Aug. 26, 2015) (noting the same under D.C. law). And since unjust enrichment is an equitable claim under Ohio and Washington law, the same principle applies. *Santos v. Ohio Bureau of Workers' Comp.*, 801 N.E.2d 441, 444 (Ohio 2004); *Young v. Young*, 191 P.3d 1258, 1263 (Wash. 2008). Accordingly, each Plaintiffs' unjust enrichment claims should be dismissed.

### 2. Plaintiffs fail to state a claim for money had and received.

Plaintiffs' claims for money had and received under Texas, Washington D.C., Alabama, and Washington law fail for similar reasons—i.e., the claim is equitable in nature and Plaintiffs have failed to plead an inadequate remedy at law. *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 455 (stating that money had and received claim is duplicative of unjust enrichment claim under Texas law). Under Washington D.C. and Alabama law, unjust enrichment and money had and received are the same claim and analyzed as one. *Chambers v. NASA Fed.*

*Credit Union*, 222 F. Supp. 3d 1, 14 (D.D.C. 2016); *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1251 (N.D. Ala. 2019). Likewise, under Washington law, a claim for money had and received cannot exist alongside a claim for unjust enrichment. *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, No. 11-8196, 2014 WL 4401275, at *13-14 (S.D.N.Y. Sept. 4, 2014) (dismissing claim for money had and received as duplicative of unjust enrichment).

The money had and received claims fail under Ohio, New York, and California law because Plaintiffs have not pled the requisite elements to sustain the claim. Under Ohio law, a claim for money had and received can only be brought where the plaintiff and defendant were parties to a contract and one party has not performed. *LRC Realty, Inc. v. B.E.B. Props.*, No. 2016-G-0076, 2020 WL 7863159, at *3 (Oh. Ct. App. Dec. 31, 2020). Plaintiffs have not pled these elements, and the claim should be dismissed. Similarly, the claims are missing key elements under New York and California law and must also be dismissed. *See, e.g.*, *Magi XXI, Inc. v. Stato Della Cita Del Vaticano*, 22 F. Supp. 3d 195, 207 (E.D.N.Y. 2014) (noting that an element of claim under New York law is that defendant was "impressed with a species of trust," which is not pled in this case); *Kandel v. Brother Int'l Corp.*, No. 08-1040, 2009 WL 9100406, at *1 (C.D. Cal. Feb. 13, 2009) (dismissing claim for money had and received under California law where plaintiffs failed to allege a sum certain and made no claim that the defendants owed money other than damages).

### 3.      Plaintiffs fail to state a claim for conversion.

Most Plaintiffs' conversion claims fail because conversion does not apply to the facts in this case under Ohio, New York, Alabama, Texas, California, or Washington, D.C. law.

Plaintiffs' claims under Ohio, New York, Texas, and Alabama law all fail because the law of conversion in those states only applies to funds that are designated for a particular purpose or are specifically identifiable and earmarked funds, rather than general funds in a plaintiff's bank

account. In *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012), the Court held that the plaintiff did not state conversion claims under Ohio law based on unlawful charges for a recurring gym membership. The Court held that the funds at issue were not "specific segregated, identifiable money, as opposed to a sum certain" and dismissed the claim. *Id.* New York, Texas, and Alabama law are in accord. *See, e.g.*, *Camp v. Ala. Telco Credit Union*, No. 2:12-cv-2237, 2013 WL 2106727, at *4 (N.D. Ala. May 13, 2013) ("Generally, an action will not lie for the conversion of cash" except for "specific money capable of identification" (citation omitted)); *Wornow v. Register.Com, Inc.*, 778 N.Y.S.2d 25, 26 (App. Div. 2004) (same); *Zorilla v. Uber Techs., Inc.*, No. 4:16-CV-615, 2018 WL 8732106, at *3 (S.D. Tex. Mar. 15, 2018) (same).

Similarly, courts applying California and Washington, D.C. law have held that the types of transactions alleged in the TAC—i.e., unauthorized charges or overcharges to credit cards—do not support a claim for conversion. *Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 252 (D.D.C. 2016) (dismissing conversion claim for "alleged unauthorized use of the Headfirst Baseball credit card"); *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-00155, 2015 WL 1013704, at *10 (S.D. Cal. Mar. 9, 2015). For each of these reasons, Plaintiffs' Ohio, New York, Alabama, Texas, California, and Washington, D.C. conversion claims must be dismissed.

### D. Plaintiffs' Claims Under At Least Eight States Are Barred by Class Action Waivers or Notice Requirements (Counts 10, 11, 15, 20, 28, 36, 48, 50).

Several of Plaintiffs' consumer fraud claims should be dismissed because they are statutorily barred from pursuing them. To start, Plaintiff Sellers' ADTPA claim is prohibited by the ADTPA's class action bar. Ala. Code Ann. § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."). The TAC alleges claims under the laws of Arkansas, Georgia, Louisiana, Montana, South Carolina, and Tennessee, where

no Plaintiff resides, but these types of claims are prohibited by statute.[18] Indeed, another court in this circuit recently dismissed putative class claims when confronted with the ***same*** statutory class action waivers under Alabama, Tennessee, and Georgia law. *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-4427, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017). In so holding, the *Delgado* court rejected the argument from the same Plaintiffs' counsel, and they are like to advance it again here—i.e., that Rule 23 of the Federal Rules of Civil Procedure preempted the class action bar. (ECF No. 41 at 3); *Delgado*, 2017 WL 5201079, at *10 (rejecting the holding in *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015)). *Delgado* reasoned that *Lisk* "has not been widely followed outside of the Eleventh Circuit . . . with most courts outside of that circuit implicitly or explicitly disagreeing" with its holding. 2017 WL 5201079, at *10 (collecting authorities). This Court should decline Plaintiffs' invitation to create an intra-circuit split.

Finally, Plaintiff Richards' Ohio Consumer Sales Practices Act claim must be dismissed because she has not pled that Noom received notice (1) that the Ohio Attorney General has declared the act or practice to be deceptive or unconscionable; or (2) that the act or practice has previously been determined by an Ohio state court to violate the OCSPA. *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 59 (E.D.N.Y. 2017).[19] Their OSCPA claim must therefore be dismissed. *Id.*

## CONCLUSION

For all the reasons set forth above, Noom respectfully requests that the TAC be dismissed in its entirety.

---

[18] *See* Ark. Code Ann. § 4-88-113(f)(1)(B) ("A private class action under this subsection is prohibited"), Ga. Code Ann. § 10-1-399(a) ("Any person . . . may bring an action individually, but not in a representative capacity); La. Rev. Stat. § 1409(A) ("Any person . . . may bring an action individually but not in a representative capacity to recover actual damages"); Mont. Code Ann. § 30-14-133 ("A consumer . . . may bring an individual but not a class action"); SC Code 39-5-140 ("Any person . . . may bring an action individually, but not in a representative capacity, to recover actual damages."); Tenn. Code Ann. § 47-18-109 ("Any person . . . may bring an action individually to recover actual damages.").

[19] The OCSPA's notice requirement is not preempted by Rule 23. *Id.*

Dated: New York, New York
February 12, 2021

Respectfully submitted,

COOLEY LLP

By: */s/ Aarti Reddy*
Aarti Reddy
101 California Street, 5th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
Email: areddy@cooley.com

Michael G. Rhodes
(*pro hac vice* admission pending)
101 California Street, 5th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
Email: rhodesmg@cooley.com

Ian Shapiro
55 Hudson Yards
New York, NY 10001
Phone: (212) 479-6000
Email: ishapiro@cooley.com

*Counsel for Defendants Noom, Inc. and
Artem Petakov*