# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **MOJO NICHOLS, SUSAN BREWSTER, DUANE DEA, MARYANNE DERACLEO, KAREN KELLY, REBECCA RICHARDS, JENNIFER SELLERS,** and **STACY SPENCER**, <br><br> *Individually and on Behalf of All Others Similarly Situated*, <br><br>            **Plaintiffs**, <br><br>        **v.** <br><br> **NOOM, INC., ARTEM PETAKOV**, and **JOHN DOES 1 TO 5**, <br><br>            **Defendants**. | No. 20 Civ. 3677 (LGS) (KHP) |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY THE STIPULATED PROTECTIVE ORDER

---

**WITTELS MCINTURFF PALIKOVIC**

Steven L. Wittels (SW-8110)
J. Burkett McInturff (JM-4564)
Tiasha Palikovic (TP-5697)
Steven D. Cohen (SC-7243)
Jessica L. Hunter (JH-0025)
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com
sdc@wittelslaw.com
jlh@wittelslaw.com

*Counsel for Plaintiffs and Proposed Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...............................................................................................................i

TABLE OF AUTHORITIES ......................................................................................................ii

I.     PRELIMINARY STATEMENT .......................................................................................1

II.    BRIEF OVERVIEW OF CASE ALLEGATIONS PERTINENT TO PLAINTIFFS'
FORTHCOMING INJUNCTIVE ACTIONS..............................................................................3

III.   ARGUMENT ...................................................................................................................7

   A.   Amending the Protective Order Will Provide Efficiencies and Will Not Prejudice
   Defendants. ...........................................................................................................................7

   B.   Plaintiffs Easily Hurdle the Standards for Modifying a Protective Order. .....................12

   C.   Defendants Have Also Not Reasonably Relied on the Protective Order..........................13

      1.   Scope: The Operative Protective Order is a Stipulated Blanket Order........................15

      2.   Language: The Order Itself Contemplates Modification. ............................................16

      3.   Level of Inquiry: The Protective Order was Subject to a Low Level of Inquiry..........17

      4.   Nature of Reliance: Defendants Have Not Relied on the Protective Order to Produce
      Documents They Would Not Have Otherwise Disclosed....................................................18

   D.   Plaintiffs Have a Compelling Need to Modify the Protective Order...............................19

IV.   Conclusion ...................................................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*Charter Oak Fire Insurance Company v. Electrolux Home Products, Inc.*
  87 F.R.D. 130 (E.D.N.Y. 2012) ........................................................................ passim

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*
  255 F.R.D. 308 (D. Conn. 2009) ...................................................................... passim

*Martindell v. Int'l Telephone & Telegraph Corp.*
  594 F.2d 291 (2d Cir. 1979) .................................................................................... 12

*Price v. L'Oreal USA, Inc.*
  No. 17 Civ. 0614 (LGS), 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) ........................... 2, 9, 20

*Rio Tinto PLC v. Vale S.A.*
  No. 14 Civ. 3042 (RMB) (AJP), 2016 WL 900652 (S.D.N.Y. Mar. 9, 2016) ...................... 7

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*
  192 F. Supp. 3d 400 (S.D.N.Y. 2016) .............................................................. 11, 12

*SEC v. TheStreet.com*
  273 F.3d 222 (2d Cir. 2001) ............................................................................ 12, 19

*Tradewinds Airlines, Inc. v. Soros*
  No. 08 Civ. 5901 (JFK), 2016 WL 3951181 (S.D.N.Y. July 20, 2016) .................. 13, 16, 18

*Williams v. Johnson & Johnson*
  50 F.R.D. 31 (S.D.N.Y. 1970) ............................................................................ 19

**STATUTES**

39 U.S.C. § 3009 ........................................................................................................ 5

**RULES**

Fed. R. Civ. P. 8 ........................................................................................................ 5

**REGULATIONS**

16 C.F.R § 425 ........................................................................................................ 5

Plaintiffs submit this Memorandum of Law in support of their Motion to Modify the Stipulated Protective Order governing this case and state as follows:

## I.      PRELIMINARY STATEMENT

Plaintiffs bring this motion to amend the Stipulation and Protective Order entered in this case, ECF No. 58, because they intend to shortly file two injunctive complaints in state courts in California and New York and need the current restrictions lifted so they can present to the state courts the full panoply of evidence showing both the ongoing harm caused by Noom's deceptive automatic renewal scheme and why this harm warrants injunctive relief.  Despite Plaintiffs having informally requested that Noom agree that all evidence obtained in the federal action be useable in the injunctive actions, Defendants have refused to consent to any amendment of the Protective Order.  But as we demonstrate herein, the law is well settled that evidence gathered against a party in one case is almost always useable in a separate action involving essentially the same parties and same facts—which is exactly what Plaintiffs intend here.

