

February 19, 2021

**Via ECF**
Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Nichols, et al., v. Noom, Inc., et al.*, No. 20 Civ. 3677 (LGS) (KHP)

Dear Judge Parker:

Plaintiffs and the proposed Class submit this "extenuating circumstances" motion pursuant to the Court's January 13, 2021 Discovery and Scheduling Order (ECF No. 145) to request a conference with Your Honor to address the following issues:

1. Clarification of Your Honor's orders during the February 4, 2021 telephonic conference regarding Defendants' refusal to produce "Child" documents that are embedded via hyperlink within the "Parent" documents Defendants produce in discovery.

2. Clarification of Your Honor's December 10, 2020 order (ECF No. 122) regarding "Child" documents Noom employees attach to emails via hyperlink, where the "Parent" email is produced by Defendants in discovery.

There are four reasons for this "extenuating circumstances" motion:  **First**, there is no record of Your Honor ruling on Plaintiffs' request for a conference regarding Defendants' obstructive interpretation of the Court's December 10 Order on hyperlink attachments to emails (*see* ECF Nos. 142 and 186, requesting a conference).  Plaintiffs' conference request was not addressed in the Court's February 5 post-conference Discovery Order (ECF No. 195) and Plaintiffs learned from the Court Reporter on February 8 that the relevant part of the February 4 conference was not recorded or transcribed.  *See* ECF No. 201 at 67 (transcript abruptly ending approximately one hour before the conference ended).  **Second**, Plaintiff counsel's notes of Your Honor's ruling on our conference request show that Your Honor granted Plaintiffs leave to reraise their concerns if we could demonstrate that Plaintiffs are unable to efficiently access relevant linked documents.  Yet that is the status now, which perhaps the Court did not appreciate, as Plaintiffs cannot access *hundreds, if not thousands,* of linked documents in Defendants' production (which is still in the earliest stages).  **Third**, our notes of the February 4 conference reflect that in issuing the December 10 order the Court understood the dispute regarding hyperlink email attachments to be about links to publicly available documents on the internet, not links to Defendants' internal documents.  *See also* ECF No. 122 (Dec. 10 Order noting "to the extent Plaintiffs cannot obtain the document through copying the link in their Internet brower [*sic*], Plaintiffs may raise the issue with the Court.").  **Fourth**, while this motion is for clarification, to the extent our records do not reflect the Court's intentions, we are filing today to preserve our right to request reconsideration of orders made on February 4 but not reflected in either the February 5 post-conference Discovery Order or

the incomplete February 4 transcript we received on February 8.[1]  The points below outline Plaintiffs' position on the issues we would like to discuss with Your Honor:

(A)     The Sedona Conference defines a "document" or "document family" as "[a] collection of pages or files produced manually or by a software application, constituting a logical single communication of information, but consisting of more than a single stand-alone record. Examples include a fax cover, the faxed letter, and an attachment to the letter, the fax cover being the 'Parent,' and the letter and attachment being a 'Child.'" Sedona Conference Glossary: eDiscovery and Digital Information Management at 299 (5th ed. Feb. 2020).

(B)     Defendants' use of hyperlinks to attach documents to "Parent" emails and embed relevant documents within "Parent" documents is extensive and widespread.  *See* ECF Nos. 189–191 (examples of key documents with inaccessible links).  Over the course of this litigation, Defendants will produce ***thousands*** of relevant "Parent" documents with embedded links to "Child" documents or relevant "Parent" emails with "Child" documents attached via link. Assuming the Child document is separately produced by Defendants, Plaintiffs have ***no way*** to connect the Child with the Parent email or document.  ***Only*** Defendants are capable of putting this puzzle together.  Further, without a systematic pairing of the Parent and Child documents, whether a Child attached or embedded via link will be separately produced is wholly unrelated to whether the Parent is produced.  For example, for Parent documents or emails retrieved via search terms, the Child will only be produced if that document also contains a search term, and vice versa.[2]

(C)     Federal courts ***do not*** allow parties to produce emails without attachments, even if re-connecting an email to its attachment is a tedious manual process.  *See Pom Wonderful LLC v. Coca-Cola Co.*, No. 08 Civ. 86237 (SJO) (FMO), 2009 WL 10655335, at *3 (C.D. Cal. Nov. 30, 2009) ("[G]iven the Sedona Conference's view of an email and attachment as one document or message unit, it is clear that [defendant] is required to provide plaintiff with either the ability to re-link the emails with the attachments or re-produce the emails with their attachments."); *see also CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, No. 3 Civ. 2150 (JBA) (WIG), 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006) (If plaintiffs are not able to match "thousands of emails" with their attachments, "Defendants, at their expense, are ordered to provide Plaintiff with the information, data, or software needed to accomplish this.").  In addition to the highly analogous case law concerning email attachments, the only case Plaintiffs have located that addresses the issue of links to Child documents is Special Master Judge Dennis Cavanaugh's (Ret.) order in *IQVIA, INC. v. Veeva Sys., Inc.*, No. 17 Civ. 00177 (CCC) (MF), 2019 WL 3069203 (D.N.J. July 11, 2019).  In that case Judge Cavanaugh found the *Pom Wonderful* case instructive and ordered the producing party to provide 2,200 Google Drive documents that were attached to emails via hyperlink.  *Id.* at

