UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MOJO NICHOLS, et al.,

                                        Plaintiffs,

                        -against-

NOOM INC., et al.,

                                        Defendants.

-----------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge**

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____            │
│ DATE FILED: _3/11/2021____       │
└─────────────────────────────────┘
```

**DISCOVERY ORDER CONCERNING**
**PRODUCTION OF HYPERLINKED**
**INTERNAL DOCUMENTS**

**20-CV-3677 (LGS) (KHP)**

        Plaintiffs filed a letter motion on February 19, 2021 seeking to "clarify" the Court's

previous orders and rulings regarding Defendants' production of documents linked to Google

Drive documents and Gmail communications via hyperlink.  (ECF No. 214.)  In the alternative,

they seek reconsideration of this Court's prior rulings that (1) Noom would be permitted to

utilize Google Vault to collect its Google Drive and Gmail documents and (2) to the extent

Plaintiffs identified certain internal documents containing hyperlinks to internal Noom

documents that appeared to be material to the claims or defenses in this action and could not

locate the corresponding hyperlinked document in the production, they should raise the issue

with Noom and Noom would be required to provide the document or its Bates number (unless

withheld on privilege or work product grounds and logged).  In this Court's experience, only a

fraction of the documents produced in discovery will be material to the litigation and the Court

indicated to the parties that the above-described procedure should be sufficient to address

Plaintiffs' concerns about identifying key hyperlinked documents.

Plaintiffs contend that, based on Noom's early production of documents, they have learned Noom employees frequently link to internal documents in lieu of attachments to emails or other documents.  They argue that hyperlinks are akin to attachments and should be produced as part of a document "family."  They argue that without metadata linking the underlying hyperlinked Noom document to the document containing the hyperlink, they will not be able to determine families of documents. They also express concern that some of the hyperlinked documents may not be produced at all.  They urge this Court to require Noom to use MetaSpike's Forensic Evidence Collector ("FEC") to recollect Google Drive and Gmail documents so that any hyperlinked documents are also pulled as part of the document "family" or to create a program using Google's application programming interface to extract links from responsive Google Drive documents, retrieve those linked documents, and produce them as attachments.   Plaintiffs estimate it will take only one to two weeks to write a program to extract the links.  They do not state what the time or costs would be for processing, de-duplication, and re-review of documents.

Noom opposes Plaintiffs' motion, arguing that the hyperlinks are not attachments and that it is separately collecting and producing relevant internal documents on Google Drive such that there should be no concern that Plaintiffs will not receive relevant internal documents. Noom has agreed to produce a reasonable number of linked documents at Plaintiffs' request and has been ordered by this Court at a discovery conference to provide such linked documents to the extent Plaintiffs cannot locate them in the production and/or need clarification as to whether a certain document is the corresponding linked document.  Noom's discovery expert submitted a declaration stating that the FEC tool is unworkable and that Noom would incur

roughly $180,000 in costs to collect the hyperlinked documents and produce them, resulting in further delays.  For that reason, it argues that Plaintiffs' request is not proportional to the needs of the case.

The issues raised by Plaintiffs raise complex questions about what constitutes reasonable search and collection methods in 2021—when older forms of communicating via emails and documents with attachments and footnotes or endnotes are replaced by emails and documents containing hyperlinks to other documents, video, audio, or picture files.   It also highlights the changing nature of how documents are stored and should be collected.  The Court has carefully considered the issues raised and, for the reasons set forth below, denies Plaintiffs' motion for reconsideration and trusts that this Opinion provides clarification.

## **BACKGROUND**

This case was filed in May 2020.  Both sides have sophisticated counsel knowledgeable about discovery of electronically stored information ("ESI") and are utilizing experienced ESI consultants to assist with the collection and production of documents.  In accordance with best practices, the parties began to negotiate an ESI protocol but disagreed on major aspects of it, requiring multiple conferences before the Court.  Ultimately, Noom agreed to collect and did collect relevant data from multiple sources including Gmail, G-chat, Google Drive, Google Calendar, Slack, and several other reporting tools/databases.  Noom also agreed to produce a long list of metadata.  (ECF No. 146, Section C(6).)  On November 13, 2020, the parties advised the Court that they agreed to Noom's use of Google Vault to collect documents from Google

Drive even though "filepath" metadata field would not be available for documents collected that way.[1]  (ECF No. 98.)

