# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MOJO NICHOLS, SUSAN BREWSTER, DUANE DEA, MARYANNE DERACLEO, KAREN KELLY, REBECCA RICHARDS, JENNIFER SELLERS, and STACY SPENCER,**<br><br>*Individually and on Behalf of All Others Similarly Situated*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**NOOM, INC., ARTEM PETAKOV, and JOHN DOES 1 TO 5,**<br><br>**Defendants.** | **No. 20 Civ. 3677 (LGS) (KHP)** |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

---

Dated: March 19, 2021

**WITTELS MCINTURFF PALIKOVIC**

Steven L. Wittels
J. Burkett McInturff
Jessica L. Hunter
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
jlh@wittelslaw.com

*Counsel for Plaintiffs and the Class*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 7

I.    NOOM'S REQUEST TO STRIKE THE TAC UNDER RULE 12(F) IS FACTUALLY, LEGALLY, AND PROCEDURALLY GROUNDLESS ............................................ 7

II.    THE TAC HAS THE REQUISITE LEVEL OF PARTICULARITY .............................. 9

    A.  Each of the Eight Plaintiffs' Allegations Easily Satisfy Rule 9(b) ............................. 9

      1.  Plaintiffs Describe a Multi-Component Web Designed to Trick Consumers ............ 9

      2.  Each of the Named Plaintiffs Adequately Details How They Were Deceived by Noom ................................................................................................................... 10

      3.  Defendants Try to Sidestep the Full Scope of the Fraud Alleged ............................ 11

    B.  The GBL Claims are Adequately Pled ........................................................................ 16

    C.  Defendant Petakov Can be Held Responsible for His Illegal Conduct ...................... 16

III.    PLAINTIFFS MAY BRING CLAIMS FOR CONSUMERS IN OTHER STATES ....... 17

IV.    DEFENDANTS' ADDITIONAL ARGUMENTS FAIL ................................................. 19

    A.  Plaintiffs Have Standing to Seek Injunctive Relief .................................................. 19

    B.  The California Plaintiffs' Statutory Claims Should be Sustained .............................. 20

      1.  The California Plaintiffs Can Bring Claims for Equitable Relief ............................ 20

      2.  Plaintiffs Can Enforce the ARL through the FAL, UCL, and CLRA ...................... 23

      3.  Noom Is a Weight-Loss Service That Falls Within the CLRA's Purview ............... 24

      4.  The TAC States a Claim Under California's Weight Loss Contracts Law .............. 25

      5.  Plaintiffs' Have Stated a Claim Under the Bot Disclosure Law .............................. 26

    C.  Plaintiffs' Common Law Claims Should Proceed ..................................................... 26

      1.  Plaintiffs Alternative Unjust Enrichment Claims are Viable at This Stage ............. 26

      2.  Plaintiffs State a Claim, in the Alternative, for Money Had and Received ............. 27

      3.  Plaintiffs' Conversion Claims are Adequately Pled ................................................ 28

D. Rule 23 Preempts State Class Action Bans and Notice Requirements and Thus Plaintiffs' Claims Are Not Barred. ............................................................................ 29

CONCLUSION AND REQUEST FOR LEAVE TO AMEND .................................................... 31

## TABLE OF AUTHORITIES

**Cases**

*A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.*,
  1998 WL 159059 (S.D.N.Y. Apr. 1, 1998) ........................................................... 12

*Allstate Ins. Co. v. Ahmed Halima*,
  2009 WL 750199 (E.D.N.Y. Mar. 19, 2009) ........................................................ 9

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003) ................................................................................ 19

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020) ................................................................................ 20

*Blair v. JP Morgan Chase Bank Nat'l*,
  2009 WL 8580038 (N.D. Ohio Sep. 30, 2009) ................................................... 27

*Bonasera v. New River Elec. Corp.*,
  2021 WL 490257 (S.D. Ohio Feb. 10, 2021) ...................................................... 30

*Campbell v. Nat'l Union Fire Ins. Co.*,
  130 F. Supp. 3d 236 (D.D.C. 2015) ............................................................... 16, 27

*City of New York v. Smart Apartments LLC*,
  959 N.Y.S.2d 890 (Sup. Ct. 2013) ...................................................................... 17

*Cresci v. Mohawk Valley Cmty. Coll.*,
  693 F. App'x 21 (2d Cir. 2017) ........................................................................... 31

*Davidson v. Kimberly-Clark Corporation*,
  889 F.3d 956 (9th Cir. 2018) ............................................................................... 20

*Delgado v. Ocwen Loan Servicing LLC*,
  2017 WL 5201079 (E.D.N.Y Nov. 9, 2017) ....................................................... 29

*DiCarlo v. MoneyLion, Inc.*,
  988 F.3d 1148 (9th Cir. 2021) ............................................................................. 23

*Disher v. Citigroup Glob. Markets, Inc.*,
  486 F. Supp. 2d 790 (S.D. Ill. 2007) ................................................................... 22

*Donnenfeld v. Petro, Inc.*,
  333 F. Supp. 3d 208 (E.D.N.Y. 2018) ................................................................. 19

*Dunn v. Albany Med. Coll.*,
  2010 WL 2326127 (N.D.N.Y. June 7, 2010) ........................................................ 8

*Elkind v. Revlon Consumer Products Corporation*,
  2015 WL 2344134 (E.D.N.Y. May 14, 2015) ..................................................... 20

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
    726 F.3d 62 (2d Cir. 2013) .................................................................................. 29

*Franze v. Bimbo Foods Bakeries Distrib., LLC*,
    2019 WL 1244293 (S.D.N.Y. Mar. 15, 2019) ...................................................... 21

*Genesco Entm't v. Koch*,
    593 F. Supp. 743 (S.D.N.Y. 1984) ........................................................................ 6

*Green v. Covidien LP*,
    2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019) ...................................................... 31

*Green v. Gerber Products Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) .................................................................. 31

*Gross v. Vilore Foods Co., Inc.*,
    2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) ...................................................... 22

*Haskins v. Symantec Corp.*,
    2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ...................................................... 25

*Haywood v. Massage Envy Franchising, LLC*,
    887 F.3d 329 (7th Cir. 2018) .............................................................................. 15

*Holve v. McCormick & Co., Inc.*,
    334 F. Supp. 3d 535 (W.D.N.Y. 2018) ................................................................ 20

*In re Aggrenox Antitrust Litigation*,
    2016 WL 4204478 (D. Conn. Aug. 9, 2016) ...................................................... 30

*In re Arris Cable Modem Consumer Litigation*,
    2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .......................................................... 12

*In re Cardiac Devices Qui Tam Litig.*,
    221 F.R.D. 318 (D. Conn. 2004) .......................................................................... 11

*In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) .................................................... 22

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) ............................................................................ 8

*In re Yahoo Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (2018) .............................................................................. 24

*Izquierdo v. Mondelez International*, Inc.,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016). .................................................... 20

*Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church Ministries, Inc. (Md.)*,
    2020 WL 1703937 (D.D.C. Apr. 8, 2020) .......................................................... 29

*Johnson v. Pluralsight, LLC*,
    728 F. App'x 674 (9th Cir. 2018) ........................................................................ 24

*Joya v. Verizon New York, Inc.*,
  2008 WL 4667987 (S.D.N.Y. Oct. 20, 2008) ........................................................ 9

*King v. Bumble Trading, Inc.*,
  393 F. Supp. 3d at 870 ....................................................................................... 28

*Kohler v. Errico*,
  2011 WL 1077722 (S.D.N.Y. Feb. 23, 2011) ...................................................... 28

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
  897 F.3d 88 (2d Cir. 2018) ....................................................................... 15, 18, 19

*Leslie v. Fid. Nat'l Title Ins. Co.*,
  598 F. Supp. 2d 1176 (W.D. Wash. 2009) .......................................................... 27

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
  797 F.3d 160 (2d Cir. 2015) ............................................................................... 31

*LRC Realty, Inc. v. B.E.B. Props.*,
  2020-Ohio-6999 (Ct. App. Dec. 31, 2020) ........................................................ 27

*Mancuso v. RFA Brands, LLC*,
  454 F. Supp. 3d 197 (W.D.N.Y. 2020) ............................................................... 19

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ............................................................... 28

*Mayron v. Google LLC*,
   54 Cal. App. 5th 566 (2020) ............................................................................. 23

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ......................................................................................... 23

*Montero v. City of Yonkers, New York*,
  890 F.3d 386 (2d Cir. 2018) ............................................................................... 13

*Morales v. Kimberly-Clark Corp.*,
  2020 WL 2766050 (S.D.N.Y. May 27, 2020) ...................................................... 20

*Moreira v. Sherwood Landscaping Inc.*,
  2015 WL 1527731 (E.D.N.Y. Mar. 31, 2015) ..................................................... 29

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) ............................................................................... 15

*Oden v. Boston Scientific Corp.*,
  330 F. Supp. 3d 877 (E.D.N.Y. 2018) ............................................................... 12

*Oliver v. Am. Express Co.*,
  2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020) ..................................................... 19

*Ossman v. Diana Corp.*,
  825 F. Supp. 870 (D. Minn. 1993) ...................................................................... 15

*Pappas v. Philip Morris, Inc.*,
  915 F.3d 889 (2d Cir. 2019)..................................................................... 31

*People by Abrams v. Apple Health & Sports Clubs, Ltd., Inc.*,
  80 N.Y.2d 803 (1992) ............................................................................. 17

*People v. Debt Resolve, Inc.*,
  387 F. Supp. 3d 358 (S.D.N.Y. 2019)..................................................... 17

*PetEdge, Inc. v. Garg*,
  234 F. Supp. 3d 477 (S.D.N.Y. 2017)..................................................... 17

*Pisarri v. Town Sports Int'l, LLC*,
  2019 WL 1245485 (S.D.N.Y. Mar. 4, 2019) ........................................... 18

*Price v. L'Oreal USA, Inc.*,
  2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) ............................................ 13

*Richards v. Direct Energy Services, LLC*,
  915 F.3d 88 (2d Cir. 2019)....................................................................... 18

*Ryan, LLC v. Inspired Dev., LLC*,
  2013 WL 12137012 (N.D. Tex. July 18, 2013) ....................................... 27

*Sanders v. Grenadier Realty, Inc.*,
  367 Fed. App'x 173 (2d Cir. 2010).......................................................... 13

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)................................................................................. 29

*Shak v. Krum*,
  2018 WL 5831319 (S.D.N.Y. Nov. 6, 2018) ............................................. 8

*Simmons v. Abruzzo*,
  49 F.3d 83 (2d Cir. 1995)........................................................................... 8

