# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MOJO NICHOLS, SUSAN BREWSTER, DUANE DEA, MARYANNE DERACLEO, KAREN KELLY, REBECCA RICHARDS, JENNIFER SELLERS, and STACY SPENCER,

*Individually and on Behalf of All Others Similarly Situated*,

Plaintiffs*,*

v.

NOOM, INC., ARTEM PETAKOV, and JOHN DOES 1 TO 5,

Defendants.

No. 20 Civ. 3677 (LGS) (KHP)

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFFS' OBJECTIONS TO JUDGE PARKER'S DISCOVERY ORDER CONCERNING PRODUCTION OF HYPERLINKED INTERNAL DOCUMENTS (ECF NO. 239)**

---

Dated: April 2, 2021

**WITTELS MCINTURFF PALIKOVIC**

Steven L. Wittels
J. Burkett McInturff
Jessica L. Hunter
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
jlh@wittelslaw.com

*Counsel for Plaintiffs and the Class*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD............................................................................................. 6

ARGUMENT ......................................................................................................... 6

I.    EVERY OTHER COURT THAT HAS ADDRESSED THESE OR ANALOGOUS FACTS HAS FOUND THAT DOCUMENT FAMILIES MUST BE PRESERVED EVEN IF DOING SO REQUIRES BUSINESSES TO DEVIATE FROM THE ORDINARY COURSE.......................................................................................... 6

II.    NOOM'S IMPROPER COLLECTION PROCESS CAUSES MULTIPLE PROBLEMS BUT CAN BE FIXED IN MULTIPLE INEXPENSIVE WAYS ............... 9

    A.  The Problems Caused by Defendants' Collection Methodology................................. 9

    B.  The Inexpensive Solutions ........................................................................... 13

III.    NOOM'S COST TO FIX THE PROBLEMS IT CAUSED IS MINIMAL, AND THE ORDER'S PROPOSED FIX IS ENTIRELY UNWORKABLE ...................................... 15

IV.    NOOM'S BREACH OF ITS AGREEMENT WITH PLAINTIFFS IS THE ONLY REASON THESE PROBLEMS AROSE ....................................................................... 18

V.    THE PROCEDURAL HISTORY INCREASED THE CHANCE OF ERROR............... 20

    A.  Noom's Internal Documents and Communications Are Critical to This Case and There Are Likely Going to Be 100,000 of Them.................................................. 20

    B.  The Process Leading to the Order Increased the Chance of Substantial Error........... 22

    1.  The Original Dispute and Ruling on Links in Emails .............................................. 22

    2.  The Subsequent Dispute on Links in Documents and Chat Messages, and the Order................................................................................................................ 24

CONCLUSION.................................................................................................... 25

**Cases**

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................................................. 21

*Chen-Oster v. Goldman, Sachs & Co.*,
  2014 WL 716521 (S.D.N.Y. Feb. 18, 2014) ................................................................. 15

*CP Sols. PTE, Ltd. v. Gen. Elec. Co.*,
  2006 WL 1272615 (D. Conn. Feb. 6, 2006) .......................................................... 7, 14

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) .................................................................................. 21

*Farrell v. Comm'r*,
  136 F.3d 889 (2d Cir. 1998) .......................................................................................... 19

*FTC v. Cyberspace.com LLC*,
  453 F.3d 1196 (9th Cir. 2006) ..................................................................................... 21

*In re Actavis Holdco U.S., Inc.*,
  2019 WL 8437021 (3d Cir. Dec. 6, 2019) ................................................................. 15

*Koch v. Greenberg*,
  2008 WL 4778813 (S.D.N.Y. Oct. 31, 2008) ............................................................ 21

*Kozlowski v. Sears Roebuck & Co.*,
  73 F.R.D. 73 (D. Mass. 1976) ........................................................................................ 7

*Lambda Elecs. Corp. v. Lambda Tech., Inc.*,
  515 F. Supp. 915 (S.D.N.Y. 1981) .............................................................................. 21

*Lifeguard Licensing Corp. v. Ann Arbor T-shirt Co., LLC*,
  2016 WL 5936887 (S.D.N.Y. Oct. 11, 2016) .............................................................. 6

*Lou v. Ma Labs, Inc.*,
  2013 WL 12328278 (N.D. Cal. Mar. 28, 2013) ........................................................... 7

*MacPherson v. Buick Motor Company*,
  217 N.Y. 382 (N.Y. 1916) .............................................................................................. 6

*Pom Wonderful LLC v. Coca-Cola Co.*,
  2009 WL 10655335 (C.D. Cal. Nov. 30, 2009) ....................................................... 2, 6

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) .......................................................................... 21

*Shenwick, et al. v. Twitter, Inc., et al.*,
  No. 16 Civ 5314 (N.D. Cal. Sept. 17, 2018) ................................................................. 8

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015)..................................................................................... 21

*Wesley v. Muhammad*,
  2008 WL 4386871 (S.D.N.Y. 2008)......................................................................... 7

**Other Authorities**

Craig Ball Comment (Mar. 30, 2021, 1:47 PM) on Doug Austin, *Court Denies Motion for Reconsideration Over Production of Hyperlinked Documents: eDiscovery Case Law*,
  eDiscoveryToday (Mar. 30, 2021)............................................................................. 4

Craig Ball, *Can a Producing Party Refuse to Produce Linked Attachments to E-Mail?*, Ball in Your Court (Mar. 25, 2021)................................................................................ 7

Doug Austin, *Craig Ball Also Weighs in on Links to Files in Emails: eDiscovery Best Practices*, eDiscoveryToday (Nov. 16, 2020) ........................................................... 4

**Rules**

Fed. R. Civ. P. 72(a) ...................................................................................................... 6

Pursuant to Federal Rule of Civil Procedure 72(a), the eight Named Plaintiffs ("Plaintiffs") respectfully object to Magistrate Judge Katharine Parker's March 11, 2021 Discovery Order Concerning Production of Hyperlinked Internal Documents (the "Order"), ECF No. 239. Defendants are Noom, Inc. and Artem Petakov ("Noom" or "Defendants," unless otherwise noted).

## **INTRODUCTION**

This objection raises a simple question: Should Defendants be permitted to produce documents that attach other documents via password-protected hyperlinks such that only Defendants have access to the link's contents? Unfortunately, the Order allows exactly this unfair process, where only Noom and its counsel get to see the original, intact versions of discovery documents, while Plaintiffs remain in the dark. Both fairness and the law reject this scenario.

The Order confronts "complex questions about what constitutes reasonable search and collection methods in 2021," and these questions "highlight[] the changing nature of how documents are stored and should be collected." Order at 3, 11. But while Plaintiffs greatly appreciate the due care Judge Parker has given to this large and important consumer protection action, her ruling on this "important" issue clearly errs on both the facts and law. *Id.* at 11. At bottom, the Order improperly rejects the long-standing law on what a "document" is and the critical relationship and relevance of discovery documents to their "document families." The Sedona Conference defines a "document" and "document family" as one and the same:

> A collection of pages or files produced manually or by a software application, constituting a logical single communication of information, but consisting of more than a single stand-alone record. Examples include a fax cover, the faxed letter, and an attachment to the letter, the fax cover being the 'Parent,' and the letter and attachment being a 'Child.'

