April 8, 2021
**Via ECF**
Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Nichols, et al., v. Noom, Inc., et al.*, No. 20 Civ. 3677 (LGS) (KHP)

Dear Judge Schofield,

      On behalf of the National Association of Consumer Advocates (NACA) and Public Justice, we write to request a pre-motion conference under Rule III.A.1 of the Court's individual rules regarding our application to file an amicus brief in support of Plaintiffs' Objections to Judge Parker's Discovery Order Concerning Production of Hyperlinked Internal Documents (Doc. 260). In the alternative, we ask that the Court accept this letter as our amicus brief.[1] NACA is an association of attorneys and consumer advocates committed to representing consumers' interests. Many of its members handle complex class actions, where complete discovery of relevant documents is fundamental to the case. Public Justice is a legal advocacy organization that focuses on preserving the civil justice system as an effective tool for holding corporate and governmental wrongdoers accountable and ensuring justice. This issue is of particular importance to the undersigned parties given (1) their commitment to and experience in the development and application of e-Discovery principles and best practices and (2) their pursuit of justice.[2]

### I.    Introduction

      The parties' discovery dispute concerns an increasingly important issue in the world of e-Discovery: How will litigation collections, reviews, and productions be impacted by files stored and shared solely "in the cloud"? Google Drive—a popular cloud tool that stores files on a centralized web-based server—allows its users to share documents via hyperlink. The shared file is not embedded into the email as an attachment, as has been common practice historically; rather, the file contains an electronic pointer, or hyperlink, to a secure cloud server, allowing the recipient to access the file if they have the proper user permissions. A user composes a Gmail message, chooses the relevant Google Drive document, and selects the "Drive link" option to share that file with another user via hyperlink.[3] Google Drive users can entirely forego traditional email attachments. Platforms like this have serious implications in litigation—as is the case here. The Federal

---

[1] "There is no governing standard, rule or statute prescribing the procedure for obtaining leave to file an amicus brief in the district court." *Women for Am. First v. De Blasio*, No. 20 Civ. 5746, 2020 WL 4904057, at *2 (S.D.N.Y. Aug. 18, 2020) (Schofield, J.). "As such, the decision to grant leave to file a brief amicus curiae is in the firm discretion of the court." *Id.* "The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties." *Id.*

[2] Amici received invaluable help preparing this brief from Brian Morrison of Tadler Law LLP, which is well-known for the strength of its e-Discovery practice.

[3] Google explains that for "files created using Google Docs, Sheets, Slides, or Forms," users can *only* send files via a "Drive link" rather than through an "Attachment." *https://support.google.com/mail/answer/2487407?co=GENIE. Platform%3DDesktop&hl=en* (last accessed on Apr. 5, 2021).

Rules of Civil Procedure provide the framework for parties to deal with this type of evolving technology while allowing for the reasonable and just exchange of information.

## II.     Background

Before the advent of cloud-based file sharing and storage, a party could identify relevant emails and then easily collect and produce any associated attachments to those emails. This is commonly referred to as a "family complete" production—the email as the "parent" and the attachment as the "child." These family associations are critically important to the context of the documents. Emails without their attachments are often bereft of any meaning (*i.e.*, an email stating "Let me know what you think of the attached" offers nothing to the reader without the accompanying document). Often, emails can seem innocuous on initial review only to later become important evidence of when or by whom certain documents were shared or exchanged.

In this case, the parties disagree about the appropriate way to collect and produce Google Drive documents. Defendants Noom, Inc. and Artem Petakov (collectively, "Noom" or "Defendants") stated they would search for responsive emails and then separately search for responsive files on Google Drive. But, as currently set, there will be no apparent association between the two sources—either on the face of a document or in the metadata. While Noom may produce a responsive email and a responsive Google Drive file, Plaintiffs will have no way of knowing whether those two documents were ever related or connected. Judge Parker recognized the issue as "an important one." *See* Discovery Order Concerning Production of Hyperlinked Internal Documents, Doc. 239, at 11 (Mar. 11, 2021).

## III.    Discussion

Amici urge the Court to reconsider the Discovery Order given the immediate and serious impact on this case—and on future cases. Traditional emails with attachments may soon account for a much smaller portion of discovery productions than in the past. Many organizations (including law firms) already employ cloud-based file systems for creating, organizing, and sharing files.[4] These technologies upend the traditional "parent-child" relationship between an email and its attachment.[5] Without any evident connection between a communication and an accompanying shared file, a receiving attorney would be hard-pressed to identify or discern the significance of the documents or their intended context.

