

April 12, 2021

<u>Via ECF</u>

Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Nichols, et al. v. Noom, Inc., et al.*, No. 20 Civ. 3677 (LGS) (KHP)

Dear Judge Parker,

Plaintiffs submit this emergency "extenuating circumstances" application to remedy Noom's violations of the Court's March 4 and March 23, 2021 orders, which require that reasonable inquiries be made of Noom's custodians and other employees (including Noom's CEO) to identify and produce (i) documents and communications in the weeks surrounding the Better Business Bureau's ("BBB") August 19, 2020 warning about Noom ("BBB Warning Documents"), (ii) documents provided to Noom's Board of Directors ("Board documents"), and (iii) other relevant documents identified by Noom employees.  Instead of complying with Your Honor's orders, Noom made virtually no inquiry and produced minimal documents.  Even though Noom's skeletal production demonstrates the existence of numerous additional, highly relevant documents, Noom refuses to supplement its production and is hiding behind the search term negotiation process.[1]

To review, Your Honor has reminded defense counsel ***three separate*** times of their duty to seek out responsive documents regardless of the status of search term negotiations:

- "Well, one thing that you said concerned me, which is that this should be collected based on the search terms.  **If you know about this document and it's relevant, then you know where it is, and it needs to be moved to your review platform and produced**." Mar. 23, 2021 Hr'g Tr. 12:14–18, ECF No. 250 (emphasis added).

- "**I just want to be very clear with Noom that the search terms are a way to pull documents, but they don't mean that if there are -- they don't mean that you shouldn't separately search for documents you know to exist that are responsive or to collect known documents** . . . That's what I want to make sure you are also collecting.  They're not a -- the search terms aren't a way to say, 'Oh, since it didn't come up, we don't have to produce the document."  Mar. 4, 2021 Hr'g Tr. 11:10–24, ECF No. 231 (emphasis added).

- "As discussed, in order to accelerate the production of documents, counsel for Noom should investigate whether Noom's already-designated custodians can easily identify documents that are likely responsive to Plaintiffs' discovery requests, prior

---

[1] Plaintiffs respectfully request that Your Honor consider this 4.5-page letter-motion, as the additional 1.5 pages beyond the customary 3 pages is necessary to outline the facts and law pertinent to the Court's considerations.

to application of search terms. To the extent that these custodians can identify any such documents that can be efficiently collected and produced, Noom should endeavor to prioritize their review and production." ECF No. 229 at 2.

Nevertheless, Noom is running roughshod over these orders.

I. **Noom Produced Only Three BBB Warning Documents and Refuses to Produce More**

Despite the Court's multiple directives, Noom has produced just *three* documents from the weeks surrounding the BBB's warning and refuses to produce others identified by Plaintiffs. The Court asked Noom on March 23: "where [Defendants] are" on "Noom's production of communications the week before and the week after the [BBB] warning and CEO's message in response to the [BBB] warning," and "formal documents provided to Noom's board of directors." Mar. 23, 2021 Hr'g Tr. 5:17–25, ECF No. 250. Noom responded that it had proposed "search terms related to BBB, we contacted all custodians and asked them for documents they may have that might be relevant or responsive to the complaints." *Id.* at 6:2–10. Noom also claimed it had "produced" a "couple of [BBB-related] emails" from "our customer service employees." *Id.*

When Plaintiffs noted at the March 23 conference that Defendants had curiously not interviewed Noom's CEO—despite his issuing a response to the BBB warning—the Court directed Noom to "ask the CEO for communications and information he has specifically regarding his message about the BBB warning," as this "would be encompassed in any reasonable search." *Id.* at 9:7–11. It turns out (as we just discovered) that defense counsel had not spoken with *any* custodians about BBB Warning Documents, but simply misdirected the Court with a cryptic reference to "complaints," not BBB-related complaints, but the *class action complaints*. We also learned that Noom had not produced a "couple of emails" prior to March 23 or any date thereafter. In fact, as of the March 23 conference Noom had produced *nothing* related to the BBB's warning.

Only ten days later did Noom make its first and only BBB Warning Document Production—three documents (Exs. A–C, attached hereto) which were hastily forwarded by its CEO to defense counsel over a 3-minute period beginning at 10:37 PM on March 30. This three-document production shows that several other plainly relevant documents exist but were not produced. For example,





When we flagged these deficiencies, Noom refused to correct them because counsel said that the parties "are still negotiating search terms," and recommended that Plaintiffs "raise the issue with Judge Parker . . . , though I doubt she will be sympathetic." Ex. D at 1; *contra Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837 (HB), 2006 WL 1409413, at *6 (S.D.N.Y. May 23, 2006) (counsel was negligent in failing to ask follow-up questions that would have revealed the existence of undisclosed materials); *see also Valentini v. Citigroup, Inc.*, No. 11 Civ. 1355 (JMF), 2013 WL 4407065, at *3 (S.D.N.Y. Aug. 16, 2013) ("Counsel ha[ve] an obligation to advise their clients of their discovery obligations and to ensure that the relevant documents [are] produced.").

Not only has Noom disregarded Your Honor's repeated orders not to hide behind search terms, but its scant production ignores the Court's directive to interview *all* custodians regarding BBB Warning Documents.  Mar. 4, 2021 Hr'g Tr. 12:21–25, 13:25–14:4, ECF No. 231.  Defense counsel even failed to discharge their Rule 26 reasonable inquiry obligations for the one person (Noom's CEO) they did contact.  Considering that many highly pertinent BBB-related documents were not produced, serious questions arise about defense counsel's woefully inadequate inquiry and their continuing refusal to investigate further.

