Cooley

Aarti Reddy
T: +1 415 693 2103
areddy@cooley.com

Via CM/ECF

April 14, 2021

The Hon. Katharine H. Parker
USDC Southern District of New York
400 Pearl St.
New York, NY 10007-1312

**Re: Proposed Agenda and Position Statements for April 15, 2021 Telephonic Case Management Conference**

Dear Judge Parker:

We write jointly on behalf of Defendants Noom, Inc. and Artem Petakov ("Noom"), and Plaintiffs and the proposed Class in accordance with your Order, ECF No. 248, for a proposed agenda and position statement for the April 15, 2021 telephonic status conference.

## I. Noom's Search Term Proposal.

Noom is eager to move forward with discovery and requests the Court adopt its proposed search terms, which yield approximately 120,000 documents, so that it begin review immediately.[1] Noom proposes 58 term lines. Plaintiffs call these terms "patently deficient," but 53 of those terms are Plaintiffs' terms, which were largely based on Noom's original terms (46 of which Noom adopted without modification, 6 of which Noom adopted with slight modification, and 1 of which Noom broadened to hit on additional documents). Noom's proposal (Exhibit A) is appropriately tailored to the Court's orders regarding the RFPs. The Court granted a protective order as to RFPs 6, 7, 8, 10, 13, 28, 41, 42, 46, 48, 49, 51, 52, 53 and 57, and held that many other RFPs were duplicative or overlapping.[2] (*See* ECF Nos. 145, 176 ECF No. 198 at 8:8-9; ECF No. 204 at 44. As such, the primary categories of documents around which these search strings are designed are as follows:

- **Autorenewal Policies, Development and Testing.** The development and testing of autorenewal and automated features. (RFPs 11, 43; Terms 9-16, 43-44, 56-58.)

[1] This volume is an underestimate, as Noom is still completing its Slack collection for the two newest custodians.

[2] Plaintiffs claim that many of their requests are responsive to RFP No. 23, but the Court expressly held that this request was duplicative RFPs. 31-33. (*See* Feb. 4, 2021 Hr'g Tr. at 44-45 ("Well I think it's duplicative. And this is the problem really, Mr. McInturff, with the volume that you've done. You really, you didn't do a good job in putting together your RFPs and so it becomes, they're extremely overlapping and redundant and it leads to a lot of problems and conflicts.").) The RFP itself is grossly overbroad. (*See* RFP 23 ("All documents and communications related to Noom's analyses, strategies, A/B testing, and models regarding the financial impact or consumer response to Noom's trial period practices, periodic automatic enrollment practices or cancellation practices.").)

Cooley



Via CM/ECF

- **Complaints About Autorenewal, Refunds, Cancellations.** "[I]nternal reports, memoranda, PowerPoint presentations, meeting agendas or other similar materials presented to management and/or Noom's Board of Directors regarding consumer complaints about signup, autorenewal, charges, and cancellation, as well as the Better Business Bureau's ('BBB') warning, and the company's responses to such complaints and/or BBB warning." (RFPs 31, 33; Terms 1-5, 8, 17, 25-40, 42.)
- **BBB Warning.** "nonprivileged communications that occurred one week prior to the BBB warning through one week after the CEO's message in response to the BBB warning pertaining to the BBB warning itself and the company's response thereto." (RFP 34; Terms 6, 41, 45.)
- **Customers with minimal usage after trial.** "internal reports, memoranda, PowerPoint presentations, meeting agendas or other similar materials presented to management and/or Noom's Board of Directors regarding Noom's review of, consideration of, and/or analysis of the percentage or number of automatic renewal customers who never utilized an of Noom's services before and/or after the expiration of the trial period." (RFP 38, ECF No. 192-1; Terms 7, 18-24, 47-55.)

Plaintiffs claim that Noom's collection omits various categories of documents, but does not consider that search terms are only one aspect of Noom's exhaustive production efforts. Noom has already or will be producing tens of thousands of documents from other sources: (1) 70,000 advertisements or marketing materials (RFP 20); (2) 7,500 customer communications pursuant to the complaint sampling protocol (RFPs 44-45; ECF No. 204); (3) customer service training materials and policies; (4) knowledge articles and macros from Zendesk (RFPs 25, 29, 36); (5) extensive revenue, conversion and engagement data pulls (RFPs 3, 27); (6) historical autorenewal and buyflow disclosures reconstructed using source code (RFPs 17-19, 22); (7) coaching policies and related materials in roughly 10,000 records from Guru; (8) Board materials (RFP 49); and (9) ethics policies (RFP 52). Thus, Noom's review set encompasses at least ***200,000 documents***, and that number will only increase as Plaintiffs designate more custodians.

