Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Nichols, et al. v. Noom, Inc., et al.*, No. 20 Civ. 3677 (LGS) (KHP)

Dear Judge Schofield,

The undersigned professors of law[1] respectfully request a pre-motion conference, pursuant to Rule III.A.1 of the Court's individual rules, regarding our application to file an amicus brief in support of Plaintiffs' Objections to Judge Parker's Discovery Order Concerning Production of Hyperlinked Internal Documents (Doc. 260) (herein "the Magistrate's Order"). In the alternative, we ask that the Court accept this letter as our amicus brief. Its goal is to provide context to the current discovery dispute rather than add to the parties' legal arguments.

The Magistrate's Order raises an important e-discovery issue involving fundamental standards governing e-discovery practice in federal and state courts: whether a document referenced as a hyperlink in an email as an attachment should be treated differently than a document that is actually attached to the email.

We believe that the portion of the Magistrate's Order that states "the Court does not agree that a hyperlinked document is an attachment" fails to take into account the value of the parent/child relationship between messages and accompanying files in understanding a collection of ESI and telling the story of the dispute. Equally important, it fails to take into account e-discovery best practices.

For decades now, an e-discovery practice first principle has been that emails must be produced with associated attachments. Assuming the request is relevant, proportional, and seeks non-privileged information, the requesting party is entitled to the emails, the attachments, *and* the nexus between the two. In standard e-discovery workflows, the email and its attachment are treated as a whole. The requirement to produce an email and its attached document has been consistently upheld by the courts and utilized in ESI protocols. It is standard practice.

Emails with their attachments tell a story and provide the context necessary to discover it amongst a sea of information. The links between the email and attachments enable reconstruction of conversations. The importance of a unitary production is illustrated by

---

[1] William Hamilton is a Senior Legal Skills Professor at the University Levin College of Law. Prior to joining the faculty, he served as the electronic discovery partner for his national law firm. Mr. Hamilton has taught electronic discovery at the University of Florida for the past decade and is the co-author of the LexisNexis Practice Guide: Florida e-Discovery and Evidence. Mr. Hamilton is also the General Editor of the LexisNexis Practice Guide: Florida Contract Litigation. Mr. Hamilton is also a neutral arbitrator and mediator for the World Intellectual Property Organization and the author of over a hundred domain name dispute decisions. Mr. Hamilton has been recognized in Chambers USA, Florida Legal Elite, Best Lawyers in America, and Florida Super Lawyers. Andrew Pardieck is an Associate Professor of Law at the Southern Illinois University School of Law, where he teaches Civil Procedure and Electronic Discovery, and Director of the SIU eDiscovery Pro Bono Project. Prior to joining the law school, he served as General Counsel for Temple University's Japan Campus and before that worked in private practice focusing on products liability litigation. The opinions expressed in this letter-brief are our individual opinions and should not be understood as a submission by our respective universities, law schools, or faculties.

comparing an email exchange and its attachments with a telephone conversation about a document. A recording of a telephone conversation may be interesting but difficult to understand without reference to the documents being discussed. Emails with attachments are no different, and the same holds true with more recent forms of communications. Whether it is a chat message or social media post, divorcing the transmittal document from the content being transmitted precludes effective reconstruction of the communication.

In e-discovery parlance, the "parent" email and "child" attachment are metaphorically known as a "family." In the early days of e-discovery, not producing the entire family was a relatively common "dirty trick." Without the full family, the subject of the email conversations is not provided. If family documents are separately produced, only dogged investigation and good luck enables the receiving party to *guess* which document is the subject of the email. Manually re-creating the link between families of documents removes some guesswork, but it is enormously expensive at scale. Practically speaking, it becomes almost impossible to determine what document(s) were discussed in communications over the course of the dispute.

This violates the long-established e-discovery principles of parity, efficiency, and fairness that we teach our students. Parity is not obtained because the producing party and the requesting party are placed in an asymmetrical relationship. The producing party has access to the nexus between the email conversation and the document that is the subject of the conversation. The receiving party does not. Efficiency is lost because the receiving party is forced to expend considerable resources attempting to match documents to emails. Fairness is compromised because the producing party is in a superior position when it comes to telling a persuasive story. With the "parent" email divorced from the "child" attachment, the producing party now possesses unique knowledge as to the connection between the separately produced emails and documents.

