UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- X
                                   :

MOJO NICHOLS, SUSAN BREWSTER,    :     Case No. 1:20-CV-03677 (LGS) (KHP)
DUANE DEA, MARYANNE DERACLEO,   :
KAREN KELLY, REBECCA RICHARDS,   :
JENNIFER SELLERS, and STACY         :
SPENCER,                             :
                                   :
Individually and on Behalf of All Others  :
Similarly Situated,                   :
                                   :
                    Plaintiffs,     :
                                   :
           v.                       :
                                   :
NOOM, INC., ARTEM PETAKOV, and     :
JOHN DOES 1 TO 5,                :
                                   :
                    Defendants.    :
----------------------------------------------------- X

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTIONS TO JUDGE
PARKER'S DISCOVERY ORDER CONCERNING PRODUCTION OF
HYPERLINKED INTERNAL DOCUMENTS (ECF NO. 239)</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 3

LEGAL STANDARD .................................................................................................... 7

LEGAL ARGUMENT .................................................................................................... 8

    I.     Plaintiffs' Motion Is Based on New Legal and Factual Arguments That Are Not Properly Before This Court. .................................................... 9

    II.    Plaintiffs Have Failed to Show That Judge Parker's Ruling Was Contrary to Law. ............................................................................................. 12

          A.    Plaintiffs Offer No Case Where a Court Has Directed a Producing Party to Use the Receiving Party's Preferred Collection Tool. ............... 12

          B.    Plaintiffs Present a Misleading Picture of Decisional Law on This Issue. .................................................................................................... 14

    III.   Plaintiffs Have Failed to Demonstrate That Judge Parker's Ruling Was Clearly Erroneous. .................................................................................... 18

          A.    Plaintiffs' Preferred Collection Method for Hyperlinks Is Not Practical or Feasible. .......................................................................... 18

          B.    Plaintiffs Cannot Demonstrate the Costs Are Proportional to the Needs of This Case. ............................................................................ 20

          C.    Plaintiffs' Request Relief Will Cause Significant Delays and Is Unnecessary. ...................................................................................... 21

    IV.   The Amicus Briefing and Plaintiffs' Counsel's Improper Supplemental Declaration Are Not Properly Before the Court. ................................................. 22

          A.    The Amicus Letters Do Not Meet the Standard Required to Consider New Information on Appeal from a Magistrate Judge's Discovery Ruling. .................................................................................. 23

          B.    Plaintiffs' Belated Declaration Is Procedurally Improper and Does Not Support Their Motion. ..................................................................... 24

CONCLUSION .............................................................................................................. 25

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012)..................................................................................................8

*CP Sols. PTE, Ltd. v. Gen. Elec. Co.*,
    No. 04-cv-2150, 2006 WL 1272615 (D. Conn. Feb. 6, 2006)................................16

*Edmonds v. Seavey*,
    No. 08-cv-5646, 2009 WL 2150971 (S.D.N.Y. July 20, 2009)..............................8

*Gualandi v. Adams*,
    385 F.3d 236 (2d Cir. 2004)..............................................................................22

*Haines v. Liggett Grp., Inc.*,
    975 F.2d 81 (3d Cir. 1992)..................................................................................9

*Hyles v. New York City*,
    No. 10-cv-3119, 2016 WL 4077114 (S.D.N.Y. Aug. 1, 2016).........................12, 14

*IQVIA Inc. v. Veeva Systems, Inc.*,
    No. 17-cv-00177, 2019 WL 3069203 (D.N.J. July 11, 2019) .........................14, 15

*Kaye v. N.Y.C. Health & Hosps. Corp.*,
    No. 18-cv-12137, 2020 WL 7237901 (S.D.N.Y. Dec. 9, 2020) ...........................20

*Kaye v. N.Y.C. Health & Hosps. Corp.*,
    No. 18-cv-12137, 2020 WL 283702 (S.D.N.Y. Jan. 21, 2020) ............................13

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    336 F.R.D. 400 (S.D.N.Y. 2020) ....................................................................9, 11

*Kozlowski v. Sears, Roebuck & Co.*,
    73 F.R.D. 73 (D. Mass. 1976)..............................................................................17

*Lou v. Ma Labs., Inc.*,
    No. 12-cv-05409, 2013 WL 12328278 (N.D. Cal. Mar. 28, 2013) ........................17

*Maria v. Rogue Tomate Chelsea LLC*,
    No. 18-cv-9826, 2021 WL 734958 (S.D.N.Y. Feb. 25, 2021) ................................9

*Mickle v. Christie's, Inc.*,
    214 F.Supp.2d 430 (S.D.N.Y. 2002).....................................................................8

*Milgard Mfg., Inc. v. Liberty Mut. Ins. Co.*,
No. 13-cv-6024, 2015 WL 1884069 (W.D. Wash. Apr. 24, 2015) ...........................10, 14, 16

*Mortg. Resol. Servicing v. JP Morgan Chase Bank, N.A.*,
No. 15-cv-0293, 2017 WL 2305398 (S.D.N.Y. May 18, 2017) .............................................13

*NIKE, Inc. v. Wu*,
349 F.Supp.3d 346 (S.D.N.Y. 2018)........................................................................................8

*Pom Wonderful LLC v. Coca-Cola Co.*,
No. 08-cv-6237, 2009 WL 10655335 (C.D. Cal. Nov. 30, 2009) ..........................................16

*Pugh-Ozua v. Springhill Suites*,
No. 18-cv-1755, 2020 WL 6562376 (S.D.N.Y. Nov. 9, 2020)....................................8, 10, 11

*In re Rivastigimine Pat. Litig.*,
239 F.R.D. 351 (S.D.N.Y. 2006) ............................................................................................18

*Ryan v. Commodity Futures Trading Comm'n*,
125 F.3d 1062 (7th Cir. 1997) (Posner, J.) ............................................................................23

*SEC v. Ashbury Cap. Partners, L.P.*,
No. 00-cv-7898, 2001 WL 604044 (S.D.N.Y. May 31, 2001) ..................................................7

*Shenwick v. Twitter, Inc.*,
No. 16-cv-05314 (N.D. Cal. Sept. 17, 2018) .............................................................14, 15, 18

*Thai Lao Lignite (Thai) Co. v. Laos*,
924 F.Supp.2d 508 (S.D.N.Y. 2013).............................................................................8, 9, 23

*United States v. U.S. Gypsum Co.*,
333 U.S. 364 (1948)................................................................................................................22

*Wesley v. Muhammad*,
No. 05-cv-5833, 2008 WL 4386871 (S.D.N.Y. Sept. 17, 2008) ............................................17

*Williams v. Rosenblatt Sec., Inc.*,
236 F.Supp.3d 802 (S.D.N.Y. 2017).......................................................................................12

# TABLE OF AUTHORITIES
## (continued)

**Other Authorities**

Federal Rule of Civil Procedure
    1 .................................................................................................................6, 13, 20
    26 .......................................................................................................................6, 20
    72(a) ...............................................................................................................7, 8, 23

Local Rule 6.3 ...........................................................................................................7

Ten months into discovery, and over seven months after Noom specifically disclosed to Plaintiffs the collection tool it would be using to export Google documents and emails, Plaintiffs seek the extraordinary relief of compelling Noom to re-perform its entire collection of over four million documents using Plaintiffs' preferred collection tool. Plaintiffs do so on the grounds that they are unable to immediately access every file hyperlink referenced in Noom's Google documents and emails. Judge Parker correctly held on three occasions that the appropriate solution is for Plaintiffs to identify a reasonable number of hyperlinked files for Noom to collect and produce as discovery progresses. Plaintiffs' Objections to Judge Parker's Order Regarding Hyperlinks (ECF No. 264, "Motion" or "Mot.") are baseless, and there are numerous independent grounds on which to deny Plaintiffs' *fourth* attempt to litigate this single discovery issue.

