UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------- X
                                                      :
MOJO NICHOLS, SUSAN BREWSTER,                         :      Case No. 1:20-CV-03677 (LGS) (KHP)
DUANE DEA, MARYANNE DERACLEO,                         :
KAREN KELLY, REBECCA RICHARDS,                        :
JENNIFER SELLERS, and STACY                           :
SPENCER,                                              :
                                                      :
Individually and on Behalf of All Others             :
Similarly Situated,                                   :
                                                      :
                                 Plaintiffs,          :
                                                      :
                        v.                            :
                                                      :
NOOM, INC., ARTEM PETAKOV, and                        :
JOHN DOES 1 TO 5,                                     :
                                                      :
                      Defendants.                     :
                                                      X
---------------------------------------------------

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE THE PROTECTIVE ORDER, OR IN THE ALTERNATIVE, FOR A FURTHER PROTECTIVE ORDER TO PRECLUDE PLAINTIFFS FROM USING NOOM'S CONFIDENTIAL INFORMATION TO CONTACT ABSENT PUTATIVE CLASS MEMBERS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 3

LEGAL ARGUMENT ............................................................................................... 5

      I.      Plaintiffs' Proposal Violates the Stipulated Protective Order................................ 6

      II.     In the Alternative, the Court Should Issue a New Protective Order
              Precluding Plaintiffs from Using Confidential Information to Contact Fact
              Witnesses. ........................................................................................................ 9

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apex Oil Co. v. DiMauro*,
 110 F.R.D. 490 (S.D.N.Y. 1985) ............................................................................................10

*Beaton v. Verizon N.Y., Inc.*,
 No. 20-672, 2020 WL 6449235 (E.D.N.Y. Nov. 3, 2020) ...............................................13, 15

*Benavides v. Serenity Spa NY, Inc.*,
 166 F. Supp. 3d 474 (S.D.N.Y. 2016)....................................................................................12

*Calabrese v. CSC Holdings, Inc.*,
 No. 02-5171, 2007 WL 749690 (E.D.N.Y. Mar. 7, 2007).....................................................11

*Charles v. Nationwide Mut. Ins. Co.*,
 No. 09-94, 2010 WL 7132173 (E.D.N.Y. May 27, 2010) .....................................................13

*Duffy v. Illinois Tool Works Inc.*,
 No. 15-7407, 2018 WL 1335357 (E.D.N.Y. Mar. 15, 2018).........................................6, 12, 13

*Gulf Oil Co. v. Bernard*,
 452 U.S. 89 (1981)...................................................................................................................7

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*,
 929 F.2d 81 (2d Cir. 1991)......................................................................................................7

*Johnson v. Bryco Arms*,
 224 F.R.D. 536 (E.D.N.Y. 2004) ............................................................................................6

*Kaufman v. Edelstein*,
 539 F.2d 811 (2d Cir. 1976)..................................................................................................10

*Oppenheimer Fund v. Sanders*,
 437 U.S. 340 (1978)...............................................................................................................12

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
 No. 06-6198, 2007 WL 1521117 (S.D.N.Y. May 24, 2007) .................................................15

*United States v. Amodeo*,
 71 F.3d 1044 (2d Cir. 1995).....................................................................................................7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

Federal Rule of Civil Procedure
    26....................................................................................................................................10

Pursuant to this Court's June 16 and July 1, 2021 Case Management Conference Orders (ECF Nos. 346, 361), Defendants Noom, Inc. and Artem Petakov (collectively, "Noom") request that this Court enforce the Parties' current Protective Order, (ECF No. 58), or in the alternative, seek a further protective order barring Plaintiffs from using the personal identifying information ("PII") of individual Noom users reflected in Noom's internal documents to solicit absent putative class members as potential fact witnesses or for any other purposes.

## INTRODUCTION

Plaintiffs in this action intend to use private and highly sensitive user information produced in discovery to contact individual Noom users and solicit their involvement in the underlying class action lawsuit. Notably, Plaintiffs likely would not have ever even obtained confidential user contact information had they not promised this Court and Noom *months ago* that they would not use that information to solicit absent class members. Not only does Plaintiffs' bait-and-switch strategy violate the Parties' Protective Order and their prior commitments to Noom and this Court, it is a gross and wholly unnecessary invasion of privacy that this Court should not countenance.