Moreover, because Defendants have challenged Plaintiffs' injunctive claims on the grounds that Plaintiffs lack Article III standing, in that they are unlikely to be harmed again by Defendants' wrongful conduct, the law permits Plaintiffs to split their claims from the federal court and pursue injunctive relief in state court.  Indeed, as we detail below, Judge Schofield, the Article III judge presiding over this matter, explicitly endorses such a scenario and has authored a decision that allows consumer fraud plaintiffs to simultaneously pursue both compensatory damages in federal court and injunctive relief in state court.

Noom argues that Plaintiffs lack Article III standing to pursue injunctive relief in this Court because they are now aware of Defendants' scheme and thus do not face a real or

immediate threat of being snookered a second time. *See* Defs.' Mot. to Dismiss Pls.' Third Am.

Compl., ECF No. 205 at 18–20 (Article III standing argument).

Nonetheless, while Plaintiffs believe they do have Article III standing to pursue their

injunctive relief claims in this Court and intend to rebut Defendants' forthcoming motion to

dismiss on this point, they appreciate that Judge Schofield has in the past agreed with an

argument similar to Defendants'.  Specifically, in *Price v. L'Oreal USA, Inc.*, Judge Schofield

instructed consumer plaintiffs to split their claims and bring their injunctive relief claims in state

court while continuing to pursue their damages claims in federal court:

> Plaintiffs argue that injunctive relief is available under New York
> General Business Law § 349 . . . . Although Plaintiffs may be
> correct, that relief is not available in federal court because of the
> lack of Article III standing. They must pursue injunctive relief, if at
> all, in state court.

No. 17 Civ. 0614 (LGS), 2017 WL 4480887, at *6 (S.D.N.Y. Oct. 5, 2017) (internal citations

omitted).  Judge Schofield went on to grant the defendants' motion to dismiss the consumers'

demand for injunctive relief on Article III grounds because those consumers did not demonstrate

a likelihood of imminent future harm, and also collected cases holding that in such circumstances

consumers can split their claims. *Id.*

Further, after trying to dissuade Defendants here from moving to dismiss this case, Pre-

Mot. Conf. on Pls.' Bellwether Mot. and Defs.' Mot. to Dismiss Hr'g Tr. 12:17–25, Dec. 17,

2020, ECF No. 134, Judge Schofield also advised the parties that she was unlikely to rule on

Defendants' dismissal arguments "any time soon" because of her other case-related demands, *id*.

at 16:11–19 (Judge Schofield noting "there is a backlog in deciding fully briefed motions only

because there are scores of fully briefed motions already before [her] . . . . [A]nd so the chances

that [she] would get to it any time soon are small").

As a result, and because this case challenges one of the largest ongoing negative option schemes in the United States, Plaintiffs intend to imminently file their injunctive claims in state court, where they undoubtedly have standing to do so. To most efficiently bring their injunctive claims in those fora, Plaintiffs request that the Court modify the parties' Protective Order, ECF No. 58, to allow Plaintiffs to use Confidential Information disclosed in this litigation in connection with other actions commenced by a party involving the same or similar transactions or occurrences. Such an amendment will streamline the litigation in both federal and state court and, as set forth below, is well within Your Honor's discretion and consistent with the applicable case law. Without such an amendment, Defendants would be rewarded with a shield and delay tactic that will result only in unnecessary and increased litigation costs, for Plaintiffs would then be forced to seek the same discovery in state court as they have already obtained here, and Defendants would perforce ultimately produce the same damning evidence they have reluctantly produced in this court. We urge Your Honor not to countenance such a wasteful process.

## II.   BRIEF OVERVIEW OF CASE ALLEGATIONS PERTINENT TO PLAINTIFFS' FORTHCOMING INJUNCTIVE ACTIONS

Plaintiffs and the proposed Class are consumers who, after signing up to "try" Noom's weight-loss program via a low-cost trial period, found themselves trapped by Noom's illegal and deceptive "negative option" autorenewal scheme and saddled with multi-month subscription fees as soon as the trial period ended. Third Am. Class Action Compl. ("TAC") ¶ 2, ECF No. 174. That droves of consumers are unintentionally becoming full-fledged Noom "customers" following Noom's supposedly "risk free" trial is not mere happenstance, as Noom has distorted its deep knowledge of cognitive psychology into a $230+ million a year trap for consumers seeking to manage their weight. *Id.* ¶¶ 1, 5.