---

[1] *See Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, No. 12 Civ. 1699 (CSH), 2015 WL 11237310, at *6 (D. Conn. July 6, 2015) ("A clarification motion asks the Court: 'What did you mean to say?'  A reconsideration motion says to the Court: 'We know what you said.  It is wrong.  Change it.'").  To the extent Plaintiffs need to request the Court's reconsideration of unrecorded orders issued on February 4, Plaintiffs' application is timely under Local Rule 6.3.  To the extent Plaintiffs need to request the Court to alter or amend its December 10 Order in light of facts revealed at the February 4 conference, Plaintiffs' application is timely under Rules 59(e), 60(b), 60(a), and 54(b).

[2] This problem cropped up again this week, as a document relevant to the parties' work on sampling customer complaints contained an inoperative link to a relevant video that Defendants withheld from their productions, so Plaintiffs are in the dark as to what that video contains while the parties negotiate sampling process.  It is highly inefficient for discovery to proceed this way, especially when documents produced in the last 60 days contain *hundreds* of links and Plaintiffs have no way to identify which of those linked documents were produced elsewhere, if any.

5. Judge Cavanaugh reasoned that while the producing party argued that "the linked documents are not stored with emails in the ordinary course of business, [the receiving party] has no way to link the documents, only [the producing party] is capable of linking the emails to the Google Drive documents." *Id.* Judge Cavanaugh further stated that "the Special Master is not convinced that relinking these 2,200 documents is unduly burdensome in light of the issues at stake in this matter, the resources of the parties, and the amount in controversy." *Id.*

(D) The cost to Defendants of collecting the linked documents is tiny compared to the amounts at stake in this litigation. Indeed, Defendants advised Plaintiffs that the cost of collecting documents attached to emails via hyperlink was just *$4,466*. ECF No. 122 at 4.

(E) Our notes from the February 4 conference indicate Your Honor suggested that the identity of Child documents attached or embedded via link can be determined by deposing Noom employees. But Plaintiffs have already deposed a Noom data scientist and showed him the document given to Your Honor via ECF No. 190. We asked him about the spreadsheet attached via link on page 4 of that document and the employee was baffled: "There is no way a person could read a PDF of a document and know what [is in] a link to [a] spreadsheet . . . . I don't see how I could be expected to know that." Riccardi Tr. 257:23–258:2. It is extremely unlikely that any Noom employee-deponent will be able to identify the contents of the links they are shown.

(F) In addition to revealing Plaintiffs' litigation strategy and other work product (especially on the eve of depositions), forcing Plaintiffs to request linked documents from Defendants on a case-by-case basis is unfair, inefficient, and will only lead to additional disputes like the one that caused Plaintiffs to first request a conference on this topic. On December 4 Plaintiffs asked Defendants to provide the Child documents embedded in several Parent documents Defendants produced on November 30. *See* Ex. A. Defense counsel delayed and then responded by falsely claiming that "[t]he Court denied Plaintiffs' Motion on this issue" and making clear that "[w]e are not going to produce linked documents." *Id.* In an attempt to work constructively with Defendants on this issue, and with the assistance of our ESI consultants, Plaintiffs promptly emailed a series of questions aimed at minimizing the prejudice to Plaintiffs. *See* ECF No. 142-4 at 3–4. As the Court can readily see, Defendants' response was neither cooperative nor constructive. *Id.* at 2.

(G) Finally, these issues would not be before Your Honor but for the fact that Defendants backed out of their August 26, 2020 commitment to produce hyperlinked documents in emails and other documents. On August 25, in advance of a meet and confer the next day, Plaintiffs circulated an ESI protocol that defined "Family Groups" with specific reference to "files with extracted embedded OLE documents and email or other documents together with any documents referenced by document stubs within those emails or other documents" making clear that together these documents "constitute family groups." The parties discussed the issue of linked documents during their August 26 meet and confer, Defendants' ESI attorney agreed that linked documents would be produced, and the parties memorialized their agreement on these points in their respective ESI protocol drafts. *See* ECF Nos. 65-4 at 21–22 and 65-7 at 13 (Plaintiffs' and Defendants' ESI Protocol definition of "Family Groups," both of which specifically include "documents referenced by document stubs within those emails."). Indeed, the Court's January 13, 2021 ESI protocol (ECF No. 146) adopts the *exact* definition of "Family Groups" Plaintiffs proposed on August 25, 2020. Considering this language, agreed upon by the parties and adopted by the Court, Defendants should not be permitted to continue to withhold linked Child documents.

Thank you for the Court's consideration.

                                      Respectfully submitted,

                                      /s/ Steven L. Wittels
                                            Steven L. Wittels

                                    *Counsel for Plaintiffs and the Proposed Class*

cc: All Counsel of Record (*Via ECF*)