The parties disagreed, however, on the use of Google Vault to collect Gmail emails. Plaintiffs asked Noom to use FEC to collect email, which it contended was a superior tool to Google Vault and no more expensive or onerous.  Both sides submitted expert declarations from their ESI consultants about the pros and cons of FEC versus Google Vault.  One main concern of Plaintiffs was that a Google Vault collection would not pull documents referenced in emails by a hyperlink.

Noom argued that it should be permitted to determine the method of collection so long as it is reasonable and that, because it was producing actual attachments to emails and separately collecting Google Drive documents that are referenced as file hyperlinks through its custodial and shared drive collection, it should not be required to perform an essentially redundant collection that would be burdensome.  That is, Plaintiffs would receive relevant and responsive hyperlinked Google Drive documents from Noom's separate collection of those documents.  One of Noom's ESI consultants also pointed out that Google Vault is the standard industry tool that is used for Gmail export by the vast majority of its Google business clients. (ECF No. 105-1, Declaration of Jason Sims ¶ 7.)  Further, in response to Plaintiffs' request that it consider using FEC, Noom's vendor tested FEC and found that it was not workable insofar as the tool "continues to stall, leading to significantly longer processing times that will likely further delay collection."  (ECF No. 105.)  Its expert also stated that collection of emails using FEC while

---

[1] Filepath information reveals the original location of an email or shows where a document was originally stored. Noom agreed to provide filepath metadata to the extent it could be reasonably collected.

also collecting documents in Google Drive would "substantially increase its costs and result in a significant number of duplicates in its review population that cannot be culled through deduplication." *Id.*

After fully hearing the parties' arguments, the Court held that Noom could use its preferred software to collect email documents, finding that method reasonable and deferring to the principle that a producing party is best situated to determine its own search and collection methods so long as they are reasonable.[2] *See* Sedona Principle 6; *Hyles v. New York City*, 10 Civ. 3119 (AT) (AJP), 2016 WL 4077114 (S.D.N.Y. Aug. 1, 2016).  The Court also took into account the relative costs and delays attendant to utilizing FEC.  However, as noted above, to address Plaintiffs' concern about not being able to identify which Google Drive documents in the production related to a particular hyperlink, the Court directed that if there were particular key documents containing hyperlinks where the hyperlinked documents could not be located in the production, Plaintiffs could raise that issue with the Court.  In a later conference the Court held that if there were certain documents discovered in the production containing hyperlinks for which the corresponding hyperlinked document could not be located or identified, Plaintiffs could raise the issue with Noom and Noom would be required to provide the document or Bates number.  Noom was, from the start, willing to do this for a reasonable number of documents.

Notably, the ESI protocol negotiated by the parties and later entered by the Court does not state that hyperlinked documents are part of "family groups."  But the protocol does not define "attachments" either.  Section C(5) of that Order, entitled "Family Groups," says:

---

[2] Noom did use FEC to collect Google Calendar ESI.

(a) A document and all other documents in its attachment range, emails with attachments, files with extracted embedded OLE documents, and email or other documents together with any documents referenced by document stubs within those emails or other documents all constitute family groups. If any member of a family group is produced, all members of that group must be also be produced or else logged as privileged.

(b) Parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved.

(ECF No. 146.)  It is clear to this Court that there was no meeting of the minds on whether hyperlinks were attachments and this Court, when entering the order, did not view hyperlinks to be attachments.  While the protocol does reference "files with extracted embedded OLE documents," the Court understands this to refer to *embedded*, displayed documents such as a graph or a chart within a Word document or email—not hyperlinked documents.  The ESI also refers to "document stubs," which the Court understands to refer to the company's archive location of attachments to emails.[3]  In sum, the ESI order does not treat hyperlinked documents as attachments.  As noted above, Noom is producing all attachments to emails with the parent email as part of the email "family."  Relevant hyperlinked documents are being produced separately.