*Solano v. Kroger Co.*,
  2020 WL 7028473 (D. Or. Nov. 30, 2020)............................................... 16

*Sonner v. Premier Nutrition Corporation*,
  971 F.3d 834 (9th Cir. 2020) ................................................................... 21

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
  1997 WL 137443 (S.D.N.Y. Mar. 24, 1997) ............................................. 6

*Stanley v. Direct Energy Servs., LLC*,
  466 F. Supp. 3d 415 (S.D.N.Y. 2020)..................................................... 15

*Suarez v. Cal. Nat. Living, Inc.*,
  2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ........................................... 19

*UPS Store, Inc. v. Hagan*,
  99 F. Supp. 3d 426 (S.D.N.Y. 2015)......................................................... 7

*US v. Wells Fargo Bank, N.A.*,
   2013 WL 5312564 (S.D.N.Y. Sept. 24, 2013) ........................................................ 9

*Vaccariello v. XM Satellite Radio, Inc.*,
   295 F.R.D. 62 (S.D.N.Y. 2013) ........................................................................... 20

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y. 1997) ........................................................................... 13

*Welco Elecs., Inc. v. Mora*,
   166 Cal. Rptr. 3d 877 (Cal. App. 2d Dist. 2014) .................................................. 28

*Weyant v. Phia Grp. LLP*,
   2018 WL 4387557 (S.D.N.Y. Sept. 13, 2018) ...................................................... 16

*Woods v. Maytag Co.*,
   2010 WL 4314313 (E.D.NY. Nov. 2, 2010) .......................................................... 13

*Zeiger v. WellPet LLC*,
   2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ........................................................ 23

The eight Named Plaintiffs ("Plaintiffs") submit this memorandum of law in opposition to Defendants Noom, Inc. and Artem Petakov's ("Noom" or "Defendants," unless noted) motion to dismiss Plaintiffs' Third Amended Class Action Complaint ("TAC"), ECF Nos. 167, 174.

## INTRODUCTION

Noom is one of the nation's fastest growing diet programs and has perpetrated one of the country's largest automatic renewal scams.  TAC ¶ 1.  The scheme works as follows:  Noom lures consumers to sign up to "try" its supposedly revolutionary diet app "built on psychology and science," telling consumers that if Noom is not the right fit they can move on, no strings attached. *Id.* ¶ 2.  Noom is so confident that it supposedly takes a financial loss by offering this "risk free" trial.  *Id.*  Yet not only does it turn out that Noom's "risk free" trial must be cancelled lest it automatically renew, but also that the trial is extremely difficult to cancel resulting in consumers being charged for the ***full, multi-month*** diet program once the trial ends.  *Id.*  That droves of consumers are unwittingly charged for a full diet plan is not happenstance, as Noom uses cognitive psychology to create an effective (and lucrative) trap for dieters.  *Id.* ¶¶ 1, 5.  As the Federal Trade Commission ("FTC") notes, people trying to lose weight are one of the most vulnerable consumer groups.  *Id.* ¶ 59.  To prey on these consumers as Noom does is unconscionable.

Noom is a "behavior change company" that aims to disrupt the diet industry by taking a "cognitive-behavioral approach" to dieters' choices.  *Id.* ¶¶ 2, 4.  Yet when it comes to Noom's "risk free" trial, Noom employs this same scientific knowledge to exploit well-known vulnerabilities in human decision-making.  *Id.* ¶ 5.  The psychology of decision-making and behavioral economics fields pioneered by Nobel Laureate Daniel Kahneman, whom Noom's co-founder Defendant Artem Petakov much admires,[1] have proven that system design is a powerful

---

[1] Petakov advertises his studies under Kanheman, thus "making me forever fall in love with psychology of decision-making," and how his "biggest passion is influencing people's everyday decisions on a large scale." *Id.* ¶ 7

driver of behavior. *Id.* ¶ 6. For example, requiring a person to take action to "opt in" (as opposed to out) greatly lowers the likelihood that the action is taken, as illustrated by organ donor registration statistics. *Id*. While less than 5% of people in Denmark register as donors compared to 99.91% in France, the difference is not due to varying levels of altruism but rather because the system design drives the outcomes: donation in Denmark is "opt in" and "opt out" in France. *Id.*

Instead of using these principles to help consumers, Noom makes the trial process counter-intuitive and difficult to cancel. *Id.* ¶¶ 8–10. To boot, once Noom imposes the non-refundable lump sum fee, it hides the charges by failing to send a receipt for this, and for later, renewal fees. *Id.* ¶ 81. In response to Noom's misleading and fraudulent conduct, Plaintiffs filed this consumer class action alleging violations of state consumer protection statutes and the common law.

The operative complaint alleges that Noom's trial period and autorenewal practices constitute a uniform and deceptive web designed to trap consumers into paying Noom's multi-month subscription fee. TAC ¶ 13. While the web's architecture has different sticking points that can ensnare consumers, taken together the components lead to a common and predictable outcome: unintended full payment for Noom's diet service. *Id*. ¶ 14. The complaint breaks down Noom's autorenewal web into seven separate elements: (1) a ubiquitous advertising campaign encouraging consumers to "try" the diet, *id.* ¶¶ 54–59; (2) deception in Noom's trial sign-up process about what it means to "try" Noom *including* deception regarding autorenewal, how to cancel, and post-trial charges, *id.* ¶¶ 44–46, 60–70, 73; (3) critical and ongoing omissions about how to access Noom's services, and thereby cancel, *id.* ¶¶ 45, 71–72, 78, 82, 90–92; (4) an opaque cancellation process requiring customers to figure out how to notify someone called their "coach" (in actuality a computer "bot") but failing to provide a way to contact Noom by standard means, i.e. no phone number, no website chat, no prominent email address, *id.* ¶¶ 10, 16–17, 19, 52, 68–69, 74, 77; (5)

deceptive "coach" assignment and other practices that further frustrate cancellation, *id.* ¶¶ 82–92; (6) sneakily assessing the full program charge once the trial ends, *id*. ¶¶ 2, 15, 19–20, 52, and (7) radio silence about impending or recent charges, including no receipt following the charge, *id.* ¶¶ 19, 45, 81. Finally, the TAC describes which sticking point ensnared each Plaintiff, *id.* ¶¶ 121–207, and the many red flags showing that Noom's design is not a coincidence. *Id*. ¶¶ 93–120.

Since commencement, Plaintiffs' case has only gotten stronger. For example, shortly after filing, Good Morning America's "Cover Story" was a "new warning about the massively popular diet app Noom from the Better Business Bureau," announcing that "customers have submitted well over a thousand complaints alleging that the company offers misleading free trials, and that subscriptions are difficult to cancel." TAC ¶ 3. The BBB's nationwide alert sums up this lawsuit, detailing that "consumers reportedly try to cancel the trial offer before it ends but still end up being billed for the subscription," yet Noom refuses "to address the underlying cause" of customers' complaints. *Id*. For context, the BBB's warning about Noom's practices is found amongst its alerts on pyramid schemes, COVID-19 scams, fake charities, and identity theft.

Then, a former Noom engineer provided Plaintiffs a whistleblower statement that offers an insider's perspective, stating that "Noom made the cancellation process difficult by design so that many customers would be charged a nonrefundable autorenewal fee by failing to cancel in time or by failing to cancel at all because they didn't realize the trial would automatically convert to a paid subscription at the end of the trial period." TAC ¶ 43. The whistleblower describes more misconduct, including (i) how, when a payment processor put Noom on "final notice and probation" due to Noom's high charge back rate, Defendant Petakov "devised a work-around: he announced that Noom would begin charging a small fee (*e.g*., $1) for the 'free' trial and then later charge customers for the autorenewal, which would double the number of total transactions, and

in turn reduce the charge back rate by half;" (ii) how Noom shaved 24 hours off the trial period "so even customers who knew to track the deadline were getting converted and charged for subscription[;]" and (iii) how "Noom's sign up flow was designed to mislead." *Id.*

Next, a leading expert in consumer psychology as applied to internet user experience, cognitive scientist Harry Brignull, PhD, conducted a preliminary analysis of Noom's practices and concluded that Noom employs various deceptive designs in its sign-up and cancellation processes. *Id.* ¶ 44. Dr. Brignull's analysis details the numerous instances of Noom's use of "Dark Patterns"—i.e., deceptive system designs on websites and apps that prey on human cognitive processing frailties. *Id.* After engaging in extensive analysis, Dr. Brignull found that, at its core, Noom's business model is based on the "Hidden Subscription Dark Pattern" by silently charging users a recurring fee under the pretense of a one-time trial. *Id.* ¶ 45. Noom augments this overarching scheme with numerous other Dark Pattern techniques, which manipulate consumers into being more likely to sign up for the service and less likely to understand the need to cancel, or to be able complete cancellation. *Id.* The TAC contains a detailed list of additional Dark Patterns used by Noom as well as Dr. Brignull's preliminary conclusion that these Dark Patterns work together to exploit mental biases and create an environment in which a reasonable user (1) can become automatically enrolled in a recurring, non-refundable premium subscription as a result of signing up for the trial without any idea that they have done so; and/or (2) is unable (or unaware of the need) to cancel the trial, thereby contributing to Noom's revenue stream. *Id.* ¶¶ 45–46.

In response, Noom claims that "users, not to mention health experts, love Noom." Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs. Br.") at 1, ECF No. 206. While discovery is still in its infancy, Noom's internal documents tell a very different story. For example, ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



that "medical experts" agree Noom's diet works,[3] that Plaintiffs have misrepresented Noom's



internal data,[4] that there are "serious questions as to what role Plaintiffs' counsel played" in one Plaintiff joining this lawsuit,[5] or Noom's unsubstantiated claim of "dozens" of endorsements.

Our case is part of a decades-long effort by consumers and regulators to rid the marketplace of similar autorenewal scams.[6]   Recently, FTC Commissioner Rohit Chopra relied on Dr. Brignull's work to send a message that it is illegal to "scam[] millions of dollars from families through dark patterns" by "making it extremely difficult to cancel recurring subscription fees."[7] The Commissioner added that the autorenewal scams are simply "the online successor to decades of dirty dealing in direct mail marketing," but "pose an even bigger menace than their paper precursors" because they are "not limited by physical constraints and costs," and stressed that such conduct is "not only unethical, but also illegal." *Supra* n. 7 at 1.[8]

The TAC alleges clear violations of consumer protection statues and state common law. Further, Your Honor emphasized at the pre-motion hearing that the Court's "reaction to the motion to dismiss" is that "there are claims that would survive" and that "from a practical point of view"

---

[4] ████████████████████████████████████████████████████████████████████

[5] We are quite disturbed that defense counsel continues to level this baseless claim.  Defs.' Br. 6.  On October 16, 2020, the parties addressed Judge Parker on this exact issue, and she concluded that "there's no, no basis that I've heard of for that accusation at this point" and that Plaintiffs had "offered to provide" Ms. Deracleo's initial outreach email, which Judge Parker ordered that we "go ahead and provide[.]"  Hr'g Tr. 63:11-19.  Four days later, Plaintiffs produced this email and unsurprisingly have heard nothing from counsel about this issue in the last four months.