Sedona Conference Glossary: eDiscovery and Digital Information Management at 299 (5th ed. Feb. 2020). In keeping with this accepted definition, it is well-settled that in the modern electronic

discovery age, "document families" must be kept intact.  *See, e.g.*, *Pom Wonderful LLC v. Coca-Cola Co.*, No. 08 Civ. 86237, 2009 WL 10655335, at *2 (C.D. Cal. Nov. 30, 2009) (requiring defendant to reproduce emails that were not linked with attachments even though non-linked documents were produced "in the usual course of business").

Notwithstanding these bedrock discovery principles, the Order displaces this cornerstone of modern electronic discovery practice through the following four erroneous findings:

1. **Emails**:  The Order wrongfully finds that a private, otherwise inaccessible document attached via hyperlink to an email is not an "attachment" to that email or otherwise part of the email's "document family," as that term is understood in e-discovery case law and literature, or as defined in the Court-ordered ESI Protocol, ECF No. 146 at 13.  Order at 7–8.

2. **Internal Documents and Chat Messages**:  The Order wrongfully finds that a private, otherwise inaccessible document embedded in or annexed via a hyperlink to an internal document or chat message is not part of that "Parent" document or chat message or otherwise part of the document or message's "document family," as that term is understood in the e-discovery case law and literature, or as defined in the Court-ordered ESI Protocol.  *Id.*

3. **Collection of "Parent" Emails, Internal Documents, and Chat Messages**:  The Order wrongfully finds that, because of rulings 1 and 2 above, when Defendants collect "Parent" emails, documents, and chat messages for keyword search and subsequent attorney review, Defendants need not also collect the linked "Child" documents that are in Defendants' exclusive possession, custody, and control.  *Id.* at 9–10.  Because these "Children" are separated from their "Parents," the full "document family" will not be collected, searched, reviewed, and produced. Further, without a systematic pairing of the Parent and Child documents, whether a Child attached or embedded via link will be produced is wholly unrelated to whether the Parent is produced.  For

example, even if a Parent document or email is retrieved via search terms, any given Child will only be produced if it *also* contains a search term and makes it through defense counsel's document review, and vice versa.[1]  Defendants' search term hit reports confirm this.

4.　**Password-Protected Links to Child Documents in Parent Emails, Internal Documents, and Chat Messages**:　Finally, when Noom ultimately produces Parent emails, documents, and chat messages—in other words, deems them relevant to a party's claims or defenses under Rule 26(b)—the Order wrongfully finds that Noom need not also produce the linked Child documents that are in its exclusive possession, custody, and control.  Instead, the Order provides that Plaintiffs must first ferret out whether any linked Child documents actually exist,[2] and then attempt the time-consuming mission of trying to determine if somehow the Child(ren) happened to also have been provided somewhere within Noom's production(s).[3]  Order at 1.  According to the Order, if Plaintiffs cannot locate the Child document, and the missing document "appear[s] to be material to the claims or defenses in this action," Plaintiffs can then request that Noom provide the missing Child document or its Bates number, *id.*, which Noom must provide as long as Plaintiffs' request is "reasonable."  *Id.* at 2, 5.  This scenario evokes dueling versions of Mother Goose's Humpty Dumpty:  on one side of the wall, Plaintiffs are faced with the impossible task of putting together a shattered egg while, on the other, Noom maintains an unfractured egg and need only assist Plaintiffs' "reasonable" efforts.

---

[1] By way of another example, an email that simply reads "see below, this changes everything" and uses a link to attach a smoking gun document will never be produced because the parties are relying on search terms to identify emails for Noom's review.  Under the Order's regime, the only way the Parent email and Child attachment will both be produced is if both contain search terms and are both independently deemed relevant and responsive by defense counsel.

[2] As discussed on p. 11–12, *infra*, this is not a straightforward task.

[3] As discussed on p. 12, *infra*, this is a lengthy and uncertain task, further complicated by the rolling production regime adopted here and the fact that Noom is likely to produce more than 100,000 documents.

Respectfully, these rulings are clearly erroneous and contrary to law. Indeed, as renowned ESI expert and special master Craig Ball observed this week about Judge Parker's Order:

> I wish the Court had given greater thought to hyperlinks instead of treating any hyperlink like any other. Hyperlinks to documents are unique when they result from an effort to attach a locally-stored document and the mail client (e.g., Gmail) requires that the document be hyperlinked because of its size. In those instances, the sender had the item in his or her custody and was compelled to upload the document and transmit it as a link. This is not the same as linking to something on the Web and shouldn't be dismissed as such.[4]

Separately, special master Ball recently recounted that he ran into this exact issue "in a case where [there were] responsive emails linked to 'attachments' in a Google Drive repository controlled by the producing party" and observed:

> The links supplied were cypher strings giving no clue as to the file names of the target files and "dead" to anyone without access rights, which the producing party were understandably dead set against giving my clients.
>
> I should add that we had many documents they'd collected from Google Drive; we simply lacked the means to pair the obscure hyperlinks in the transmitting messages with the targeted files. The Rosetta Stone to accomplish the pairing lay with the producing party, who threw up their hands claiming there was nothing they could do to fix it without re-collecting and -processing.[5]

As special master Ball correctly concluded in eDiscovweryToday (*id.*), the producing party:

> must collect the messaging using a method that retrieves linked attachments and preserves the parent-child relationship with the transmitting message. Indeed, it's an issue of care, custody and control. The party obliged to collect and produce the messages and attachments isn't relieved of that duty because they've stored their data in a cloud repository anymore than a party who stores records in a rented office may do so. They have a legal right and the practical ability to access the evidence.

---

[4] Craig Ball Comment (Mar. 30, 2021, 1:47 PM) on Doug Austin, *Court Denies Motion for Reconsideration Over Production of Hyperlinked Documents: eDiscovery Case Law*, eDiscoveryToday (Mar. 30, 2021), https://ediscoverytoday.com/2021/03/30/court-denies-motion-for-reconsideration-over-production-of-hyperlinked-documents-ediscovery-case-law/#comments (last visited Apr. 2, 2021). Mr. Ball is a certified computer forensic examiner and law professor who has served as a court-appointed special master or neutral in connection with electronic evidence or computer forensics in almost 50 cases. *See* Craig Ball C.V., https://law.utexas.edu/faculty/craig-d-ball/cv/1592581336 (last visited Apr. 2, 2021).

[5] Doug Austin, *Craig Ball Also Weighs in on Links to Files in Emails: eDiscovery Best Practices*, eDiscoveryToday (Nov. 16, 2020), https://ediscoverytoday.com/2020/11/16/craig-ball-also-weighs-in-on-links-to-files-in-emails-ediscovery-best-practices/ (last visited Apr. 2, 2021).

* * *

> We have the tools that can download the linked items if we act to do so in a timely and diligent manner; but parties tend to rely upon old workflows born from 1990's-era POP3 mail, and we have the Streetlight Effect where they collect from a source where it's easy even if it's the wrong source. If judges don't kick some ass, parties will never do better than old tools and obsolete workflows.