Indeed, Noom's production is inconsistent with well-established discovery requirements. Noom is producing emails in black-and-white TIFFs without operational hyperlinks, not in their original form. "Where the party chooses to produce in a method other than as they are kept in the usual course of business, defendants must produce it 'in a reasonably usable form or forms.'" *United States ex rel. Rubar v. Hayner Hoyt Corp.*, No. 5:14-CV-830, 2018 U.S. Dist. LEXIS 158824, at *12 (N.D.N.Y. Sep. 18, 2018) (quoting Fed. R. Civ. P. 34(b)(2)(E)). Noom is not providing a "reasonably usable form" to Plaintiffs. *See Aguilar v. Immigration & Customs Enf't Div.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008) ("Although a party may produce its ESI in another

---

[4] For example, many of the largest law firms in the country employ iManage or other similar data management software. Files are stored in the cloud, and employees share file links with each other—much like the Google Drive platform.

[5] The Sedona Conference® defines a Document Family as "A collection of pages or files produced manually or by a software application, constituting a logical single communication of information, but consisting of more than a single stand-alone record." The Sedona Conference Glossary, 5th Ed. (2020), at 299. To that end, a hyperlinked file shared in an email or message could be considered part of a Document Family.

reasonably usable form, this does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." (quotation marks omitted)). By not including the hyperlinked files with the emails—or at least identifying the connection between the two—Noom is neither producing information as kept in the usual course of business nor in a reasonably usable form. Rather, Noom is making it far more difficult, if not impossible, for Plaintiffs to use the information—as they are permitted to do in discovery and at trial.[6]

Allowing Noom's method of production creates practical dilemmas for a receiving party. For one, the exclusion of a linked file makes it impossible for a receiving party to identify which custodians sent or received a specific document.[7] Additionally, although the Discovery Order opened the door for Plaintiffs to request specific hyperlinked documents after a review of the initial production, that task is neither reasonable nor may it even be possible. As an initial matter, a brief email may seem irrelevant or unimportant, but the hyperlinked file may add significant context (for example, establishing that a custodian received a certain document on a specified date). How could an attorney request additional information without knowing the importance of the Google Drive file? And, if Noom produces a standalone document from Google Drive that turns out to be a "hot doc," without the contextual email, Plaintiffs would have no way of knowing whether (and by whom) it was shared. On an even more basic level, the *black-and-white* TIFF images Noom has produced make it more difficult to know whether a hyperlink is even present in an email or document (it may be unclear whether underlined text is a hyperlink or just underlined text).

Affirming the Discovery Order could have broad and lasting impacts on discovery in other cases. The application of the concepts of "in the ordinary course of business" and "reasonably usable form" would be muted if not rendered meaningless. Such a decision could also have a serious impact on the collection and production of modern communications.[8]

The Court should consider an alternative solution. Indeed, the discovery rules contemplate parties creatively solving problems by working together. Noom could create a database with only the responsive emails and their corresponding hyperlinked data and provide database access to Plaintiffs' counsel on a limited basis.[9] Or Noom could produce metadata identifying the connection between an email and a Google Drive file—without needing to reproduce the file multiple times. Either way, Amici urge the Court to put the onus on the producing party here to make its production "reasonably usable" by Plaintiffs so that they too can fairly use the information in the litigation.

---

[6] Consider the example of an abbreviated email with a lengthy, important hyperlinked file. Plaintiffs in this litigation would be hard-pressed to discern "who knew what when" or to employ such a document at deposition or trial without knowing the connection between the two. A witness presented with only the cover email citing to a link may well have "*no recollection*" without the benefit of the hyperlinked document. And even if the witness has no recollection, with the hyperlinked document in the record, the story will be quite different than without it.

[7] Plaintiffs' concern about depositions is not merely hypothetical: if a deponent cannot be shown which files were associated with an email, the deponent could easily evade substantive questions about those files. *See Pom Wonderful Ltd. Liab. Co. v. Coca Cola Co.*, No. CV 08-6237, 2009 U.S. Dist. LEXIS 134369, at *5 (C.D. Cal. Nov. 30, 2009) ("[P]laintiff must have the ability to identify which attachments belong to which emails.").

[8] Popular platforms such as Microsoft Teams and Slack allow quick sharing of file hyperlinks.

[9] An alternative option would be to segregate the responsive emails into their own "production email box" and provide the receiving party proper permissions to access only those emails and attachments.

        Respectfully submitted,

**National Association of Consumer Advocates**,
by
/s/ Stephen Gardner
Stephen Gardner (SG3964)
1680 NW Precision Lane
Bend OR 97703
(541)241-9111
steve@consumerhelper.com

**Public Justice, P.C.**,
by
/s/ Karla Gilbride
Karla Gilbride (KG7218)
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
kgilbride@publicjustice.net

cc:    All counsel of record (via ECF)
        Magistrate Judge Katharine H. Parker (via ECF)