### II.     The Court Directed Noom to Interview 12 Custodians – Only 8 Emails Were Produced

Your Honor made clear at the March 4 conference and in the post-conference Order that Noom should "investigate whether Noom's already-designated custodians can easily identify documents that are likely responsive to Plaintiffs' discovery requests, prior to application of search terms," and that "to the extent that these custodians can identify any such documents that can be efficiently collected and produced, Noom should endeavor to prioritize their review and production." ECF No. 229 at 2.  Noom ignored these Orders, instead producing only eight emails from three of the twelve custodians.  Yet these documents reference additional documents that should be produced.  For exampl[REDACTED] Notably, Noom also did not provide *any* emails from Defendant Petakov and the eight produced emails were forwarded by Noom's three custodians to defense counsel on the following timeline: the VP of Product Management forwarded five emails in three minutes, the Customer Support Director forwarded one email, and the Support Operations Senior Manager two emails in one minute.

### III.    Noom is Refusing to Correct the Deficiencies in its Board Documents Production

On March 30, Plaintiffs alerted Noom to deficiencies in its Board documents production: (i) there are no documents from 2020 or 2021; (ii) the production contains no meeting materials, minutes, resolutions, ratifications, or any other evidence of Board action; (iii) one document is missing meeting minutes that were indicated to be "attached"; and (iv) the production referenced other

clearly relevant documents that were not produced. Pursuant to the Court's hyperlink process, we also requested the production of eight hyperlinked documents. After Noom ignored our requests for a week and we pressed for a firm response deadline, Noom began demanding that Plaintiffs explain the materiality of the missing hyperlinks, while ignoring all other issues. Despite not knowing the missing documents' contents, we responded that they seemed material because the links and requested documents were contained within produced documents provided to the Board and appeared to concern internal metrics and other subjects Noom deemed important enough to show to the Board. Noom refused to produce the linked documents, claiming it would take substantial time and expense, and demanded further explanation regarding their materiality. But Plaintiffs have already complied with Your Honor's links order by identifying "hyperlinks to internal Noom documents that appeared to be material to the claims or defenses in this action" and bringing them to Noom's attention. ECF No. 239. Noom has also failed for almost two weeks to otherwise supplement its Board documents production.

## IV. Noom's Obstruction Is Part of a Troubling Pattern of Evidence Suppression

On March 23, Noom was ordered to produce a highly relevant analysis ██████████ ██████████ prepared by a Noom data scientist that Plaintiffs had sought for nearly four months since learning of the document during a December 2020 deposition. *See* Mar. 23, 2021 Hr'g Tr. 13:15–21 (THE COURT: "[T]his is too long a delay, Ms. Reddy, for this particular document to be produced."). Like the documents discussed above, Noom tried to hide behind search terms ("[w]e've crafted search terms to try and capture that document"), which the Court rejected: "If you know about this document and it's relevant, then you know where it is, and it needs to be moved to your review platform and produced." *Id.* at 12:3–19. Had Plaintiffs not escalated this issue to Your Honor, Noom's counsel would have never produced it, as counsel astoundingly claimed in writing that they did not "believe [the document] is relevant." Ex. F at 3–4.

On April 2, Noom finally produced the document,



Noom's false claim that this document was not relevant and their nearly four-month delay in producing this document is sanctionable evidence suppression. *See Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 19 Civ. 3766 (GHW), 2020 WL 7342724, at *4, 18–19 (S.D.N.Y. Dec. 11, 2020) (Noting that "[w]here the alleged misconduct is the non-production of relevant documents, district courts have broad discretion in fashioning an appropriate sanction" and reopening discovery and imposing fees and costs for withholding documents). Plaintiffs have been severely prejudiced by Noom's many months of withholding, including when Plaintiffs last amended their complaint, during the parties' third mediation, and addressing the Court regarding discrepancies in Noom's data, Plaintiffs' RFPs, and in urging the addition of custodians. Noom's actions, when combined with defense counsel's attempts to write "communications" out of the Court's discovery orders (ECF No. 195), redefine the term "management" to mean only Noom's unilaterally-designated custodians (ECF No. 231 at 16:3–16), refusal to produce a key document because it was "more than 50 pages long," (ECF No. 250 at 9:25–10:2) and its efforts to shut

Plaintiffs out of search term negotiations (ECF No. 243) demonstrate a troubling pattern, which arguably violates Rule 3.4 of the NY Rules of Professional Conduct's prohibition of evidence suppression.  *See also* Your Honor's Individual Rules II.c (urging that the parties be mindful of Rules 1 and 26(b)(1) in their discovery conduct).  While Plaintiffs do not intend to further delay discovery with sanctions practice at this juncture, we are bringing Noom's conduct to the Court's attention in the hopes of putting an end to defense counsel's obstructive discovery tactics.  As the Second Circuit has explained, "[t]he extremely broad discovery permitted by the Federal Rules depends on the parties' voluntary participation.  The system functions because, in the vast majority of cases, we can rely on each side to . . . disclose relevant information when asked (and sometimes even before then) without being forced to proceed at the point of a court order."  *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018).

\*     \*     \*

Therefore, in accord with the Rules, settled case law, and Your Honor's orders in this litigation, Plaintiffs respectfully request that Your Honor order Noom to promptly cure all deficiencies and locate, review, and produce the documents identified in Sections I–III above.

Thank you for the Court's consideration.

Respectfully submitted,<br>
/s/ J. Burkett McInturff<br>
J. Burkett McInturff<br><br>
*Counsel for Plaintiffs<br>
and the Proposed Class*

cc:     All counsel of record (via ECF)