Despite providing multiple hit reports to Plaintiffs over the last two weeks, Noom only received Plaintiffs' final terms at 1:00 pm EST today. Noom has not yet fully analyzed this latest list, which contains extensive, eleventh-hour revisions and additions. Until yesterday, Plaintiffs insisted that Noom adopt 123 additional term lines (equivalent to *over* 1,650 individual search terms), designed to cast as broad a net as possible for Noom to review—nearly ***half a million internal documents***. Yesterday afternoon, Plaintiffs' counsel informed Noom that it would no longer be pursuing search terms that hit on ***200,000 documents*** from its review set. While Noom appreciates Plaintiffs' concession, these last minute-changes reflect a lack of careful planning as to discovery processes that have enormous implications to Noom (reviewing and producing just the 200,000 documents Plaintiffs now agree are irrelevant would have cost Noom at least $400,000).[3]

[3] Plaintiffs' unfocused discovery demands have already caused Noom to incur significant unnecessary costs. As one example, Plaintiffs refused to narrow RFP 24, which seeks "all marketing Noom distributed" during the Class Period. Noom's counsel and vendors spent dozens of hours locating and producing substantially all ads and marketing materials—only ***after*** Noom had already substantially completed this production, Plaintiffs admitted in their

Cooley



Via CM/ECF

***Plaintiffs now take the absurd position that the Court should adopt 125 more of its terms when all parties are unaware of the term hits***. Because Noom only just received Plaintiffs' final list of terms, it has not obtained a hit report. Given the extent of Plaintiffs' revisions, it cannot even ballpark hit counts based on the prior reports.[4] Noom cannot evaluate proportionality and asks the Court not to entertain Plaintiffs' haphazardly drafted additional terms at this time. *See* Sedona Conference Principle 6 ("a responding party is best situated to preserve, search, and produce its own ESI"); Commentary to Rule 34 ("courts generally recognize that parties have both the right the responsibility to decide how to search their own records" and that "most courts have been quite reluctant to enter orders telling parties what search terms they may or must use"). Should the Court consider Plaintiffs' terms, Noom opposes these terms for these additional reasons:

***First***, forcing Noom to apply Plaintiffs' remaining search terms is premature at this stage. Plaintiffs themselves do not even know the burden. Plaintiffs speculate that "key terms" are omitted, but both Parties will be educated by the documents it produces, and can propose additional, more targeted terms at a later stage as the review progresses. Noom is concerned that the present delays jeopardize the case management schedule. Noom would like to start reviewing this large set of internal documents, and other data, and information that are most germane to class certification.

***Second***, many of Plaintiffs' terms are facially absurd (e.g., "ticketbash," "psych w/3 weapon" and "fat* w/5 tax*"); many others are overbroad, and are not tethered to the RFPs that the Parties spent several months negotiating. For example, Plaintiffs ask Noom to adopt core revenue and engagement metrics as *standalone terms*—totaling nearly 50,000 documents. (Term Nos. 48-50; 75-79). Plaintiffs obviously do not need all internal discussions of revenue metrics or retention rates. Noom agreed to produce the underlying data, and these metrics, to the extent relevant to the claims, will be part and parcel of the autorenewal development and testing documents it will be producing. Likewise, Plaintiffs propose that Noom run the search string "(user* w/2 *respond* or *response* OR *responsive*)." (Term No. 114). Noom is not aware of the hit count for this new term, but Plaintiffs' similar term (user w/2 respon*) yielded 15,000 documents.[5] This would capture virtually every user response-related discussion and is obviously overbroad. Plaintiffs' approach is contrary to the Court's order that the Parties "craft appropriate searches to minimize the capture of irrelevant and marginally relevant communications and maximize the likelihood of locating communications about decisions the company made as to the features of the auto renewal and cancellation aspects of the healthy weight program and the reasons therefore." (ECF No. 195.)

---

Opposition to the Motion to Dismiss that it was not pursuing a false advertising claim, explaining that "this case is not centered on Noom's ubiquitous ads." (ECF No. 246 at 11.)