Allowing a party to separately produce documents stored apart from emails, but which are otherwise part of a family, also causes the loss of critical information. The family relationship defines the relevant "document." Thus, an email might not be produced because it lacks a keyword, or because counsel reviewing it separate from the subject document finds it is non-responsive, when in fact it should be produced because the subject document is relevant. Similarly, a subject document might not be produced because it lacks a keyword hit, when it should be produced because it is attached to a relevant email.

Functionally, there is no difference between including in an email a link to a document held in a private repository and including the document within the mail transmission. Technologists now recommend sharing files using a link in lieu of an attachment. When the Magistrate's Order rules that hyperlinks are not attachments, the producing party is allowed to break apart functional families and prevent the receiving party from effectively reviewing the data. This compromises the fundamental e-discovery rule to produce families of documents together, and it violates Federal Rule of Civil Procedure 34(b)'s requirement to produce documents as they are organized and maintained in the ordinary course of business or label them to correspond to the categories in the request. With paper discovery, there was never a question that if a relevant file referenced another and was physically linked to it, both should be produced *and* the connection maintained. With e-discovery, the message and the files they transmit should similarly be produced with their association intact.

The Magistrate's Order is entirely correct that an email may contain any number of "links" to publicly available websites or sources that may or may not be relevant. The footnote in this letter contains examples of public links. Anyone with this letter can follow the link to our respective universities' websites. Similarly, in discovery, public links can be followed by the receiving party by pointing their browser to the URL. The producing party is not required to produce information from these links because the information is equally accessible to both the receiving party and the producing party. A link to the producing party's internal document library is, however, a different matter. It cannot not be followed by the receiving party into the producing party's document warehouse. Only the producing party has the necessary key, unless the message and the files it transmits are produced as a "family" of documents.

Many e-discovery problems are solved by emerging technology. Viewed broadly, e-discovery only presents problems it can solve. For example, the immense volume of information created by our 21st century digitized world is solved by a feature that only belongs to the digital environment, namely search. We could never print to paper and read all the voluminous data in a contemporary litigation matter, but we can search it because of the unique capabilities of this form of information storage.

Similarly, the separation of email and linked files is not a problem without a solution, but rather one that should be dealt with through cooperation and the exchange of information prior to drafting an ESI protocol, and then deploying available technologies. Subsequently, it can be dealt with by modification to the protocol. Creating legal authority instead for the position that hyperlinked documents are not attachments that need to be collected and produced with the message transmitting them has tremendous implications for discovery.

The current case raises fundamental fairness implications for all parties using messaging and linked document repository systems. As remote collaboration becomes increasingly important, we see increasing use of communications linked to document repository systems. Businesses that have moved to Office 365 and Microsoft Teams share links instead of documents daily. Doing so facilitates collaboration and minimizes the demands on IT infrastructure.

The use of messages to transmit links to files maintained in an internal, shared file repository will continue to grow. At the same time, the e-discovery industry has begun to develop protocols to address this issue. It is in this context that the Magistrate's Order, allowing production of messages divorced from the files they are sending, is receiving significant attention in e-discovery circles. "[I]f you are in Litigation Support or you are handling data, you are cringing right now with the practical implications of this decision."[2]

Our concern as professors specializing in electronic discovery is that this ruling, from a district court which has been at the forefront of establishing fundamental e-discovery principles, will retard technological progress and encourage gamesmanship. It will move the litigation process away from rather than towards the Federal Rules of Civil Procedure's goal of a "just, speedy, and inexpensive determination of every action[.]" Fed. R. Civ. P. 1.

---

[2] *See, e.g.,* Kelly Twigger, *#CaseoftheWeek Episode 20: Do Hyperlinked Documents Need to be Produced* (Apr. 14, 2021), https://www.ediscoveryassistant.com/do-hyperlinked-documents-need-to-be-produced/ (last visited Apr. 14, 2021).

Thank you for your time and attention.

Sincerely yours,

William F. Hamilton
Senior Legal Skills Professor
Executive Director, E-Discovery Project
University of Florida Levin College of Law


Andrew M. Pardieck
Associate Professor of Law
Southern Illinois University School of Law
Director, SIU eDiscovery Pro Bono Project