*First*, Plaintiffs' Motion is based primarily on new authorities and factual arguments, including a new expert declaration that was not considered by Judge Parker. None of these materials are properly before the Court. Plaintiffs' attempt to overwhelm the Court with new materials underscores that this is not a proper appeal of Magistrate Judge Parker's order, but an attempt to re-litigate an outcome Plaintiffs simply did not like. On this basis alone, the Court should deny the Motion.

*Second*, even if the Court were to consider Plaintiffs' new authorities, they do not remotely support the relief requested here. Plaintiffs fail to identify even a single case holding that Google Vault, the industry standard tool for e-discovery collections that Noom used to perform its collection, is deficient. Plaintiffs likewise do not present any case compelling a party to re-perform its entire collection to facilitate the production of file hyperlinks. Plaintiffs' inability to muster any apposite case law authority is unsurprising: black letter law is clear that the receiving party is not entitled to choose the manner of its opponent's collection, as Plaintiffs demand here. Other

courts addressing this very issue have ordered the exact same relief that Judge Parker ordered, demonstrating that her ruling is anything but contrary to law—it is directly in line with it.

*Third*, none of Plaintiffs' proposed "alternatives" to Judge Parker's order are feasible. Plaintiffs seek an order compelling Noom to use their preferred collection tool, known as Metaspike's Forensic Email Collector ("FEC"). At the time of the collection, that tool did not even purport to gather hyperlinks from Google Drive documents. Noom's vendor tested it months ago to ascertain whether it was feasible to collect hyperlinks from *emails*, and found that it resulted in significant delays and numerous errors. Plaintiffs' various other "alternatives" border on the absurd, ranging from developing a new and untested computer program to retrieve hyperlinks, to providing Plaintiffs with credentials to gain unfettered access Noom's entire proprietary Company workspace. These are not serious solutions, and the Court should decline to entertain them.

Even if these solutions were practicable, Plaintiffs cannot show that the costs of re-performing Noom's collection at this late stage would be proportional to the needs of the case. Plaintiffs' Motion ignores entirely the extensive, additional delays in discovery this recollection would inevitably create. Moreover, Plaintiffs' requested relief is completely unnecessary, as the most practical solution is what Judge Parker already ordered in this case *and that the parties are already undertaking*: Plaintiffs have already identified a significant number of hyperlinks for Noom to produce and Noom is evaluating their requests and working diligently to fulfill a reasonable number of them. Plaintiffs have made no showing that this process is unworkable.

*Finally*, Plaintiffs attempt to buttress their specious legal and factual arguments with two amicus curiae briefs and yet another improper supplemental brief, styled as a "short declaration." None of these filings are proper. Even if they were, these submissions are mostly anecdotal or speculative opinions of e-discovery attorneys and online commentators that do not remotely

establish that Judge Parker's order was legally or factually erroneous.

Because Plaintiffs' new arguments are not properly before the Court, and because Judge Parker's ruling was not contrary to law or clearly erroneous, Plaintiffs' Motion should be denied.

## FACTUAL BACKGROUND

The parties commenced discovery in this case over nine months ago, in July 2020. (*See, e.g.*, ECF No. 18.) This appeal is the latest dispute in a ceaseless parade of unusual, vexatious, and thinly supported litigation strategies, which have delayed the progression of this case and have unjustifiably escalated Noom's defense costs. Despite Plaintiffs' intensive motion practice, virtually every discovery motion they have filed thus far has been denied.[1] And, as a result of significant, protracted disputes over electronic discovery issues, Noom has already spent over 1,000 hours on ESI-related planning and dispute resolution. (*See* Reddy Decl.[2] ¶ 2.)

For months, Noom has attempted to move discovery forward in an expeditious fashion, but has been met with unusual and highly burdensome e-discovery demands by Plaintiffs at every turn. By way of example, in the parties' August 13, 2020 pre-trial conference, Your Honor encouraged the parties to adopt the Seventh Circuit Model ESI protocol as a basis for their own ESI protocol and directed the parties to file a proposed protocol within two weeks. (10/13/2020 Hr'g. Tr. at 37:22-38:12.) Noom immediately offered to adopt the Seventh Circuit protocol, essentially verbatim, and sent it to Plaintiffs on August 19, 2020. (Reddy Decl. ¶ 3.) Plaintiffs refused this

---

[1] For example, Judge Parker adopted Noom's proposed ESI protocol almost in its entirety over Plaintiffs' 50 plus objections, granted Noom a protective order as to more than a dozen requests for production, declined to adopt the vast majority of 100 plus certain search terms proposed by Plaintiffs, quashed most topics in Plaintiffs' 30(b)(6) deposition notice, denied Plaintiffs' motion to set aside Noom's confidentiality agreements with former employees for purposes of informal discovery, and denied Plaintiffs' motion to modify the protective order to use Noom's confidential information in forthcoming state court actions. (*See* ECF Nos. 52, 53, 122, 123, 145, 146, 176, 195, 240, 301, and 302.)

[2] Declaration of Aarti G. Reddy in Support of Defendants' Opposition to Plaintiffs' Objections to Judge Parker's Discovery Order Concerning Production of Hyperlinked Internal Documents ("Reddy Decl."), filed concurrently herewith.

proposal, and in the intervening five months, insisted on protracted negotiations, requested multiple extensions to file disputes related to the protocol (ECF Nos. 38, 49), and eventually raised over 30 disputes reflected in a one-sided 62-page chart, supported by two expert declarations (ECF Nos. 65-1–65-3). Plaintiffs then proceeded to litigate each of these disputes during three separate discovery conferences before Judge Parker. (ECF No. 143 at 1.) At no point throughout the parties' lengthy ESI negotiations was the issue of production of file hyperlinks raised or discussed. (Reddy Decl. ¶ 5.)[3] Nearly a month after the last conference, on January 8, 2021, Plaintiffs then raised another 22 disputes over the ESI protocol. (ECF No. 144-2.) Judge Parker ultimately adopted Noom's proposed protocol near-verbatim. (*Compare* ECF No. 65-7 (Noom's Proposed ESI Protocol) *with* ECF No. 146 (ESI Protocol).)