As a weight-loss app designed to help users improve their physical, mental, and emotional well-being, Noom maintains both PII and personal health information ("PHI") of its users. This includes, for example, a customer's email address, physical address, age, weight, and gender—coupled with the most intimate details of their private lives, such as mental health issues, diseases, diagnoses, and pre-existing health conditions. Customers disclose this information to Noom for the sole purpose of using Noom's program and they rely on Noom to safeguard their privacy interests. Although Noom has agreed, at this Court's direction, to disclose highly sensitive user information to Plaintiffs by designating it as Highly Confidential—Attorneys' Eyes Only under the Parties' Protective Order, it did so with the expectation that Plaintiffs would respect the privacy rights of individual Noom users. Noom brings this motion to protect those interests and enforce

-1-

the rights of its users, who have not consented to have their information misappropriated by Plaintiffs' counsel or be targeted as a potential witness in this lawsuit.

Noom does not object to Plaintiffs contacting absent class members using information in the public domain or otherwise available to Plaintiffs' counsel. Noom's requested relief is much more limited: As to Noom users who have not placed their private information in the public domain, and given the privacy issues at stake, Noom merely requests that this Court issue a protective order prohibiting Plaintiffs and their counsel from using confidential customer PII produced in discovery to solicit fact witnesses or to contact putative class members for fact gathering or investigatory purposes. Noom's requested relief is appropriate for several reasons. First, Plaintiffs' conduct would violate the operative Protective Order in this case and intrude upon the privacy interests of absent class members. Second, even if the Court found that this conduct is not governed by the existing protective order, good cause exists to issue a further protective order. Plaintiffs' contemplated outreach is contrary to their representations to Noom and this Court that they would not use confidential customer information to make unsolicited contact with absent class members, which is memorialized in the Parties' ESI protocol. Had Plaintiffs not made those assurances, well-established law in this Circuit demonstrates that Noom would have been successful in opposing the production of this contact information. Thus, Plaintiffs would have never had access to this information at all and Noom would not have needed to bring this Motion. And finally, Plaintiffs have not shown they need to use confidential customer contact information to elicit fact witness testimony in support of their claims. Not only have they failed to identify any particular information they need from absent class members, Plaintiffs' counsel have also repeatedly claimed to have access to numerous other allegedly aggrieved former Noom users in connection with this action.

## FACTUAL BACKGROUND

Two separate and independent agreements preclude use of confidential customer information in the manner Plaintiffs contemplate.

First, the Parties' Protective Order defines Confidential Information, in part, as "sensitive non-public information" for which "counsel determines, in good faith, that such designation is necessary to protect the interests of the client." (ECF No. 58 at 1.) The Order also expressly prohibits the sharing of any information, including PII, contained in documents that are marked "Confidential Information," except to the following persons:

a. The requesting party and counsel, including in-house counsel;

b. Employees of such counsel assigned to and necessary to assist in the litigation;

c. Consultants or experts assisting in the prosecution or defense of the matter, to the extent deemed necessary by counsel; and

d. The Court (including the mediator, or other person having access to any Confidential Information by virtue of his or her position with the Court).

(*Id.* at 2.) Notably, the Protective Order does not contain an exception for authors or owners of the Confidential Information.

To further ensure that Noom's and its users' Confidential Information is appropriately protected, the Protective Order requires the disclosing party to advise any recipient of the confidential nature of such information before disclosure:

Prior to disclosing or displaying the Confidential Information to any person, counsel must:

a. Inform the person of the confidential nature of the information or documents;

b. Inform the person that this Court has enjoined the use of the information or documents by him/her for any purpose other than this litigation and has enjoined the disclosure of the information or documents to any other person; and

> c. Require each such person to sign an agreement to be bound by this Order
> in the form attached hereto.