Noom's weight loss program is supposedly "based on a cognitive-behavioral approach," and Noom holds itself out as a "behavior change company" that purports to deliver weight loss through "successful behavior change at scale."  *Id.* ¶¶ 2, 4.  Yet Defendants' entire sales and automatic renewal model is designed to exploit well-studied weaknesses in human decision-making.  *Id.* ¶ 5.  Defendants lure consumers to "try" Noom with promises of a revolutionary weight loss system and then deploy a negative option autorenewal feature and a series of barriers to cancellation to trick consumers into making a lump-sum non-refundable advance payment for as many as eight months at a time, costing as much as $199.00.  *Id.*

The psychology of decision-making and behavioral economics fields, pioneered by Nobel Laureate Daniel Kahneman, have long demonstrated that system design can serve as a powerful driver of consumer behavior.  *Id.* ¶ 6.  Noom's co-founder Defendant Artem Petakov is well acquainted with this scientific fact, as he highlights on his LinkedIn profile that he "[t]ook Daniel Kanheman's 'Psychology of Decision Making' class at Princeton, making me forever fall in love with psychology of decision-making," and that "[m]y biggest passion is influencing people's everyday decisions on a large scale."  *Id.* ¶ 7.

But instead of employing these documented insights about human decision-making to consumers' benefit, Defendants callously fill their trial period marketing and "disclosures" with material misrepresentations and omissions about Noom's negative option autorenewal practices, manipulate human psychology by making it extremely difficult for consumers to cancel the trial membership, and then charge for the multi-month program's ***full*** cost once the trial period lapses.  *Id.* ¶¶ 8–10.  To boot, once Noom imposes the non-refundable lump sum fee, it does not even send consumers a receipt for that (or any subsequent) auto-enrollment fee or otherwise provide notification or confirmation of the charge.  *Id.* ¶ 81.  In response to Noom's unfair,

4

deceptive, and fraudulent conduct, on May 12, 2020 Plaintiffs brought this consumer class action alleging violations of state consumer protection statutes and common law and seeking both monetary damages and injunctive relief.  Class Action Compl., ECF No. 1; *see* Fed. R. Civ. P. 8.

While Plaintiffs have gone to great lengths to build their case thus far, their challenge to Noom's unlawful conduct is part of a decades-long effort to rid the marketplace of negative option scams.  Supposedly designed as a "convenience," negative option scams are nothing new. Since the 1970s, laws and regulations have been enacted to combat the abuse that occurs when sellers decide that a consumer's *inaction* constitutes assent to purchase.  For example, following decades of unordered merchandise scams, in 1970 Congress effectively banned sellers from mailing goods to consumers and then treating a failure to return the good as assent.  39 U.S.C. § 3009.  In 1973, the FTC stepped in and curbed the related practice of "prenotification negative option plans," whereby sellers would send notice (instead of the goods themselves) and if consumers took no action, sellers would send the goods and charge consumers.  16 C.F.R § 425.

As FTC Commissioner Rohit Chopra (President Biden's nominee to lead the Consumer Financial Protection Bureau) noted last September, the automatic renewal scam is simply "the online successor to decades of dirty dealing in direct mail marketing."[1]  Worse, automatic renewal scams "pose an even bigger menace than their paper precursors" because they are "not limited by physical constraints and costs."  *Id.*  Using the "Dark Patterns" rubric created by noted cognitive scientist Harry Brignull, PhD—which framework describes common website design choices that are used to manipulate consumers—Commissioner Chopra emphasized that

---

[1] Statement of Rohit Chopra Regarding Dark Patterns in the Matter of Age of Learning, Inc., Commission File Number 1723186, at 1, September 2, 2020 https://www.ftc.gov/system/files/documents/public_statements/1579927/172_3086_abcmouse_-_rchopra_statement.pdf (last visited Feb. 12, 2021).

"researchers have identified a wide variety of dark patterns" that foster outcomes that "could not be achieved without deception." *Id.*

Here, Plaintiffs' TAC describes how Defendants have deployed dark patterns on a massive scale. ECF No. 174. According to Noom's CEO Saeju Jeong, Noom is now "the largest consumer facing healthcare company" in the United States with "millions" of customers. TAC ¶ 14. The TAC also describes Dr. Brignull's preliminary conclusion that Noom's business model is predicated upon the "Hidden Subscription Dark Pattern"—that is, silently charging users a recurring fee under the pretense of a one-time fee or free trial—as well as other dark patterns. TAC ¶ 45. The TAC likewise details how the Better Business Bureau recently issued a nationwide alert that "consumers reportedly try to cancel [Noom's] trial offer before it ends but still end up being billed for the subscription," that Noom refuses to "to address the underlying cause" of customers' complaints, and how an internal Noom whistleblower has stated that "Noom made the cancellation process difficult by design" and describes other unsettling conduct, including that "Noom's sign up flow was designed to mislead." *Id.* ¶¶ 3, 43.