## DISCUSSION

The Court may grant a motion for reconsideration when there has been an intervening change of controlling law, if the Court overlooked controlling decisions or factual matters before it, if new evidence has been discovered that warrants revisiting the prior decision, or to correct a clear error or prevent manifest injustice.  *See* Local Rule 6.3; *Arthur Glick Truck Sales,*

---

[3] To the extent Plaintiffs now argue that "stub" was intended to require pulls of hyperlinked documents, this is not the intent Noom or the Court ascribed to that term.

*Inc. v. Stuphen East Corp.*, 965 F. Supp. 2d 402, 405 (S.D.N.Y. 2013); *Brown v. Barnes & Noble, Inc.*, No. 16-CV-7333 (RA) (KHP), 2020 WL 1082464, *1 (S.D.N.Y. Mar. 5, 2020).  Plaintiffs argue that initial discovery has revealed that there are many internal Noom documents that contain hyperlinks to other internal Noom documents and that, even though Noom is searching for and producing relevant documents, the hyperlinked internal documents should be treated as attachments. They argue that neither the Court nor the parties appreciated that there would be thousands of Noom documents containing hyperlinks to other internal Noom documents at the time of the Court's initial ruling on this issue.

When managing discovery, the Court is guided by proportionality concerns set forth in Rule 26(b)(1) and Rule 1's mandate to ensure the just, speedy, and inexpensive determination of this action.  Fed. R. Civ. P. 1, 26.  The Court is also mindful that the parties may make early ESI decisions based on limited information, that proportionality considerations may need to be re-balanced at later points in the litigation, and that discovery plans may be modified when new information is learned.  Another principle relevant to the issue before the Court is that Rule 34 requires a party to produce documents in a "reasonably usable form."  Fed. R. Civ. P. 34; 2006 Committee Note to Rule 34.  This means that ESI should not be produced in a format that makes it unreasonably difficult or burdensome for the requesting party to use the documents efficiently in the litigation.  *See also* Sedona Principle 12.  At the same time, it is appropriate to limit collection and review to non-duplicative, relevant information. *See* Sedona Principle 8.

With the above principles in mind, the Court denies Plaintiffs' motion for reconsideration.  To start, the Court does not agree that a hyperlinked document is an

attachment.  While the Court appreciates that hyperlinked internal documents could be akin to attachments, this is not necessarily so.  When a person creates a document or email with attachments, the person is providing the attachment as a necessary part of the communication. When a person creates a document or email with a hyperlink, the hyperlinked document/information may or may not be necessary to the communication.  For example, a legal memorandum might have hyperlinks to cases cited therein.  The Court does not consider the hyperlinked cases to be attachments.  A document also may contain a hyperlink to another portion of the same document.  That also is not an attachment.  A document might have a hyperlink shortcut to a SharePoint folder.  The whole folder would not be an attachment. These are just examples.  An email might have hyperlinks to a phone number, a tracking site for tracking a mailing/shipment, a facebook page, a terms of use document, a legal disclaimer, etc. The list goes on and on.  Many of these underlying hyperlinked documents may be unimportant to the communication.

Relatedly, there has been no showing by Plaintiffs that they actually need to link to or even care about all of the hyperlinked documents.  "Parties should not demand forms of production . . . for which they have no practical use or that do not materially aid in the discovery process."  The Sedona Principles, Third Edition p. 173.  At this point it is entirely speculative how many underlying hyperlinked documents are relevant and material to this case.  While it may be true that Noom employees frequently create documents with hyperlinks to other internal Noom documents, it is not at all clear that Plaintiffs cannot identify the underlying hyperlinked documents or the quantity that are even material to this action.  The process the Court already ordered is appropriate.  It will allow Plaintiffs to evaluate Noom's

production and, if Plaintiffs determine there is a need for an additional targeted pull or production or clarifying information about a hyperlinked document's identity or Bates number, Plaintiffs can request it.[4]  To the extent Plaintiffs have raised a concern that such a request will somehow reveal their strategy or work product, such a concern is not persuasive.   It is no secret the types of documents that are relevant to this case and both sets of lawyers no doubt will have "hot docs" tags on many of the same documents in Noom's production.