[6] *See* The FTC's recent crackdown on an identical autorenewal/hard to cancel scam: Press Release, Federal Trade Commission, Children's Online Learning Program ABCmouse to Pay $10 Million to Settle FTC Charges of Illegal Marketing and Billing Practices (Sept. 2, 2020) https://www.ftc.gov/news-events/press-releases/2020/09/childrens-online-learning-program-abcmouse-pay-10-million-settle.

[7] Statement of Rohit Chopra Regarding Dark Patterns in the Matter of Age of Learning, Inc., at 1, September 2, 2020,https://www.ftc.gov/system/files/documents/public_statements/1579927/172_3086.pdf

[8] FTC guidance is applicable here because New York courts look to the FTC in assessing whether conduct is deceptive.  *See Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) ("[I]n interpreting the phrase 'deceptive practices,' the New York courts have in large measure relied on the [FTCA's] definition of such practices."); *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150, 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) ("Because [GBL §] 349 is modeled after the [FTCA], federal courts have interpreted the statute's scope [to include] the types of offenses to the public interest that would trigger [FTC] intervention . . . .").

there is little to be gained "[i]f we proceed with a motion to dismiss and whittle away at this or that in the complaint. . . ."  Dec. 17, 2020, Hr'g Tr. 12:14-25, ECF No. 134.  Faced with this reality, Noom chooses to cast aspersions and muddy the waters.  But as set forth below, Noom has not provided adequate grounds to dismiss any claims in this case.

## ARGUMENT

### I. NOOM'S REQUEST TO STRIKE THE TAC UNDER RULE 12(F) IS FACTUALLY, LEGALLY, AND PROCEDURALLY GROUNDLESS

The TAC details how Noom's trial period practices form a deceptive web that tricks consumers into paying for Noom's full diet plan, and how each of the web's many components foster unintended purchases.  The TAC's first 12 pages outline the web's architecture followed by 10 pages on Noom's "dark patterns" and the discovery to date.  *Id*. ¶¶ 1–24, 40–53.  Next, the TAC groups the web's components in three main subject areas: Noom's marketing, *id*. ¶¶ 54–59, enrollment process, *id*. ¶¶ 60–81, and "coaching" program and cancellation process, *id*. ¶¶ 82–92, detailing each material misrepresentation and omission contained therein.  Finally, the TAC describes in less than 15 pages (including six pages of publicly available complaints) the red flags showing Noom's callous disregard of consumers.  *Id*. ¶¶ 93–120.  This easily hurdles Rule 8.

Even though Noom's own cited cases reaffirm that "[t]he Second Circuit . . . has emphasized that Rule 12(f) 'is designed for excision of material from a pleading, not for dismissal of claims in their entirety,'" *UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 442 (S.D.N.Y. 2015) (quoting *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)), Noom seeks complete dismissal under Rule 12(f) because the Complaint is "so lengthy" Noom's seven lawyers cannot "decipher the claims at issue."  Defs.' Br. 9.  This is silly.  The TAC's length stems from Noom's December 2020 feigned ignorance that Plaintiffs had only brought seven claims that did not cover Noom's conduct in all US jurisdictions.  *See* ECF No. 117 at 3.  Judge Parker granted Plaintiffs' amendment

request to remedy Noom's supposed confusion, ECF No. 145, and we spelled out each count arising from Noom's nationwide scheme. This is why of the TAC's 187 pages, 116 are counts. Additionally, 24 pages are individual Plaintiff and class allegations, leaving only 47 pages outlining Noom's wrongful conduct. That Noom's nationwide scheme prompts a complex case is not grounds for dismissal. Indeed, even when courts dismiss under Rule 8, "they generally give the . . . leave to amend." *Simmons v. Abruzzo*, 49 F.3d 83, 86–87 (2d Cir. 1995). Especially where, as the Court acknowledged, "the complaint states a claim that is on its face nonfrivolous." *Id.*

The TAC tells a "coherent narrative," of Plaintiffs' claims, including their experiences, how they were deceived, and Noom's knowledge of the confusion it sowed.[9] Noom knows this. Page 10 of its brief concedes that "Plaintiffs allege a unified course of fraudulent conduct in which Noom allegedly intended to convince users to sign up for Noom and then impede cancellation of their subscriptions." *See also id.* ("[T]he gravamen of Plaintiffs' claims is that they were misled by Noom's automatic purchase renewal practices."). Noom's confusion is clearly sporadic.

Besides citing Rule 12(f), Noom makes no serious attempt to justify its use here, particularly since strike motions are meant only to excise "redundant, immaterial, impertinent, or scandalous" material, none of which Noom identifies. Defs.' Br. 8–9. Instead, Noom stakes its claim on the fact that some courts infrequently use Rule 12(f) to reiterate the need for "simple, concise, and direct" pleadings. *In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003). But again, the TAC has 112 pages of counts because Noom pretended this was a seven-state case, and Noom's brief confirms it was adequately noticed.[10]

---

[9] Rule 8 dismissal "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Shak v. Krum*, No. 18 CIV. 1650, 2018 WL 5831319, at *5–6 (S.D.N.Y. Nov. 6, 2018) (Schofield, J.) (quotation marks omitted).

[10] Courts also criticize using Rule 12(f) when the better request is for a more definite statement. *See Dunn v. Albany Med. Coll.*, No. 09 Civ. 1031, 2010 WL 2326127, at *7 (N.D.N.Y. June 7, 2010) ("Defendant . . . seems to equate striking portions of the Complaint, pursuant to Rule 12(f), with dismissal. . . . Conspicuously absent [is] mention of the most apparent remedy . . . , namely a Rule 12(e) motion[.]" (citation omitted)). Noom knows such a motion is

## II.     THE TAC HAS THE REQUISITE LEVEL OF PARTICULARITY

Upon consideration of Noom's earlier request to dismiss Plaintiffs' earlier pleading (ECF No. 100), Your Honor shot down Noom's 9(b) argument and advised that "there are allegations in the complaint as to misstatements particularly on the website," and that "from a practical point of view" there is little to be gained "[i]f we proceed with a motion to dismiss and whittle away at this or that . . . ."  Dec. 17, 2020 Hr'g Tr. 12:14–25, ECF No. 134.  Nonetheless, Noom barrels ahead for full dismissal, blithely ignoring how the TAC more than meets Rule 9(b)'s dictates.

### A.  Each of the Eight Plaintiffs' Allegations Easily Satisfy Rule 9(b)

"Whether a complaint complies with Rule (9)(b) "depends 'upon . . . how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading.'"  *US v. Wells Fargo Bank, N.A.*, 2013 WL 5312564, at *16 (S.D.N.Y. Sept. 24, 2013).  "The purpose of Rule 9(b) is not to create a heavy burden . . . , but rather, to allow defendants to identify their alleged role and acts in the fraud to appropriately respond."  *Allstate Ins. Co. v. Ahmed Halima*, No. 06 Civ. 1316, 2009 WL 750199, at *5 (E.D.N.Y. Mar. 19, 2009).

#### 1.  Plaintiffs Describe a Multi-Component Web Designed to Trick Consumers

Noom ensnared Plaintiffs with a uniform web of deceptive content and system design surrounding, and embedded in, its diet program.  *See, e.g.*, TAC ¶¶ 13–24, 208, 214.  Each of the web's seven components, *see supra* p. 2–3, is a sticking point designed to trap trial period customers into paying for Noom's full diet plan, and the TAC explains how each deceptive component fits in the mesh.  For example, the TAC details how Noom "fails to adequately disclose to consumers that the trial period will automatically convert to an auto-recurring membership,"

---

doomed.  *Joya v. Verizon New York, Inc.*, No. 08 CIV 5328, 2008 WL 4667987, at *1 (S.D.N.Y. Oct. 20, 2008) (Rule 12(e) only appropriate if "complaint is so excessively vague and ambiguous as to be unintelligible").

TAC ¶ 16, including by promoting the trial as "risk free" and that users are only charged if they "decide Noom is right for [them]," that is, if they take an affirmative step. *Id.* ¶¶ 19, 45, 58, 65, 68–69, 74, 77. By way of another example, Noom's sign-up process and "receipt" email each fail to inform customers the trial can only be accessed and canceled via the smartphone app. *Id.* ¶¶ 10, 16–17, 19, 52. Moreover, Noom fails to tell prospects that the trial starts even the app is never downloaded, *id.* ¶¶ 72, 74, 78, leaving users in the dark about how to "try" it, and impeding cancellation because of the unusual and exclusive in-app cancel process (i.e, no phone number, no website chat, no easy-to-find email address). *Id.* ¶¶ 68–69, 74, 77.

As consumers move through the Noom trial lifecycle, they all "face the same traps and need only be tricked by one to end up paying a hefty multi-month subscription fee . . . ." *Id.* ¶ 20. Further, the scheme's components build on one another. With "dark patterns" built into the interface, Noom's lengthy trial sign-up flow makes it more likely that a user fails to appreciate the need to cancel, *id.* ¶ 45. Indeed, even those who do realize the need to cancel can still be ensnared by the complex cancellation process and lack of information as to how to extricate oneself. *Id.*

### 2. Each of the Named Plaintiffs Adequately Details How They Were Deceived by Noom

Against the backdrop of Noom's deceptive net, each Plaintiff clearly pleads the who, what, when, where, and how of Noom's fraud: that is, each Plaintiff identifies Noom—as shaped and steered by Defendant Petakov, *see infra* p. 17—as the responsible "***who***" for Noom's autorenewal scheme (the "***what***"); and identifies when Plaintiffs were exposed to Noom's omnipresent ads encouraging them to try Noom, as well as the exact date they completed Noom's sign up flow, thus initiating the trial (the "***when***"). Plaintiffs also plead they signed up either on the website or app and then, in some cases, accessed the app during the trial (the "***where***"); and identify how they went from "trying" Noom to buying the full program: either because (1) they did not understand cancellation was required; or (2) they were unable to cancel despite reasonable efforts (the "***how***").

Plaintiff Nichols pleads for example that after hearing Noom ads around August 2019 he downloaded the app and began the sign-up process.  TAC ¶¶ 121–22.  Starting the trial with the expectation he would be able to cancel "risk-free," Mr. Nichols was unwary.  *Id*. ¶ 122.  Afterwards, however, he could not end the trial because it was "inordinately difficult to cancel." *Id*. ¶¶ 124–125.  Thereafter, despite his never using the service, Noom charged him twice for a total of $315 for **two** full six-month plans he never wanted.  *Id*. ¶¶ 122, 126, 129.  Noom also never sent him a receipt that he had been, or would be, charged twice for the 6-month plan.  *Id*. ¶ 127.

### 3.  Defendants Try to Sidestep the Full Scope of the Fraud Alleged

Despite the TAC's detailed allegations, Noom's motion curiously treats this billing scam case as a run-of-the-mill false advertising case alleging deceptive claims about a product's features, like a modem or medical device.  *See generally* Defs.' Br. 10–15.  Instead of addressing the overall deceptive scheme, Noom mistakenly parses Plaintiffs' claims into ones relating either to "[a]dvertising and [m]arketing," "[a]utorenewal [d]isclosures," or "[p]roduct features."  Defs.' Br. 10–14.  By reframing a single scheme into discrete subtopics, Noom attempts to distract from the overarching harmful scheme.  The Court should instead consider the web in its entirety, as "[t]o approach the issue otherwise would allow the more sophisticated to escape liability . . . due to the complexity of their scheme and their deviousness in escaping detection."  *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004).  Plaintiffs more than adequately set forth the requisite 9(b) particularity.  Nonetheless, Plaintiffs address Noom's arguments in turn:

***Advertising and Marketing.***  Noom demands Plaintiffs plead they "saw, read, heard, or relied on [a] specific advertisement or marketing material."  Defs.' Br. 11.  But this case is not centered on Noom's ubiquitous ads.  Rather, Plaintiffs allege that Noom's omnipresent marketing is the first component of a scheme, which (1) enticed them to "try" Noom, and (2) funneled them to Noom's lengthy sign-up process, where they enrolled in Noom's trial.

None of the deficient pleadings in Noom's cases alleged a uniform architecture to which the plaintiff was necessarily exposed when engaging with the services at issue and are therefore readily distinguished.[11] *Oden* and *In re Arris* are in stark contrast to the case at bar, where Plaintiffs allege they were ensnared by a deceptive architecture designed to trick consumers into buying Noom's full diet service. Noom understands this architecture, and its defense is not inhibited.[12]

**So-called Autorenewal "Disclosures."** The TAC details Noom's trial sign-up process, *id.* ¶¶ 61–73, its dark patterns, *id.* ¶¶ 44–46, alleges these elements "have remained the same throughout the applicable period," *id.* ¶ 60, and pleads that "[u]pon information and belief, the relevant representations" each Plaintiff saw in the sign-up process "were in all material respects the same as those seen by the other named Plaintiffs." *Id.* ¶¶ 121, 132, 143, 153, 164, 175, 186, 197. Each Plaintiff also avers they were misled by the "sign-up flow into thinking that [they were] signing up for a "risk-free" trial that would allow [them] to see if [they] liked Noom's weight-loss service." *Id.* ¶¶ 122, 133, 144, 154, 165, 176, 187, 198. Plaintiffs have thus pled they saw and relied on the sign-up flow, including the "risk free" language and other deception therein, which allegations must be taken as true at this early phase. *Montero v. City of Yonkers, New York*, 890

---

[11] *See, e.g.*, *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 885, 897–99 (E.D.N.Y. 2018) (products case where the plaintiff failed to allege that either he or his physicians saw the misrepresentations about the device and where the complaint suffered from "a substantive lack of detail as to the exact nature of the alleged omissions, [those] responsible for the omissions, the context of the omissions and what Defendants obtained through the alleged fraud."); *In re Arris Cable Modem Consumer Litigation*, No. 17 Civ. 1834, 2018 WL 288085, at *2, *9 (N.D. Cal. Jan. 4, 2018) (false advertising case where plaintiffs pointed to three different sources of misleading statements about the modem's speed and reliability, but where "material differences between the representations" from each source and the plaintiffs' failure to specify the representations relied upon "inhibit[ed] [defendant]'s ability to 'defend against the charge.'").

[12] Noom's throwaway citation, Defs.' Br. 11, to the 23-year-old decision in *A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.*, No. 97 Civ. 4978, 1998 WL 159059, at *7 (S.D.N.Y. Apr. 1, 1998), for the proposition that a complaint cannot describe "a generic fraud, as if each plaintiff's case is identical to every other case," *id.* at *7 is specious. Far from standing for the proposition that allegations about a deceptive system foisted on consumers necessarily fail under Rule 9(b), *A.I.A. Holdings* stands only for the uncontroversial proposition that when 277 plaintiffs attempt to join their claims relating to the management of their individual trading accounts over a 12-year span into one lawsuit, their pleadings must provide fair notice of those claims; failing to plead basic facts about the highly individualized fraud they each experienced, such as "when, *if at all*, [defendant] opened an account for each plaintiff," "how much money each plaintiff transferred to [defendant], "which plaintiffs received forged account statements," "which of the plaintiffs had unauthorized trades," and "which of the plaintiff's [*sic*] accounts were diminished as a result of [defendant's] use of fictitious accounts," let alone "by how much," *id.* at *7 (emphasis added), will obviously not suffice for Rule 9(b).

F.3d 386, 391 (2d Cir. 2018).   To the extent Noom claims Plaintiffs are wrong about "what purchase flow screens they saw," Defs.' Br. 12, that is a question of fact, not Rule 9(b).

Seeking to sidestep the TAC's actual allegations, Noom latches onto the phrase "upon information and belief," to claim that Plaintiffs "simply guess[]" that the purchase flow they saw was the "same as the purchase flow shown in the TAC." Defs.' Br. 12.   As discussed above, Plaintiffs allege that the purchase flow, described at TAC ¶¶ 61–73, "remained the same throughout the applicable period," *id.* ¶ 60, and is therefore the same for each Plaintiff.   Contrary to Noom's claim, Plaintiffs do not "simply guess[]" as to how they signed up.   Defs.' Br. 12.

Moreover, for 9(b) purposes in the Second Circuit "'allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge.'"   *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 0614 (LGS), 2017 WL 4480887, at *2 (S.D.N.Y. Oct. 5, 2017) (Schofield, J.).   Noom strangely twists this well-settled law and claims that "[n]o party is more equipped to know which buyflow Plaintiffs experienced than Plaintiffs themselves."   Defs.' Br. 13.   But whether Noom's "buyflow" was the same on Plaintiffs' specific enrollment dates (dates pled with exact specificity) is both a factual question and better answered by Noom's records.[13]

Finally, Noom's attack on the three Plaintiffs that could not figure out how to cancel the trial, *see* TAC ¶¶ 125, 179, 190, is deliberately obtuse and reveals a lack of good faith.   Defs.' Br.

---

[13] Noom's cases are not to the contrary.  For example, *Woods v. Maytag Co.*, No. 10-cv-559, 2010 WL 4314313, at *6 (E.D.NY. Nov. 2, 2010), which Noom cites for the proposition that publicly information cannot be pled upon information and belief, is inapposite; in that products liability case, the fraud allegations spanned just three paragraphs, one of which alleged that "upon information and belief" defendant "expressly warranted . . . through the internet, by advertisement literature and other means" that its oven "could [be] safely use[d] . . . for . . . cooking," and two others that alleged reliance on "certain safety features" warranted at the point of sale.  Here, Plaintiffs outlined each omission and misrepresentations made by Noom in the uniform architecture presented to them, far surpassing the level of notice provided in *Woods*.  Noom's other cases are equally inapplicable here.  *See, e.g.*, *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997) (dismissing fraud claim regarding child safety seats where plaintiff pled all but one paragraph of the complaint "upon information and belief"); *Sanders v. Grenadier Realty, Inc.*, 367 Fed. App'x 173, 175 n.2 (2d Cir. 2010) (noting only the uncontroversial point that allegations made upon information and belief must be made on the basis of facts and "'formed after an inquiry reasonable under the circumstances'" (quoting Rule 11)).

13–14.  Noom suggests that because these Plaintiffs attempted to cancel they could not have been harmed by misrepresentations or omissions during sign-up.  But as discussed *supra*, the sign-up flow is only one of many sticking points in a multi-part web.  That despite Noom's design choices which obfuscated the need to cancel, three Plaintiffs unsuccessfully attempted to cancel says nothing about whether they plead fraud or even about whether the misrepresentations and omissions in the sign-up flow contributed to their injuries.  In fact, each of these three Plaintiffs pleads that the deceptive sign-up caused them to be "unaware that Noom would make it unreasonably difficult to cancel the account within the trial period and instead use [their] payment information to process unauthorized advance charges."  TAC ¶¶ 122, 176, 187.

> **Product Features.**  The TAC is replete with allegations about how Noom makes the trial inordinately difficult to cancel, and how Noom leaves customers stranded with no reasonable way to cancel, *id.* ¶¶ 10, 16–17, 19, 52, 68–69, 74, 77.  It is Kafkaesque for Noom to try spin this byzantine process as "easy" and only requiring the user to "let [their] coach know" through "Noom's messaging interface," Defs.' Br. 5.  Indeed, the TAC highlights that for users who figure out the trial can only be accessed via Noom's app, their initial contact when they log on is with a bot called "concierge Eva," who offers to introduce them to their "goal specialist."  TAC ¶ 85.  Yet users receive no information on what a "goal specialist" is, how it is different from "concierge Eva," someone else called their "coach," or whether the goal specialist is instead their coach, or how any of this could permit cancellation.  *Id.*  For example, Plaintiffs Nichols, Richards, and Sellers each allege they accessed Noom's app during the trial, *id.* ¶¶ 124, 178, 189, but were unable to cancel, *id.* ¶¶ 125, 179, 190—*ipso facto*, these Plaintiffs have alleged that the material misrepresentations and omissions with respect to cancellation that are detailed in the TAC resulted

in their inability to cancel.  This of course defeats Noom's claim that any allegations that app features inhibit cancellation fail to meet both Rules 8 and 9(b).  Defs.' Br. 14–15.

Noom implies that to challenge Noom's fraudulent scheme, at least one Plaintiff must allege injury from each component of Noom's deceptive web.  *See* Defs.' Br. 14–15.  Noom is wrong and ignores the well-settled concept that class action plaintiffs have class standing to allege sufficiently similar injuries suffered by potential class members.  *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 438 (S.D.N.Y. 2020) ("The Second Circuit has explicitly instructed that 'non-identical injuries of *the same general character* can support standing' for a class action.") (quoting *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 94 (2d Cir. 2018))).[14] Well aware of this binding law Noom repackages the same attack under 9(b).  Though the sticking points in Noom's web that ensnared Plaintiffs were either 1) Plaintiffs did not know they had to cancel; or 2) Noom made it too hard to cancel, the law is clear that Plaintiffs can assert claims on behalf of consumers injured by different parts of the same web, spun for the purpose of causing inadvertent purchases.  The TAC easily satisfies Rule 9(b).[15, 16]

---

[14] *See also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) ("[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants[.]") (internal quotation marks, alteration, and citation omitted).

[15] Noom's sole cited case, *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329 (7th Cir. 2018), is not to the contrary.  There the injury to the plaintiff whose allegations Noom references was not caused by *any* allegedly deceptive representation.  *Id*. at 334 ("[T]he only reasonable and plausible inference is that only the receipt of a gift card caused [plaintiff] to book a massage; the alleged deceptive representations did not influence that decision.").

[16] While conceding that Rule 9(b) does not apply to GBL § 349 claims, Noom reaches for its broadest brush, and without so much as a nod to Plaintiffs' 279 Counts, paints "almost all" or "virtually all" of Plaintiffs' claims as subject to Rule 9(b) pleading standards. Defs.' Br. 9.  Noom has not demonstrated what they say is true.  Assuming *arguendo* that were the case, Plaintiffs have met the heightened pleading standard for their claims.  But other than a handful of select statutes, Noom fails to identify which counts are subject to Rule 9(b), and thus their motion must be denied as to any unidentified counts.  *See Ossman v. Diana Corp.*, 825 F. Supp. 870, 880 (D. Minn. 1993) ("[D]efendants provided no specific discussion concerning their motion to dismiss pursuant to Rules 9(b) and 8(a) in this matter. Therefore, because it lacks information on which to make any other determination, the court denies the defendants' motion to dismiss pursuant to Rules 9(b) and 8(a).").  As to consumer fraud statutes, Noom only identifies the statutes in Plaintiffs' home states. Defs.' Br. 10.  Noom also makes a generic reference to "common law claims" for which Plaintiffs have specifically pled counts under each state's common law.  *Id*.  Even among the sparse few statutes Noom identifies, the DC CPPA claims are not subject to Rule 9(b)'s applicability.  *Campbell v. Nat'l. Union Fire Ins. Co. of*

**B.  The GBL Claims are Adequately Pled**

"To state a claim for violating GBL § 349, the Complaint must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Weyant v. Phia Grp. LLP*, No. 17 Civ. 8230, 2018 WL 4387557, at *7 (S.D.N.Y. Sept. 13, 2018) (Schofield, J.) (quotation marks omitted).  Plaintiff Deracleo alleges she saw Noom's ads, visited Noom's website to learn more, and then went through Noom's sign up flow, which was materially the same as the one seen by her co-Plaintiffs.  TAC ¶ 153.  She also alleges that Noom's advertising, website, and sign-up tricked her into "thinking that she was signing up for a 'risk-free' trial," *id.* ¶ 154, that she "believed that once the trial period was over she would no longer be a Noom customer" because "Noom did not adequately disclose . . . that it would automatically enroll her," *id*. ¶ 157, that Noom charged her without authorization, *id*. ¶ 155, and that "she would not have signed up" had she "known that by [doing so] she would [] automatically be enrolled into Noom's plan and charged advance fees," *id*. ¶ 162.  Plaintiff Deracleo has clearly pled a GBL § 349 claim.  While conceding that Rule 9(b) doesn't apply, Noom repackages the same argument to claim she must "identify the specific statements on which she relied and how she was purportedly misled."  Defs' Br. 15.  Aside from the fact that Ms. Deracleo does quote specific "risk free" sign-up flow language, Noom's claim fails on the same grounds as in the "So-called Autorenewal 'Disclosures'" section on p. 12–14.

**C.  Defendant Petakov Can be Held Responsible for His Illegal Conduct**

Under New York law, "[o]fficers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it."  *People by Abrams v. Apple Health &*

---

*Pittsburgh, PA*, 130 F. Supp.3d 236, 266–67 (D.D.C. 2015) (Particularity not required for DC CPPA claim, which is "a cause of action specifically created with the intent to relieve plaintiffs from the burden of pleading fraud."); *see also Solano v. Kroger Co.*, No. 18 Civ. 01488, 2020 WL 7028473, at *2 (D. Or. Nov. 30, 2020) ("Rule 9(b)'s heightened pleading standard [did] not apply" to plaintiffs' UTPA claims.).  That is at least *three* consumer fraud statutes not subject to Rule 9(b).  Noom's broad statement regarding the "virtually" all counts cannot be credited.

*Sports Clubs, Ltd., Inc.*, 80 N.Y.2d 803, 807 (1992); *see also People v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358, 368 (S.D.N.Y. 2019) (same); *City of New York v. Smart Apartments LLC*, 959 N.Y.S.2d 890, 895 (Sup. Ct. 2013) ("Corporations can only act through their employees; but that does not mean that any act done in furtherance of the corporation's business is shielded by the corporate veil . . . .   [A]n employee who dumps a corporation's toxic waste is still liable.").[17] Defendant Petakov, Noom's co-founder, President, and "Growth" team head is the quarterback of Noom's scheme.  TAC ¶ 38.  As the TAC makes clear, he weaponized his behavioral science training to devise a deceptive—and lucrative—scam, *id.* ¶¶ 4–10, is "closely involved in the oversight of . . . the deceptive and unlawful practices challenged in this lawsuit," *id.* ¶ 38, and personally sought to protect and prolong the scheme in the face of multiple red flags showing its harm consumers, including devising a way to skew Noom's charge back rate to further the scheme, *id.* ¶¶ 108–11.  These allegations are more than sufficient to meet Plaintiffs' burden at this stage, and Noom's claim that the TAC's allegations about Petakov's conduct fail both Rule 9(b) and Rule 8's pleading requirements plainly ignores the substance and import of the TAC's allegations.[18]

## III.   PLAINTIFFS MAY BRING CLAIMS FOR CONSUMERS IN OTHER STATES

Noom bills itself as "the largest consumer facing healthcare company" in the nation.  TAC ¶ 14.  Given the digital, national reach of Noom's misconduct, Plaintiffs naturally seek to recover for all affected consumers under their home state laws and those of the 47 other applicable jurisdictions.  This reflects "the obvious truth that class actions necessarily involve plaintiffs

---

[17] Other states' laws are similar.  *See, e.g.*, *Kamal v. Eden Creamery, LLC*, No. 18 Civ. 1298, 2019 WL 2617041, at *14 (S.D. Cal. June 26, 2019) (A "corporate officer . . . is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation[.]").

[18] Noom's citation to *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 493–94 (S.D.N.Y. 2017), does not counsel otherwise.  The *PetEdge* plaintiff alleged CEO's involvement—the only defendant in the case—"in purely conclusory terms" by "merely tack[ing] on conclusory assertions" that the conduct of others was done "'at Mr. Garg's direction,' as part of Mr. Garg's scheme . . . ,' and 'with his knowledge and approval[,]'" and providing "no particularized factual allegations to support these conclusory assertions." *Id.* at 492–93.  That is a far cry from the TAC's detailed allegations here that Petakov crafted the scheme and personally concocted ways to keep it going.

litigating injuries that they themselves would not have standing to litigate," *Langan*, 897 F.3d at 95, and that "[n]amed plaintiffs in a putative consumer protection class action may assert claims under laws of states where they do not reside to preserve those claims in anticipation of eventually being joined by class members who do not reside in the states for which claims have been asserted," *Pisarri v. Town Sports Int'l, LLC*, No. 18 Civ. 1737, 2019 WL 1245485, at *3 (S.D.N.Y. Mar. 4, 2019) (quotation and citation omitted).  Indeed, the Second Circuit has expressly held that "any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3) not a question of adjudicatory competence under Article III."  *Langan*, 897 F.3d at 93 (quotation marks omitted).  Thus where a plaintiff's own claims survive dismissal, *Langan* teaches that counts alleging violations of other jurisdictions' laws are to be addressed at class certification, period.

Noom cannot avoid *Langan* by moving under Rule 12(b)(6) instead of Rule 12(b)(1); the Court should not take seriously Noom's legal gymnastics, which turn on a misreading of *Richards v. Direct Energy Services, LLC*, 915 F.3d 88 (2d Cir. 2019), a case that does not even purport to overturn *Langan*.[19]  *Richards* stands for the unremarkable proposition that, if a plaintiff's own claims fail, a court need not decide whether she may represent consumers in other states.[20]  In *Richards*, the Second Circuit affirmed the dismissal of plaintiff's claim alleging violation of Massachusetts' consumer protection law, albeit under Rule 12(b)(6) and not, as the district court had, under Rule 12(b)(1), *id.* at 105–06, which Noom now attempts to twist into a meaningful

---

[19] And, as a matter of black letter law, nor could it as *Langan* is a prior published panel decision of the same court.

[20] Given Noom's misreading of *Richards*, a review of *Richards*' procedural history is necessary. Richards, a Connecticut resident, sued Direct Energy, alleging unjust enrichment and breach of contract, as well as violations of Connecticut *and* Massachusetts consumer statutes.  915 F.3d at 92, 95.  **_Before Langan was issued_**, the district court dismissed the unjust enrichment and Massachusetts state law claims.  *Id.*  The district court later granted defendant summary judgment on the remaining two claims.  *Id.* at 95–96.  On appeal, the Second Circuit affirmed summary judgment on the contract and Connecticut consumer fraud claims, *id.* at 100, 104, as well as the dismissal of his unjust enrichment claim, *id.* at 105.  When it turned to the Massachusetts consumer claim, the Second Circuit reviewed that dismissal against the backdrop of a case where the plaintiff had no viable claim *to assert on his own behalf*.

distinction. But in affirming dismissal, the Second Circuit noted that the district court "held merely that Richards," a Connecticut resident, "could not sue on *his own behalf* under Massachusetts law," and "did not opine on whether a plaintiff asserting claims under Connecticut law could *represent* a class of consumers asserting claims under Massachusetts law," and "never . . . reach[ed] the latter issue," *id.* at 106 (both emphases original). Further, *Langan* cited the *Richards* district court's earlier dismissal of the Massachusetts claim under Rule 12(b)(1) (while sustaining the Connecticut claim) as an example of what courts ***should not*** do at the dismissal phase. *Langan*, 897 F.3d at 94. *Richards* never reached the question of whether Richards (if he had any viable claim) could assert claims under other jurisdictions' laws, as that question was answered "yes" in *Langan*. [21], [22]

## IV.   DEFENDANTS' ADDITIONAL ARGUMENTS FAIL

### A.   Plaintiffs Have Standing to Seek Injunctive Relief

Each Plaintiff alleges intent to "continue to pursue a healthy diet and lifestyle, and [that they] may purchase services," in the future, including Noom's, in furtherance of that pursuit. TAC ¶¶ 142, 152, 163, 174, 185, 196, 207. These allegations, in concert with Plaintiffs' allegations of past injury by Noom, are more than sufficient: Plaintiffs have pled they were harmed by Noom's deceptive practices, but would consider Noom again if its practices were changed. *See Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) ("[A]t the pleading stage, standing allegations need

---

[21] Plaintiffs inadvertently pled their non-resident consumer fraud claims "on their own behalf," in addition to pleading them "on behalf of each member of [that state's] Class. *See, e.g.*, TAC ¶ 770 (alleging Utah Consumer Sales Practices Act violation). This was an oversight. Plaintiffs do not seek to recover on their *own* behalf under the laws of their non-resident jurisdictions.

[22] *See also Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 203–04 (W.D.N.Y. 2020) ("[C]ourts in the Second Circuit have routinely permitted multi-state consumer protection claims alleging deceptive practices and/or labeling to go forward."); *Suarez v. Cal. Nat. Living, Inc.*, No. 17 Civ. 9847, 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019) (sustaining nationwide class action where plaintiff had individual standing); *Pisarri*, 2019 WL 1245485, at *2–3 (deferring "consideration of claims under consumer protection statutes of states other than [plaintiffs' state] until . . . class certification"); *Oliver v. Am. Express Co.*, No. 19 Civ. 566, 2020 WL 2079510, at *12 (E.D.N.Y. Apr. 30, 2020) (sustaining claims under antitrust laws of 22 states where certain plaintiffs had standing to bring claims in their own states); *Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 225 (E.D.N.Y. 2018) (similar).

not be crafted with precise detail, nor must the plaintiff prove his allegations of injury."); *see also*

*Morales v. Kimberly-Clark Corp*., No. 18 Civ. 7401, 2020 WL 2766050, at *5 (S.D.N.Y. May 27,

2020) (standing to pursue injunctive relief, where Plaintiff pled "she would be willing to use

Huggies again if she were assured that any purported defects were identified and eliminated.")

Noom's cited cases do not suggest otherwise.[23]  Moreover, Noom fails to cite the caselaw

that "indicates that it remains unsettled whether plaintiffs seeking injunctive relief for consumer

deception will be able to demonstrate standing where . . . they allege they would buy the products

in the future[.]"  *Morales*, 2020 WL 2766050, at *4 (quotation marks omitted) (collecting cases

including *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 969–70 (9th Cir. 2018)).[24]

**B.  The California Plaintiffs' Statutory Claims (Counts 2–6) Should be Sustained**

1.  The California Plaintiffs Can Bring Claims for Equitable Relief

California's Automatic Renewal Law ("ARL") requires sellers to take specific steps to

ensure consumers explicitly authorize autorenewal.  Cal. Bus. & Prof. Code § 17600 (intent is to

---

[23] In *Elkind v. Revlon Consumer Products Corporation*, No. 14 Civ. 2484, 2015 WL 2344134, at *2 (E.D.N.Y. May 14, 2015), unlike here, plaintiffs alleged they were "injured by their prior purchase of the Products," but did not allege any likelihood future harm.  *See also Berni v. Barilla S.p.A.*, 964 F.3d 141, 148 n.28 (2d Cir. 2020) (vacating final approval of a Rule 23(b)(2) class settlement on objector's appeal where some members of Rule 23(b)(2) class of past purchasers of pasta packages with misleading "slack fill" would not receive future benefit from injunction).  In *Vaccariello v. XM Satellite Radio, Inc*., 295 F.R.D. 62, 66 (S.D.N.Y. 2013) the court found, when considering a class certification motion, that plaintiff lacked standing to certify an injunctive class because he was not a customer at the time the action was commenced, and had relied solely on past injuries to satisfy the injury-in-fact requirement. Notably, *Vaccariello* was decided prior to *Nicosia*, which articulated the basis for standing for injunctive relief where past injury is, in part, a basis for it.  *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535 (W.D.N.Y. 2018), is also inapposite because there, the plaintiff alleged she would purchase the same product if it were not misbranded as natural, though it contained synthetic ingredients.  *Id*. 542, 552.  Here, Plaintiffs do not claim they would use Noom if it were simply more forthright about its deceptive components, but rather seek to enjoin Noom from engaging in these types of practices.  Of course there are non-binding cases that go the other way. *Izquierdo v. Mondelez International*, Inc., No. 16 Civ. 04697, 2016 WL 6459832 at *5 (S.D.N.Y. Oct. 26, 2016).

[24] The Ninth Circuit case *Davidson v. Kimberly-Clark Corporation* is instructive.  889 F.3d 956 (9th Cir. 2018).  The plaintiff alleged she would purchase truly flushable wipes manufactured by defendant, but had no way of determining whether the representation of "flushable" is true.  *Id*. at 970–71.  In the Ninth Circuit's view, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future[,]" given that, "[i]n some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."  *Id*. at 969–70 (citations omitted).  Plaintiffs here have pled injury similarly: if they could rely on Noom's representations regarding its services, then it is possible they could purchase the services again in future.

"end the practice of ongoing charging ... without the consumers' explicit consent ..."). Noom didn't even attempt to comply. Instead it whips up a procedural storm to block all ARL claims in law, equity or both. Noom starts ***first*** by misreading *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834 (9th Cir. 2020) to argue that equitable remedies under the UCL, FAL, and CLRA are unavailable when legal remedies are sought. *See* Defs.' Br. 22 (Because Plaintiffs "claim[] damages under other theories, including the CLRA and common law," claimed ARL violations are "equitable" and thus prohibited). But ***then***, Noom pivots and seeks dismissal of these legal remedies (CLRA and common law fraud), *id.* 9–15, 23–24, exposing the fallacy in its *Sonner* argument. For these and the five reasons below, the ARL should not be rendered a toothless tiger.

First, the TAC does not have to elect Plaintiffs' remedies. Rule 8 provides that "[a]lternative and even inconsistent theories are generally permitted where the legal nature of the claimant's right to recover and its opponent's liability are contingent on facts or circumstances not yet know[n]." *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 17 Civ. 3556, 2019 WL 1244293, at *3 (S.D.N.Y. Mar. 15, 2019). Despite this bedrock law, Noom twists *Sonner* to bar alternative pleading for ***any*** equitable claims if there is ***any*** possibility of recovering damages. Defs. Br. 26. This runs headlong into Rule 8's alternative pleading regime and decades of caselaw, *see infra* p. 26–27. *Sonner* holds only that "before *awarding* restitution under the UCL and CLRA" courts must first determine that an adequate legal remedy is lacking, *Sonner*, 971 F.3d at 841 (emphasis added), and that a plaintiff "must establish that she lacks an adequate remedy at law before *securing* equitable restitution," *id*. at 844 (emphasis added);[25] *cf. Disher v. Citigroup Glob.*

---

[25] *Sonner's* facts are consistent with alternative pleading. The *Sonner* plaintiff dropped her CLRA damages claims *two months before a jury trial*, in an act of brinksmanship aimed at curtailing the defendant's right to a jury trial. *Sonner*, 971 F.3d at 838. At that late stage, she could not "explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing *in the record* support[ed] that conclusion," *Sonner*, 971 F.3d at 844 (emphasis added), nor could she "explain how damages are any less prompt, certain, or efficient than restitution, particularly when a jury trial for damages was just two months away[,]" *id*. at n.8. "The facts of *Sonner* – where the plaintiff on the eve of trial sought to secure a bench trial under the UCL by foregoing CLRA damages claims that had

*Markets, Inc.*, 486 F. Supp. 2d 790, 797–98 (S.D. Ill. 2007) ("[F]ederal courts must exercise their common-law powers in a manner that is in harmony with the Federal Rules of Civil Procedure." (quotation marks omitted)).   *Sonner* is clearly inapplicable at the pleading stage.

While Noom cites California district courts that overread *Sonner* to its liking, it noticeably ignores the other judges in the Ninth Circuit that do not read *Sonner* to bar alternative pleading. As the recent decision in *Arnold v. Hearst Magazine Media, Inc.* makes clear, despite *Sonner*, and indeed, noting *Sonner*'s procedural posture, "no controlling authority prevents a plaintiff from asserting alternative legal remedies at the pleading stage," and "discovery may reveal that the claims providing legal remedies are inadequate."  2021 WL 488343 at *8 (S.D. Cal. Feb. 10, 2021); *see also Gross v. Vilore Foods Co., Inc.*, No. 20 Civ. 0894, 2020 WL 6319131, at *3 (S.D. Cal. Oct. 28, 2020) (same).   *Sonner's* meaning is not settled and Your Honor should not use this non-binding case to eviscerate alternative pleading.

Second, Noom's *Sonner* argument must be viewed alongside its request that Plaintiffs' CLRA and fraud claims be dismissed.  This "heads I win tails you lose" strategy is not endorsed by *Sonner*.  Even if the Court correctly sustains these claims there is no guarantee that later events will not render these claims inadequate.[26]   Third, Plaintiffs' fraud claims ***do not*** challenge "the ***exact same conduct***" as Noom's ARL violations.  Defs.' Br. 22 (emphasis in original).  These claims have different elements.  The ARL provides a checklist sellers must follow to obtain consumer consent, which if violated results in the return of charges, *see* CAL. BUS. & PROF. CODE § 17600 *et seq.*  Fraud requires deception made with the intent to defraud.

---

to be tried to a jury—are inapposite considering the allegations and the posture of the [T]AC."  *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19 MD 02913, 2020 WL 6271173, at *55 (N.D. Cal. Oct. 23, 2020).

[26] Further, while Sonner did "not dispute that the restitution she seeks . . . is restitution in equity, not restitution at law," 971 F.3d at 839 n.2, it is too early to reach that conclusion here, as there is only a "fine distinction between restitution at law and restitution in equity."  *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).

Fourth, Plaintiffs are not seeking just their money back. They also want public injunctive relief. TAC ¶¶ 14–22, 229–83. This relief "benefits the general public," which "[t]he UCL, FAL, and CLRA all authorize." *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152–53 (9th Cir. 2021) (quotation marks omitted). Such injunctions "prohibit[] unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017). By definition, "future" victims lack adequate legal remedies, and because "California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages," *Zeiger v. WellPet LLC*, No. 17 Civ. 4056, 2021 WL 756109, at *22 (N.D. Cal. Feb. 26, 2021), this Court should sustain the TAC's injunctive UCL, FAL, and CLRA claims. *Id.* (*Sonner* does not foreclose injunctive relief for future victims). Fifth, Plaintiffs' UCL, FAL, and CLRA claims are not asserted against a single corporate defendant, but also against an individual defendant, Artem Petakov. That either defendant may prove judgment-proof "counsels against outright dismissal of the equitable relief claims as inadequate at this juncture." *In re JUUL Labs*, 2020 WL 6271173, at *55 n.67.[27]

### 2. Plaintiffs Can Enforce the ARL through the FAL, UCL, and CLRA

Defendants oddly move to dismiss Count 2 of the TAC, claiming that Plaintiffs "assert a claim directly under" the ARL as did the plaintiff in *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 571 (2020) who claimed that the ARL has a private right of action. Defs.' Br. 23. But Plaintiffs have done no such thing: in Count 2, they clearly seek to enforce the ARL through CAL. BUS. & PROF. CODE § 17535. TAC ¶¶ 234–36. Noom's own caselaw makes clear that this section can

---

[27] This case is different than *Wu v. iTalk Global Communs. Inc.* where plaintiffs offered *no* persuasive reason why monetary relief alone would not remedy their injury. No. 20 Civ. 7150, 2021 U.S. Dist. LEXIS 31496, at *9–10 (C.D. Cal. Feb. 2, 2021). Noom's reliance on *Turnier v. Bed Bath & Beyond* is also misplaced because the plaintiffs there, unlike here, did not respond *at all* to defendant's argument that there were insufficient facts to support injunctive relief, which the court held to be a waiver. No. 20 Civ. 288, 2021 WL 409720, at *5 (S.D. Cal. Feb. 5, 2021).

be used to bring an ARL claim. *See, e.g.*, *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676 (9th Cir. 2018) (noting legislature's intent to allow consumers to sue "under section 17535 for violations of the ARL as opposed to creating a private cause of action under the ARL.").

   3.   Noom Is a Weight-Loss Service That Falls Within the CLRA's Purview

Noom is wrong to argue that its weight-loss service is not a CLRA-covered "service." The CLRA broadly defines "services" as "work, labor and services . . . , including services furnished in connection with the sale . . . of goods." CAL. BUS. & PROF. CODE § 1761(b). Noom claims it offers only "software" but there is no black letter law that software never is a service; "[i]nstead a court must analyze the particular facts at issue to determine whether the software . . . falls within the definition of 'service.'" *In re Yahoo Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1141 (2018) (Yahoo Mail application is a service: "Plaintiffs have not purchased software that they downloaded from the Internet. Rather, Plaintiffs have signed up for accounts on a web-based platform," "Yahoo continually upkeeps and updates the system," and "Yahoo itself has Terms of *Service* and defines 'Yahoo! *Services*'") (emphasis in original). Here, Noom markets its diet plan as "customized," "personalized," and "tailored" plans with support from Noom's "dedicated coaching team" of "real, live people!" TAC ¶¶ 18, 117. It does not matter that Noom actually uses a bot, as Noom takes a "cognitive-behavioral approach" to dieters' choices, *id.* ¶¶ 2, 4, which in turn relies on the user's participation and Noom's feedback, *id.* ¶ 84. Noom's website also displays Noom's "Terms and Conditions of Service" which defines Noom's "Services" as including Noom's website, user's access to Noom's app, and "other services and products provided by us."[28] Noom provides a CLRA-covered 'service.' *See Haskins v. Symantec Corp.*, No. 13 Civ.

---

[28] Noom, Inc., Terms and Conditions of Service, https://web noom.com/terms-conditions-use/.

01834, 2013 WL 6234610, at *9 n.9 (N.D. Cal. Dec. 2, 2013) (antivirus software is a 'service' because "it continually updates and runs regular virus checking.").

    4.   <u>The TAC States a Claim Under California's Weight Loss Contracts Law (Count 7)</u>

Noom's diet plan meets the definition of a "weight loss program" whose contracts are covered by Cal. Civ. Code § 1694.5: Noom offers "instruction, counseling, supervision, or assistance in weight reduction, body shaping, diet, and eating habits, by persons who are not licensed health care professionals." *Id.* § 1694.5(a)(1); TAC ¶ 286. Noom violated this statute in three ways, two of which Noom attacks. First, § 1694.7(b) requires weight loss contracts to have "on [their] face, and in close proximity to the space reserved for the signature . . ., a conspicuous statement," detailing the way to cancel and advising the buyer of a three-day cancellation window. Noom's signup page has none. TAC ¶¶ 68, 287, 288. Second, Noom's sign up page omits the name and address where cancellation notice can be mailed. § 1694.7(c); TAC ¶ 289.[29]

In response Noom tries misdirection: "Plaintiffs' claim seems to be that they should have been allowed to cancel within three business days of signing up for Noom," Defs.' Br. 25, but that is not the issue. The issue is whether Noom provided the required information on the need to cancel and the mechanism for doing so. Plaintiffs were injured as a direct result of Noom's failure to comply with the statute, and, had Noom provided the required disclosures—"Plaintiffs would have been able to avoid financial injury." TAC ¶ 291. Plaintiffs need not plead that they "*wanted* to cancel during [their] first three days" or were "prevented from doing so." Defs.' Br. 25.

---

[29] Plaintiffs also allege Noom violated § 1694.7(d) by enrolling them into perpetually autorenewing subscriptions, despite the statute's "requirement that [t]he services to be rendered to the buyer under the contract shall not extend for more than three years . . . .'" TAC ¶ 290 (quoting Cal. Civ. Code § 1694.7(d)). Beyond arguing that Noom does not meet the definition of "weight loss program" Noom does not challenge this allegation.

5.   Plaintiffs' Have Stated a Claim Under the Bot Disclosure Law (Count 4)

California's 2018 Bot Disclosure Law is "among the first US laws to regulate artificial intelligence and the first to require bots to 'self-identify' to humans."[30]  This law is about transparency: "[w]hen interacting directly or indirectly with bots online, human users may not be able to discern if they are interacting with a bot or another human."[31]  Here, Noom designed its trial cancellation system to require consumers to locate and communicate with its (undisclosed) bot. TAC ¶¶ 10, 16–17, 19, 68, 77.  Because Noom's system is designed to prevent cancellation so autorenewal can kick in, Noom used an undisclosed bot to "incentivize a purchase or sale of goods or services." Cal. Bus. & Prof. Code § 17941.  Noom tries to reduce the Bot Disclosure Law to one that prohibits bots as salespersons, but the law is not so narrow and clearly applies to Noom's bot, i.e. its customer service agent.[32]

**C.  Plaintiffs' Common Law Claims Should Proceed**

1.   Plaintiffs Alternative Unjust Enrichment Claims are Viable at This Stage

Plaintiffs have "wide latitude" in framing their right to recover.  *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001).  Rule 8 allows for alternative pleading, including demands for both legal and equitable remedies.  *See supra* p. 21–22.  Accordingly, it is advisable and appropriate for Plaintiffs to plead alternate claims, even where they rest on overlapping allegations.  *See, e.g.*, *Almazan v. Almazan*, No. 14 Civ. 311, 2015 WL 500176, at *13

---

[30] Barry Stricke, *People v. Robots: A Roadmap for Enforcing California's New Online Bot Disclosure Act*, VAND. J. ENT. & TECH. L., Vol. 22:4:839 (2020), at 842, https://scholarship.law.vanderbilt.edu/jetlaw/vol22/iss4/6/.

[31] Cal. S. Comm on Bus., Prof., & Econ. Dev., 2017-2018 Reg. Sess., S. Bill 1001 B. Analysis, Apr. 12, 2018.

[32] Intertwined with Noom's claim that Plaintiffs cannot recover on these facts is also a failed pleading attack.  To the extent Noom complains the TAC did not plead intent, it ignores TAC ¶ 251 which states Noom "inten[ded] to mislead consumers into believing that Noom's services included a personal human coach."  Noom's 9(b) argument also fails for the same reasons discussed above: the TAC details Noom's odd cancellation process including its bot: "as was the experience of all Plaintiffs, many customers are either (i) not assigned a coach when they join the trial . . . , or (ii) do not even understand that they have been assigned a 'coach' or know who their 'coach' is because the 'coach is actually an [AI] "bot." *Id.* ¶ 18.

(S.D.N.Y. Feb. 4, 2015) ("The fact that [Plaintiff] may only *recover* on one claim, . . . certainly does not preclude him from *pleading* unjust enrichment in the alternative.") (emphasis original). Because the TAC pleads that Noom benefited from receipt of improper funds and, under principles of equity and good conscience, should not be permitted to keep this money, TAC ¶¶ 872–74, 898– 900, Plaintiffs' unjust enrichment claims should survive.

2.  Plaintiffs State a Claim, in the Alternative, for Money Had and Received

Noom's arguments that Plaintiffs' claims for money had and received are duplicative and thus fail under Texas, Washington D.C., Alabama, and Washington law suffer from the same fatal flaw discussed above: they ignore well-established law that at this stage in the proceedings, where it is yet uncertain whether Plaintiffs indeed have an adequate remedy at law, Plaintiffs may plead such claims in the alternative.[33] Defs.' Br. 27.  Noom also does not contest these claims' substance.

Noom's substantive challenges to Plaintiffs' claims under Ohio, New York, and California law are equally without merit.  Noom is wrong to cite *LRC Realty, Inc. v. B.E.B. Props.*, 2020- Ohio-6999, ¶ 16 (Ct. App. Dec. 31, 2020) for the proposition that money had and received can only be brought among contracting parties. Defs.' Br. 28.  *LRC Realty* discusses the exact opposite proposition: "Under the theory of money had and received, judgment may be rendered *against a party who was not a contracting party*, but who nevertheless acted to withhold money . . . ." *Id.* (emphasis added); *see also Blair v. JP Morgan Chase Bank Nat'l*, No. 08 Civ. 971, 2009 WL 8580038, at *12 (N.D. Ohio Sep. 30, 2009) (money had and received is a quasi-contract claim). Noom also sees pleading deficiencies where there are none.  Plaintiffs sufficiently plead the

---

[33] *See Ryan, LLC v. Inspired Dev., LLC*, No. 12 Civ. 2391, 2013 WL 12137012, at *5 (N.D. Tex. July 18, 2013) (money had and received can be pled in the alternative); *Branch Banking & Tr. Co. v. Howard*, No. 12 Civ. 175, 2013 WL 951652, at *6 (S.D. Ala. Mar. 8, 2013) (money had and received may pled at litigation's inception "pursuant to notions of pleading in the alternative"); *Leslie v. Fid. Nat'l Title Ins. Co.*, 598 F. Supp. 2d 1176, 1184 (W.D. Wash. 2009) (recognizing cognizable common law claims for unjust enrichment and money had and received at motion to dismiss stage); *Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d 236, 262 (D.D.C. 2015) (declining to dismiss money had and received claims as duplicative to unjust enrichment claims at the motion to dismiss stage).

requisite elements under New York and California law.[34]  Further, in *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d at 870, Judge Cousins made clear to the same defense counsel at bar that a money had and received claim for improper automatic renewal should be sustained when the underlying conduct violates California's ARL (via the UCL and CLRA).

3. Plaintiffs' Conversion Claims are Adequately Pled

First, Noom does not challenge Plaintiffs' claims for conversion under Washington law. Second, Noom is wrong to claim that conversion in Ohio, New York, Texas, and Alabama only applies to funds "designated for a particular purpose." Defs.' Br. 28.  There is no such prerequisite, as these states recognize conversion for any unauthorized withdrawal of identifiable sums.[35]  Here, Noom wrongfully took identifiable sums.  Third, California and Washington, D.C. courts also sustain conversion claims where credit cards were used.  *See, e.g.*, *Welco Elecs., Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 884–86 (Cal. App. 2d Dist. 2014) ("Credit card, debit card, or PayPal information may be the subject of a conversion."); *Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church Ministries, Inc. (Md.)*, No. 16 Civ. 647, 2020 WL 1703937, at *6 (D.D.C.

---

[34] *See, e.g.*, *Kohler v. Errico*, No. 09 Civ. 7290, 2011 WL 1077722, at *9 (S.D.N.Y. Feb. 23, 2011) (Under New York law, money had and received requires "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money."); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1007 (N.D. Cal. 2009) (upholding claims for money had and received arising out of an improperly renewed antivirus software subscription, reasoning "[i]n an action for money had and received it is generally necessary for the plaintiff to prove only his right to the money and the defendant's possession; and any facts, circumstances or dealings from which it appears that the defendant has in his hands money of the plaintiff which he ought in justice and conscience to pay over to him, are competent evidence to support the action"); *see also* TAC ¶¶ 882–87 (pleading these elements).

[35] *See, e.g.*, *Simington v. Lease Fin. Group, LLC*, No. 10 Civ. 6052, 2012 WL 651130, at *12 (S.D.N.Y. Feb. 28, 2012) (conversion for bank account withdrawals); *Gambrell v. Auerbach (In re Auerbach)*, Nos. 14-16264, 14-1218, 2015 WL 6601776, at *7 (Bankr. N.D. Ohio Oct. 29, 2015) (conversion where party withdrew identifiable sum); *John Deere Credit v. Goldtech, Inc.*, 95 Civ. 759, 1996 U.S. Dist. LEXIS 12832, at *11 (S.D. Ala. Aug. 28, 1996) ("Since these funds are traceable to an identifiable source, they are subject to an action for conversion."); *Branch Banking & Tr. Co. v. HealthGrowth Credit, LLC*, No. 18 Civ. 783, 2019 WL 6015317, at *5 (W.D. Tex. July 23, 2019) ("Texas law allows for the conversion of 'money when identification of the money is possible and there is a breach of an obligation to deliver the specific money . . . or to otherwise treat specific money.'").

Apr. 8, 2020) (conversion where defendant "took control and possession" of plaintiff's "bank accounts, check accounts, and credit card accounts"). Plaintiffs' conversion claims should survive.

### D.  Rule 23 Preempts State Class Action Bans and Notice Requirements and Thus Plaintiffs' Claims (Counts 10, 11, 15, 20, 28, 36, 48, 50) Are Not Barred.

Under *Shady Grove Orthopedic Associates*, *P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010), subsequent in-Circuit law, and a legion of cases across the county, Rule 23 preempts conflicting state class action bars. Plaintiffs can pursue their class consumer fraud claims under Alabama, Georgia, Tennessee, Louisiana, South Carolina, Montana, and Arkansas law. In *Shady Grove*, which Noom inexplicably ignores, Defs.' Br. 40, the Supreme Court addressed whether a New York consumer protection statute permitting recovery of *individual* statutory penalties could be brought as a Rule 23 class action when state law prohibits class actions for penalties. The Supreme Court held that Rule 23, which "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue . . . a class action," 559 U.S. at 398, controlled: applying it to allow a class action for a statutory penalty did not "abridge, enlarge, or modify a substantive right" for purposes of the Rules Enabling Act, 28 U.S.C. § 2072(b). 559 U.S. at 408, 436. The Second Circuit has since adopted Justice Scalia's plurality opinion (in which he held that Rule 23 always falls within the authorization of the Rules Enabling Act, *id.* at 408). *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd*., 726 F.3d 62, 83 (2d Cir. 2013). Despite Noom's cite to *Delgado v. Ocwen Loan Servicing LLC*, No. 13 Civ. 4427, 2017 WL 5201079, at *10 (E.D.N.Y Nov. 9, 2017), courts in this Circuit have consistently held that Rule 23 preempts state class actions bars. *See, e.g.*, *Moreira v. Sherwood Landscaping Inc.*, No. 13 Civ. 2640, 2015 WL 1527731, at *6 (E.D.N.Y. Mar. 31, 2015) (New York rule barring liquidated damages classes preempted); *In re Aggrenox Antitrust Litigation*, No. 14 MD 2516, 2016 WL 4204478, at *6 (D. Conn. Aug. 9,

2016) (sustaining class claims under Illinois law barring indirect purchaser classes, and refusing to find the bar "sufficient to alter the scope of a substantive right or remedy").

In addition to the Second Circuit directive, the Eleventh Circuit in *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) expressly rejected the same argument Noom advances here. In a cogent, well-reasoned decision, it found that under *Shady Grove*, violations of the ADTPA—one of the consumer protection statutes Noom attacks—can be maintained as a class action in federal court since Rule 23 displaces state class action bars. *Id.* at 1334–38. The Eleventh Circuit reasoned "[t]here is no relevant, meaningful distinction between a statutorily created penalty . . . . and a statutorily created claim . . . . For each, state law allows an injured person to seek redress in an individual action but precludes . . . a class action." *Id.* at 1335–36; *see also In re Takata Airbag Products Liab. Litig.*, 462 F. Supp. 3d 1304, 1322 (S.D. Fla. 2020) (permitting class claims under Alabama, Arkansas, Georgia, Louisiana, Tennessee, and Virginia consumer protection laws and "following the reasoning in *Lisk*—that Rule 23 alters substantive rights and obligations under deceptive trade practices statutes 'not a whit'").[36] In their final section dedicated to Rule 23, Noom seeks to dismiss the Ohio Consumer Sales Practices Act ("OCSPA") for an alleged failure to plead the class action notice prerequisite of OCSPA §1345.09(B). *See* Defs.' Br. 30. But this notice requirement is procedural and thus is preempted by Rule 23 pursuant to *Shady Grove* for the same reasons discussed above.[37]

---

[36] *See also Carter v. L'Oreal*, No. 16 Civ. 508, 2017 WL 4479368, at *3 (S.D. Ala. Sept. 21, 2017) (similar); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015) ("Defendants' anemic argument is no match for the thorough, well-reasoned opinion of the Eleventh Circuit. The rationale . . . in *Lisk* convinces this Court that Rule 23 controls over the Alabama proscription on class actions. The Court also believes that the decision in *Lisk* applies with equal force and logic to the South Carolina and Tennessee proscriptions on consumer fraud class actions.").

[37] Assuming *arguendo* Ohio courts have characterized pleading and providing such notice as a substantive right, "[a] state's characterization of its own rule as 'substantive' instead of 'procedural' must 'yield to the strong presumptive validity of the properly promulgated federal procedural rule, which will be upheld as controlling . . . in the federal court.'" *Bonasera v. New River Elec. Corp.*, No. 19 Civ. 3817, 2021 WL 490257, at *9 (S.D. Ohio Feb. 10, 2021) (citations omitted). If "state and federal law are in conflict, we reconcile those principles by asking whether the federal law or rule 'regulate[s] matters rationally capable of classification as procedure.'" *Pappas v. Philip Morris,*

## CONCLUSION AND REQUEST FOR LEAVE TO AMEND

For the reasons set forth herein, the Court should deny Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint in its entirety.  To the extent the Court disagrees, consistent with the Second Circuit's strong preference for resolving disputes on the merits Plaintiffs respectfully request leave to amend their complaint to cure any deficiencies the Court may identify.  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011).[38]

Dated:  March 19, 2021

Respectfully submitted,

**WITTELS MCINTURFF PALIKOVIC**

By:    /s/ Steven L. Wittels
_____
Steven L. Wittels (SW-8110)
J. Burkett McInturff (JM-4564)
Jessica L. Hunter (JH-0025)

18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
jlh@wittelslaw.com

*Counsel for Plaintiffs and*
*the Proposed Class*

---

*Inc.*, 915 F.3d 889, 894 (2d Cir. 2019) (citations omitted).  "Procedure is 'the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them,' . . . while substantive law is the law that governs the rights and obligations of individuals[.]"  *Id.*  Noom's case *Green v. Gerber Products Co*., 262 F. Supp. 3d 38 (E.D.N.Y. 2017) goes the other way.  To the extent that the Court agrees with Noom, Plaintiffs request that any such dismissal be without prejudice, and that they be given an opportunity to cure.  Noom has not provided any compelling reason as to why leave to amend should be denied.  *Green v. Covidien LP*, No. 18 Civ. 2939, 2019 WL 4142480, at *10 (S.D.N.Y. Aug. 30, 2019).

[38] As the Second Circuit instructs, "[t]he proper time . . . to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient;" before then, "the plaintiff cannot know whether he is capable of amending the complaint efficaciously."  *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017); *see also Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").  This is especially true in complex cases like this one, "where pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution; they may also be borderline, and hence subject to reasonable dispute."  *Id.* at 191.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy Plaintiffs' Opposition to Defendants' Motion to

Dismiss Plaintiffs' Third Amended Class Action Complaint was served via ECF this 19th day of

March, 2021 upon all counsel of record.

<u>/s/ Steven L. Wittels</u>
Steven L. Wittels