Here, the parties and Judge Parker agree that if an email contains an attached file, the Child file must be collected with the Parent email. The parties and Judge Parker also agree that if a document contains an annexed exhibit, the Child exhibit must be collected with the Parent document. Yet somehow when the email attachment or exhibit is annexed via a hyperlink with password-protected access, the Order ignores the fact that *how* a document is attached has no bearing whatsoever to whether the document is part of the Parent's "document family" and is in the producing party's **_sole_** possession, custody, and control. This was clear and reversible error. Indeed, as set forth below, every other court that has confronted the same or similar facts has found that these document families must be preserved and produced, even if doing so requires businesses to deviate from their ordinary document storage practices.

Accordingly, Plaintiffs' objection should be sustained and the Court should order Noom to take the steps necessary to ensure that: (a) all linked attachments are reassociated with their Parent emails; and (b) documents embedded in or annexed to Defendants' documents or chat messages via hyperlinks are reassociated with their Parent documents or messages. As set forth below, those steps could include using inexpensive and time-tested email collection tools, or inexpensive and entry-level programming well within Defendants' and their ESI vendor's capabilities, or providing Plaintiffs the necessary credentials to have equal access to the produced documents.

As Judge Cardozo vividly noted in *MacPherson v. Buick Motor Company*: principles "drawn from the days of travel by stage coach do not fit the conditions of travel today." 217 N.Y.

5

382, 391 (N.Y. 1916).  The Order likewise fails to recognize that new technologies are readily available to deal with the issue of hyperlinked documents in accord with well settled case law.

## LEGAL STANDARD

Non-dispositive orders of a magistrate judge may be overturned if they are clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a).  "A magistrate judge's ruling is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed" and "is contrary to law if it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Lifeguard Licensing Corp. v. Ann Arbor T-shirt Co., LLC*, No. 15 Civ. 8459, 2016 WL 5936887, at *1 (S.D.N.Y. Oct. 11, 2016) (Schofield, J.) (internal quotations omitted).

## ARGUMENT

I.  **EVERY OTHER COURT THAT HAS ADDRESSED THESE OR ANALOGOUS FACTS HAS FOUND THAT DOCUMENT FAMILIES MUST BE PRESERVED EVEN IF DOING SO REQUIRES BUSINESSES TO DEVIATE FROM THE ORDINARY COURSE**

Over a decade ago, courts around the country began confronting the issue of how to treat emails that were stored in a way that divorced the emails from their attachments.  In those cases, courts made clear that parties ***may not*** withhold the attachments, even if reconnecting an email to its attachment is a "tedious" process that requires the producing party to deviate from its ordinary business practices.  *See Pom Wonderful*, 2009 WL 10655335, at *3 (rejecting argument that defendant "'has no method to automatically re-link emails with their alleged 'missing' attachments[]' and that requiring it to do so would 'employ a tedious manual process,'" because a defendant "cannot seek to preclude plaintiff from pursuing discovery based on a record-keeping system that is plainly inadequate"); *see also CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, No. 04 Civ. 2150, 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006) (If plaintiffs were not able to match

"thousands of emails" with their attachments, "[d]efendants, at their expense, are ordered to provide [p]laintiff with the information, data, or software needed to accomplish this.").

These cases are based on the bedrock principle that a producing party may not "shield itself from discovery by utilizing a system of recordkeeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expenditure." *Wesley v. Muhammad*, No. 05 Civ. 5833, 2008 WL 4386871, at *5 (S.D.N.Y. 2008) (quotation marks and citation omitted); *see also Kozlowski v. Sears Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) (same and observing that "[t]o allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules."); *Lou v. Ma Labs, Inc.*, No. 12 Civ. 5409, 2013 WL 12328278, at *2 (N.D. Cal. Mar. 28, 2013) ("The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information.") (quotation marks and citation omitted). "To paraphrase Abraham Lincoln, you cannot murder your parents and then seek leniency because you're an orphan."[6]

The Sedona Conference's definition of "document" and "document family" reinforces the fairness concerns driving the above-cited cases. *See Pom Wonderful*, 2009 WL 10655335, at *3 ("[G]iven the Sedona Conference's view of an email and attachment as one document or message unit, it is clear that [defendant] is required to provide plaintiff with either the ability to re-link the emails with the attachments or re-produce the emails with their attachments.").

---

[6] Craig Ball, *Can a Producing Party Refuse to Produce Linked Attachments to E-Mail?*, Ball in Your Court (Mar. 25, 2021), https://craigball.net/2021/03/25/can-a-producing-party-refuse-to-produce-linked-attachments-to-e-mail/ (last visited Apr. 2, 2021) (emphasis omitted).

Special Master Judge Dennis Cavanaugh's (Ret.) order in *IQVIA, INC. v. Veeva Sys., Inc.*, No. 17 Civ. 00177, 2019 WL 3069203 (D.N.J. July 11, 2019) is also directly on point. Judge Cavanaugh there found the *Pom Wonderful* case instructive and ordered the producing party to provide 2,200 Google Drive documents that were attached to emails via hyperlink. *Id.* at *5. Judge Cavanaugh reasoned that though the producing party claimed "the linked documents are not stored with emails in the ordinary course of business," the receiving party "has no way to link the documents, only [the producing party] is capable of linking the emails to the Google Drive documents." *Id.* Judge Cavanaugh was "not convinced that relinking these 2,200 documents is unduly burdensome [for the producing party] in light of the issues at stake in this matter, the resources of the parties, and the amount in controversy." *Id.*; *see also Milgard Mfg., Inc. v. Liberty Mut. Ins. Co.*, No. 13 Civ. 6024, 2015 WL 1884069, at *2 (W.D. Wash. Apr. 24, 2015) (District Judge Benjamin Settle ordering production of documents "in a format that allows [the receiving party] to match emails and documents with their associated attachment as hyperlinks").

Likewise, in the only relevant case Noom cited to Judge Parker, Magistrate Judge Sallie Kim of the Northern District of California understood that it was unfair for the defendant company to withhold documents that were attached to emails via hyperlink because where "Plaintiffs have a right to determine if an electronic message refers to a document, then Plaintiffs should be able to access that document." *Shenwick, et al. v. Twitter, Inc., et al.*, No. 16 Civ. 5314, ECF No. 192, at *2 (N.D. Cal. Sept. 17, 2018) (*available at* ECF No. 226–1). *Shenwick's* facts are instructive here. The linked attachment issue did not arise there until after the defendant had already produced 134,966 documents (79,579 emails and 55,387 non-hyperlink attachments, or a ratio of .70 attachments per email). *Id.* at 1. Here, however, Noom has produced less than a dozen emails and

significant email and text-based document review is not likely to begin for at least another month. Declaration of J. Burkett McInturff ("McInturff Decl.") ¶ 3, dated April 2, 2021, ECF No. 261.[7]

Moreover, the initial round of email search term hit reports Noom filed on March 19, 2021 (ECF No. 243-2) show that of the 57,311 emails recalled by Noom's search proposal, there are only 9,530 family documents (presumably mostly non-link attachments), a ratio of .17 attachments per email.  *Id.* at 2.  Certainly, *Shenwick's* Twitter employees are not 400+% more likely than Noom employees to attach documents to their email; instead, Noom employees overwhelmingly use links to attach documents.  Plaintiffs' ESI consultants' analysis of the 2,495 documents with text (i.e. non-media files) Noom has produced to date shows that those documents contain 11,314 links, over 90% of which are off limits to Plaintiffs' counsel, but not to Noom and its counsel. Declaration of Douglas E. Forrest ("Forrest Decl.") ¶ 43, dated April 2, 2021, ECF No. 262.[8]

## II.  NOOM'S IMPROPER COLLECTION PROCESS CAUSES MULTIPLE PROBLEMS BUT CAN BE FIXED IN MULTIPLE INEXPENSIVE WAYS

### A.  The Problems Caused by Defendants' Collection Methodology

Gmail treats attachments in different ways, depending on the type of attached document. Attachments that are standalone files such as Word, Excel, and PowerPoint are attached as actual files in the same way that they are in email systems like Outlook.  However, Google Drive file types (Google Docs, Google Sheets, etc.) which reside on Google Drive are attached via a link

---

[7] This morning at 2:09 AM (April 2), Noom made an additional document production, which Plaintiffs did not have time to incorporate into their analysis.  McInturff Decl. ¶ 5.

[8] In its response, Noom may emphasize that Judge Kim only partially granted the *Shenwick* plaintiffs' application. Instead of having to produce all 725 hyperlinked documents that the plaintiffs had identified, Twitter (represented by the same defense counsel at bar) was only ordered to produce 200 hyperlinked documents of the plaintiffs' choice. *Shenwick* at 2.  But as these exact same lawyers at bar observed to Judge Parker, in *Shenwick* Twitter's "document production was substantially complete," ECF No. 226 at 4, which was clearly a driving factor on Judge Kim's ruling. Here, by contrast, Noom has produced fewer than a dozen emails and substantial document productions are likely months away.  McInturff Decl. ¶ 3–4.  There is thus still ample time to fix the multiple problems described below.

which will retrieve the linked document when clicked. The parties agree that employees at Noom (founded by Google alums) primarily use link attachments to email Google Drive documents. Further, Google Drive is Noom's repository for shared documents and discovery has demonstrated employees often use links to embed key documents (*see* ECF Nos. 189–191, examples of such documents). We invite Your Honor to click on these links to see what Plaintiffs' counsel (as opposed to Noom and its counsel) see: *nothing*. Finally, Noom's chosen litigation collection tool, Google Vault, does not collect Child documents attached to Parent emails via link, nor does it collect Child documents embedded via link in Parent documents. As set forth below, these two facts throw multiple wrenches into the customary electronic discovery process.

**_Step 1: Noom's Collection, Keyword Search, and Review_**: As discussed on p. 2–3 above, if "document families" are not reunited prior to collection and search, only Parent and Child documents both containing search terms and deemed relevant by Noom's document reviewers will be produced, likely separately. Any Parent or Child documents not containing search terms or that are deemed irrelevant will not be produced, notwithstanding the fact that their corresponding family member was produced and the entire family is accessible to Noom and its counsel. As Plaintiffs' ESI expert observed, by "not collecting Google drive documents attached via links, and searching those Google drive documents as family members of their parent documents, parents such as basic cover memorandums, *e.g.*, 'see attached,' which do not contain search terms themselves will not be collected, concealing strong direct ties between the Google drive documents attached via links and the recipients of the cover memorandums." ECF No. 236 at ¶ 18.

In the case of Parent emails and their Child documents attached via hyperlink, these family groups will necessarily be separated because the two sources, Gmail and Google Drive, are collected and searched separately. Seeking to sidestep this critical fact, Noom repeatedly falsely

claimed to Judge Parker that it would be separately collecting Child documents via its Google Drive collection, a glaring misrepresentation the Order regrettably incorporated: "Noom argued that . . . it was producing actual attachments to emails and separately collecting Google Drive documents that are referenced as file hyperlinks through its custodial and shared drive collection, it should not be required to perform an essentially redundant collection that would be burdensome." Order at 4. That Noom separately collected the same *type* of Google Drive documents that may have been attached to emails (*i.e.* documents *on* Noom's Google Drive), is not the same as Noom separately collecting all Children referenced or attached via hyperlinks.[9]

**_Step 2: Plaintiffs' Review (Putting Humpty Dumpty Back Together Again)_**:  For the Parent emails and documents that are eventually produced, determining whether the document contains links is not as easy as it would seem.  For example, because Noom is producing its emails as black and white TIFF images (*i.e.* the equivalent of a black and white photograph of the email), an embedded link can easily be overlooked as an underline because the reviewer's mouse cursor does not react to a black and white photograph of a link.  Below is an example:



NOOM_ 65899.  The "100 additional" is a hyperlink, but the only way Plaintiffs can determine that it is a link rather than an underline used by the author for emphasis is to sift through the email's

---

[9] *See also* Order at 6 ("Noom is producing all attachments to emails with the parent email as part of the email 'family.' Relevant hyperlinked documents are being produced separately.").  Again, not true.  Noom is collecting Google Drive documents separately and separately assessing them for search term responsiveness and relevance.  That they may have been attached via hyperlinks is not part of Noom's inquiry.  Noom is not looking at each collected Parent email and then trying to find the Child Google Drive document.  Noom's chosen collection tool, Google Vault, does not do that.  As discussed below, only tools like Forensic Email Collector do this.

underlying extracted text in a separate datafile. That cumbersome process eventually reveals a password-protected link—if the reviewer knows how to find it:

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████ Critically, and overlooked by Judge Parker, the link is to Noom's internal drive, not Noom's production. As Plaintiffs' ESI expert made clear, here there is "no metadata linking the 'child' to the 'parent' document, even though those linkages are substantive evidence in and of themselves." ECF No. 236 at ¶ 17.

Plaintiffs can search their litigation database for document metadata with a similar cypher, but even assuming the linked document was also produced, there would be no way for Plaintiffs to confirm on their own that the apparent Child is in fact the actual Child. One of Noom's own data scientists put it best when asked during his deposition about the spreadsheet embedded in p. 4 of ECF No. 190. Without his available login credentials, he was baffled: "There's no way a person could read a PDF of a document and know what [is in] a link to [a] spreadsheet . . . . I don't see how I could be expected to know that." Deposition Tr. of John Riccardi 257:23–258:2.

Even worse, locating a Child document across Noom's production is like trying to find a needle in a haystack with no needles. Thus far, approximately 90% of the hyperlinks that Noom has included in its document productions are off-limits to Plaintiffs. Forrest Decl. ¶ 43. Under the Order, Plaintiffs' only option is to reveal their work product and ask Noom to produce the linked documents, hope defense counsel does not deem their request unreasonable and does not drag their feet on the production, as has been the case thus far. *See* p. 16–18, *infra*. This is not viable. Without the Child documents, Plaintiffs cannot realistically use Parent documents at deposition or trial.

## B. The Inexpensive Solutions

As outlined below, there are multiple easier and fairer ways to solve this problem than the Order's purported solution:

**Email:** Digital forensics company Metaspike's Forensic Email Collector ("FEC") provides an easy fix:

> Files attached to emails as hyperlinks to a cloud storage system can throw a monkey wrench into your forensic preservation. . . .
>
> [FEC] automatically detects and acquires Google Drive attachments and revisions of emails during Gmail and G Suite acquisitions! Preserved cloud items are presented in a neat package with their parent emails to maintain parent/child relationships.

*Google Drive Attachments*, https://www.metaspike.com/forensic-email-collector/#drive.[10]

The Director of Digital Forensics at Plaintiffs' ESI consultant's firm has in the last two years successfully used FEC to perform collections from hundreds of email accounts from many types of email environments, including the one used by Noom. ECF No. 105-2 at ¶ 14. On the other hand, Noom's consultant admits to not "regularly" using FEC, ECF No. 105-1 at ¶ 11, and thus his claim that "collection times for retrieving data from FEC [are] significantly longer than those occurring within Vault" cannot be credited. *Id.* at ¶ 15(d). As further noted in Mr. Forrest's declaration, "it is impossible to credit, or even evaluate," Noom's criticisms of FEC "in the absence of any specific supporting facts or details, and none are given." ECF No. 236 ¶ 19, n.2. "Moreover, given the acceptance of FEC by prominent and demanding organizations . . . and [Plaintiffs' consultants'] own experience with the tool, perhaps any issues [Noom's consultant] encountered were not fairly attributable to FEC itself." *Id.* [11]

---

[10] In special master Ball's blog post, *supra* at n.6, he addresses the possibility that the document referenced by an email link may have been altered since the email was sent. FEC resolves this issue by providing an option to collect linked attachments in Gmail as they existed at the time an email was sent.

[11] Prominent FEC users include government and law enforcement, prominent firms in the Am Law 100, the accounting Big 3, and litigation support and forensic services, include Paul Weiss, PriceWaterhouseCoopers, the Office of the

*Footnote continued on next page.*

Importantly, Plaintiffs are not trying to impose FEC: they merely offer it as an inexpensive and easy fix for the unfair and asymmetrical situation Noom created. The only legal obligation Noom has is the one articulated by Magistrate Judge Garfinkle in *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, No. 04 Civ. 2150, 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006): If plaintiffs are not able to match "thousands of emails" with their attachments, "Defendants, at their expense, are ordered to provide Plaintiff with the information, data, or software needed to accomplish this." This can be accomplished with FEC or other alternative reasonable means at Noom's disposal.

**Internal Documents and Chat Messages**: Child documents referenced in Noom's private Google Drive documents and chat messages can be quickly and inexpensively collected and reassociated with their parent documents. Consistent with special master Ball's observation on p. 5, *supra*, that "[w]e have the tools that can download the linked items if we act to do so in a timely and diligent manner," Plaintiffs pointed Noom to two off-the-rack solutions for collecting links in Noom's internal documents and chat messages. ECF No. 236 at ¶ 26. Alternatively, Plaintiffs' ESI expert has provided the brief steps for someone with the programing capabilities "of a first or second year computer sciences student" to write a simple program to identify and collect Noom's Child documents and declares that the entire process would take "less than one to two weeks, at a fraction of the [$180,000] cost put forth by Noom." ECF No. 236 at ¶¶ 21–25. Noom, "the largest consumer facing healthcare company" in the nation, ECF No. 149 ¶ 14, with dozens of programmers on staff, or its ESI vendor (with a squadron of programmers and its own Digital Reef eDiscovery division) can quickly and easily handle this task. ECF No. 236 at ¶ 23.

California Attorney General, FTI Consulting, Deloitte, Grant Thornton, Clifford Chance, Stroz Friedberg, Winston & Strawn, the Federal Trade Commission, the Norwegian Tax Administration, and the Australian Federal Police. (Battle-Tested Software, https://www.metaspike.com/forensic-email-collector/#customers (last visited on April 2, 2021).

Further, while less optimal but significantly more fair and efficient than the procedure adopted in the Order, Plaintiffs' ESI consultants have suggested an additional fix as follows:

a.  Noom can exclude linked documents from their initial review and production (which will necessarily miss the "see attached" emails);

b.  Plaintiffs, using the programs that they have already developed, will give Noom a list of the links to private Noom urls inaccessible to Plaintiffs, identifying which specific documents in which each link appears; and

c.  Noom will collect and produce all non-privileged linked documents on the list, along with metadata to identify the documents as members of the family groups of their respective parent documents.

Forrest Decl. ¶ 32.[12]

## III.   NOOM'S COST TO FIX THE PROBLEMS IT CAUSED IS MINIMAL, AND THE ORDER'S PROPOSED FIX IS ENTIRELY UNWORKABLE

The cost to Defendants of collecting the linked documents is tiny compared to the amounts at stake in this litigation.  *See* ECF No. 155 (sealed disclosure of number of potential class members and amounts at stake).  Indeed, Noom has admitted that the cost of collecting documents attached to emails via hyperlink was just ***$4,466***.  McInturff Decl. Ex. 1.  That Defendants have already spent far more in legal fees attempting to withhold these attachments reveals their true motive.  As one commentator recently noted in responding to Judge Parker's Order, "[i]magine in litigation handing opposing counsel a pile of emails and a pile of attachments and saying 'You figure out which emails go with each attachment.  And you figure out who got what, and when!' Family

---

[12]As a further alternative, the ESI consultants have offered that instead of collecting the documents itself, Noom could give Plaintiffs the credentials necessary to access to the linked documents and Plaintiffs will do the collection.  Noom would not get to do a privilege or relevance review, but Noom would not have to spend any money collecting/reviewing documents. This option could also require some additional steps for authentication of the collected documents, but is within the Court's authority to adopt.  *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2014 WL 716521, at *1 (S.D.N.Y. Feb. 18, 2014) (Producing documents without review "elides the search process with the substantive determination of relevance, and it has the advantage of saving resources for the producing party, which need not conduct a further review for responsiveness."); *In re Actavis Holdco U.S., Inc.*, No. 19-3549, 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019), *cert. denied*, 141 S.Ct. 124 (Mem) (collecting cases and affirming a court's power to order the production of documents without review over the producing party's objection because courts have "wide latitude in controlling discovery, [and] the Federal Rules . . . permit a district court to compel the production of documents within broad parameters . . . .") (citing Rules 16(b), 26(b)(1), (iii)).

separation is never a good thing."[13]  Indeed, it would be both unreasonable and unfair to penalize the members of the Class by allowing Noom, a highly-successful tech startup with $400 million in 2020 revenue,[14] to sidestep its discovery obligations merely because the technology it chose to employ requires it to spend a few thousand dollars extra to fulfill them.[15]

Yet, instead of requiring Noom to bear this modest cost, the Order imposes a process that requires Plaintiffs' counsel to reveal work product—that is, which documents they are thinking about and when—by requesting that Defendants supply the missing Child documents.  Order at 1– 2, 5.  In addition to revealing important aspects of Plaintiffs' litigation strategy (especially on the eve of depositions), this process has thus far proven entirely unworkable.

For example, on February 16, 2021, Plaintiffs requested production of a Child video file linked to a Parent Microsoft Word document that Noom had produced on January 28.  McInturff Decl. ¶ 7.  On February 22, 2021, Noom emailed Plaintiffs the requested video file and produced

---

[13] Milton Robinson Comment (Mar. 30, 2021; 12:02 PM) on Doug Austin, *Court Denies Motion for Reconsideration Over Production of Hyperlinked Documents: eDiscovery Case Law*, eDiscoveryToday (Mar. 30, 2021), https://ediscoverytoday.com/2021/03/30/court-denies-motion-for-reconsideration-over-production-of-hyperlinked-documents-ediscovery-case-law/#comments (last visited Apr. 2, 2021).

[14] On December 28, 2020 Noom's annual revenue was expected to be $400 million, nearly double its 2019 revenue. Lisa Fickenscher, The diet industry is getting fat off the pandemic, New York Post (Dec. 28, 2020), https://nypost.com/2020/12/28/the-diet-industry-is-getting-fat-off-the-pandemic/ (last visited Apr. 2, 2021).

[15] The Order thus commits clear factual error when it adopts Noom's estimate that the cost of a proper collection "costs would be upwards of $180,000" and that "Plaintiffs have not effectively countered these projected costs."  The $180,000 estimate that the Order cites was given in Paragraph 6 the declaration of Noom's expert, Stephen Gresch, ECF No. 226-2.  Mr. Gresch's $180,000 estimate is not for the costs of any of Plaintiffs' proposed fixes, but for *manual collection* of the links, which is exactly what would *not* be required by Plaintiffs' proposals.  Forrest Decl. ¶36(b); *see also* Gresch Decl. ¶ 6 ("*My estimate for the manual collection* of the approximately three thousand hyperlinks identified thus far would be at least $180,000 and would take at least 500 hours." (emphasis added)). Further, de-duplication is largely a machine process with minimal human time required. Forrest Decl. ¶ 38.  Litigation support vendors such do not charge for machine time. Indeed, Noom's own expert admitted that Noom's costs to deduplicate and process email accounts that had already been collected and processed was only $1,950. ECF No. 105-1 at ¶ 16(a).  There will also be little additional review time.  No matter how many times a document appears in a collection, it only needs to be reviewed once, as Noom has admitted in another context: "If the same document matches multiple search terms, we do not believe this would require plaintiffs to review any documents 'more than once,' because it should be easy for plaintiffs to automatically identify and remove identical documents from review batches." McInturff Decl. Ex. 3.  The Order's acceptance of Noom's cost figures was clear error.

it with a Bates number three days later. *Id.* This was the only instance at that time where Noom provided a linked document and is what the Order refers to as "the parties hav[ing] already successfully utilized the Court's procedure." Order at 11. Later, however, on February 22, 2021, Plaintiffs advised Noom that they were concerned that there could potentially be a second Child video file linked within the same document and asked Noom to confirm whether the second link was to the already-produced video. McInturff Decl. ¶ 8. Noom ignored Plaintiffs' question, instead burying the second video in a document production more than three weeks later (unmentioned in the production email cover letter). *Id.* Defendants' failure to produce these Child videos at the time of the January 28 production and the protracted efforts required to obtain the second video have prejudiced Plaintiffs' letter-motion to compel a sampling protocol for Noom's customer communications repositories, which had a filing deadline of March 12, 2021, five days before Noom snuck the second video into its production. *Id.*

Next, on March 22, 2021, Plaintiffs requested that Noom produce a single spreadsheet embedded on page 3 of a document the parties used to designate the relevant period for discovery (*i.e.*, January 1, 2017 to the present). McInturff Decl. ¶ 9; *see also* ECF No. 190 (the 3-page Parent document). Based on a preliminary review, Defendants apparently produced the linked spreadsheet at 2:09 a.m. today, eleven days after it was first requested—but not indicating that it had been produced. McInturff Decl. ¶ 9. Of the 37 linked documents that Plaintiffs have requested under the Order's procedure, Defendants have as of 2:09 a.m. today produced only three.

This burden and cost far outweighs Noom's burden and cost to simply collect the linked documents prior to search term application. As special master Ball aptly noted just last week:

> If the link is not broken and the custodian of the message could click the link and
> access the linked target, where is the undue burden and cost? Certainly I well know
> that collection is often delegated to persons other than the custodian, but shouldn't
> we measure undue burden and cost from the standpoint of the *custodian* under the

legal duty to preserve and produce, NOT from the perspective of a proxy engaged to collect, but lacking the custodian's *ability* to collect, the linked target? Viewed in this light, I don't see where the law excuses the producing party from collecting and producing the linked target.

The difficulty in collection cited results from the producing party contracting to delegate storage to a third-party Cloud Provider, linking to information relegated to the Cloud Provider's custody. . . . **Just because you enlist someone to keep your data on your behalf doesn't defeat your ultimate right of control or your duty of production.**

Supra, n. 6 (emphasis added). There are practical fixes to these issues, but the Order's is not. [16]

## IV. NOOM'S BREACH OF ITS AGREEMENT WITH PLAINTIFFS IS THE ONLY REASON THESE PROBLEMS AROSE

These issues would not be before Your Honor but for the fact that Noom reneged on its August 26, 2020 commitment to Plaintiffs that Noom would produce hyperlinked documents in emails and other documents. McInturff Decl. ¶ 10. On August 25, in advance of a meet and confer the next day, Plaintiffs circulated an ESI protocol that defined "Family Groups" with specific reference to "files with extracted embedded OLE documents and email or other documents together with any documents referenced by document stubs within those emails or other documents" making clear that together these documents "constitute family groups." *Id.* ¶ 11. The parties discussed the issue of linked documents during their August 26 meet and confer, Defendants' ESI attorney agreed that linked documents would be produced, and the parties memorialized their agreement on these points in their respective ESI protocol drafts. *Id.* ¶ 12; *see also* ECF Nos. 65-4 at 21–22 and 65-7 at 13 (Plaintiffs' and Defendants' ESI Protocol definition of "Family Groups," both of which specifically include "documents referenced by document stubs

---

[16] While the Order at 8 faults Plaintiffs' proposals as addressing a problem that is "entirely speculative," the number of hyperlinked documents has gotten a lot less speculative. Plaintiffs had their ESI consultants write a program to extract the hyperlinks to private documents accessible only to Noom. Forrest Decl. ¶ 42. This program, similar to the one Noom could write to solve the problems created by Noom's chosen collection tool, took Plaintiffs' consultants' 10 hours to create and implement. Forrest Decl. ¶ 42, n.7.

within those emails.").  Indeed, the Court's January 13, 2021 ESI protocol (ECF No. 146) adopts the **_exact_** definition of "Family Groups" Plaintiffs proposed on August 25, 2020.  Considering this language, agreed upon by the parties and adopted by the Court, Noom should not be permitted to continue to withhold linked Child documents.  In fact, despite deadlocking on *31* different ESI protocol disputes (*see* ECF No. 65-1, ESI disputes chart), Noom never disputed its obligation to produce electronic documents that were attached via link.

The Order concludes there was no meeting of the minds on this point and that neither Defendants nor the Court intended "to require pulls of hyperlinked documents."  Order at 6.  While we appreciate that the Court may have had a different intent, Plaintiffs drafted this language— language that the parties agreed included linked documents during their meet and confer—and the plain language of the ESI protocol clearly defines families to include documents attached to emails or annexed to documents via hyperlink.  *See In re Dynegy Inc.*, 486 B.R. 585, 591 (Bankr. S.D.N.Y. 2013) ("When interpreting orders, the Court should look first to the plain meaning of the language of the order."); *Farrell v. Comm'r*, 136 F.3d 889, 895 (2d Cir. 1998) (courts are "constrained to give effect to the plain meaning of the language in a stipulation in order to carry out the intent of the parties.").  Here, the plain language of the ESI Protocol defines "Family Groups" as "A document and all other documents in its attachment range, emails with attachments, files with extracted embedded OLE documents, and **_email or other documents together with any documents referenced by document stubs within those emails or other documents all constitute family groups_**."  ECF No.146, Section C.5.(a) (emphasis added).  While the Order states that the term "stub" references "the company's archive location of attachments to emails," Order at 6, it overlooks the fact that Noom's "Google Drive data store is in fact and in effect a form of archives, and the usage of stubs in the ESI protocol is consistent with its usage with respect to archives,

which includes simple HTML links to referenced documents."  Forrest Decl. ¶ 49–51; *see also* Defendex, *A Brief Overview of Stubs and Data Archiving*, https://info.defendx.com/blog/a-brief-overview-of-stubs-and-data-archiving, accessed on April 2, 2021.  The Order's opposite conclusion was error.

## V.    THE PROCEDURAL HISTORY INCREASED THE CHANCE OF ERROR

### A.  Noom's Internal Documents and Communications Are Critical to This Case and There Are Likely Going to Be 100,000 of Them

Noom is one of the nation's fastest growing diet programs and has perpetrated one of the country's largest automatic renewal scams.  Third Amended Class Action Complaint ("TAC") ¶ 1, ECF Nos. 167, 174.  The scheme works as follows:  Noom lures consumers to sign up to "try" its supposedly revolutionary diet app "built on psychology and science," telling consumers that if Noom is not the right fit they can move on, no strings attached.  *Id.* ¶ 2.  Noom is so confident that it supposedly takes a financial loss by offering this "risk free" trial.  *Id.*  Yet not only does it turn out that Noom's "risk free" trial must be cancelled lest it automatically renew, but also that the trial is extremely difficult to cancel resulting in consumers being charged for the ***full, multi-month*** diet program once the trial ends.  *Id.*  To boot, once Noom imposes the non-refundable lump sum fee, it hides the charges by failing to send a receipt for this, and for later, renewal fees.  *Id.* ¶ 81. In response to Noom's misleading and fraudulent conduct, Plaintiffs filed this consumer class action alleging violations of state consumer protection statutes and the common law.

There can be no question that Noom's internal documents and communications are key for merits and class certification purposes.  As to merits, "whether a particular act or practice is deceptive is usually a question of fact."  *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013).[17]  As to class certification, Noom's internal documents and communications are

---

[17] *See also Ackerman v. Coca-Cola Co.*, No. 09 Civ. 0395, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010)

*Footnote continued on next page.*

common evidence for each Class Member's claims.[18]  Accordingly, the Order errs in suggesting that Noom's documents are secondary on the grounds that "the key issues [in this case] relate to public-facing policies and procedures pertaining to Noom's autorenewal policy."  Order at 9, n.4.

Indeed, Judge Parker has otherwise consistently overruled Defendants' efforts to block the production of internal documents and communications.  For example, on January 13, 2021 Judge Parker ordered Noom to produce documents "presented to management and/or Noom's Board of Directors regarding consumer complaints about signup, autorenewal, charges, and cancellation, as well as the Better Business Bureau's ('BBB') warning, and the company's responses to such complaints and/or the BBB warning."  ECF No. 145 at 3.  Then, Judge Parker shot down Noom's attempt to use the Court's omission of the term "communication" from the January 13 order to avoid producing communications:  "to the extent Noom construed this Court's prior directions to excuse it from producing relevant email, text and slack communications from agreed-upon custodians, that interpretation is incorrect.  The parties shall endeavor to craft appropriate searches to . . . maximize the likelihood of locating communications about decisions made by the company as to the features of the auto renewal and cancellation aspects of . . . and the reasons therefore."  ECF No. 195 at 2.  Similarly, Judge Parker overruled Noom's efforts to withhold emails discussing the financial impact of its autorenewal and cancellation practices and emphasized that "the money

---

("[W]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides . . . ."); *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (while proof of actual deception is not necessary to show deceptive business practices, "such proof is highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances."); *Lambda Elecs. Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915, 926 (S.D.N.Y. 1981) ("The best evidence of likelihood of confusion is the occurrence of actual confusion and mistakes."); *Koch v. Greenberg*, No. 07 Civ. 9600, 2008 WL 4778813, at *5 (S.D.N.Y. Oct. 31, 2008) (that defendant is aware of deception and that there "may be many other victims" are relevant factors in determining the egregiousness of the alleged fraud).

[18] *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015) ("We see nothing impermissible in the district court determining that defendants' scheme, which had multiple components, was a unitary course of conduct . . . .") (quotation omitted); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (commonality exists where class "injuries derive from a unit[ar]y course of conduct by a single system) (quotation omitted).

is going to drive the whole thing" and that this discovery is "part and parcel" of what the Court expects Noom to produce. Feb. 4, 2021, Hr'g Tr. 37:14–38:6, ECF No. 201. As Judge Parker recognized just last week, "[t]here's going to be more than 95,000 emails to review" because "that's just the way that it is." Mar. 23, 2021, Hr'g Tr. 77:20-21, ECF No. 250.

**B. The Process Leading to the Order Increased the Chance of Substantial Error**

1. The Original Dispute and Ruling on Links in Emails

The quantity of documents and email Noom will produce underscores the importance of the question of whether Plaintiffs should be given the same access to those documents that Defendants, their employees, and their counsel enjoy. The answer to that question is plainly "yes." As discussed on p. 18–19, above the parties agreed at the very outset of ESI negotiations that Noom would collect and produce linked documents and memorialized that agreement in the ESI protocol.

Yet, in a cryptic October 30 email, defense counsel requested a meet an confer to "explain a couple of aspects of our collection and search process." McInturff Decl. Ex. 2 at 6. During the ensuing November 4 meet and confer, Noom disclosed for the first time its collection and export methodology and solicited Plaintiffs' input. *Id.* at 1. Prior to that date, Noom had disclosed only that "Defendant performed a full export of all [Google Drive] documents the Custodian either owned or had access to during the Relevant Period" and that Defendant has made a "[f]ull export of all emails sent or received during the Relevant Period." *Id.* At that time, Noom recognized that had not previously disclosed and discussed its proposed collection methodology, including when defense counsel told Judge Parker on November 10, 2020 "we first became aware of [issues with collecting via Google Vault] about ten days ago and discussed it with plaintiff at length [on November 4]" and that "we disclosed this to plaintiff last week." Nov. 10, 2020, Hr'g Tr. 65:7–

66:10. During this conference, the parties discussed Google Vault's shortcomings on the extraction of filepath metadata, the issue of linked email attachments was not discussed as Noom had not given Plaintiffs time to formulate a position. *Id.* On November 12, Plaintiffs notified Noom that its proposal would omit documents attached to emails via hyperlink. *Id.* Plaintiffs also advised Noom that inexpensive tools existed to solve this issue, including FEC. *Id.* This same email showed Noom exactly which button they could click to solve the problem they created. *Id.*

On November 13, the parties wrote Judge Parker and advised that disputes had emerged regarding hyperlink attachments to Noom's emails and requested leave until November 20, 2020 to "submit a four-page joint letter addressing any outstanding disputes regarding Noom's proposed ESI collection process." ECF No. 98. The parties then submitted a joint letter and dueling expert declarations. ECF Nos. 105 to 105–2. When Noom provided its initial draft of the parties' joint letter, counsel disclosed that it would cost Noom only ***$4,466*** to collect the email attachments for the eight Noom custodians. McInturff Decl. Ex. 1.[19]

On December 7, 2020, the parties presented their email dispute as the very first issue for discussion at the upcoming December 10 discovery conference with Judge Parker. ECF No. 120. The night before the December 10 conference, however, the parties were notified by Judge Parker's chambers that because of a personal matter the Court was adjourning the conference to January 12, 2021. McInturff Decl. ¶ 13. Nonetheless, the next day Judge Parker issued the following ruling despite not having heard any oral argument from the parties or their experts:

> Having reviewed the parties' submissions, the Court hereby grants Noom's request to use Google Vault to export all email attachments, to the extent possible, during

---

[19] This additional cost was Noom's fault. Because "Noom barged ahead and collected the email of 8 individuals Noom proposes to designate as ESI custodians (before the parties have held their Nov. 24 meet and confer regarding custodians) using a method that does not collect Google Drive linked attachments" and that Judge Parker had "previously advised Noom that its approach to custodian designation was 'at its own peril.'" ECF No. 105 at 3. When Noom filed its ESI expert's declaration, it also revealed that its total cost to collect and process these eight custodians' email was only $4,466. ECF No. 105-1 at ¶ 16(a).

discovery in this case.  This practice is the industry standard.  To the extent that hyperlinks are not exportable via Google Vault, those hyperlinks are not attachments.  However, to the extent there is a specific document with a hyperlink that is material to a claim or defense, and to the extent Plaintiffs cannot obtain the document through copying the link in their Internet brower [*sic*], Plaintiffs may raise the issue with the Court.

ECF No. 122 at 5.  The Order is therefore mistaken when it recounts that this ruling was issued "[a]fter fully hearing the parties' arguments."  Order at 5.

        **2.**   The Subsequent Dispute on Links in Documents and Chat Messages, and the Order

Tuning to Noom's Google Drive documents and chat messages, just days prior to the December 10 order, on December 4, Plaintiffs first identified inoperable hyperlinks embedded in documents Noom had produced (on November 30) and requested the linked Child documents. ECF No. 214-1 at 4.  Noom did not respond until after Judge Parker's December 10 ruling, and on December 16 revealed that Noom interpreted Judge Parker's order on email attachments to extend to hyperlinks in Noom's Google Drive documents and stated that "[w]e are not going to produce linked documents, consistent with the Court's order."  *Id*. at 2.  At their first available opportunity thereafter, Plaintiffs requested that Judge Parker hold a separate conference to "discuss the issues raised by Defendants' idiosyncratic interpretation of Court's December 10 ruling regarding documents attached to emails via hyperlink."  ECF No. 142.  This request was not discussed at the ensuing January 12 or January 29 telephonic conferences and was thus re-raised in advance of the February 4 conference on the grounds that "Noom employees' extensive use of embedded links in both documents and emails, combined with Defendants' refusal to provide the linked documents, is prejudicing Plaintiffs."  ECF No. 188.  In connection with Plaintiffs' second request for a specific hearing on this dispute, Plaintiffs provided the Court with exemplars of three key litigation documents containing inaccessible embedded links to other documents.  ECF Nos. 189–91.

At the February 4 conference Judge Parker heard approximately 3 minutes of argument on this issue, which was not transcribed due to a recording error and Judge Parker's guidance at that hearing was not reflected in the Court's February 5 post-conference Discovery Order. ECF No. 214 at 1. Plaintiffs' counsel's notes of the hearing indicated that Judge Parker granted Plaintiffs leave to reraise their concerns if we could demonstrate that Plaintiffs are unable to efficiently access relevant linked documents and that in issuing the December 10 order the Court understood the dispute regarding hyperlink email attachments to be about links to publicly available documents on the internet, not links to Noom's password-protected documents. ECF No. 214; McInturff Decl. ¶ 14. Thereafter, Plaintiffs promptly filed their February 19 motion for clarification or, in the alternative, reconsideration. The Order was issued on March 11, 2021.

In the time since this issue first surfaced five months ago very little Noom document review and production has occurred. By Plaintiffs' count, to date Noom has produced only roughly 2,500 text-based documents since discovery started in September 2020, McInturff Decl. ¶ 15, and the parties are still negotiating search terms. *See* ECF No. 248 (Judge Parker's March 23 Electronic Order noting the parties' continued search terms discussions, which will be addressed at the April 15, 2021 conference). As discussed above, the additional costs to correct the problems Noom caused are easily trumped by the importance of the issues and amount in controversy. Plaintiffs have been prejudiced and will continue to be prejudiced absent Noom collecting and producing Child documents with their respective Parents. Based on established discovery principles and case law, the Order's errors should be cured.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully ask the Court to set aside the Order and direct Noom to take the steps necessary to ensure that: (a) all linked attachments are

reassociated with their Parent emails; and (b) documents embedded in or annexed to Defendants'
documents or chat messages via hyperlinks are reassociated with their Parent documents or
messages.


Dated:  April 2, 2021                                    Respectfully submitted,

                                              **WITTELS MCINTURFF PALIKOVIC**

                                              By:     /s/ Steven L. Wittels
                                                        Steven L. Wittels (SW-8110)
                                                        J. Burkett McInturff (JM-4564)
                                                        Jessica L. Hunter (JH-0025)

                                                        18 HALF MILE ROAD
                                                        ARMONK, NEW YORK 10504
                                                        Telephone: (914) 319-9945
                                                        Facsimile: (914) 273-2563
                                                        slw@wittelslaw.com
                                                        jbm@wittelslaw.com
                                                        jlh@wittelslaw.com

                                                        *Counsel for Plaintiffs and*
                                                        *the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy Plaintiffs' Objections to Judge Parker's Discovery Order Concerning Production of Hyperlinked Internal Documents was served via ECF this 2nd day of April 2021 upon all counsel of record.

/s/ Steven L. Wittels
Steven L. Wittels