[4] For example, Plaintiffs propose for the first time today the term Beanie w/6 credit*—meaning any discussion of a customer service agent providing a user credit would be captured. This is likely to be extraordinarily broad.

[5] Plaintiffs also propose search terms divorced from this action or any other action. (*See, e.g.*, Terms 104-105 (seeking information related to an AG or FTC action, despite Plaintiffs acknowledging that no such actions are pending).)



 

***Third***, Noom estimates its cost of reviewing the roughly half a million documents Plaintiffs originally proposed would be enormous: $1,000,000, and that cost is likely higher, as Plaintiffs have proposed a number of terms specifically designed to obtain privileged documents for which costly privilege reviews will need to be in place. (*See, e.g.*, Term Nos. 16-20 (search term strings of "class action," "lawsuit," "attorney*," "lawyer*" and "suit*," within 8 terms related to refunds, cancellations, credits, and money back).)

***Fourth***, Plaintiffs attempt to cast their proposal as reasonable by pointing to the size of Noom's entire collection. That is an absurd comparison. Noom purposely adopted a broad approach with its collection, pulling in any potentially relevant source, including 12 shared drives and every Slack channel each custodian participated in at any point in time. Plaintiffs' original proposal contemplates review of roughly ***one of out every ten documents*** from every custodian's files as well as the core company repositories. That is not reasonable, relevant, or proportional.

Finally, Noom requests the Court's guidance as to the timing of its productions. While it is eager to move forward with discovery, Plaintiffs' appealed Your Honor's order regarding hyperlinked documents, arguing it was legally erroneous and contrary to law. (ECF No. 260.) Plaintiffs are requesting that Judge Schofield direct Noom to re-perform its entire collection. Noom is therefore concerned that it may incur additional costs in re-reviewing documents that must be re-collected.

## II. Plaintiffs' Counterproposal and Response to Noom's Agenda Items

Plaintiffs' proposal is narrow, eliminates over 90% of Noom's review burden, and addresses the various items raised by Your Honor at the March 23 conference. The Court has already rejected Noom's attempt to impose its search terms without meeting and conferring, explicitly instructed Noom to "engage," advised that "discussion about the search terms makes sense," and said that "it is in Noom's benefit also to have this conversation" to determine modifications "that would result in a more targeted search[.]" ECF No. 250, Mar. 23, 2021 Hr'g Tr. 80:18–81:4. The Court was correct that Noom had not sufficiently engaged on search terms before the March 23 conference. Indeed, **Noom now adopts 53 terms proposed by Plaintiffs and has abandoned almost all of the terms Noom previously asked the Court to impose**. Of the 48 terms that Noom sought to use on March 19 (*see* ECF No. 243-1), its current list includes only 5 of those terms.[6]

[6] As for Noom's 58 terms, Plaintiffs agree with all but one: Noom's term 3: Although Noom previously wanted to include the subterm (Cancel* w/10 refun*), *compare* ECF No. 243-1 (term 9), they now oddly refuse to search "cancel" and "refund" in tandem. This is a mistake given how often these concepts are linked in this case and the many variations of phrases in Noom's produced documents to date that include "cancel" and "refund" in close proximity (*e.g.*, "I want to cancel and get refunded for all the payments charged on my account"; ""Categorize ticket as 'Cancel and refund'"; "Cancellation decreased Refunds decreased"). Accordingly, as shown in the attached Ex. B, Noom's term 3 should be modified to include "OR (cancel* w/3 refund*)." Given that Noom last month sought the Court's approval to retrieve and review all documents where "cancel" appeared within 10 terms of "refund," Noom cannot now complain about a search of where "cancel" appears within 3 terms of "refund."

Cooley

The Hon. Katharine H. Parker
April 14, 2021
Page Five

Via CM/ECF

In addition to Noom's 58 terms (with the small modification just discussed, *see* Ex. B), Plaintiffs propose only 125 additional terms, searches that were tested and are narrowly tailored. *See* Ex. C (showing Plaintiffs' proposed searches with hit counts estimated based on Noom's recently-provided hit reports). *Compare, e.g., Novick v. AXA Network, LLC*, No. 07 Civ. 7767, 2013 WL 5356882, at *2, 6 (S.D.N.Y. Sept. 25, 2013) (ordering search involving more than 800 search terms). According to Noom's hit reports, Plaintiffs' proposal would allow Noom to avoid review of **90+% of the documents that Noom collected.** In other words, Plaintiffs' search term proposal removes **more than 4 million documents** of the 4.6 million collected by Noom from its Gmail, Google Drive, Google Calendar, and Slack repositories. By any measure, that is extraordinarily effective narrowing of the review universe. Noom cannot now be heard to complain about this review (lack of) burden given that defense counsel repeatedly insisted to the Court last fall that Noom was facing a "potential review population of **about two million documents**." 10/26/20 Hr'g Tr. 36:3-4, 58:11-12 (emphasis added). Based on Plaintiffs' proposal, Plaintiffs estimate that the document review population will number in the 300,000s (less than 20% of defense counsel's estimate).[7] That is well within the norm for a case of this size. *See, e.g., Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121, 2014 WL 4547039, at *3 (S.D.N.Y. Sept. 12, 2014) (defendant "reviewed millions of documents" and "produced hundreds of thousands" of documents).

Notably, while Noom rejects Plaintiffs' proposal, it provides no recall metrics whatsoever (percent of responsive documents containing a search term) for its proposal. This is critical information that only Noom can provide, yet it refuses to do so. *See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 110 (S.D.N.Y. 2012) ("[T]he use of keywords without testing and refinement (or more sophisticated techniques) will in fact not be reasonably calculated to uncover all responsive material[]"). Instead, Noom mischaracterizes the Court's guidance on Plaintiffs' RFPs,[8] again tries to bifurcate class and merits discovery even though Your Honor has repeatedly rejected bifurcation, claims that terms like "ticketbash" are "facially absurd,"[9] mischaracterizes the search term negotiations,[10] and pretends to be eager to move forward with discovery.[11]

---

[7] Noom produced a hit report on April 8 that showed the then-full set of terms generating 467,520 document hits and family documents. Since then, 25 terms have been dropped and 51 have been narrowed in some form.

[8] For example, Noom distorts the Court's ruling on RFP No. 23 by improperly trying to wriggle out of Your Honor's order requiring Noom to produce communications discussing the financial impact of its autorenewal and cancellation practices. As Your Honor emphasized, "the money is going to drive the whole thing" and this discovery is "part and parcel" of what the Court expects to be produced. ECF No. 201, 2/4/21 Hr'g Tr. 37:14–38:6.

[9] Noom had ticketbashes (i.e. all employees answering customer service "tickets" regardless of role) because of the flood of complaints and cancellation/refund requests. In any event, the review burden of this term is negligible given that it only hits on around 450 total documents, most of which hit on other terms. *See* Ex. C (term 74)

[10] While Noom complains that Plaintiffs did not send their proposed final terms until 1 p.m. today, that is because Plaintiffs were incorporating hit report figures Noom *sent yesterday at 8:47 p.m.* Plaintiffs' final modifications based on Noom's 11th-hour hit reports narrowed the universe of documents hit by at least tens of thousands of documents. Noom's other false claim that Plaintiffs yesterday made term modifications that dropped 200,000 documents is not only factually inaccurate, but it shows that Noom misunderstands its own hit reports.

[11] Noom wrongly claims that Plaintiffs have delayed Guru search term negotiations, while "Noom is careful to leave out that we promptly told counsel on March 5 that it made more sense to tackle email search terms first and that Guru

Cooley



Via CM/ECF

Your Honor should thus reject Noom's transparent attempt to hide a patently deficient search behind Sedona Principle 6, which provides only one consideration among many competing and important principles, including those articulated in the Federal Rules. *See Thomas v. City of New York*, 336 F.R.D. 1, 4 (E.D.N.Y. 2020) (noting that a presumption in favor of the producing party's chosen search methodology "is in tension with Rule 26" and that "even if such presumptions are appropriate, they are rebuttable and the choice is accorded no weight when manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient.") (quotation marks and citation omitted). *See also* the Federal Judicial Center's Pocket Guide for Judges at 34–35 (3d. 2017) ("Absent compromise by the parties, the court may be asked to order the use of a particular search tool or methodology."). Noom has not shown that Plaintiffs' proposal causes undue burden or cost. And as set forth below, Noom's proposal is clearly inferior. Plaintiffs' proposal accomplishes the following:

- It retrieves key phrases used internally by Noom or by Noom customers that appear in documents produced by Noom to date that Noom's proposed terms may not capture. For example, the analysis recently ordered produced by Your Honor regarding [redacted], *see* ECF No. 275 at 4, says that [redacted] While Plaintiffs seek to thus include a term that includes (Never w/2 return*), *see* Ex. C (term 108), Noom refuses its inclusion.
- It addresses the Court's March 23 instructions of (a) being a narrowed form of Plaintiffs' earlier proposal and consisting of far fewer than 4,000 terms; (b) being tailored to the issues in the case; and (c) addressing topic areas that Noom's terms do not cover. Among the many key issues in this case that Noom's terms miss are as follows:
  - Noom's proposal omits the search "(Coach* w/6 (complain* OR confus* OR refund* OR cancel* OR (money w/3 (back OR return*)))),," Ex. C (term 14), even though Noom uses similar variations of the term replacing "Coach*" with "Eva" or "*Bot*". The need for proposed class members to cancel through their "coach" is a central issue in this case.
  - Plaintiffs propose "(Article* w/12 (*renew* OR cancel* OR refund* OR auto*))". *See* Ex. C (term 1). Noom rejects this search even though defense counsel represented during meet-and-confers that Noom uses internal "knowledge articles" to provide information to Noom employees on various topics. Noom's production confirm this, as does deposition testimony. Plaintiffs do not understand why Noom will include ten terms seeking internal design documents relevant to this case, Ex. B (Noom terms 11-16, 42-43, 56-57), but rejects the same when it comes to knowledge articles.
  - Noom will not include terms seeking internal tests and experiments on auto-renewal features, trial-period, and impacts on refunds and cancellations. *See* Ex. C (terms 44, 89–93).

---

is a database that requires additional considerations and information about the data's structure. We requested this information on March 8 and Noom has not responded." ECF No. 247.

Cooley



Via CM/ECF

○ Noom refuses to search for discussions about Noom's signup flow, a central issue in this litigation. *See id.* (term 40).

○ Plaintiffs use terms that address when customers make complaints, and the situations in which those complaints are escalated up the chain. *See id.* (terms 10–13, 31–37, 42–43).

○ Plaintiffs' terms address management's focus on retention and trial conversion and how such focus led to a difficult and counterintuitive cancellation process. *See id.* (terms 41, 75–81).

○ Plaintiffs' terms seek communications about metrics regarding customer satisfaction, customer valuation, usage, and engagement. *See id.* (terms 5–7, 15, 47–50, 106, 113, 119–125).[12]

Plaintiffs' terms also address many of the issues flagged by defense counsel at the March 23 hearing and in Noom's March 19 letter, ECF No. 243, including, *inter alia*: (1) that Plaintiffs' current terms are far fewer than the 4,000 that Noom complained of; and (2) the fact that Plaintiffs narrowed or dropped essentially all of the terms that Noom complained were overbroad and/or hit on too many documents.[13] Meanwhile, Plaintiffs' terms correspond directly to the many examples of topics that Plaintiffs listed out for the Court on March 23, *see* 3/23/21 Tr. 73:7–74:8, which the Court directly instructed Plaintiffs to address via their proposed terms, *id.* at 75:25–76:11. Accordingly, Plaintiffs' proposal should be adopted in its entirety.

Respectfully submitted,

/s/ Aarti Reddy
Aarti Reddy
*Counsel for Defendants Noom, Inc. and Artem Petakov*

/s/ Steven D. Cohen
Steven D. Cohen
*Counsel for Plaintiffs and the Proposed Class*

AR/dsf

---

[12] While Noom nitpicks about the potential for terms to retrieve documents Noom deems unresponsive to Plaintiffs' RFPs, the Court has repeatedly recognized that discovery is broad and the Court has wide discretion in determining relevance. *See, e.g.*, *Abdelsayed v. New York Univ.*, No. 17 Civ. 9606, 2019 WL 2336533, at *4 (S.D.N.Y. June 3, 2019) (Parker, J.) ("The relevance standard for discovery is broad. Additionally, this Court has broad discretion in determining relevance for discovery purposes.") (citations omitted).

[13] Although Noom took issue at the March 23 conference with terms pertaining to "retention rate," the usage of those terms in Noom's documents (*e.g.,* experiments referring to customer retention as a "primary reference point" and internal documents referring to Noom's desire to "improve 22-day retention") shows that such terms are warranted.