A similarly inefficient pattern played out with respect to Plaintiffs' first set of requests for production ("RFPs"). Plaintiffs first served those requests on July 14, 2020. The original requests totaled 80 separate RFPs, some with as many as 21 different subparts. In the parties' first conference addressing these RFPs, Judge Parker called these RFPs "wildly overbroad," and "clearly excessive," and ordered Plaintiffs to narrow them. (9/9/2020 Hr'g Tr. at 36, 43.) Although Plaintiffs withdrew at least 20 RFPs, they failed to narrow many others, and again insisted on the submission of a sprawling 105-page chart to brief dozens of disputes. (ECF Nos. 115, 115-1, 116, 116-1.) Judge Parker again addressed these disputes in three separate

---

[3] Contrary to Plaintiffs' assertion, at no point did Noom agree to produce all file hyperlinks based on a stray reference to "stub files" in the ESI protocol. Plaintiffs falsely claim that Noom made this assurance during a meet and confer, but do not cite any correspondence or other source supporting their interpretation. (*See* ECF No. 261¶ 12.) That claim is contrary to their acknowledgement that Noom disclosed months ago that it would use Google Vault to export Gmail and Google Drive documents, which all parties agree does not facilitate automatic exporting of file hyperlinks. (Mot.. at 10.) And, as Noom explained, "stub files" apply to a very specific archival state used by tools like Clearwell Vault and that does not apply to hyperlink references in a regular email. (ECF No. 105 at 2 n.1; ECF No. 226 at 3 n.3.) Plaintiffs' own authorities confirm Noom's interpretation. (*See* Mot. at 20 (citing to Defendex, *A Brief Overview of Stubs and Data Archiving*, https://info.defendx.com/blog/a-brief-overview-of-stubs-and-data-archiving (defining a stub as "an archived file that has been moved to a new location").)

conferences, remarking that Plaintiffs had "created a tremendous burden on everyone involved including the Court to have to go through these grossly overbroad and redundant overlapping requests" and had done "a very poor job of" of drafting and narrowing them. (2/4/2021 Hr'g Tr. at 48:12-16.) Ultimately, Judge Parker granted Noom's request for a protective order on 13 RFPs, found another seven RFPs redundant, and significantly narrowed several others. (ECF Nos. 145, 176, 195; 2/4/2021 Hr'g Tr. at 48-50.) The parties ultimately did not reach a resolution on the RFPs until February 4, over seven months after Noom first received them.

Plaintiffs' strategy of excessive and unreasonable litigation continues with their now fourth attempt to relitigate the issue of hyperlinks in this case. As with their previous legal strategies, this one has no merit. The record is clear that Plaintiffs have had their full and fair opportunity to be heard on this question. (*See, e.g*., ECF No. 105 (challenging Noom's use of Google Vault); ECF No. 186 (re-raising the issue of Google vault in joint submission); ECF No. 214 (filing an extenuating circumstances motion on the same); ECF No. 236 (filing reply declaration by D. Forrest).) Noom first disclosed to Plaintiffs that it planned to use Google Vault to collect and export documents and emails from Noom's internal document and email systems in August 2020. (*See* Reddy Decl. ¶ 4.) Since the onset of discovery, Plaintiffs have employed multiple ESI consultants (one of whom participated in almost every meet-and-confer discussion regarding the Parties' ESI protocol). (*Id.*) Any of their three ESI consultants could have explained to Plaintiffs in the ensuing months that Google Vault would not export hyperlinks in Google Drive documents. Even assuming that, conceptually, Plaintiffs' ESI experts were not familiar Google Vault's link-related capabilities, the practical import of the situation must have become clear when Noom began producing documents with links in November. (*Id.* ¶ 6.) In either case, time has been on Plaintiffs' side.

After Noom disclosed the use of Google Vault and even after Noom began producing documents with links, Plaintiffs consented to Noom's use of Google Vault to export Google Drive in November 2020. (ECF No. 98.) One week later, Plaintiffs objected to the use of the same tool to perform the export of Noom's Gmail collection, based on the hyperlink issue Plaintiffs now bring before this Court. (ECF No. 105-1.) Judge Parker permitted briefing on the dispute and unequivocally denied Plaintiffs' requested relief, holding that Noom's use of Google Vault to export email attachments was "industry standard," and that "[t]o the extent that hyperlinks are not exportable via Google Vault, those hyperlinks are not attachments." (ECF No. 122 at 5.)

Plaintiffs raised the issue again during the parties' February 4 conference, and Judge Parker again denied their requested relief. (*See generally* 2/4/2021 Hr'g Tr.; *see also* ECF No. 188 at 2 (pre-conference statement discussing hyperlinked files).)[4] Following the second denial of their challenge to Noom's use of Google Vault, Plaintiffs filed a motion for reconsideration on the issue of hyperlinks, stylized as a motion for clarification. (ECF No. 214.) Noom opposed the motion and sought attorneys' fees. (ECF No. 226.) After this motion was fully briefed, Plaintiffs requested leave to file a standalone declaration from one of their ESI experts to rebut Noom's opposition to their motion. (ECF No. 236.) Judge Parker granted the request and Noom was not permitted to respond to this new evidence Plaintiffs offered on reply. (*See* 3/4/2021 Hr'g Tr. at 10:17-19.)

Nevertheless, Judge Parker denied Plaintiffs' motion for the third time in a well-reasoned, 11-page opinion. (ECF No. 239.) This decision was based, in part, on the "proportionality concerns set forth in Rule 26(b)(1) and Rule 1's mandate to ensure the just, speedy, and inexpensive determination of this action." (*Id*. at 7.) Judge Parker found that (1) Noom's proposed

---

[4] The February 4 transcript is incomplete due to technical issues and this portion of the hearing was not transcribed.

method of collecting documents and emails using Google Drive was reasonable (*id*. at 5); (2) the heavily negotiated Court-ordered ESI protocol does not consider hyperlinked documents to be attachments (*id*.); (3) the Court itself did not consider hyperlinked documents to be attachments (*id*. at 6); (4) Plaintiffs had made no showing that "they actually need to link to or even care about all of the hyperlinked documents" (*id*. at 8); and (5) Plaintiffs' estimates regarding the cost and burden of reperforming the necessary collection were not "credibly supported" by the evidence and that recollection would be unnecessarily costly, burdensome, and disproportionate to the needs of the case (*id*. at 9).

None of these factors have changed since Plaintiffs first became aware of Noom's intended collection tool in August 2020. The only difference now is an ***increase*** in the cost and burden to Noom and the inevitable discovery delays that would result in re-performing Noom's collection as the parties have moved further into discovery. Following Judge Parker's order, the parties completed their negotiation of search terms. At the latest conference, Judge Parker remarked that it was "high time" that Noom finally be permitted to proceed with its document review and productions, and set a production schedule directing Noom to produce its first wave of custodial documents by May 15, 2021. (4/15/2021 Hr'g Tr. at 5:20.)

<u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 72(a) and Local Rule 6.3 govern a motion for reconsideration. These rules are intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *SEC v. Ashbury Cap. Partners, L.P.*, No. 00-cv-7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (citation omitted). To justify the "extraordinary remedy" of reconsideration, a party must "demonstrate controlling law or factual matters ***put before the court***

***on the underlying motion*** that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Mickle v. Christie's, Inc.*, 214 F.Supp.2d 430, 431 (S.D.N.Y. 2002) (emphasis added). Reconsideration is not appropriate where the court "specifically noted and rejected" the relevant argument. *Id.* at 431-32; *see also Edmonds v. Seavey*, No. 08-cv-5646, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) (noting the fact that "'reasonable minds may differ on the wisdom of granting [a party's] motion' is not sufficient to overturn a magistrate judge's decision") (citation omitted).

Critically, under Rule 72(a), the standard of review of a non-dispositive ruling by a magistrate "precludes the district court from considering factual evidence that was not presented to the magistrate judge." *Thai Lao Lignite (Thai) Co. v. Laos*, 924 F.Supp.2d 508, 512 (S.D.N.Y. 2013). A court may only set aside a magistrate judge's ruling on a non-dispositive matter if it is "clearly erroneous or contrary to law[.]" *NIKE, Inc. v. Wu*, 349 F.Supp.3d 346, 352 (S.D.N.Y. 2018). Courts "generally do not entertain new legal arguments not presented to the magistrate judge." *Pugh-Ozua v. Springhill Suites*, No. 18-cv-1755, 2020 WL 6562376, at *3 (S.D.N.Y. Nov. 9, 2020) (quoting *Nike*, 349 F.Supp.3d at 353); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (finding that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . .") (citation omitted).

## LEGAL ARGUMENT

Months after Noom disclosed its collection methods, and Plaintiffs largely agreed, Plaintiffs seek an order compelling Noom to re-perform its entire Google suite collection and produce every hyperlinked file referenced in any responsive document. Plaintiffs have previously had a full and fair opportunity to be heard on this single discovery issue ***three*** times and have now

inundated the Court with four separate filings in connection with this appeal.  Based on little more than inapposite authorities and new, untested proposals concocted by their experts, Plaintiffs seek to upend a well-reasoned decision that is not only squarely within the purview and discretion of a magistrate, but that is also well in-line with case law on the subject.  Plaintiffs' Motion is procedurally improper and it is their misguided arguments—not Judge Parker's Order—that are contrary to law and clearly erroneous.

## I.  Plaintiffs' Motion Is Based on New Legal and Factual Arguments That Are Not Properly Before This Court.

Plaintiffs' Motion relies heavily on new legal authority and facts related to e-discovery tools and solutions that were never raised at the time this issue was briefed and argued before Judge Parker.  This is entirely improper, and the Motion should be denied on this basis alone. Plaintiffs may not rely on new authorities or facts not presented to the magistrate judge in arguing a motion for reconsideration.  *See Thai Lao*, 924 F.Supp.2d at 512 ("The district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact." (quoting *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992))); *see also Maria v. Rogue Tomate Chelsea LLC*, No. 18-cv-9826, 2021 WL 734958, at *1 (S.D.N.Y. Feb. 25, 2021) ("[n]ew arguments and factual assertions cannot properly be raised for the first time in objections to [a magistrate's discovery order], and indeed may not be deemed objections at all") (alterations in original) (citation omitted); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 405 (S.D.N.Y. 2020) ("Keurig") (refusing to consider new arguments because "an appeal of a magistrate judge's discovery order is not an occasion to press new arguments or factual assertions not originally presented").

***First***, Plaintiffs violate this procedural bar by citing numerous new authorities and secondary sources that are raised for the first time in their Motion:

9

- March 25, 2021 Craig Ball blogpost, *see* Mot. at 7 n.6, 13 n.10, 17-18[5];

- March 30, 2021 Craig Ball blogpost, *id*. at 4 & n.4;

- March 30, 2021 Milton Robinson blogpost about Judge Parker's ruling in this case, *id*. at 16 n.13;

- September 15, 2016 blogpost on Defendex, *id*. at 20; and

- 2015 Washington district court case—*Milgard Mfg., Inc. v. Liberty Mut. Ins. Co.*, No. 13-cv-6024, 2015 WL 1884069, at *2 (W.D. Wash. Apr. 24, 2015), which is distinguishable, as discussed below, *see* Section II.B, *ante*—*see* Mot. at 8.

None of these legal authorities are properly before the Court, as they were never presented to Judge Parker. *See Pugh-Ozua*, 2020 WL 6562376, at *3 ("courts in this Circuit 'generally do not entertain new legal arguments not presented to the magistrate judge'") (citation omitted).

**Second**, Plaintiffs rely on new facts, through declarations from Plaintiffs' counsel (ECF No. 261), which presents new statements as to production status, and from Douglas Forrest (ECF No. 262 ("Forrest Decl.")), in which they propose novel, untested collection methods that they naively dub as "easy fix[es]." (Mot. at 13-14.) The new collection options include their view that Noom could exclude all linked documents and then ***use a program Plaintiffs purport to have developed*** to identify hyperlinks with original emails. (*See* Forrest Decl. ¶ 32.) Plaintiffs also raise a number of other previously undisclosed options, including to have Noom use "another [unidentified] commercial programs or service, or [] write, or have their vendor write, a program to perform similar collections." (*Id.* ¶ 20.) Noom has never had an opportunity to rebut these proposals, as some were first raised on reply to Plaintiffs' prior Motion. (ECF No. 236.) In any

---

[5] Plaintiffs repeatedly cite e-discovery blogger Craig Ball and refer to him as a "special master," yet he has not been appointed as a "special master" in this case. And, in the blogpost Plaintiffs cite, Craig Ball acknowledges that in one (unidentified) case to which he refers, he ***lost*** the argument that all hyperlinks should automatically be collected. *See* Doug Austin, *Craig Ball Also Weighs in on Links to Files in Emails: eDiscovery Best Practices*, https://ediscoverytoday.com/2020/11/16/craig-ball-also-weighs-in-on-links-to-files-in-emails-ediscovery-best-practices/ ("Was I right? I believe so, but the other side declined to test the solution.").

event, as discussed in detail below, these hypothetical "solutions" are wholly impracticable, and, to the best of Noom's knowledge, none have ever been directed by any Court.

Plaintiffs also rely on miscellaneous new facts, such as:

- Statistics from Plaintiffs' ESI consultant's analysis of roughly 2,500 documents Noom produced (*see* Forrest Decl. ¶ 43 (purporting to show, on an incomplete sampling, that a high volume of Noom communications have hyperlinks)); and,

- Rebuttal statements related to the estimated time and cost to run certain programs (*see id.* ¶¶ 36-39).

The Court should disregard these facts, which were not presented to Judge Parker and which Noom has not had an opportunity to rebut. *See Pugh-Ozua*, 2020 WL 6562376, at *3 ("courts in this circuit generally follow the rule that a district court reviewing an appeal of a non-dispositive motion from a magistrate judge may not look beyond the factual record presented to the magistrate judge") (citation omitted).[6]

Plaintiffs' attempt to re-argue this discovery issue on new legal and factual grounds is plainly improper. Rather than presenting persuasive reasons that Judge Parker's order was contrary to law or clearly erroneous based on the facts and authorities previously presented, Plaintiffs seek to litigate this issue anew. *See Keurig*, 336 F.R.D. at 405. This is a textbook example of Plaintiffs "repeatedly rais[ing] the same discovery issue in the hopes of getting a different answer absent good cause[,]" and on this basis alone, their Motion should be denied. (ECF No. 239 at 11.)

To the extent the Court entertains these new factual assertions, requested relief, and proposals, Noom requests leave to present rebuttal expert testimony as to: (1) the practical

---

[6] Somewhat remarkably, Plaintiffs ask this Court for relief that was never presented to Judge Parker. Specifically, they request production of file hyperlinks from **chat messages**—an issue that was never briefed or raised in Plaintiffs' prior motions. (*See* Mot. at 2-3, 5, 14, 24.) The briefing below concerned only emails and Google Drive documents containing hyperlinks. (*See, e.g.*, ECF No. 239 at 1 (indicating the issue concerns the "production of documents linked to Google Drive documents and Gmail communications via hyperlink" and nowhere addressing chat messages).)

challenges that arise when attempting to collect hyperlinked documents using any of the methods Plaintiffs propose; (2) the scope and capabilities of e-discovery vendors, including that such vendors are not in the business of writing software programs to facilitate collection of file hyperlinks; (3) the numerous challenges and countervailing issues that arise in a collection proposal that involves writing custom scripts that are untested and unproven; and (4) the costs, errors, and delays associated with these proposed collection methods.

## II. **Plaintiffs Have Failed to Show That Judge Parker's Ruling Was Contrary to Law.**

Plaintiffs argue that Judge Parker's order was somehow contrary to law, yet Plaintiffs fail to cite a single court in any jurisdiction that has compelled a party to re-perform its collection to facilitate production of file hyperlinks. And, to Noom's knowledge, no court has ever ordered such relief. Plaintiffs' inability to muster any credible support for their position is a telling admission that it is their position, not Judge Parker's ruling, that is contrary to law. Judge Parker correctly held, consistent with the Sedona Conference Principles and case law, that the "producing party is best situated to determine its own search and collection methods so long as they are reasonable." (ECF No. 239 at 5 (citing Sedona Principle 6; *Hyles v. New York City*, No. 10-cv-3119, 2016 WL 4077114 (S.D.N.Y. Aug. 1, 2016)).) This was well within her broad discretion as a magistrate judge to resolve the dispute before her. *See Williams v. Rosenblatt Sec., Inc.*, 236 F.Supp.3d 802, 803 (S.D.N.Y. 2017) (recognizing broad discretion of magistrate judges in resolving discovery disputes).

### A. **Plaintiffs Offer No Case Where a Court has Directed a Producing Party to Use the Receiving Party's Preferred Collection Tool.**

As an initial matter, Plaintiffs' attempt to prescribe the manner of Noom's collection at this late stage is contrary to two separate and discrete principles of law.

***First***, the federal rules mandate a "just, speedy, and inexpensive determination of this

action." (ECF No. 239 at 7 (citing Fed. R. Civ. P. 1).) Plaintiffs seek to have Noom use their preferred collection tool to export documents, many months after Noom disclosed its document export tool—*and received Plaintiffs' explicit consent to use that tool as to a substantial portion of its collection*. (*See* ECF No. 98 (indicating the parties agreed to Noom's use of Google Vault to collect documents from Google Drive even though "filepath" metadata field would not be available).) Compounding the unreasonable nature of this request, Plaintiffs have even refused to entertain any cost-sharing proposal. (ECF No. 105 at 1.) Judge Parker correctly noted that Plaintiffs' request runs afoul of Rule 1, because the "additional collection would certainly increase the review population," as well as "complicate de-duplication, delay production, and impose additional costs." (ECF No. 239 at 9.)

*Second*, the Sedona Conference Principles make clear that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *See* The Sedona Principles (Second Edition): Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 6 (June 2007). Following this principle, virtually every court to address the issue has held that a receiving party cannot object to the producing party's manner of collection, absent some clear showing that the tool employed is "manifestly unreasonable" or that "the resulting production is deficient." *See, e.g.*, *Mortg. Resol. Servicing v. JP Morgan Chase Bank, N.A.*, No. 15-cv-0293, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) (adopting the Sedona Conference principle that the responding parties are best situated to evaluate the procedures and methodologies for producing ESI and further holding that, absent a choice being manifestly unreasonable, "the court should play no role in . . . choosing search tools . . . ."); *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-12137, 2020 WL 283702, at *2 (S.D.N.Y. Jan. 21, 2020)

(making clear a responding party does not have "a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process"); *Hyles*, 2016 WL 4077114, at *3 (recognizing that "the responding party is best situated to decide how to search for and produce ESI responsive to [] document requests"). Consistent with this well-settled principle, Judge Parker has repeatedly observed that Noom is entitled to perform its collection in the manner that it deems appropriate, provided that its efforts are reasonable. (*See* 10/13/2020 Hr'g. Tr. at 33:11-34:13, 36:6-7; 10/16/2020 Hr'g. Tr. at 18:3-15; 10/26/2020 Hr'g. Tr. at 16:2-12, 17:11-21.)

Plaintiffs have made no showing of deficiency here—in fact, Judge Parker expressly rejected their argument that export from Google Vault was deficient, correctly holding that it is "the industry standard." (*See* ECF No. 122 at 5 (Judge Parker recognizing that preserving and collecting these documents via Google Vault is "the industry standard"); ECF No. 239 at 4 (same); ECF No. 105-1 ("Sims Decl.") ¶ 7 (Noom's vendor declaration indicating Google Vault is the standard industry tool used for Gmail export by the vast majority of its Google business clients).) Plaintiffs do not contest this finding in their Motion, and Noom is unaware of any Court that has found Google Vault—which is the litigation tool used by many Google business clients—to be manifestly unreasonable. Thus, Plaintiffs' insistence on micromanaging Noom's reasonable collection efforts is flatly contrary to both well-settled law and the Sedona Conference Principles.

## B. Plaintiffs Present a Misleading Picture of Decisional Law on This Issue.

Plaintiffs misleadingly claim that "every other court that has addressed these or analogous facts has found that document families must be preserved." (Mot. at 6-9.) Not so. The only relevant cases they cite align directly with Judge Parker's Order.

Plaintiffs identify three cases that specifically address the issue of producing file hyperlinks—*Shenwick*, *IQVIA*, and *Milgard*. With the exception of *Milgard*, which is readily

14

distinguishable, these cases support the relief that Judge Parker has already ordered. (*See* Mot. at 8.) The Court in *Shenwick v. Twitter, Inc.*, No. 16-cv-05314 (N.D. Cal. Sept. 17, 2018) (filed at ECF No. 226-1), ordered precisely the same relief ordered here, which Plaintiffs acknowledge in a footnote. (*See* Mot. at 8-9 & n.8 (recognizing that, in *Shenwick*, instead of having to produce all 725 hyperlinked documents that the plaintiffs identified, the defendant was only ordered to produce 200 hyperlinked documents of the plaintiffs' choice).) Plaintiffs nonetheless try to distinguish the case on the basis that, in *Shenwick*, the defendant had already produced over 100,000 documents, whereas here, Noom's production has not yet begun. (*Id*.) That is false. Noom has already produced over 2,000 internal documents and emails, which would need to be recollected and potentially re-reviewed. (*See* Reddy Decl. ¶ 7.) Plaintiffs' argument also makes no sense: it took several months for Noom to complete its collection, and it is now preparing its first production of custodial documents by May 15. (ECF No. 302 at 2.) Redoing its entire collection of over four million documents at this late stage would substantially prejudice Noom. (*See* Reddy Decl. ¶¶ 8-9.) Plaintiffs' argument thus relies on tortured logic.

And, in *IQVIA Inc. v. Veeva Systems, Inc.*, the plaintiffs identified specific documents that were material to the claims and defenses, which in turn allowed the court to assess relevance proportionality and find that the production of the file hyperlinks in those documents was warranted. No. 17-cv-00177, 2019 WL 3069203, at *5 (D.N.J. July 11, 2019). This is essentially the same relief that Judge Parker already ordered—i.e., that Plaintiffs identify specific hyperlinks "material to a claim or defense," and that Noom locate and produce these hyperlinks on a case-by-case basis. (*See* ECF No. 122 at 5; ECF No. 239 at 8-9.) In contrast to *Shenwick* and *IQVIA*, where the plaintiffs sought to compel production of specific file hyperlinks, Plaintiffs simply demand production of all such file hyperlinks, irrespective of whether the underlying documents

are relevant. As Judge Parker noted, "there has been no showing by Plaintiffs that they actually need to link to or even care about all hyperlinked documents." (ECF No. at 239 at 8; *see id*. (recognizing it is "entirely speculative how many underlying hyperlinked documents are relevant . . . .").) To Noom's knowledge, no case has ever ordered similar relief.

Likewise—even if *Milgard* was properly before this Court, *see* Section I, *supra*—that case does not further Plaintiffs' cause. Plaintiffs quote *Milgard* as requiring that emails be produced in a manner that allows their associated hyperlinks to be matched. (*See* Mot. at 8 (citing *Milgard*, 2015 WL 1884069, at *2).) That quote, however, read in isolation, disguises what was actually at issue: namely, the hyperlinks were to documents ***originally attached*** to the emails, but for which the receiving email program reduced to a hyperlink due to file size constraints on the receiving end. (*See* Reddy Decl. ¶¶ 11-12, Exs. A-B (attaching *Milgard* motion and exhibits).) *Milgard* therefore did not concern the same linked cloud service architecture that is at issue here, and in any event, Noom has already agreed to produce document stubs (*see* ECF No. 146 at 13; *see also supra* note 2), which was the type of file at issue in *Milgard*.

Plaintiffs' remaining authorities are completely irrelevant and address the failure to produce standalone attachments to email communications, ***not*** embedded hyperlinks. (*See* Mot. at 6-7 (citing *Pom Wonderful LLC v. Coca-Cola Co.*, No. 08-cv-6237, 2009 WL 10655335, at *2-3 (C.D. Cal. Nov. 30, 2009) (requiring that the defendant reproduce emails with their attachments, as the original production did not produce full families);[7] *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, No. 04-cv-2150, 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006) (addressing the issue of

---

[7] Indeed, Plaintiffs' cited case actually supports Noom's position, as it recognizes that the Sedona Conference Principles define a document family as the parent communication with standalone attachments. *See Pom*, 2009 WL 10655335, at *2 n.2 (defining a "document family" as "'[a] collection of pages or files . . . constituting a logical single communication of information, but consisting of more than a single stand-alone record" where "[e]xamples include . . . an attachment to the letter") (quoting Sedona Conference Glossary: Commonly Used Terms for E-Discovery and Digital Information Management (2d ed. Dec. 2007)).

"underlying e-mails [] combined into a single document without their accompanying attachments" and holding the producing party must provide "information needed to match the e-mails with their attachments")).) Plaintiffs' position thus relies on the fundamentally flawed assumption that embedded hyperlinks are part of "document families." No court has explicitly held so much, and for good reason: if every embedded hyperlink were considered a family member, collection of broken links and non-static documents would present insurmountable collection issues. As Judge Parker aptly noted, hyperlinks to shortcut folders in an email are not "attachments," just as hyperlinked cases in a legal memorandum are not "attachments." (*See* ECF No. 239 at 7-8 (noting, for example, "[a]n email might have hyperlinks to a phone number, a tracking site for tracking a mailing/shipment, a [F]acebook page, a terms of use document, a legal disclaimer, etc.," which are "unimportant to the communication")).)

Plaintiffs also cite a series of cases rejecting a party's attempt to avoid producing documents from relevant sources on burden grounds, which is not at issue here. (*See* Mot. at 7 (citing *Wesley v. Muhammad*, No. 05-cv-5833, 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008) (holding that the party cannot avoid production obligations on conclusory allegations that such information is too difficult to locate); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 75-76 (D. Mass. 1976) (finding a party cannot seek to avoid searching for records by noting that it would take a "herculean effort . . . to locate [] documents"); *Lou v. Ma Labs., Inc.*, No. 12-cv-05409, 2013 WL 12328278, at *2 (N.D. Cal. Mar. 28, 2013) (finding the company still needed to produce responsive documents from a source that made it difficult to retrieve personnel data)).) Noom is not simply refusing to produce any relevant file hyperlinks. Judge Parker noted the opposite, explaining that "Noom was, from the start willing to [produce] . . . a reasonable number of" file hyperlinks at Plaintiffs' request (and indeed, is already doing so). (ECF No. 239 at 5.)

In short, Plaintiffs fail to cite a single case expressly holding that hyperlinks are equivalent to email attachments or compelling a party to re-perform its collection to capture all hyperlinks embedded in emails. Their own authorities are consistent with Judge Parker's rulings and confirm that her order was correct and should not be disturbed. *See Shenwick*, No. 16-cv-05314, at *2 (limiting the number of hyperlinks the receiving party could request from the producing party to a reasonable number). Plaintiffs have therefore not come close to establishing that Judge Parker's ruling was contrary to law. *See In re Rivastigimine Pat. Litig.*, 239 F.R.D. 351, 356 (S.D.N.Y. 2006) ("An order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure.") (citation omitted).

## III. Plaintiffs Have Failed to Demonstrate That Judge Parker's Ruling Was Clearly Erroneous.

Plaintiffs contend that Judge Parker's order was clearly erroneous, but here too, it is their position, not Judge Parker's order, that is wholly without factual merit. None of the supposed "easy fix[es]" they describe in their Motion are serious solutions to this complex e-discovery issue—and even if they were, Plaintiffs' Motion fails to demonstrate that the costs and delay of forcing Noom to re-perform its collection ten months into discovery is remotely justified.

### A. Plaintiffs' Preferred Collection Method for Hyperlinks Is Not Practical or Feasible.

Each of Plaintiffs' proposed "inexpensive" and "easier and fairer" solutions are ill-conceived and impracticable. (Mot. at 13.)

*First*, Plaintiffs seek to compel Noom to use FEC to recollect Google Drive and Gmail documents, so that any hyperlinked documents are pulled as part of the document "family." (*See* Mot. at 13-15.) But, as Noom's e-discovery vendor previously explained, there are inherent challenges associated with using Plaintiffs' preferred FEC tool to collect from Google Suite, which Noom tested at Plaintiffs' request. (*See* Sims Decl. ¶¶ 11, 15-17; *see also* ECF No. 105 at 2 (testing

the solution and describing how the tool "continues to stall, leading to significantly longer processing times that will likely further delay collection").)  Further, at least at the time this issue was originally litigated, FEC did not even facilitate exporting of links from Google Drive documents, forcing Noom to export file hyperlinks manually.  (*See* ECF No. 226-2 ("Gresch Decl.") ¶ 5.)  Noom's vendor also explained that the FEC tool remained unworkable and that Noom would incur roughly $180,000 in costs to collect hyperlinked documents.  (*See id*. ¶ 6.)  Judge Parker correctly held Plaintiffs failed to rebut that declaration with credible evidence.  (*See* ECF No. 239 at 9-10 (denying Plaintiffs' proposed solution and remarking Plaintiffs' expert has "not effectively countered these projected costs" and "does not address the time it would take to apply the program, load, and review the documents").)

*Second*, Plaintiffs present "alternative" collection tools, which they acknowledge are "less optimal."  (Forrest Decl. ¶¶ 24-33.)  These options include, among others,[8] having Noom create a new and untested software program to extract links using Google's API, to requiring Noom to exclude all documents with hyperlinks from its initial review and then use an undisclosed program that Plaintiffs purport to have developed to collect and link the documents.  (*See id*. ¶¶ 24-32.)  Because neither of these proposals were properly raised in Plaintiffs' original motions, Noom's vendor and expert has not specifically rebutted them (although they are prepared to do so now, should the Court permit Noom to submit additional evidence).  Neither of these solutions has been tested and even Plaintiffs' ESI consultant does not identify a single instance in which these methods have been successfully deployed to extract file hyperlinks in the manner Plaintiffs desire.[9]

---

[8] To the extent Plaintiffs raise other new solutions—such as deploying software Plaintiffs allege to have created—the options were not previously before Judge Parker, so they are not addressed here.  *See* Section I, *supra*.

[9] Plaintiffs first raised the proposal that Noom prepare an API script in reply to its Motion below; Noom was not permitted to respond but Judge Parker correctly rejected this "solution."  (ECF No. 239 at 10.)  Plaintiffs raised the second solution regarding its own undisclosed program for the first time on appeal.  *See* Section I, *supra*.

Plaintiffs further propose that Noom provide Plaintiffs' counsel with unfettered access to Noom's proprietary Google Vault system, explaining that Plaintiffs would obtain credentials and perform their own, unsupervised collection and Noom would ***waive the ability to do a privilege or relevance review***.  (Forrest Decl. ¶ 33.)  This is absurd.  Noom should not be required to waive attorney-client privilege or permit access to all company files—many of which may contain personal health information of its users—so that Plaintiffs may access file hyperlinks.  Here too, Noom is unaware of any Court that has ordered similar relief.

Thus Plaintiffs' presentation of "inexpensive solutions" or "easy fix[es]" are, in actuality, unproven, untested, and speculative proposals that have obvious shortcomings.

### B.    Plaintiffs Cannot Demonstrate the Costs Are Proportional to the Needs of This Case.

When managing discovery, the Court is guided by proportionality concerns set forth in Rule 26(b)(1) and Rule 1's mandate to ensure the just, speedy, and inexpensive determination of this action.  *See* Fed. R. Civ. P. 1, 26; *see Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-12137, 2020 WL 7237901, at *4 (S.D.N.Y. Dec. 9, 2020) (explaining that "permissible discovery under the current Rule 26 must also be 'proportional to the needs of the case'") (citation omitted). Applying these precepts, Plaintiffs have not and cannot show that forcing Noom to re-perform its collection ten months into discovery is proportional to the needs of this case.

Judge Parker correctly held that Plaintiffs' Motion was not proportional to the needs of the case, explaining that "[t]his additional collection would certainly increase the review population and, as Noom's expert explained, complicate de-duplication, delay production, and impose additional costs."  (ECF No. 239 at 9.)  This cost was particularly unjustified because "[i]n this Court's experience, only a fraction of the documents produced in discovery will be material to the litigation and the Court indicated to the parties that the [procedure set forth allowing Plaintiffs to

identify a reasonable number of hyperlinks for Noom to collect] should be sufficient to address Plaintiffs' concerns about identifying key hyperlinked documents."[10]  (ECF No. 239 at 1.)

Noom has already spent more than 1,000 hours negotiating and investigating ESI issues, and as previously noted, manual collection of hyperlinks will cost at least $180,000 in addition to its sunk collection costs.  (*See* Reddy Decl. ¶ 2; Gresch Decl. ¶ 6.)  Further, Noom is beginning its extensive review and production of custodial documents, with a review population of over 100,000 documents, and is presently preparing to meet its first production deadline of May 15, 2021.  (ECF No. 302 at 2.)  Thus, the costs of potentially pausing these efforts and re-performing the collection at this late stage are even ***higher*** than they were when Judge Parker ruled on this issue.  (*See* Reddy Decl. ¶ 9.)

In sum, Judge Parker's proportionality finding is well-reasoned, supported by the evidence, and entitled to deference.

### C. Plaintiffs' Requested Relief Will Cause Significant Delays and Is Unnecessary.

Adopting Plaintiffs' proposal would further extend a discovery process that has already been mired by significant delays, caused primarily by costly and unnecessary disputes over electronic discovery.  *See*, Fact Section, *supra*.  Your Honor previously ordered the parties to ***complete discovery more than four months ago***.  (ECF No. 32 at 2.)  The parties are well behind that contemplated schedule, and—nearly one full year after the Complaint was filed—Noom is only now beginning to produce custodial documents and begin discovery in earnest.

Forcing Noom to re-perform its collection would only exacerbate these delays.  Noom's e-discovery vendor has estimated that it will take, at a minimum, several weeks to manually collect

---

[10] Judge Parker rejected the misleading claim that Plaintiffs' counsel posits again here—i.e., that the cost to Noom of re-perform its collection would be "less than $5,000"—as "not credibly supported by evidence."  (ECF No. 239 at 9.) This was the estimated cost, assuming FEC was a workable to solution, to re-perform the collection of only email and only for certain custodians back in November—before Noom completed its collection.  (Sims Decl. ¶ 16(a).)

hyperlinks that are embedded in responsive documents.  (*See* Gresch Decl. ¶ 6 (estimating at least

500 hours for collection).)  Plaintiffs' class certification motion is due on June 30, 2021, and this

deadline would likely need to be continued for Noom to re-perform its collection, re-run search

terms, and continue with its document review.

The delay and expense Plaintiffs' contemplate is wholly unjustified.  Plaintiffs have known

of this hyperlink issue since the outset of discovery—Noom first began producing documents with

file hyperlinks in November.  (Reddy Decl. ¶ 6.)  And, as Plaintiffs concede, Noom has already

been producing hyperlinked documents that Plaintiffs' counsel identified as relevant.  Plaintiffs

have already identified hundreds of hyperlinks for Noom's counsel to locate and produce.  (*See id*.

¶ 10.)  Noom's counsel is diligently evaluating these requests and any insinuation otherwise is

without merit. [11]  (*See id*.)

On this record, Plaintiffs cannot establish that Judge Parker's ruling was "clearly

erroneous."  *See  Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004) ("A finding is 'clearly

erroneous' when although there is evidence to support it, the reviewing court on the entire evidence

is left with the definite and firm conviction that a mistake has been committed.") (quoting *United

States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## IV.    **The Amicus Briefing and Plaintiffs' Counsel's Improper Supplemental Declaration Are Not Properly Before the Court.**

After Plaintiffs filed the instant Motion, this Court issued an order directing Plaintiffs that

no reply would be permitted as of right.  (ECF No. 267.)  Following that order, this Court has been

---

[11] In an unfortunate yet typical fashion, Plaintiffs seek to strengthen their hand with baseless allegations of attorney misconduct.  Plaintiffs contend that Noom sought to "bury[]" a video Plaintiffs requested in a document with a hyperlink.  (*See* Mot. at 17.)  That is false.  On February 16, 2021, Plaintiffs notified Noom of a document with a single video file available at a hyperlink that they requested for production, which Noom immediately proceeded to produce (with Bates) three days later.  In a separate production one month later, Noom produced a second video file available via a different hyperlink in the document.  This video is an eight-second tutorial on how to assign a foreign language to a Zendesk ticket; it is hardly a critical document and was ***never even requested by counsel***.

inundated with additional filings in support of Plaintiffs' Motion, including two separate amicus letters (*see* ECF Nos. 271, 297) and a declaration from Plaintiffs' counsel filed late last night (*see* ECF No. 303). These materials flout multiple procedural rules, as they are untimely and present new information on appeal, and thus should not be considered by this Court. Even if they were proper, none of these materials come close to establishing that Judge Parker's order was contrary to law or clearly erroneous.

### A. The Amicus Letters Do Not Meet the Standard Required to Consider New Information on Appeal from a Magistrate Judge's Discovery Ruling.

Purported amicus curiae, some with close ties to Plaintiffs' counsel, have improperly sought to weigh in on this dispute. (*See* ECF No. 300 at 3 n.2 (noting Plaintiffs' lead counsel is a member of one of the amici organizations and the organization has submitted amicus briefs in support of Plaintiffs' counsel in at least two other cases).) As explained in Noom's objection to the first amicus letter (*see* ECF No. 271), and as holds true with the second amicus letter recently filed before this Court (*see* ECF No. 297), these highly unusual requests for amici support are improper, as they ask this Court to consider new facts and argument not presented before the magistrate judge. As described in detail above, the Federal Rules of Civil Procedure expressly prohibit the Court from considering such new information on appeal of a magistrate judge's order. *See Thai Lao*, 924 F.Supp.2d at 512 (noting that, under Rule 72(a), review of a non-dispositive ruling by a magistrate judge "precludes the district court from considering factual evidence that was not presented to the magistrate judge").

Further, allowing leave to file these letters does not serve the limited purposes for which an amicus curiae might be useful. (*See* ECF No. 300 at 2 (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.) (noting the limited purposes of which an amicus brief should be allowed, as endorsed by this district)).) The first amicus letter is

not even authored by individuals steeped in knowledge of e-discovery collections. (*See* ECF No. 271 at 1 (representing that, "NACA is an association of attorneys and consumer advocates" and Public Justice "is a legal advocacy organization").) And the second amicus letter merely reiterates Plaintiffs' already-stated desire that hyperlinks be treated as attachments in the traditional sense, notwithstanding the countervailing collection issues that result and the more practical solution other courts have adopted in permitting parties to identify a reasonable number of hyperlinks. (*See* ECF No. 297 at 2-3.)

These amici letters have no unique value and essentially reiterate Plaintiffs' flawed arguments. (*See* ECF Nos. 271, 297.) This Court should therefore decline to consider these submissions in deciding the present Motion.

### B. Plaintiffs' Belated Declaration Is Procedurally Improper and Does Not Support Their Motion.

The Court should likewise disregard Plaintiffs' wholly improper six-page declaration of "recent factual developments." (ECF No. 303 at 1.) Further, even if the Court were to consider the substance of this unauthorized filing, these new "factual developments" do not support Plaintiffs' Motion. In this declaration, Plaintiffs identify recent video commentary by an e-discovery pundit and mischaracterize the parties' ongoing communications regarding the production of hyperlink files. (ECF No. 303-1.) Notably, the pundit Plaintiffs selectively quote ***does not disagree with Judge Parker's order***. She notes that "this decision from Judge Parker is well thought out and considered," and further states that "I don't think the court is the one that should be deciding whether a hyperlink constitutes an attachment." *See* Kelly Twigger, CaseoftheWeek Episode 20: Do Hyperlinked Documents Need to be Produced, https://www.ediscoveryassistant.com/do-hyperlinked-documents-need-to-be-produced/ (cited in Plaintiffs' supplemental declaration); *see also id.* (observing that it was a "valid point" the court

made that "[m]any of these underlying hyperlinked documents may be unimportant to the communication").

Plaintiffs' criticism of Noom's ongoing efforts to produce file hyperlinks fares no better. Consistent with the timing of their appeal, in the last three weeks, Plaintiffs' counsel has strategically inundated Noom with numerous requests for file hyperlinks in all of Noom's recent productions. (Reddy Decl. ¶ 10.) Noom is in the process of assessing proportionality, identifying the relevant links, obtaining the appropriate credentials, and reviewing and preparing these documents for production, which is a time-consuming endeavor. (*Id.*) Plaintiffs' issues regarding the speed at which Noom produces these links is an issue for Judge Parker's consideration, and in no way warrants the extreme relief they request.

<u>**C**ONCLUSION</u>

Plaintiffs have now been heard on this single discovery issue four times. None of Plaintiffs' arguments presented in their numerous filings justify the extraordinary relief they seek, and the Court should deny Plaintiffs' request for reconsideration of Judge Parker's order.


Dated: New York, New York                                    Respectfully submitted,
April 20, 2021
                                                             COOLEY LLP

                                                             By: */s/ Aarti G. Reddy*
                                                             Aarti G. Reddy
                                                             101 California Street, 5th Floor
                                                             San Francisco, CA 94111
                                                             Phone: (415) 693-2000
                                                             Email: areddy@cooley.com

Michael G. Rhodes
101 California Street, 5th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
Email: rhodesmg@cooley.com

Ian Shapiro
55 Hudson Yards
New York, NY 10001
Phone: (212) 479-6000
Email: ishapiro@cooley.com

*Counsel for Defendants Noom, Inc. and Artem Petakov*

248457894