(*Id.*)

Second, the Parties spent five months negotiating and litigating disputes regarding the electronically stored information protocol ("ESI Protocol") in this case.  The final ESI Protocol issued by this Court permits only limited PII redactions, specifically for "all but the last four digits of social security numbers and the last four digits of full credit card numbers of non-parties."  (ECF No. 146 at 16.)  That protocol further provides that, "[t]he Parties shall meet and confer in good faith to the extent they identify additional items that may be suitable for relevance redactions." (*Id.*)  Notably, Plaintiffs opposed Noom's request to apply PII relevancy redactions on the grounds that such redactions were unnecessary because Plaintiffs' counsel would "*not use produced personal information to solicit representation of absent class members*."  (*Id.* (emphasis added).) In the course of litigating the ESI Protocol, this Court observed that personal identifying information of individual Noom users could receive an Attorneys' Eyes Only designation.  (Oct. 16, 2020 Hr'g Tr. at 69:4-5 ("there could be certain things that are attorney's eyes only"); Nov. 10, 2020 Hr'g Tr. at 11:19-20 (noting that "social security and credit card information" would "absolutely" be Attorneys' Eyes Only).)

Notwithstanding Plaintiffs' commitments in the existing Protective Order and counsel's representations to this Court, Noom recently learned on June 15, 2021 that Plaintiffs intended to disclose Confidential Information to putative Class Members by using their PII to contact them regarding this lawsuit.  To date, Plaintiffs have not justified their position by: (1) explaining how this strategy is not prohibited by the Protective Order or is permissible under the ESI Protocol; (2) providing any legal authority that would justify their attempt to contact absent class members

prior to class certification; and (3) articulating why disclosure of this Confidential Information is necessary to develop their claims in this action.

On June 16, during the Parties' Case Management Conference before this Court, counsel for Noom explained that "Noom is producing many internal documents with sensitive PII including users' full names, their age, their weight, their gender, their zip code, and also their email addresses." (June 16, 2021 Hr'g Tr. at 80:9-12.)  Noom's counsel further noted that Noom values user privacy, and the use of this information to involve unsuspecting Noom users in the underlying lawsuit is highly problematic, as "users have no idea that their email address and their personal information [are] being turned over to plaintiffs' counsel." (*Id.* at 80:23-81:2.)  Consistent with the Court's direction, Noom was "rely[ing] on Plaintiffs treating [this information] as attorneys' eyes only" and viewed this strategy as a "violation of the protective order" and "contrary to the spirit of the agreement that plaintiffs agreed to with Noom." (*Id.* at 81:3-12.)  Noom thus requested that this Court issue an order directing Plaintiffs not to use customer contact information and other personal information from Noom's internal documents to make unsolicited contact with putative class members. (*Id.* at 81:2-25.)

In response, Plaintiffs' counsel stated that they owe a fiduciary duty to the class and that their outreach at this time is appropriate because they could always "move for interim class counsel." (*Id.* at 82:18.)  Plaintiffs' counsel further noted that this is part of their "investigation" and "obligation to uncover every stone." (*Id.* at 82:19-20.)  This Court subsequently requested full briefing on the matter and ordered Plaintiffs not to "use the information from the production for outreach" until further order from the Court.  (*Id.* at 83:9.)

## LEGAL ARGUMENT

Plaintiffs seek permission to use any PII obtained in discovery to solicit absent class

members as fact witnesses, even before a class has been certified. Plaintiffs' counsel's proposal directly violates the Parties' Protective Order. Even if the Court finds that the Protective Order does not expressly preclude this conduct, there is good cause for the Court to issue a new protective order, as Plaintiffs' attempt to use confidential customer PII in this manner runs counter to their representations to Noom and this Court, is contrary to case law precluding production of putative class member contact information in analogous contexts, and is unnecessary for Plaintiffs to develop their claims at this stage of the case.

## I.   <u>Plaintiffs' Proposal Violates the Stipulated Protective Order.</u>

As explained above, the Protective Order prevents the disclosure to third parties of information designated as "Confidential" or "Highly Confidential - Attorneys' Eyes Only." Noom designated any documents containing user Personal Health Information as "Highly Confidential – Attorneys' Eyes Only." Further, the documents Noom produced containing PII are designated at a minimum as "Confidential." Any use of that personal health information or even customer contact information—whether an email address, mailing address, or phone number—would automatically run afoul of the Protective Order, both because it would violate the requirement that such information be disclosed only to a select few enumerated persons, (*see* ECF No. 58 at 2 (indicating only counsel, employees of counsel, consultants, experts, and the Court are permitted to view "Confidential Information")), and because such information would necessarily require an informed consent and a signature of an agreement to be bound, (*id.*).

"It is assumed that, in general, a purchaser of any commodity has a desire for privacy." *Johnson v. Bryco Arms*, 224 F.R.D. 536, 542 (E.D.N.Y. 2004). Consistent with this principle, the protective order safeguards the privacy rights of absent class members, which the Second Circuit has held should "weigh heavily in a court's decision as to whether to withhold confidential information." *Duffy v. Illinois Tool Works Inc.*, No. 15-7407, 2018 WL 1335357, at *6 (E.D.N.Y.

Mar. 15, 2018) ("[P]rivate individuals have a privacy interest in avoiding disclosure of their names and addresses") (citing *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) and *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 87 (2d Cir. 1991)).

When a Noom user signs up for Noom, she provides Noom with her PII for the exclusive purpose of using the product that Noom offers and with the understanding that Noom will keep this information secure.  That user, in turn, relies on Noom to safeguard this Confidential Information.  Indeed, Noom's Privacy Policy represents to users that "privacy is important to Noom, and Noom is committed to carefully managing your individually identifiable information [] in connection with the Services that Noom provides." *Privacy Policy*, Noom, https://web.noom.com/terms-and-conditions-of-use/noom-privacy-policy/ (last visited July 7, 2021).

Noom anticipates that Plaintiffs may argue that the information is not confidential because (1) it will only be used to contact the absent class member who presumably owns the Confidential Information at issue; and (2) counsel agrees not to discuss any sensitive personal information with the absent class member.  Neither argument is availing.[1]

To start, there is no exception in the Protective Order that permits disclosure of Confidential Information to a third party that may have disclosed that information to Noom. Further, should Plaintiffs be permitted to use personal contact information to communicate with absent class members, it will be impossible for Noom or the Court to control the flow of that information and determine whether Confidential Information—including the users' height, weight,

---

[1] Noom also anticipates that Plaintiffs may argue that Noom is attempting to chill communications with absent class members in violation of their First Amendment rights. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-104 (1981) (observing that a "communications ban that interferes with the formation of a class or the prosecution of a class action" is disfavored).  This argument is a red herring—Noom does not oppose Plaintiffs attempting to contact putative class members, but merely opposes their use of Noom's (and customers') confidential information to do so.

age, and medical conditions—had been disclosed (inadvertently or otherwise).

Plaintiffs' strategy to leverage confidential third-party information to further their factual investigation is likely to be burdensome and harassing to individual Noom users and will cause numerous problems that the Protective Order was designed to prevent.   As Noom has previously explained to the Court, many of its internal documents reflect customer email addresses and other personal identifying information, such as the users' full name, age, height, weight, geographic location, medical issues, and highly personal communications with Noom coaches.   Should counsel be permitted to use PII in the manner they propose, they are likely to choose specific users' email addresses from the production and contact those users to participate in a potential interview.[2] If the user consents to an interview, Plaintiffs' counsel may disclose their awareness of highly personal details, such as where the individual user lives, that this user has struggled with weight loss, has recently gone through a divorce, has no money in her bank account, and has a thyroid condition, which contributes to weight gain and is driving up medical bills.  All of this information would be at Plaintiffs' counsel's disposal, and if they are allowed to contact putative class members, there is no feasible way of controlling how this information will be used or conveyed (intentionally or inadvertently) to individual users.[3]

The complications do not end there.  Not only is counsel's possession of these highly personal details likely to be distressing to individual Noom users, Plaintiffs' counsel could easily inadvertently reveal Confidential Information about a *different* putative class member when conducting interviews of those users.  As just one example, counsel would necessarily be assuming

---

[2] In past instances, such as in their solicitation of former Noom employee Yoko Gibo, Plaintiffs' counsel has adopted highly aggressive outreach tactics—sending repeated interview requests and indicating an intent to serve a subpoena if those requests to voluntarily participate in the lawsuit are ignored or declined.  (Low Decl. Ex. A.)

[3] This is especially concerning given Plaintiffs' counsel's proclivity for making unannounced disclosures of Noom's confidential information in open court.  (Feb. 4, 2021 Hr'g Tr. at 10:5-9.)

that the owner of the email address used to register for a particular Noom account is also the owner of the Confidential Information that was disclosed to Noom.   Further, user Confidential Information often exists in a compilation and may be commingled and confused with other users' PII.  (June 16, 2021 Hr'g Tr. at 44:16-45:23.)  Again, all of this will be impossible to police and Plaintiffs' counsel would have unfettered discretion in how to use the highly sensitive information contained in Noom's internal documents.

Further compounding the potentially damaging effects of Plaintiffs' outreach is the fact that some of the documents or communications containing user PII may also contain user PHI. Noom is required to maintain the confidentiality of this user information HIPAA.  Although Noom has taken on the significant burden and expense of reviewing each document for PHI and redacting such information appropriately, the reality is that, due to human error, some information may be produced under the designation Highly Confidential – Attorneys' Eyes Only.  (Nov. 10, 2020 Hr'g Tr. at 7:11-15.)  This is a reality of complex and expansive document production, and Noom and the Court thus rely on the existence of an Attorney's Eyes Only designation to safeguard user privacy interests.  *Supra* pp. 4-5.

Because Plaintiffs' proposed conduct violates the plain language of the Parties' existing Protective Order and is likely to violate the privacy rights of unwitting Noom users, Noom respectfully requests that the Court enforce the existing Protective Order and preclude Plaintiffs from using Confidential Information in internal Noom documents to conduct interviews of putative class members and solicit fact witnesses.

II.     **In the Alternative, the Court Should Issue a New Protective Order Precluding Plaintiffs from Using Confidential Information to Contact Fact Witnesses.**

Even if the Court were to conclude that the Parties' Protective Order does not specifically prohibit Plaintiffs' intended use of PII in Noom's internal documents, good cause exists to issue a

new protective order precluding such outreach.

Federal Rule of Civil Procedure 26 allows for the issuance of a protective order limiting the scope of discovery, upon motion by a party, if "good cause" is shown.  Fed. R. Civ. P. 26(c)(1). Specifically:

> A party . . . from whom discovery is sought may move for a protective order in the court where the action is pending . . . [and t]he court may , for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

Fed. R. Civ. P. 26(c)(1).  "Under Rule 26(c), the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought."  *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985) (citing *Kaufman v. Edelstein*, 539 F.2d 811, 821 (2d Cir. 1976)). Thus, "where a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies," the discovering party bears the burden to demonstrate the need for the information and the harm that it would suffer from denial of the information.  *Id*.  Applying these standards here, good cause exists to support the issuance of a protective order.

**First**, at the outset of discovery, Plaintiffs assured Noom and this Court that they would not use confidential customer information to make unsolicited outreach to absent class members. The ESI Protocol memorializes this agreement by stating that "Plaintiffs have agreed and shall not use produced personal information to solicit representation of absent class members."  (*See* ECF No. 146 at 16.)  Plaintiffs reiterated this commitment on the record when opposing Noom's request to apply relevancy redactions to shield irrelevant and highly sensitive customer information.  In particular, Plaintiffs' counsel Burkett McInturff asserted that "as long as we're agreeing not to

contact anybody, any potential class members to solicit them as plaintiffs, we don't think that there is an issue or a basis for there to be a redaction of PII." (Nov. 10, 2020 Hr'g Tr. at 6:13-17.)   In reliance on Mr. McInturff's representation, this Court denied Noom's request to apply relevancy redactions, stating as follows: "So, okay, my view is that there should be a presumption against relevancy redaction except for the agreed upon PHI. . . . Names I don't believe should be redacted, ***especially given that plaintiffs have agreed not to solicit individuals for purposes of being a lead class rep***." (*Id.* at 10:6-19 (emphasis added).)

Now that Noom has actually produced much of this information, Plaintiffs' counsel seek to violate the Court and Noom's expectations by claiming they are permitted to initiate unsolicited outreach to *interview* absent class members *without specifically soliciting representation*. That distinction has little practical significance—in either instance, Plaintiffs would be violating the privacy rights of absent class members by disclosing confidential information in Noom's production. *See Calabrese v. CSC Holdings, Inc.*, No. 02-5171, 2007 WL 749690, at *6 n.7 (E.D.N.Y. Mar. 7, 2007) (noting that courts "disfavor" the "tactic" of plaintiffs seeking the names of putative class members "in an attempt to broaden their class"). Further, the distinction Plaintiffs seek to draw is likely unworkable in practice. Plaintiffs' counsel have not confirmed that they would decline representation should the absent class member request representation after an initial interview, thus resulting in the same outcome Plaintiffs' original agreement was designed to avoid—i.e., use of Noom's confidential information to coordinate representation of additional absent class members.

**Second**, Plaintiffs' bait-and-switch approach to leverage customer contact information in Noom's internal documents is particularly unjust, as Noom could have successfully opposed production of user contact information in the first instance. Instead, Noom relied on Plaintiffs'

representations regarding their limited use of that information.

In *Oppenheimer Fund v. Sanders*, the Supreme Court held that production of class member names was not "within the scope of legitimate discovery." 437 U.S. 340, 354 & n.20 (1978). Although the Court did not hold that "class members' names and addresses [can never] be obtained under the discovery rules," those instances are limited to when the information relates to issues on class certification, such as numerosity. *Id.* ("[I]t may be doubted whether any of these purposes would require compilation of the names and addresses of *all* members of a large class").

Consistent with this holding, courts in this Circuit frequently reject efforts to compel the production of absent class member contact information before a class is certified "out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients" or because such requests are "cumulative" and "premature." *Benavides v. Serenity Spa NY, Inc.*, 166 F. Supp. 3d 474, 491 (S.D.N.Y. 2016). Accordingly, pre-certification disclosure of putative class member contact information is only appropriate where that information may be relevant to demonstrating the satisfaction of Rule 23 requirements. *Duffy*, 2018 WL 1335357, at *6 (citing *Oppenheimer Fund* 437 U.S. at 351) (observing that "the Supreme Court has held that the pre-certification production of class members' names is not compatible with Federal Rule 26's 'relevancy' standard.").

For example, in *Duffy*, the plaintiff sought to compel the production of contact information of Rain-X purchasers who complained to the defendants about the product as part of a putative consumer fraud class action under, *inter alia*, New York G.B.L. § 349. 2018 WL 1335357, at *1. As here, the parties in *Duffy* had entered into a protective order, which provided "that discovery designated as confidential shall not be publicly disclosed." *Id.* at *2. The plaintiff served interrogatories requesting the names and contact information of the complainants, and the

defendant responded by producing the complaints, but redacting the complainants' names and contact information. *Id.* at *3. In addressing the motion to compel, the Court held that the plaintiff was "not entitled to the unredacted information concerning third-parties," because the plaintiff "failed to proffer a concrete justification for the disclosure of unredacted complainant contact information." *Id.* at *6. Notably, the Court held that the redactions were proper because the complainants' contact information would not establish the appropriateness of class certification and the plaintiff was "effectively seek[ing] access to prospective putative class members, which necessarily implicate[d] concerns regarding potential client recruitment." *Id.*

Here, Plaintiffs do not meet the standard in *Oppenheimer* because they have not demonstrated a need to use confidential user information to prove their claims on a class-wide basis. During the June 16 Case Management Conference, Plaintiffs explained that they would like to reach out to putative class members "in the event that somebody has a story and seems like they have evidence." (June 16, 2021 Hr'g Tr. at 84:11-12.) But an individual Noom user's experience is highly unlikely to be relevant to Rule 23 issues "such as numerosity, common questions, and adequacy of representation." *Beaton v. Verizon N.Y., Inc.*, No. 20-672, 2020 WL 6449235, at *3 (E.D.N.Y. Nov. 3, 2020). To the contrary, the reality is that each user's experience is individualized and will not lead to a showing that Plaintiffs' claims can be proven on a class-wide basis. *See Duffy*, 2018 WL 1335357, at *6 (denying plaintiff's request for unredacted contact information where he could not establish that information was relevant to appropriateness of class certification); *Charles v. Nationwide Mut. Ins. Co.*, No. 09-94, 2010 WL 7132173, at *5-8 (E.D.N.Y. May 27, 2010) (similar).

Further, even if these individualized experiences were relevant, Plaintiffs have not demonstrated that they need ***confidential*** customer information to solicit absent class members.

To the contrary, by their own admissions, Plaintiffs have many other more legitimate means of obtaining the information they seek.

Plaintiffs have repeatedly claimed that "[s]ince [they] commenced this action in May 2020, Noom customers have contacted [their] firm almost daily about this case." (ECF 110 at 1; *see also* Dec. 17, 2020 Hr'g Tr. at 18:25-19:1 (Plaintiffs' counsel claiming they "have people from [various] states contacting [them] regularly, and almost daily").) Additionally, Plaintiffs disclosed the existence of two absent class members, Kayla Black and Cheryl Courvoisier, who have purportedly engaged Plaintiffs' counsel for representation in this matter. (*See* Low Decl. Ex. B.) Further, Plaintiffs purport to have access to multiple ***public*** sources of customer complaints against Noom they can leverage for fact gathering, including sources referenced in Plaintiffs' Third Amended Complaint, such as the Better Business Bureau's website, BirdEye.com, RevDex.com, and the iTunes and Google Play stores. (ECF No. 167 ¶¶ 97-98.) And lastly, Plaintiffs' counsel have issued press releases and another public statements about the lawsuit—presumably in an attempt to solicit voluntary participation from absent class members. *See, e.g.*, *Noom Hidden Upfront Charges Investigation*, Wittels McInturff Palikovic, https://wittelslaw.com/investigations/noom-hidden-upfront-charges-investigation (last visited July 7, 2021) ("If you were charged a large upfront payment by Noom when you only intended to try a no-risk trial membership, we urge to contact a class action attorney at WMP for a free case evaluation."); Wittels McInturff Palikovic, *Noom Inc Diet App Co-Founder & President Artem Petakov Sued in $100M Class Action for Auto-Enrollment Scam*, (Dec. 2, 2020), https://www.einnews.com/pr_news/531923536/noom-inc-diet-app-co-founder-president-artem-petakov-sued-in-100m-class-action-for-auto-enrollment-scam

Plaintiffs in this action have repeatedly requested discovery that is overbroad, duplicative,

and not proportional to the needs of this case. (*See* ECF No. 145 (granting protective order as to numerous requests for production and stating that "the Court finds that many of Plaintiffs' requests are not tailored in a manner consistent with Rule 26 and Rule 34 of the Federal Rules insofar as they are overbroad and seek information disproportionate to the needs of the case"); ECF No. 195 (noting that "many of the [Plaintiffs'] requests discussed were redundant of and subsumed within productions previously ordered by the Court"); July 16, 2021 Hr'g Tr. at 33:3-4 (observing that "I think what Mr. McInturff is saying he wants to collect every single last complaint").) Likewise, Plaintiffs now want access to *every* potential Noom users' "story," even if it requires violating the safeguards contemplated in the Protective Order and ESI Protocol. This is simply not necessary or appropriate when the same information is available to them without burdening absent class members with unsolicited, unexpected, and potentially unwanted outreach. *See Beaton*, 2020 WL 6449235, at *2-3 (noting that "the defendant must be protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas" and declining to compel production of putative class member contact information where the plaintiff could not show how the information was relevant and there were less burdensome methods of obtaining it (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-6198, 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007)).)

Because Noom has already produced this information in reliance on Plaintiffs' counsel's representation that they would not use it to make unwanted contact to absent class members, and because Plaintiffs have not shown a need to make such unsolicited outreach to develop their claims, good cause exists to issue a protective order prohibiting Plaintiffs' counsel from using customer contact information in this fashion.

## CONCLUSION

For the foregoing reasons, Noom respectfully requests that this Court prohibit Plaintiffs

from using any personal identifying information to engage in third party outreach, including any

fact witness investigation or related discovery.


Dated: New York, New York
July 7, 2021

Respectfully submitted,

COOLEY LLP

By: */s/ Charles H. Low*
Charles Low
55 Hudson Yards
New York, NY 10001
Phone: (212) 479-6000
Email: chlow@cooley.com

Aarti Reddy
Michael G. Rhodes
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
Email: areddy@cooley.com

Ian Shapiro
55 Hudson Yards
New York, NY 10001
Phone: (212) 479-6000
Email: ishapiro@cooley.com

*Counsel for Defendants Noom, Inc. and*
*Artem Petakov*