Noom's use of dark patterns has also led to extraordinary consumer backlash. ██████████ ██████████████████████████████████████████████████████████████████████ ████████████████████. *Id.* ¶ 47. ████████████████████████████████ █████████████████████████████████. *Id.* There is no real question that Noom's conduct is deceptive and violates the laws enacted to combat autorenewal scams. For example, after this case was filed, on September 2, 2020 the FTC announced a $10 million civil penalty and substantial injunctive relief against the children's online learning company ABCmouse because of that company's identical tactic of combining a hidden autorenewal feature with

making "it difficult for consumers to cancel."[2]  As commissioner Chopra noted, such practices

"scammed millions of dollars from families through dark patterns" by "making it extremely

difficult to cancel recurring subscription fees."  *See* Chopra, *supra* note 1, at 1.

### III.    ARGUMENT

#### A.  Amending the Protective Order Will Provide Efficiencies and Will Not Prejudice Defendants.

After a court has entered a protective order, "'[i]t is undisputed that [it] retains the power

to modify or lift'" that order.  *Rio Tinto PLC v. Vale S.A.*, No. 14 Civ. 3042 (RMB) (AJP), 2016

WL 900652, at *1 (S.D.N.Y. Mar. 9, 2016), *aff'd sub nom. Rio Tinto PLC v. Vale.*, No. 14 Civ.

3042 (RMB) (AJP), 2016 WL 2605754 (S.D.N.Y. Mar. 25, 2016) (quoting *In re Agent Orange*

*Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987)).

Plaintiffs request that the Court exercise that power here, where Plaintiffs only seek to

use the confidential discovery obtained here in their injunctive actions against the same

defendants.  Plaintiffs' request will streamline the injunctive actions, will not prejudice

Defendants, is the logical result of Defendants' attack on Plaintiffs' Article III standing to pursue

injunctive claims, and is entirely consistent with the applicable case law.  For example,

Plaintiffs' request is on all fours with a request then-District Judge Bianco granted in *Charter*

*Oak Fire Insurance Company v. Electrolux Home Products, Inc.*, when he modified a protective

order so that confidential material could be disclosed to other attorneys representing a named

party in "any other pending or future action between the parties" stemming from similar facts or

circumstances as those in the case before him.  287 F.R.D. 130, 134–35 (E.D.N.Y. 2012).

---

[2] Press Release, Federal Trade Commission, Children's Online Learning Program ABCmouse to Pay $10 Million to Settle FTC Charges of Illegal Marketing and Billing Practices (Sept. 2, 2020) https://www.ftc.gov/news-events/press-releases/2020/09/childrens-online-learning-program-abcmouse-pay-10-million-settle (last visited Feb. 12, 2021).

In *Charter Oak*, the plaintiff Charter Oak Fire Insurance Company sued defendant Electrolux, alleging a design defect caused fires to ignite in Electrolux's clothes dryers. *Id*. at 131. Shortly after the case began, the parties stipulated and the court entered a protective order, which provided that confidential material exchanged during discovery "shall only be used in connection with the preparation, trial and appeal, if any, of this action and shall not be used for any other purpose . . . ." *Id.* Yet two years later the *Charter Oak* plaintiff sought to modify the protective order to allow attorneys representing the plaintiff insurance company, or one of its parent or subsidiary entities, to access "documents and testimony produced in [that] case" for use "in other cases against Electrolux based on similar facts and circumstances, *i.e.*, a dryer fire" alleged to have ignited because of the same design defect. *Id*.

Judge Bianco amended the protective order as requested, finding that plaintiff had "a compelling and extraordinary need to share these common discovery materials with counsel for the same plaintiff in other related litigations against Electrolux, especially in the absence of any discernible prejudice to Electrolux." *Id*. at 134. In the absence of modification, Judge Bianco found that "plaintiff will be forced to litigate the exact same issue in each and every case," a result which would be "an enormous waste of time and resources for the parties and the court[,]" and contrary to the obvious fact that "allowing the sharing of discovery among related cases is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases." *Id.* (collecting cases). Judge Bianco also determined that, "because plaintiff in this action and any related action would be bound by the Protective Order," Electrolux would not be prejudiced because the confidential materials would not be publicly disseminated, "which is what the Protective Order in [that] case was designed to

prevent[.]" *Id*.  Indeed, the modification also benefited Electrolux by allowing it to share "documents and testimony with its counsel in other litigations."  *Id*.

Just as in *Charter Oak*, the stipulated protective order entered by Your Honor in September 2020 limits the parties' use of confidential information produced in discovery to this action alone.  Protective Order, ECF No. 58 ¶ 2 ("The Confidential Information disclosed will be held and used by the person receiving such information solely for use in connection with the action.").  But now, because Defendants claim that Plaintiffs cannot bring their injunctive claims in this Court, Plaintiffs seek to modify the stipulated protective order so that they may use the confidential information produced ***to them*** in discovery "in other cases against [Noom] based on similar facts and circumstances," *Charter Oak*, 287 F.R.D. at 131, namely, the injunctive actions Noom claims they cannot bring in this Court.  Likewise, "because the plaintiff in this action and any related action would be bound by the Protective Order, there will not be public dissemination, which is what the Protective Order in this case was designed to prevent" and there is, therefore, "no prejudice to [Defendants] if the modification is made."  *Id*. at 134.

Indeed, in light of (1) Defendants' arguments that Plaintiffs lack Article III standing to pursue injunctive relief before this Court, (2) Judge Schofield's indication that the motion to dismiss will not be decided "any time soon," Pre-Mot. Conf. Hr'g Tr. 16:11–19, ECF No. 134, and (3) Judge Schofield's past ruling encouraging consumer class action plaintiffs to pursue such relief in state court when no Article III standing exists, *L'Oreal*, 2017 WL 4480887, at *6, there is no reason why Plaintiffs should be barred from using the facts they have unearthed via discovery here to pursue their injunctive relief claims in other fora in the manner most efficient for both the parties and the judiciary.

Examples of the types of information that the protective order currently forbids Plaintiffs from using in their injunctive actions include the fact that in ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████, that internal Noom documents advise employees ██████████████████████████████████████ ██████████████, that internal Noom documents ████████████████████ ████████████████ and that ████████████████████████████████ ████████████████████████████████████████ ██████████████. This same document also advises Noom employees to ████████████████ ████████████████████████ to ████████████████████████████████ ██████████ and ████████████████████████████████████ *Id.*

Plaintiffs also seek to use in their state court injunctive actions ██████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████

Plaintiffs are also entitled to marshal the internal Noom documents that admit ████ ████████████████████████████████████ that the ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Plaintiffs similarly want to

alert the state courts that ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ even though internal Noom documents admit that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ *Id.*

Other Noom documents admit that ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ As these examples clearly indicate,

"allowing the sharing of discovery among related cases is an efficient and effective means of

avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the

adjudication of cases." *Charter Oak*, 287 F.R.D. at 134. Thus, Plaintiffs—*the same plaintiffs*

*who have already received documents designated Confidential by Defendants*—should be

allowed to use this information in their state court injunctive actions. This Court should follow

Judge Bianco's opinion in *Charter Oak* and modify the Protective Order. *See also Royal Park*

*Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 406 (S.D.N.Y. 2016)

("[W]here, as here, two lawsuits have been filed by the same plaintiff . . . on the same legal

theories, against two defendants who already share the same counsel, it is difficult to imagine

what non-tactical objection [the plaintiff] could have to the prospect of those defendants sharing

discovery as well.").

### B. Plaintiffs Easily Hurdle the Standards for Modifying a Protective Order.

The typical request to modify a protective order arises when unrelated third parties seek

to intervene and obtain documents or deposition testimony.  *See, e.g.*, *Martindell v. Int'l*

*Telephone & Telegraph Corp*., 594 F.2d 291 (2d Cir. 1979).  Under that scenario, the Second

Circuit has applied a narrow standard designed to prevent confidential documents from being

released to the public at large.  *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001).  This

presumption against access "absent a showing of improvidence in the grant of [the] order or

some extraordinary circumstance or compelling need" is commonly referred to as the

"*Martindell* standard."  *Id.*  Here, however, the *Martindell* standard does not apply because the

party seeking modification of the protective order is not a third-party intervenor but is instead a

pre-existing party to ***this*** litigation that already possesses the confidential information.  Further,

because Plaintiffs seek only to use the information in their state court injunctive actions, and not

to share discovery from this case with the public generally, any concerns about releasing

Defendants' confidential information are not present.  Indeed, there is little doubt that Noom will

share and discuss the confidential information produced in this case with its local counsel in the

state court injunctive actions.  In fact, Noom's opposition to Plaintiffs' request to use the

discovery produced in this action in support of their injunctive actions "makes little sense except

as a potential tool to prevent opposing counsel from . . . advocat[ing] effectively for their

clients."  *Royal Park Investments*, 192 F. Supp. 3d at 406.  Under such circumstances,

the *Martindell* standard "never [comes] into play," and therefore the court is free to balance the

parties' interests in its discretion.  *TheStreet.com*, 273 F.3d at 234.

### C.  Defendants Have Also Not Reasonably Relied on the Protective Order.

In addition, because Defendants have not and cannot have reasonably relied on the

Protective Order to afford permanent secrecy for all confidential discovery produced in this

action, the *Martindell* presumption against access similarly does not apply.  As courts in the

Second Circuit have recognized:

> The Second Circuit has held that where a party has reasonably relied
> on a protective order in giving testimony or producing materials, a
> district court should not modify the order "absent a showing of
> improvidence in the grant of [the] order or some extraordinary
> circumstance or compelling need."  *S.E.C. v. TheStreet.Com*, 273
> F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel.
> Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)).  On the other hand, where
> a party or deponent could not have reasonably relied on the
> continuation of the protective order, the decision whether to modify
> the order is left to the "sound discretion of the trial court."  *Id.* at 231
> (quoting *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 147
> (2d Cir. 1987)).

*Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2016 WL 3951181, at *1 (S.D.N.Y.

July 20, 2016); *see also Charter Oak*, 287 F.R.D. at 131–32; *In re Ethylene Propylene Diene

Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 318 (D. Conn. 2009) ("[W]here the deponent

or party could not have reasonably relied on the protective order to continue indefinitely, a court

may properly permit modification of the order." (internal quotation omitted)).

In determining whether a party reasonably relied on a protective order, courts in the

Second Circuit consider the following factors: "(1) the scope of the protective order; (2) the

language of the order itself; (3) the level of inquiry the court undertook before granting the order;

and (4) the nature of reliance on the order."  *Tradewinds Airlines*, 2016 WL 3951181 at *2;

*Charter Oak*, 287 F.R.D. at 132; *In re EPDM*, 255 F.R.D. at 318.  "Additional considerations

that may influence a court's decision to grant modification include: the type of discovery

materials the collateral litigant seeks and the party's purpose in seeking a modification."  *In re*

*EPDM*, 255 F.R.D. at 318. Lastly, and although Plaintiffs again must emphasize that they are not "collateral" litigants, Judge Underhill's observation in *In re EPDM* applies with equal (and perhaps greater) force: "Given the wide variety of protective orders in operation, the more flexible approach to modification emphasized by *TheStreet.com* is sensible." *Id.* at 319.

Here, the "blanket" protective order adopted by the parties is the type of order that is "certainly necessary to expedite the discovery process in large multi-district class action litigations—to require parties to make a document-by-document showing of good cause would be an inefficient use of judicial resources." *Id.* at 322; *see also id.* at 323 ("In large multi-district class action lawsuits, it is not uncommon for courts to grant umbrella protective orders in order to keep the proceedings moving rather than being bogged down by a labor-intensive document-by-document good cause inquiry."). "However, to automatically apply *Martindell*'s strong presumption against modification to *all* protective orders would permanently shield stipulated, all-encompassing orders from ever receiving the type of court review contemplated by Rule 26(c)." *Id.* (emphasis in original). As Judge Underhill aptly observed, to forbid the modification of a protective order unless a showing of compelling need could be made would—in cases such as this one where Defendants avoided the need to make an individualized good cause showing at the time the stipulated protective order was entered—"shift the good cause burden to parties seeking to modify the protective order." *Id.*

For these and the other reasons discussed below, all factors weigh in favor of allowing modification of the protective order in this case, and thus this Court may exercise its discretion and modify the order.

1.   Scope: The Operative Protective Order is a Stipulated Blanket Order.

The broad scope of the blanket protective order in this case weighs in favor of allowing

modification.  Courts analyzing the "scope" factor of the reasonable reliance inquiry evaluate

"'whether the order is a blanket protective order, covering all documents and testimony produced

in the lawsuit, or whether it is specifically focused on protecting certain documents or certain

deponents for a particular reason.'"  *Charter Oak*, 287 F.R.D. at 132 (quoting *In re EPDM*, 255

F.R.D. at 319).  Where a "blanket protective order" has been entered, the "order is more likely to

be subject to modification than a more specific, targeted order because it is more difficult to

show a party reasonably relied on a blanket order in producing documents or submitting to a

deposition."  *In re EPDM*, 255 F.R.D. at 319.  Furthermore, "*[s]tipulated* blanket orders are even

less resistant to a reasonable request for modification."  *In re EPDM*, 255 F.R.D. at 319

(emphasis original); *Charter Oak*, 287 F.R.D. at 132 (same).

Here, the Protective Order is a blanket protective order because it is not targeted at

"certain documents or certain deponents for a particular reason," but rather grants sweeping

protection to "most, if not all, discovery, even if that discovery would have been required to be

disclosed in the absence of a protective order."  *Charter Oak*, 287 F.R.D. at 132.  Indeed, the

protective order's "expansive language granting the parties broad latitude to self-designate

materials as [] 'confidential,'" *In re EPDM*, 255 F.R.D. at 320, is even more expansive than the

language found to constitute a blanket protective order in *In re EPDM*, the seminal district court

case synthesizing the four factors to be evaluated when analyzing reliance on a protective order

in the Second Circuit.  *Compare In re EPDM*, 255 F.R.D. at 320 (allowing modification of a

blanket protective order where parties were allowed to designate as confidential material

containing or derived from "trade secrets or other confidential research, development, or

commercial information of current commercial value"), *with* Protective Order ¶ 1, ECF No. 58 (allowing confidential designation for client "information that is proprietary, a trade secret *or otherwise sensitive non-public information*" (emphasis added)); *see also Charter Oak*, 287 F.R.D. at 132 (scope of order weighed in favor of modification where "for a document produced during discovery [in this case] to be protected, the producing party or third party need only stamp it 'CONFIDENTIAL,' or some other similar designation."); *Tradewinds Airlines*, 2016 WL 3951181 at *2 ("[T]he scope of the Protective Order favors modification because the Order is a 'blanket' order covering all documents produced during the litigation, not a targeted order covering only certain documents.").  The scope of the protective order here weighs in favor of modification, a conclusion further bolstered by the fact that the parties stipulated to the order.

        2.  <u>Language: The Order Itself Contemplates Modification.</u>

     The express language of the protective order also weighs in favor of a finding that Defendants could not have reasonably thought that the protective order would offer permanent secrecy because it "suggests that the parties understood that the Protective Order could be modified." *Charter Oak*, 287 F.R.D. at 133.  Specifically, Paragraph 3 of the order allows a party to challenge another party's designation of confidentiality and does not specify a time limit in which such challenge must be made.  Protective Order ¶ 3, ECF No. 58 ("In the event a party challenges another party's designation of confidentiality, counsel shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may seek resolution by the Court.").  Protective Order Paragraph 9 further acknowledges that, "[n]otwithstanding the designation of information as 'CONFIDENTIAL' in discovery, there is no presumption that such information shall be filed with the Court under seal[,]" and then directs the parties to follow the Court's sealing procedures. *Id.* ¶ 9.  Because the Protective Order

"'specifically contemplates that relief from the provisions of the order may be sought at any time,'" both by way of challenge and through the Court's ordinary sealing procedures, Defendants in this case "could not 'reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret.'" *In re EPDM*, 255 F.R.D. at 320 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)).

Indeed, with respect to sealing, Your Honor has already recognized that "all of the confidential information that [Defendants] designated is not necessarily going to remain confidential," because "[t]here's confidentiality for discovery and then it's totally separate when it has to deal with [] particular court decisions that render certain information judicial documents." Discovery Hr'g Tr. 10:16–21, Feb. 4, 2021, ECF No. 201.  The language of the stipulated blanket protective order entered in this case clearly weighs in favor of allowing modification.  *See Charter Oak*, 287 F.R.D. at 133 (allowing modification where defendant could not reasonably rely on the order's indefinite continuation given the order's express language); *In re EPDM*, 255 F.R.D. at 321 (allowing modification where language of the order undermined any argument that defendants "relied on the Order to provide absolute and unchanging confidentiality of discovery materials").

      3.   <u>Level of Inquiry: The Protective Order was Subject to a Low Level of Inquiry.</u>

The level of inquiry undertaken by the Court prior to granting the protective order also plainly supports Plaintiffs' modification request, because "'[a] protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause.'"  *Charter Oak*, 287 F.R.D. at 133 (quoting *In re EPDM*, 255 F.R.D. at 321).  Here, the parties filed their Stipulated Protective Order on September 22, 2020 and the Court "So Ordered" it the same day, with no good cause showing made beyond the

Protective Order's boilerplate and conclusory statement that the order was entered upon a finding "that good cause exists for the issuance of an appropriately tailored confidentiality order[.]" Protective Order, ECF No. 58 at 1.  "Accordingly, 'in the absence of the requisite good cause showing, it cannot be presumed that every piece of discovery filed under the Order is actually worthy of such a high level of protection,'" *Charter Oak*, 287 F.R.D. at 133 (quoting *In re EPDM*, 255 F.R.D. at 322), and it is thus not reasonable for Defendants to argue that they reasonably relied on the Protective Order to provide permanent secrecy.  *Id.*; *see also Tradewinds Airlines*, 2016 WL 3951181, at *2 ("The level of inquiry undertaken before the Order was entered also weighs in favor of modification because the Court 'so ordered' the parties' stipulation without having cause to determine whether all the documents covered actually warranted protection.").

4.   Nature of Reliance: Defendants Have Not Relied on the Protective Order to Produce Documents They Would Not Have Otherwise Disclosed.

The nature of Defendants' reliance on the Protective Order also supports modification. "[W]here the parties have not given up any rights and indeed would have been *compelled* to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong."  *Charter Oak*, 287 F.R.D. at 133 (quoting *In re EPDM*, 255 F.R.D. at 323 (emphasis in original))*; see also Tradewinds Airlines*, 2016 WL 3951181, at *2 ("[T]he nature of the reliance on the Order weighs in favor of modification because there is no indication that the Defendants relied on the Order to produce documents they would not have otherwise disclosed.").  Indeed, despite the Protective Order, the parties have engaged in hard-fought discovery disputes, demonstrating that there is little concern that the Protective Order has engendered Defendants' reliance on the continuation of the protective order as currently written.

18

Furthermore, should any reliance on the part of Defendants in fact exist, it must be counterbalanced by the fact that Defendants' own arguments have laid the groundwork for Plaintiffs' request to modify the protective order.  Defendants cannot both attempt to foreclose Plaintiffs' injunctive relief claims in federal court and seek to complicate and bog down Plaintiffs' efforts to pursue those claims in other fora: "there is no merit to the all-encompassing contention that the fruits of discovery in one case are to be used in that case only." *Williams v. Johnson & Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y. 1970).  All Plaintiffs are requesting is the ability to take the discovery that has and will be produced to them and use it to pursue injunctions in state court, as Defendants have argued that they must.  Defendants have no credible argument that the discovery produced in this matter would not be responsive to discovery requests or "subject to a motion to compel . . . in future cases that are similar to the case at bar." *Charter Oak*, 287 F.R.D. at 134; *see also In re EPDM*, 255 F.R.D. at 324 ("[I]f the litigant could access the same materials and deposition testimony by conducting its own discovery, it is in the interest of judicial efficiency to avoid such duplicative discovery.").

### D.  Plaintiffs Have a Compelling Need to Modify the Protective Order.

Even if the *Martindell* standard for modifying protective orders applied to Plaintiffs' request here (it does not), Plaintiffs clearly meet this standard because they have demonstrated an "extraordinary circumstance or compelling need," *TheStreet.Com*, 273 F.3d at 229, justifying the requested modification.  As discussed *supra*, Plaintiffs seek only to use the confidential discovery already, or soon to be, obtained in this litigation in their injunctive actions against the same defendants.  Those injunctive actions arise out of the same facts and circumstances alleged as this case, and, indeed, are necessitated by Defendants' own arguments that Plaintiffs lack standing to pursue injunctive relief before this court.  *See supra,* at p. 1–2.

19

Given that Judge Schofield has (1) explicitly countenanced the splitting of injunctive and monetary relief claims between state and federal court in a past consumer class action where she determined that the plaintiffs lacked Article III standing, *L'Oreal*, 2017 WL 4480887, at *6, and (2) also advised the parties that she is facing a backlog of fully briefed motions that will prevent resolution of Defendants' dismissal arguments "any time soon," Pre-Mot. Conf. Hr'g Tr. 16:11–19, ECF No. 134, Plaintiffs intend to imminently file their injunctive claims in state courts.  If the Protective Order stands without modification, Plaintiffs will be prohibited from using the confidential discovery they have unearthed in this matter in state court and instead "forced to litigate the exact same issue in each and every case," a result which would be "an enormous waste of time and resources for the parties and the court."  *Charter Oak*, 287 F.R.D. at 134.  Just as Judge Bianco noted with respect to the similar circumstances confronting him in *Charter Oak*, such a result runs contrary to the fact that "allowing the sharing of discovery among related cases is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases."  *Id*.  As was the case for the plaintiff in *Charter Oak*, "there is a compelling and extraordinary need" to allow the Plaintiffs in this lawsuit to make use of the confidential discovery materials obtained here in their other related litigations against Defendants.  *Id*.  Particularly where the parties will continue to be bound by the terms of the Protective Order preventing public dissemination, and there is therefore no prejudice to Defendants if the modification is made, Plaintiffs have more than demonstrated a compelling need for modification.  *Id*.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiffs request that the Court modify Paragraph 2 of the Stipulation and Protective Order so that it states: "The Confidential Information disclosed will be

held and used by the person receiving such information solely for use in connection with the action or any other action commenced by a party that involves the same or similar transactions or occurrences that gave rise to the action."

Dated:  February 12, 2021                    Respectfully submitted,

**WITTELS MCINTURFF PALIKOVIC**

By:      /s/ Steven L. Wittels
          Steven L. Wittels (SW-8110)
          J. Burkett McInturff (JM-4564)
          Tiasha Palikovic (TP-5697)
          Steven D. Cohen (SC-7243)
          Jessica L. Hunter (JH-0025)

          18 HALF MILE ROAD
          ARMONK, NEW YORK 10504
          Telephone: (914) 319-9945
          Facsimile: (914) 273-2563
          slw@wittelslaw.com
          jbm@wittelslaw.com
          tpalikovic@wittelslaw.com
          sdc@wittelslaw.com
          jlh@wittelslaw.com

          *Counsel for Plaintiffs and*
          *the Proposed Class*