The Court has additional proportionality and Rule 1 concerns:  costs and delay.  What Plaintiffs request is a new collection of the same emails and Google Drive documents that already have been collected and are being reviewed for relevance and production.  As noted above, Plaintiffs already agreed that Google Vault was an acceptable collection tool, at least for the Google Drive documents.  Noom has argued persuasively that the redundancies of pulling hyperlinked documents would be burdensome.  Indeed, one email thread may contain multiple hyperlinks to the same document that already was flagged for production.   The same underlying hyperlinked document may be pulled tens if not hundreds of times in some cases. This additional collection would certainly increase the review population and, as Noom's expert explained, complicate de-duplication, delay production, and impose additional costs.  Noom estimates the costs would be upwards of $180,000.  Plaintiffs have not effectively countered these projected costs.  Initially, Plaintiffs posited that what they requested would cost less than $5,000—a number that was not credibly supported by evidence.  The recently submitted

---

[4] The Court appreciates that there may be different versions of hyperlinked documents or authentication issues that arise.  However, the number of documents where these issues may arise are likely to be a very small percentage of the overall production that can be dealt with later in discovery.  The issues in this case should not raise many disputes about authenticity or versions of documents because the key issues relate to public-facing policies and procedures pertaining to Noom's autorenewal policy.

Declaration of Plaintiffs' ESI expert Douglas Forrest also does not adequately address the issue of costs and delay.  Forrest proposes that Noom could write a program to utilize Google's Application Programming Interface ("API") to extract links to Google Drive documents from other Google Drive documents, emails, and Slack communications.  (ECF No. 236.)  He suggests that Noom's ediscovery programmers could create such a program within two weeks.  *Id.* While it may be true that creating such a program would cost far less than $180,000, the Forrest declaration does not address the time it would take to apply the program, load, and review the documents.  Nor do Plaintiffs explain why a recollection of hyperlinked documents, many of which may be of no real value in the case and are redundant of the documents already collected, is proportional to the needs of this case.

To the extent Plaintiffs argue that Noom is attempting to shield itself from discovery by virtue of its recordkeeping system, the Court rejects this argument.  Noom is searching and producing its Google Drive documents—it is not refusing to search and produce them.  What it objects to is collection of them through both a direct collection and a collection through hyperlinks that would dramatically increase redundancies in the collection, increase costs, and delay discovery.  Moreover, Plaintiffs have not made a showing that the value of obtaining the metadata establishing the linkages for *all* hyperlinked documents is proportional to the needs of the case.[5]

The Court acknowledges the inherent tension between the value and efficiency in creating an ESI protocol up front that addresses all potentially foreseeable issues on the one

_____

[5] Perhaps future ESI software will be able to provide greater efficiencies and reduced costs to address the concerns of both parties.  Alternatively, perhaps the parties should have considered whether a separate Google Drive collection was necessary if the documents were being collected through hyperlinks to reduce redundancies.

hand, and getting discovery underway in a case on the other hand.  The existing protocol together with the Court's work around to address Plaintiffs' concerns for those key documents where they need more information about the hyperlinked documents strikes an appropriate balance based on the needs of this case.  And, as reported at the most recent conference, the parties have already successfully utilized the Court's procedure.

To the extent Defendants request attorneys' fees in connection with opposing Plaintiffs' motion, their request is denied.   The issue Plaintiffs raise is an important one and one on which the Court did not issue a fulsome written decision, instead opting to address the issue more informally as is the practice in this District.  Nonetheless, the Court cautions Plaintiffs not to repeatedly raise the same discovery issue in the hopes of getting a different answer absent good cause or a showing that the Court has not appreciated or misconstrued the facts or the law.

### **CONCLUSION**

For the reasons set forth above, Plaintiffs' letter motion at ECF No. 214 is DENIED. Defendants' related request for attorneys' fees generated in responding to Plaintiffs' letter motion is also DENIED.

**SO ORDERED.**

DATED:   March 11, 2021
        New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge