**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOJO NICHOLS, SUSAN BREWSTER, DUANE DEA, MARYANNE DERACLEO, KAREN KELLY, REBECCA RICHARDS, JENNIFER SELLERS, and STACY SPENCER, <br><br> *Individually and on Behalf of All Others Similarly Situated*, <br><br> Plaintiffs, <br><br> v. <br><br> NOOM, INC., ARTEM PETAKOV, and JOHN DOES 1 TO 5, <br><br> Defendants. | No. 20 Civ. 3677 (KHP) |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AND RELATED RELIEF**

---

**WITTELS MCINTURFF PALIKOVIC**
Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
Steven D. Cohen
Ethan D. Roman
Jessica L. Hunter
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com
sdc@wittelslaw.com
edr@wittelslaw.com
jlh@wittelslaw.com

Dated:  February 11, 2022          *Lead Counsel for Plaintiffs and the Class*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

I.     FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

      A.    Factual Allegations and Plaintiffs' Pre-Suit Investigation ...................... 2

      B.    Litigation and Settlement Negotiations ................................................... 3

II.    SUMMARY OF THE SETTLEMENT TERMS .......................................... 6

      A.    Eligible Class Members ........................................................................... 6

      B.    The Settlement Amount and Allocation Plan .......................................... 7

      C.    Business Practice Changes ....................................................................... 8

      D.    Mutual Releases ..................................................................................... 10

      E.    The Settlement Administrator ................................................................ 10

III.   RULE 23 CLASS ACTION SETTLEMENT PROCEDURE AND NOTICE PLAN ..... 11

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ............... 13

      A.    Adequacy of Representation:  Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class ..................................... 15

      B.    Presence of Arm's Length Negotiations:  The Parties' Vigorous Negotiations Were Arm's Length at All Times ........................................ 17

      C.    Adequate Relief for the Class: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation ..... 18

           1.   Litigation Through Trial  Would Be Complex,  Costly, and Long (*Grinnell* Factor 1) ....................................................... 18

           2.   Plaintiffs  Face Real Risks if the Case Proceeds  (*Grinnell* Factors 4 to  6) ... 19

      D.    Effectiveness of the Proposed Method of Distributing Relief: A Simple Claims Process and a Fair Allocation Plan ........................................... 21

      E.    The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Request is Well Within the Norms of this Circuit ............................. 23

F.  Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Alleged Damages and is Reasonable ...... 27

G.  The Remaining *Grinnell* Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate ................................................................................ 27

  1.  The Reaction of the Class (*Grinnell* Factor 2) .................................... 27

  2.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ................................................. 28

  3.  Although Defendants Likely Could Withstand a Greater Judgment, That Does Not Suggest the Settlement is Unfair (*Grinnell* Factor 7) ........ 28

  4.  The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ..... 28

V.   THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED ...................... 30

A.  Numerosity ............................................................................................... 32

B.  Commonality ............................................................................................ 32

C.  Typicality ................................................................................................. 33

D.  Adequacy ................................................................................................. 33

E.  Certification is Proper Under Rule 23(b) ................................................ 34

  1.  Common Questions Predominate ....................................................... 34

  2.  A Class Action Is a Superior Mechanism for Adjudicating Claims ................. 35

VI.  PLAINTIFFS' LEAD COUNSEL SHOULD BE APPOINTED CLASS COUNSEL .... 36

VII. THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED .......................................................................................... 37

CONCLUSION .................................................................................................................. 39

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (1997) ........................................................................................... 34, 35

*Azogue v. 16 for 8 Hospitality LLC*
   No. 13 Civ. 7899 (TPG), 2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016) ............................... 25

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*
   222 F.3d 52 (2d Cir. 2000) ................................................................................. 15

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*
   504 F. Supp. 3d 265 (S.D.N.Y. 2020) ...................................................................... 26

*Bell v. Pension Comm. of ATH Holding Co.*
   No. 15 Civ. 2062 (TWP) (MPB), 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)...................... 24

*Bryant v. Potbelly Sandwich Works*
   No. 17 Civ. 7638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) .......................... 18

*Carnegie v. Household Int'l., Inc.*
   376 F.3d 656 (7th Cir. 2004)............................................................................... 35

*Ceka v. PBM/CMSI Inc.*
   No. 12 Civ. 1711 (DAB), 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014)................................ 17

*Christine Asia Co., Ltd. v. Yun Ma*
   No. 15 MD 02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .... 13, 22, 28, 38

*City of Detroit v. Grinnell Corp.*
   495 F.2d 448 (2d Cir. 1974)............................................................................ 14, 29

*Consol. Rail Corp. v. Town of Hyde Park*
   47 F.3d 473 (2d Cir. 1995).................................................................................. 32

*D'Amato v. Deutsche Bank*
   236 F.3d 78 (2d Cir. 2001).............................................................................. 18, 28

*de Lacour v. Colgate-Palmolive Co.*
   338 F.R.D. 324 (S.D.N.Y. 2021) .................................................................. 34, 35, 36

*Delijanin v. Wolfgang's Steakhouse Inc.*
  No. 18 Civ. 7854 (LJL) (KHP), 2021 WL 535635 (S.D.N.Y. Feb. 12, 2021).............. 19, 20, 28

*Denney v. Deutsche Bank AG*
  443 F.3d 253 (2d Cir. 2006) ...................................................................................... 13

*Dial Corp. v. News Corp.*
  314 F.R.D. 108 (S.D.N.Y. 2015) ................................................................................ 16

*Emeterio v. A&P Rest. Corp.*
  No. 20 Civ. 970 (KHP), 2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) ............................. *passim*

*Famular v. Whirlpool Corp.*
  No. 16 Civ. 944 (VB), 2019 WL 1254882 (S.D.N.Y. Mar. 18, 2019).................................... 35

*Ferrick v. Spotify USA Inc.*
  No. 16 Civ. 8412 (AJN), 2018 WL 2324076 (S.D.N.Y. May 22, 2018) .................................. 10

*Fleisher v. Phoenix Life Ins. Co.*
  No. 14 Civ. 8714 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................... 10, 24

*FTC v. Age of Learning, Inc.*
  No. 20 Civ. 7996, ECF No. 4-1 (C.D. Cal. Sept. 1, 2020)......................................... 30

*FTC v. Bunzai Media Grp., Inc.*
  No. 15 Civ. 4527 (GW) (PLA), ECF No. 676 (C.D. Cal. June 27, 2018) ............................... 30

*FTC v. Triangle Media Corp.*
  No. 18 Civ. 1388 (LAB), ECF Nos. 126–27 (S.D. Cal. May 30, 2019) .................................. 30

*FTC v. Wilms*
  No. 11 Civ. 828 (MP), ECF No. 117 (W.D. Wash. Mar. 6, 2012) .......................................... 30

*FTC v. XXL Impressions LLC*
  No. 17 Civ. 67 (NT), ECF No. 42 (D. Me. Sept. 13, 2017)...................................... 30

*Fteja v. Nusret New York LLC*
  No. 19 Civ. 429, 2020 WL 1915325 (S.D.N.Y. Mar. 5, 2020)................................... 31

*George v. Shamrock Saloon II, LLC*
  No. 17 Civ. 6663 (RA) (HBP), 2019 WL 8106153 (S.D.N.Y. Aug. 7, 2019)........................ 36

*George v. Shamrock Saloon II, LLC*
  No. 17 Civ. 6663 (RA) (HBP), 2020 WL 133621 (S.D.N.Y. Jan. 13, 2020) ........................ 36

*George v. Shamrock Saloon II, LLC*
   No. 17 Civ. 6663 (RA) (SLC), 2021 WL 3188314 (S.D.N.Y. July 28, 2021)................... 33, 38

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*
   317 F.R.D. 374 (S.D.N.Y. 2016) ...................................................................................... 33

*Gonzalez v. PB Hudson LLC*
   No. 17 Civ. 2010 (VSB), 2018 WL 11255318 (S.D.N.Y. Oct. 10, 2018) .............................. 13

*Guevoura Fund Ltd. v. Sillerman*
   No. 15 Civ. 7192 (CM), 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...................... 17, 20, 30

*Habelito v. Guthy-Renker*
   No. BC499558 (Sup. Ct. Los Angeles Cty. Feb. 1, 2017) ......................................................... 30

*Haddock v. Nationwide Financial Servcs, Inc.*
   No. 01 Civ. 1552 (SRU) (WIG), ECF No. 601 (D. Conn. Apr. 9, 2015) ................................ 25

*In re Allergan PLC Sec. Litig.*
   No. 18 Civ. 12089 (CM) (GWG), 2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) .................... 33

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*
   No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..................................... 19

*In re Austrian & German Bank Holocaust Litig.*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................................ 18

*In re Buspirone Antitrust Litig.*
   No. 01 MD 1413 (JGK), 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 17, 2003)................ 25

*In re Currency Conversion Fee Antitrust Litig.*
   No. 01 MDL 1409 (WHP), 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)................................ 29

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*
   343 F. Supp. 3d 394 (S.D.N.Y. 2018).............................................................................. 20, 28

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
   No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................ 26

*In re Giant Interactive Grp., Inc. Sec. Litig.*
   279 F.R.D. 151  (S.D.N.Y. 2011) .......................................................................................... 26

*In re GSE Bonds Antitrust Litig.*
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................................. *passim*

*In re GSE Bonds Antitrust Litig.*
   No. 19 Civ. 1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ................................... 29

*In re Initial Pub. Offering Sec. Litig.*
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...................................................................................... 25

*In re J.P. Morgan Stable Value Fund ERISA Litig.*
   No. 12 Civ. 2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ................................ 25

*In re Kind LLC "Healthy and All Nat." Litig.*
   337 F.R.D. 581 (S.D.N.Y. 2021) .............................................................. 34, 35, 36

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*
   327 F.R.D. 483 (S.D.N.Y. 2018) .............................................................................................. 15

*In re Lumber Liq. Chinese-Mfd. Flooring Prods. Mktg., Sales Prac. & Prods. Liab. Litig.*
   952 F.3d 471 (4th Cir. 2020) ................................................................................................... 27

*In re Namenda Direct Purchaser Antitrust Litig.*
   462 F. Supp. 3d 307 (S.D.N.Y. 2020) ..................................................................................... 20

*In re Painewebber Ltd. P'ships Litig.*
   171 F.R.D. 104 (S.D.N.Y 1997) ....................................................................................... 20, 29

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................................ 15, 27

*In re Restasis Antitrust Litig.*
   No. 18 MD 2819 (NG) (LB), 2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) ............................ 25

*In re Signet Jewelers Ltd. Sec. Litig.*
   No. 16 Civ. 06728 (CM) (SDA), 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................... 29

*In re U.S. Foodservice, Inc. Pricing Litig.*
   No. 3:07-md-1894 (AWT), ECF No. 521 (D. Conn. Dec. 9, 2014) ......................................... 25

*In re Visa Check/Master Money Antitrust Litig.*
   280 F.3d 124 (2d Cir. 2001) .............................................................................................. 34, 35

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*
   No. 08 WP 65000 (CAB), 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ............................ 27

*In re WorldCom, Inc. Sec. Litig.*
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................................... 22

*Jackson v. Bloomberg, L.P.*
298 F.R.D. 152 (S.D.N.Y. 2014) ........................................................................ 15

*King v. Bumble Trading Inc.*
No. 18 Civ. 6868 (NC), ECF No. 108-1 (N.D. Cal. June 22, 2020) ........................................ 30

*Lea v. Tal Educ. Grp.*
No. 18 Civ. 5480, 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ..................................... *passim*

*Marisol A. v. Giuliani*
126 F.3d 372 (2d Cir. 1997) ................................................................................... 32

*Mayhew v. KAS Direct, LLC*
No. 16 Civ. 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018) ................................... 32

*McCoy v. Health Net, Inc.*
569 F. Supp. 2d 448 (D.N.J. 2008) ........................................................................ 24

*Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*
No. 16 Civ. 5265 (JPO), 2021 WL 4263717 (S.D.N.Y. Sept. 20, 2021) ................................. 20

*Osberg v. Foot Locker, Inc.*
No. 07 Civ. 1358 (KBF), ECF No. 426 (S.D.N.Y. June 6, 2018) ............................................ 25

*Pearlstein v. BlackBerry, Ltd.*
No. 13 Civ. 7060 (CM), 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ..................................... 35

*Puddu v. 6D Global Techs., Inc.*
No. 15 Civ. 8061 (AJN), 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ............... 17, 19, 23, 29

*Quow v. Accurate Mech. Inc.*
No. 15 Civ. 09852, 2018 WL 3368673 (S.D.N.Y. July 10, 2018) .............................. 19, 21, 28

*Robidoux v. Celani*
987 F.2d 931 (2d Cir. 1993) ................................................................................... 33

*Santiago v. Rivka, Inc.*
No. 15 Civ. 9184 (JLC), 2017 WL 11566946 (S.D.N.Y. Aug. 10, 2017) ................................ 25

*Sykes v. Harris*
No. 09 Civ 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) .................................... 24

*Tennille v. W. Union Co.*
No. 09 Civ. 938 (MSK) (KMT), 2013 WL 6920449 (D. Colo. Dec. 31, 2013) ....................... 24

*Villella v. Chem. & Mining Co. of Chile, Inc.*
  333 F.R.D. 39 (S.D.N.Y. 2019) ................................................................................... 33

*Wagner v. NutraSweet Co.*
  95 F.3d 527 (7th Cir. 1996) ........................................................................................ 33

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) .................................................................................................... 32

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
  396 F.3d 96 (2d Cir. 2005) ......................................................................................... 30

*Williamson v. McAfee, Inc.*
  No. 14 Civ. 158 (EJD), ECF No. 114 (N.D. Cal. Feb. 3, 2017) ................................. 30

*Zivkovic v. Laura Christy LLC*
  329 F.R.D. 61 (S.D.N.Y. 2018) ....................................................................... 15, 32, 34

**Statutes**

15 U.S.C. § 8403 ................................................................................................................ 5

Cal. Bus. & Prof. Code § 17600 *et seq.* .......................................................................... 2

N.Y. Gen. Bus. L. § 349 ............................................................................................... 2, 4

**Other Authorities**

F.T.C., *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*,
  (Sept. 2019) ............................................................................................................... 21

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, 3d. Ed.
  (2010) ......................................................................................................................... 24

**Rules**

FED. R. CIV. P. 23 .................................................................................................... *passim*

**Treatises**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*  (4th ed. 2002)............. 11, 13, 31

**INTRODUCTION**

Plaintiffs brought this consumer protection action to reform Noom's trial period and autorenewal billing practices and to recover customers' unintended payments stemming from those practices. Following more than two years of extensive investigation and vigorous litigation, the parties have reached a resolution that substantially achieves this lawsuit's goal: a $56,000,000 cash fund, a further $6,000,000 in subscription fee credits, and robust programmatic relief that the parties and their respective business analysts value at between $31,000,000 and $120,000,000.

As the Court is well-aware, this settlement was no easy feat. It is the result of extensive discovery (the production of more than 100,000 documents and the analysis of *billions* of data points), and the contributions of fifteen consultants and experts in the fields of autorenewal litigation, database discovery and data science, statistics, ESI discovery, consumer behavior, and customer satisfaction. The settlement was also reached only after a dozen depositions, fourteen hearings on contested matters, twenty contested discovery motions and applications, ten joint or simultaneous discovery-related letter briefs, and more than a year of arm's length negotiations overseen by both Southern District of New York Magistrate Judge Katharine H. Parker and a noted JAMS mediator and former Chief Magistrate Judge of the Northern District of California, Edward A. Infante. Specifically, the parties held three mediation sessions with Judge Infante and twelve settlement conferences with Judge Parker, including a half-day mediation via Microsoft Teams on May 13, 2021, as well as a two-day, in-person mediation on September 13–14, 2021. As set forth below, these informed and careful negotiations overseen by experienced and forceful third-party neutrals yielded an excellent outcome for proposed class members ("Class Members").

The settlement also satisfies all criteria for preliminary approval under governing law. Accordingly, Plaintiffs Mojo Nichols, Susan Brewster, Duane Dea, Maryanne Deracleo, Karen Kelly, Rebecca Richards, Jennifer Sellers, and Stacy Spencer ("Plaintiffs") respectfully request

that the Court endorse the proposed order granting preliminary settlement approval.  The proposed order is attached as Exhibit 6 to the Settlement Agreement.  Endorsing the proposed order will have the effect of (1) granting preliminary approval of the proposed settlement embodied in the Class Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A to the accompanying Declaration of Steven L. Wittels ("Wittels Decl."); (2) preliminarily certifying the proposed Class for settlement purposes; (3) approving the parties' comprehensive notice plan (hereafter, the "Notice") and directing its execution; (4) appointing Wittels McInturff Palikovic as Class Counsel ("Class Counsel"); and (5) scheduling the Final Approval Hearing.  Defendants Noom, Inc. and Artem Petakov ("Defendants" or "Noom") do not oppose this motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>Factual Allegations and Plaintiffs' Pre-Suit Investigation</u>

Plaintiffs and Class Members are consumers from across the United States who were charged for an autorenewing subscription to Noom's Healthy Weight diet program.  Plaintiffs allege that Noom's enrollment, autorenewal, and cancellation practices violated, *inter alia*, California's Automatic Purchase Renewal Statute, Cal. Bus. & Prof. Code § 17600 *et seq.* (the "ARL"), New York's General Business Law § 349 ("GBL § 349"), and the common law.  Fourth Amended Class Action Compl. ¶¶ 217–233, ECF No. 493.

Beginning in August 2019, Class Counsel launched a wide-ranging investigation into Class Members' claims, their damages, and the likelihood of obtaining class certification.  Wittels Decl. ¶ 13.  Class Counsel investigated Noom and its enrollment, autorenewal, and cancellation practices.  *Id.*  Class Counsel also conducted thorough research on consumers' responses to Noom's practices and oversaw in-depth interviews with current and former customers concerning, *inter alia*, Noom's trial period and autorenewal disclosures, cancellation practices, customer service practices, refund practices and policies, and other pertinent information.  *Id.*  Counsel obtained and

analyzed documents from Plaintiffs and other Noom customers and performed extensive factual and legal research into potential expert witnesses. *Id.* ¶ 14. In addition, Class Counsel conducted extensive research into the pertinent case law and facts in other public and private enforcement actions challenging autorenewal practices, as well as comprehensive legal research concerning the complexities of autorenewal class actions. *Id.*

### B. Litigation and Settlement Negotiations

On May 12, 2020, California resident Geraldine Mahood filed a Class Action Complaint in this Court on behalf of herself and a proposed class of similarly situated consumers. *Id.* ¶ 15. The Complaint sought restitution, compensatory and punitive damages, interest, injunctive relief, and attorneys' fees and costs. ECF No. 1 at 34–35. Plaintiffs subsequently amended their complaint four times. Wittels Decl. ¶ 15. On July 30, 2020, Plaintiffs filed their First Amended Class Action Complaint with Alexandra Burwood, Maryanne Deracleo, Jennifer Sellers, Rebecca Richards, Elvera Honore, Susan Brewster, Mojo Nichols, Melissa Cuevas, and Karen Kelly added as Plaintiffs. ECF Nos. 22, 23. *Id.* On November 5, 2020, Plaintiffs filed their Second Amended Class Action Complaint with Duane Dea and Stacy Spencer added as Plaintiffs. ECF No. 88. Plaintiffs filed their Third Amended Class Action Complaint on January 15, 2021, *see* ECF Nos. 149, 171, 174, further particularizing Plaintiffs' allegations of conduct challenged on a nationwide basis and incorporating emerging discovery. *Id.* Plaintiffs also filed two injunctive-only individual state court actions on May 27, 2021, *Dea, et al. v. Noom, Inc.*, No. RG21101244 (Cal. Super. Ct.), and *Deracleo, et al. v. Noom, Inc.*, No. 653475/2021 (N.Y. Cty. Sup. Ct.). Wittels Decl. ¶ 15.

On February 12, 2021, Defendants filed a motion to dismiss the Third Amended Class Action Complaint. ECF No. 204. On August 5, 2021, the Court granted in part Defendants' motion, sustaining 274 out of 279 counts, including consumer protection claims under the laws of

54 jurisdictions, which include California's ARL and New York's GBL § 349, but dismissing five conversion counts as well as Plaintiffs' California Bot Disclosure Law claims.  ECF No. 415.

Discovery began in earnest on July 9, 2020, and from the get-go this case has been distinguished by its intensely litigated proceedings.  Wittels Decl. ¶ 17.  The parties appeared before Judge Parker fourteen times to litigate complex issues including the scope of class and merits discovery, complex ESI matters, and the timing of document production and depositions.  Settlement Agreement ¶ 11.  The parties filed more than ten substantive joint and/or simultaneous letters arguing their positions to Judge Parker in advance of these conferences.  *See, e.g.*, ECF Nos. 65, 70, 90, 120, 141, 142, 186, 225, 243, 247, 290, 293, 338, 356, 422.

In addition to the letters, the parties filed more than 20 contested discovery motions and other applications, involving, among other issues (i) novel and complex ESI motions, with motion practice regarding the treatment of hyperlinked internal documents, *see* ECF Nos. 105, 214, 260; (ii) applications for the establishment of a bellwether process, ECF Nos. 110, 153; (iii) motion practice regarding Plaintiffs' request to modify the protective order relative to the anticipated injunctive actions, ECF Nos. 209, 334; (iv) motion practice regarding sampling Noom's customer communication repositories, ECF No. 241; (v) motion practice regarding absent Class Member contact, ECF No. 362; (vi) motion practice regarding conduct at depositions, ECF Nos. 388, 422, 459; and (vii) motion practice regarding third-party subpoenas and apex depositions, ECF No. 391.

Also aware of their duty to explore resolution of this contested matter while maintaining a vigorous litigation schedule, in the fall of 2020 the parties set this case on a second and simultaneous mediation track.  Wittels Decl. ¶ 20.  The parties first engaged JAMS mediator Judge Edward Infante (Ret.) through the winter of 2020 and held a full-day mediation on December 18, 2020, followed by written correspondence and multiple conferences with Judge Infante in early

2021.  *Id.*  Beginning in the spring of 2021, the parties shifted settlement discussions to Judge Parker who, having overseen discovery, was ideally suited to provide guidance on the highly technical impasses that emerged in earlier settlement talks.  *Id.*  During this same period, Plaintiffs obtained three reports from consumer behavior and consumer complaint experts, which were disclosed to Judge Parker in advance of the May 13, 2021 mediation.  *Id.* ¶ 21.  Judge Parker also recognized the importance of using Class Member data to both assess class-wide merits arguments and to build a damages model for mediation purposes, *see generally* ECF No. 332, and requested production of over 2 billion engagement and transaction records for the proposed Class.  *Id.* Plaintiffs then hired database and data science experts to assist Class Counsel in studying this voluminous data.  *Id.*  After deposing a Noom data scientist in August 2021, Class Counsel and their experts constructed a comprehensive damages model.  *Id.*[1]  This model formed the basis of the negotiations at the two-day September 13–14, 2021 mediation conducted by Judge Parker.  *Id.*

As a result of the parties' and the Court's efforts, and following two days of negotiations, on September 14, 2021, the parties reached agreement in principle on certain material terms and executed a term sheet.  *Id.* ¶ 22.  The parties then spent the period from mid-September 2021 to January 20, 2022, negotiating final terms.  *Id.*  As with all prior negotiations, these discussions were adversarial, at arms' length, and included comprehensive written correspondence and

---

[1] Around October 2020, Noom made several updates and changes to its product and practices that related to the practices challenged in this lawsuit.  During the late summer of 2021, Class Counsel was provided with discovery showing that these changes were significant and nationwide and included changes to Noom's trial period disclosures, email acknowledgement, cancellation practices, and ease of customer service access.  Based on Class Counsel's analysis of Noom's document discovery and the extensive engagement and transaction data production, experience in similar consumer fraud litigation, detailed analysis of the status of autorenewal legislation, enforcement activity, and the case law, Class Counsel determined that consumers enrolled in Noom's Healthy Weight program on or after October 6, 2020 could not meaningfully claim that Noom had violated California's ARL, the Restore Online Shoppers' Confidence Act ("ROSCA"), § 15 U.S.C. § 8403, or other potentially applicable laws or statutes.  Class Counsel's damages calculation used in settlement negotiations reflected this assessment.  Because Class Counsel has continued (and will continue) to monitor Noom's autorenewal practices, counsel determined to limit any class action claims in this matter to enrollments occurring before October 6, 2020.  Thus, and following continuing due diligence, on February 11, 2022, Plaintiffs amended their complaint to limit the claims in this matter accordingly.  ECF No. 493.

discussions among counsel on September 15, 17, 23–24, October 7–8, 13, 24–26, November 5, 9, 19, 23, December 6 and 21, January 18, 20, 31 and February 2–3.  *Id.*

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    Eligible Class Members

The Class is defined as all natural persons who purchased a Noom Healthy Weight Subscription in the United States via the Noom website or Noom mobile app from May 12, 2016 to October 6, 2020 and who (i) were charged by Noom for a Healthy Weight Subscription and (ii) did not receive a full refund or chargeback of all Noom Healthy Weight Subscription charges. Settlement Agreement ¶ 27.  Persons who purchased a subscription via the Apple App Store or Google Play Store are excluded from the Class.  *Id.*[2]  Applying these criteria, the parties calculate approximately 2 million unique accounts.  *Id.*  For purposes of notice and administration, each unique account number will be considered a distinct Class Member.  *Id.* ¶ 85.

The Class is further divided into two groups of consumers based on the parties' assessment (with the Court's input) of the relative strength of these consumers' claims.  Wittels Decl. ¶ 24. Specifically, during contested settlement negotiations overseen by Judge Parker and later joint discussions between counsel, the parties applied the seven criteria identified by Class Counsel and their data scientists prior to the September 13–14, 2021 mediation as the best indicia of potentially unintended purchases or legal entitlement to a refund and divided the Class into two subgroups. *Id.*  "Subclass A" consists of all Class Members who either (i) never enrolled in Noom, (ii) enrolled but never engaged, (iii) engaged during the trial but not thereafter, (iv) engaged two times or fewer

---

[2] Also excluded are (a) Noom and any and all of its predecessors, successors, assigns, parents, subsidiaries, affiliates, directors, officers, employees, agents, representatives, and attorneys, and any and all of the parents', subsidiaries', and affiliates' present and former predecessors, successors, assigns, directors, officers, employees, agents, representatives, and attorneys; (b) any judicial officer presiding over this case, or any member of his or her immediate family or of his or her judicial staff; and (c) any Class Member who opts out of the Class.  *Id.* ¶ 29.

post-trial, (v) had zero engagement after day 58 of their subscription, (vi) received a partial refund of any payments for the Healthy Weight Subscription, or (vii) any other Class Member who is a resident of California.  Settlement Agreement ¶ 62.  "Subclass B" consists of all Class Members who are not part of Subclass A.  *Id.* ¶ 63.

### B.    The Settlement Amount and Allocation Plan

Under the Settlement Agreement, Noom will deposit $56,000,000 into a non-reversionary fund ("Settlement Fund").  *Id.* ¶ 60.  This amount is comprised of $46,000,000 for Subclass A and $10,000,000 for Subclass B.  *Id.*  The difference in the payment amounts between Subclasses A and B reflects the strength of these Class Members' claims.  Wittels Decl. ¶ 25.  Cash payments will be distributed to Class Members in proportion to the amounts they paid Noom.  Settlement Agreement ¶ 83(c).  In other words, the more a Class Member paid Noom, the more they stand to recover from the settlement.  *Id.*

Noom will also distribute an additional 100,000 free one-month (non-recurring) Healthy Weight memberships to the first 100,000 Subclass B members who request a credit when they submit their claim.  *Id.*  Akin to a sports team's "giveaway" of merchandise to the fans first arriving at the stadium, this credit will incentivize Subclass B members to claim their cash awards.  Wittels Decl. ¶ 26.  And just like a sports "giveaway," the credit is *in addition* to any cash award and will not reduce cash payments.  Settlement Agreement at ¶ 83(c).  Current subscribers will have the credit added to their memberships once it is redeemed and past customers will be given a voucher or promo-code to access a one-month subscription.  *Id.*  Because Noom's one-month membership costs $60, the parties valued each credit at $60.  Wittels Decl. ¶ 26.  These 100,000 credits are cumulatively valued at $6,000,000.  Settlement Agreement ¶ 65.

The average estimated cash payment to Class Members in Subclass A is approximately $167.  Wittels Decl. ¶ 27.  These same consumers paid Noom on average $224.  *Id.*  The average

estimated payment to Class Members in Subclass B is approximately $30, before accounting for any membership credits.  *Id.*  These consumers paid Noom on average $228.  *Id.*  These payment formulas track Plaintiffs' damages model used at mediation such that Class Members will be fairly compensated based on alleged damages.  *Id.*

      C.      **Business Practice Changes**

The settlement also secures robust programmatic relief that will prevent Class Members' future unintended purchases and gives the consuming public added safeguards against inadvertent purchases by ensuring that any autorenewing subscription is entered into following informed affirmative consent and that the subscriptions are easily cancelled.  *See* Settlement Agreement ¶¶ 72–74 (detailing programmatic relief spanning at least two years after final settlement approval).

Specifically, in consultation with Class Counsel and their internet user experience design expert, Noom will substantially enhance the autorenewal purchase disclosures on Noom's website and mobile app payment pages, as well as require consumers to take a separate action through a check box or digital signature to accept autorenewal.  *Id.* ¶ 72(a); Wittels Decl. ¶ 29.  Pre-checked boxes will not be used, and this extra acknowledgement will be separate and apart from the consent in which the consumer accepts the enrollment transaction.  Settlement Agreement ¶ 72(a).

Noom's disclosures regarding the trial period and autorenewal are also strictly proscribed based on lengthy negotiations informed by Plaintiffs' user experience expert.  Settlement Agreement ¶ 72(a); Wittels Decl. ¶ 30.  Those disclosures must be clear and conspicuous and set forth in bullet-point format within a text box immediately adjacent to the autorenewal check box.  Settlement Agreement ¶ 72(a).  Those disclosures will include the statements "[t]his is an autorenewing subscription," "[i]f I don't cancel during my [X] day trial, Noom will charge me [X]," and "Noom will charge my payment method on file [X] plus [sales tax] in [sales tax state] sales tax automatically every [X] months thereafter until I cancel."  *Id.*  Consumers will also be

told up front how to cancel:  they "can cancel using the cancel button in my account page, accessible on Noom's website or through the settings section in the app."  *Id.*

Regarding the "cancel button" referenced above, Noom is also required to keep this button available for at least two years.  *Id.* ¶ 72(i).  Notably, neither this button nor a customer service phone line were accessible before this lawsuit.  Wittels Decl. ¶ 31.  In fact, prior to this lawsuit's filing, Noom's cancellation policy required consumers to message their coach via the Noom app to request cancellation and there was no "account page" on the Noom website or Noom app that consumers could use to cancel.  *Id.*

Noom is also barred from using the language "no commitment" and "100% risk free" on its Healthy Weight payment page, must now provide consumers a receipt for every Noom Healthy Weight subscription charge, and for consumers signed up for a subscription plan with a term of three months or more, Noom must send one reminder email prior to the conversion from the trial to the full subscription.  Settlement Agreement ¶ 72(e)–(g).  This reminder must plainly and prominently provide (i) the deadline to cancel, (ii) the date of the next charge; (iii) the amount of the next charge, and (iv) how to cancel the plan, including a link that directs consumers on how to cancel.  *Id.* ¶ 72(g).  The reminder email program was an especially contentious point of negotiations, as Noom adamantly (and correctly) argued that no law requires such pre-conversion reminder emails for *any* of Noom's Healthy Weight subscriptions.  Wittels Decl. ¶ 32.

Lastly, and critically, for Class Members with active subscriptions that did not use Noom in the twelve months following their conversion to full-fledged customers, Noom is barred from continuing to charge these consumers unless the Class Member *expressly* consents to renewal after being plainly and prominently advised that additional charges will not occur absent this consent.

Settlement Agreement ¶ 72(j).  In other words, in addition to being eligible for a substantial cash payment, these Class Members will not be charged again unless they affirmatively elect it.

Following Noom's internal business analysis and Class Counsel's consultation with Dr. Eli Bartov, an outside economic advisor and noted professor of financial accounting and reporting at NYU's Stern School of Business, the parties estimate the cumulative value of these business practice changes, as well as the other improvements Noom made prior to the settlement, as not less than $31,000,000 and up to $120,000,000.  *Id.* ¶ 74; *see also* Wittels Decl. Ex. B, Declaration of Eli Bartov, Ph.D. Regarding Valuation of Noom, Inc.'s Business Practice Changes (explaining basis for valuation and projecting value of $31,168,744 over the minimum two-year settlement period, $53,381,240 over four years, and $120,018,728 over ten years).

This forward-looking relief is a substantial and hard-fought benefit that courts consider in the fairness analysis.  *See Ferrick v. Spotify USA Inc.*, No. 16 Civ. 8412 (AJN), 2018 WL 2324076, at *6 (S.D.N.Y. May 22, 2018) ("The combination of the immediate and future monetary relief, along with the non-monetary benefits provided, constitutes a significant recovery."); *Fleisher v. Phoenix Life Ins. Co.*, No. 14 Civ. 8714 (CM), 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief.").

### D.    **Mutual Releases**

Plaintiffs, each Class Member, and Defendants will fully release and discharge each other from all claims arising out of or relating to the action that accrued between May 12, 2016 and the date of the Preliminary Approval Order, and that were asserted or could have been asserted in the action or the related state court actions.  Settlement Agreement ¶¶ 52, 95–104.

### E.    **The Settlement Administrator**

Following a competitive bidding process, the parties jointly selected Angeion Group as the Settlement Administrator to disseminate notice to the Class and administer distribution of the

settlement benefits.  Wittels Decl. ¶ 40; *see also* Settlement Agreement ¶ 58.  As part of this bidding process the parties requested capped bids such that absent extraordinary unforeseen circumstances the risk of additional administration costs will be borne by the Settlement Administrator and not the Class.  Wittels Decl. ¶ 40.  Angeion Group estimated its costs for administration will be approximately $700,000 but agreed to cap costs at $635,000.  *Id.*[3]  Based on these bids, and Class Counsel's experience, $635,000 is a reasonable administration cost for a case of this size and complexity.  *Id.*

## III.    RULE 23 CLASS ACTION SETTLEMENT PROCEDURE AND NOTICE PLAN

The well-defined class action settlement procedure includes three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a motion for preliminary approval;

2.  Dissemination of notice of settlement to class members; and

3.  A final settlement approval hearing for the court to consider the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").  With this motion, Plaintiffs ask that the Court take the first step: grant preliminary approval, conditionally certify the class, and approve the notice plan.

Plaintiffs submit for the Court's consideration and approval the following proposed schedule and notice plan overview for the final resolution of this matter:

1.  Within sixty (60) days of preliminary approval, the Settlement Administrator will disseminate notice to Class Members.  Settlement Agreement ¶ 106(a).  The full notice is attached as Exhibit 1 to the Settlement Agreement.  In addition, each Class Member will be sent a summary notice for their subclass.  *Id.* ¶ 107; *see also* Settlement Agreement Exs. 2–3 (email notice to Subclasses A and B, respectively).  The email notice provides, *inter alia*, a hyperlink to submit an online claim that takes less than three minutes to complete.  Settlement Agreement Exs. 2–3.  Noom estimates that its email list generally has a deliverability rate of 99%.  Wittels Decl. ¶ 41.  Where Noom lacks a Class Member email address or where the Settlement Administrator

---

[3] Two other top-tier settlement administrators similarly offered to cap their fees in a range of $635,000 to $645,000, while a third submitted a capped bid for $1,445,000.  *Id.*

determines the email notice was not delivered, direct mail notice will be given. Settlement Agreement ¶ 108. Regardless of delivery method, the Settlement Administrator will utilize best practices to ensure notice delivery, including taking steps to avoid spam filters, updating mailing addresses using the National Change of Address database, and skip tracing any mailed notices returned without forwarding addresses. *Id.* ¶¶ 107(d)–108(d).[4]

2. Class Members will have sixty (60) days to submit claims, object, or exclude themselves from the settlement. *Id*. ¶¶ 25, 48.

3. Along with emailed and mailed notice, the Settlement Administrator will employ a custom social media campaign on Facebook and Instagram. *Id.* ¶ 109. If any Class Member email addresses are used as the primary log-in for a Facebook or Instagram account, the Settlement Administrator will target ads directly to those Class Members on their timeline. *Id.*

4. Before notice is issued, the Settlement Administrator will also launch a case-specific website. *Id.* ¶ 110(b). The website will allow Class Members to easily find and view information about the settlement, quickly and easily submit claims, provide answers to frequently asked questions, and list important deadlines. *Id.* The website will also be updated to provide the estimated average payment amount based on the number of participating Class Members. *Id.*

5. The Settlement Administrator will also implement a paid search campaign to help drive Class Members to the settlement website. *Id.*

6. As a further notice supplement, the Settlement Administrator will promote the settlement through two leading class action settlement websites, www.topclassactions.com and www.classaction.org. *Id.* ¶ 111. These sites create awareness of pending settlements among consumers and will seed and disperse news of the settlement. *Id.* Top Class Actions averages 3 million monthly visitors, has approximately 900,000 newsletter subscribers, and has 145,000 Facebook followers. *Id.* ClassAction.org averages 100,000 page views per month and has approximately 130,000 newsletter subscribers. *Id.*

7. The Settlement Administrator will establish a call center to respond to Class Member inquiries. *Id.* ¶ 111. The hotline will be accessible 24 hours a day, 7 days a week. *Id.*

8. Before the Claims Deadline, the Settlement Administrator will also send one reminder email/mail notice to Class Members who have not yet filed a claim. *Id.* ¶ 107(c)

9. Fourteen (14) days before the Claims Deadline, Plaintiffs will move for final settlement approval. *Id.* ¶ 121.

10. The final approval hearing will be held as soon as is convenient for the Court but not less than 120 days after preliminary approval, to allow for the notice program's completion. *Id.* ¶ 39.

11. After the final approval hearing, if the Court grants final approval, the Court will issue a final

---

[4] The Settlement Agreement also provides for Spanish language versions of the notices and Spanish translations of all other aspects of the notice plan. *See, e.g.*, Settlement Agreement ¶ 105–12.

order and judgment and dismiss this case with prejudice.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The law strongly favors the settlement of class actions.  *See Emeterio v. A&P Rest. Corp.*, No. 20 Civ. 970, 2022 WL 274007, at *2 (S.D.N.Y. Jan. 26, 2022) (Parker, J.) (noting a "strong judicial policy in favor of settlements, particularly in the class action context") (citation omitted); *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480, 2021 WL 5578665, at *4 (S.D.N.Y. Nov. 30, 2021) (Parker, J.) (same).

The approval of a class action settlement is a matter of discretion for the trial court. *Emeterio*, 2022 WL 274007, at *3 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 273 (2d Cir. 2006)); *Lea*, 2021 WL 5578665, at *4 (same).  In exercising this discretion, "[c]ourts should give proper deference to the private consensual decision of the parties," and "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Christine Asia Co., Ltd. v. Yun Ma*, No. 15 MD 02631 (CM) (SDA), 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019) (quotations omitted); *see also Emeterio*, 2022 WL 274007, at *5 (courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.") (quotation omitted); *Lea*, 2021 WL 5578665, at *7–8 (same).

Preliminary approval requires only an "initial evaluation" of the settlement's fairness on the basis of written submissions and an informal presentation.  *Gonzalez v. PB Hudson LLC*, No. 17 Civ. 2010 (VSB), 2018 WL 11255318, at *1 (S.D.N.Y. Oct. 10, 2018) (citing *Newberg* § 11.25). "Courts often grant preliminary settlement approval without requiring a hearing or a court appearance."  *Id.*

To grant preliminary approval, under the 2018 amendments to Rule 23(e), the Court must determine whether it "<u>will likely be able to</u>: (i) approve the proposal under Rule 23(e)(2); and (ii)

13

certify the class for purposes of judgment on the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (emphasis in original). "To be likely to approve a proposed settlement under Rule 23(e)(2)," the Court must find that the settlement "is fair, reasonable, and adequate." *Id.* "The newly amended Rule 23 enumerates four factors for the Court to consider as part of this inquiry: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "Prior to the 2018 amendments, courts in the Second Circuit considered whether a settlement was 'fair, reasonable, and adequate' under nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)." *Id.* "The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors." *In re GSE Bonds*, 414 F. Supp. at 692 (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment); *see also Lea*, 2021 WL 5578665, at *8 ("The Court's assessment of the settlement under Rule 23(e) is guided and informed by the *Grinnell* factors."). Accordingly, Plaintiffs offer for the Court's consideration an analysis of "both sets of factors . . . noting where they overlap." *In re GSE Bonds*, 414 F. Supp. 3d at 692.[5]

Here, the settlement was reached only after experienced counsel conducted considerable discovery, had sufficient information on the strength of the Class's claims, and engaged in vigorous arm's length negotiations actively overseen by Judge Parker and a noted class action

---

[5] The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. These factors are not to be applied in a rigid, formalistic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 468; *Emeterio*, 2022 WL 274007, at *6 ("the court should consider the totality of the [*Grinnell*] factors in light of the particular circumstance"); *Lea*, 2021 WL 5578665, at *8 (same). Here, the *Grinnell* factors weigh heavily in favor of full settlement approval, and certainly in favor of preliminary approval.

mediator.  Accordingly, this settlement bears all the hallmarks of fairness.  *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 492–93 (S.D.N.Y. 2018) (negotiations were fair where parties were represented by experienced counsel, engaged in discovery, and had negotiations overseen by an experienced mediator); *see also Lea*, 2021 WL 5578665, at *8 (same).

### A.    Adequacy of Representation:  Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class

Rule 23(e)(2)(A) requires a court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re GSE Bonds*, 414 F. Supp. 3d at 692 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).[6]

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat . . . representative status."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quotation omitted); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 72 (S.D.N.Y. 2018) (same).  To satisfy this prong, Plaintiffs must only show that "no fundamental conflicts exist between the class' representatives and its members."  *Emeterio*, 2022 WL 274007, at *4 (quotation omitted); *Lea*, 2021 WL 5578665, at *6.

Plaintiffs here are adequate because their "interests are aligned with other class members' interests because they suffered the same injuries--monetary losses resulting from [Defendant's

---

[6] The "adequate representation factor is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 n.25 (E.D.N.Y. 2019); *see also In re GSE Bonds*, 414 F. Supp. 3d at 701 (finding adequacy under Rule 23(e)(2)(A) was likely met for same reasons as adequacy under Rule 23(a)(4)).

allegedly unlawful practices]." *In re GSE Bonds*, 414 F. Supp. 3d at 692; *see also Dial Corp. v. News Corp.*, 314 F.R.D. 108, 114 (S.D.N.Y. 2015) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class." (quotation omitted)). Because of shared injuries, Plaintiffs have an "interest in vigorously pursuing the claims of the class." *Denney*, 443 F.3d at 268.

Further, Plaintiffs "have demonstrated their commitment to this litigation by retaining qualified and experienced counsel." *Emeterio*, 2022 WL 274007, at *4; *Lea*, 2021 WL 5578665, at *6. Moreover, Plaintiffs contributed significant time and effort to the case by participating in numerous meetings with Class Counsel, providing Class Counsel with detailed information regarding their experiences, reviewing and discussing the pleadings and discovery, including producing personal information like bank statements, and preparing for—and in most cases, sitting for—depositions. Wittels Decl. ¶ 19. Plaintiffs also supported Class Counsel during mediations. *Id.* In sum, Plaintiffs have been excellent class representatives.

Class Counsel also meets the adequacy requirement. Wittels McInturff Palikovic attorneys have extensive experience in prosecuting complex consumer and employment class actions. Wittels Decl. ¶¶ 3–7. The lead attorney prosecuting this case, Steven L. Wittels, was one of the lead trial counsel in the largest class action jury verdict in the history of employment discrimination litigation. *Id.* ¶ 4. Mr. Wittels has also served as Class Counsel in dozens of class actions, generating hundreds of millions of dollars in recoveries for class members. *Id.* ¶ 3. Mr. Wittels' partners J. Burkett McInturff and Tiasha Palikovic have extensive class action experience, having led several complex class and collective action matters to completion and generating more than a hundred million dollars in recoveries for class members. *Id.* ¶ 7. The other members of Plaintiffs' legal team that played crucial roles in the investigation, prosecution, and settlement of this case—

Jessica Hunter, Ethan D. Roman, Steven D. Cohen, Susan J. Russell, and the attorneys at co-counsel Chimicles Schwartz Kriner & Donaldson-Smith LLP and Bramson, Plutzik, Mahler & Birkhaeuser—all focus their practice on class action cases and are dedicated to providing first-rate representation to the underserved.  *Id.*  The work that Class Counsel has performed on this case demonstrates their skill and commitment to representing the interests of the Class.  *Id.*

**B.      Presence of Arm's Length Negotiations:  The Parties' Vigorous Negotiations Were Arm's Length at All Times**

"Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that 'the proposal was negotiated at arms length.'"  *In re GSE Bonds*, 414 F. Supp. 3d at 693.  Indeed, "[w]hen a settlement is the product of arms-length negotiations between experienced, capable counsel after meaningful discovery, it is afforded a presumption of fairness, adequacy, and reasonableness."  *Emeterio*, 2022 WL 274007, at *3 (quotation omitted); *Lea*, 2021 WL 5578665, at *4 (same).  The force of this presumption is increased when settlement is reached with the assistance of an experienced mediator, as is the case here.  *Lea*, 2021 WL 5578665, at *8; *Puddu v. 6D Global Techs., Inc.*, No. 15 Civ. 8061 (AJN), 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021).  Indeed, the settlement in this case was overseen *both* by an experienced mediator and a federal magistrate judge well-versed in class action matters.  Wittels Decl. ¶ 20.

"The active involvement of experienced and independent mediators in the negotiation of the Settlement is strong evidence of the absence of any collusion and further supports the presumption of fairness."  *Guevoura Fund Ltd. v. Sillerman*, No. 15 Civ. 7192 (CM), 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019); *In re GSE Bonds*, 414 F. Supp. 3d at 693; *Puddu*, 2021 WL 1910656.  Here, Judge Parker's determined assistance in the settlement process, along with that of a noted class action mediator, clearly supports preliminary approval.  *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711 (DAB), 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) ("These arm's-

length negotiations involved counsel and a Magistrate Judge . . . raising a presumption that the settlement achieved meets the requirements of due process.").

### C. Adequate Relief for the Class: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation

Rule 23(e)(2)(C) examines whether relief for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

This inquiry overlaps significantly with several *Grinnell* factors, including factors 1 and 4–6. *In re GSE Bonds*, 414 F. Supp. 3d at 693.

#### 1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to trial, the parties seek to avoid significant risk, expense, and delay and instead ensure a substantial recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Bryant v. Potbelly Sandwich Works*, No. 17 Civ. 7638 (CM) (HBP), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). This case is no exception, with approximately 2 million Class Members and novel claims under the laws of 54 different jurisdictions.

Continued litigation will only add expense and delay. While the parties are deep into document and deposition discovery, extensive additional discovery will be required to prepare this case for class certification and trial. In addition, the parties likely would file cross-motions for summary judgment. If the Court denied the motions, a lengthy, fact-intensive trial would consume tremendous time and resources. Further, any judgment would likely be appealed, adding further

uncertainty and delay.  In contrast, the settlement confers substantial relief to Class Members in a prompt and efficient manner, has led Defendants to enact robust business practice changes, and avoids the risks and costs inherent in class actions specifically, and litigation generally.

Therefore, the first *Grinnell* factor weighs heavily in favor of approval.  *See, e.g.*, *Lea*, 2021 WL 5578665, at *4 ("the settlement brings to a close litigation that could have lasted several more years and costs hundreds of thousands of dollars in attorneys' fees and expenses and brings immediate relief to the class"); *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 7854 (LJL) (KHP), 2021 WL 535635, at *3 (S.D.N.Y. Feb. 12, 2021) (factor favors approval because "litigation through trial would be complex, expensive, and long").

2.  Plaintiffs Face Real Risks if the Case Proceeds (*Grinnell* Factors 4 to 6)

Although Plaintiffs believe their case is strong, they understand the risks that lay ahead.  In weighing the risks of establishing liability and damages, the court "must only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *Emeterio*, 2022 WL 274007, at *7 (quotation omitted); *Lea*, 2021 WL 5578665, at *9 (same).

Moreover, this inquiry focuses on the *class's* prospects, which underscores the hurdles to class certification.  Prior to settlement, Plaintiffs had begun work on class certification and "fully anticipated that Defendants would oppose class certification as vigorously as it had contested Plaintiffs' allegations and discovery requests."  *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006).  "There is no assurance that Lead Plaintiffs' motion for class certification would be granted, and . . . Defendants would likely have challenged class certification [if] they [had] continued in this litigation."  *Puddu*, 2021 WL 1910656, at *5; *see also Quow v. Accurate Mech. Inc.*, No. 15 Civ. 09852, 2018 WL 3368673, at *3 (S.D.N.Y. July 10, 2018) (Parker, J.) (trial involves risks including overcoming argument that "Plaintiffs' claims were individualized and not suitable for class treatment.").

While Class Counsel believes the Court would certify the Class, this ruling would be reached only after extensive litigation, including more discovery, depositions, expert discovery, and lengthy briefing. *See Guevoura*, 2019 WL 6889901, at *7 ("Simply completing the pre-trial proceedings would have involved considerable additional discovery; taking dozens of depositions; defense of the depositions; preparation of complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; and extensive briefing on motions for summary judgment, motions to strike experts and other motions *in limine* likely to be made . . . ."). Either party (or both) could also seek an interlocutory appeal of a certification order under Rule 23(f), *In re GSE Bonds*, 414 F. Supp. 3d at 693, and Noom could seek to decertify the class as the case proceeded to trial. *See*, *e.g.*, *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.,* No. 16 Civ. 5265 (JPO), 2021 WL 4263717, at *1 (S.D.N.Y. Sept. 20, 2021) (Courts may "'decertify a class if it appears that the requirements of Rule 23 are not in fact met.'") (quotation omitted).

The risks of further litigation also include "an unfavorable decision on summary judgment, an unfavorable outcome at trial, and lengthy appeals even if Plaintiffs prevailed." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 412 (S.D.N.Y. 2018). Moreover, "[a] trial on the merits is inherently risky." *Delijanin*, 2021 WL 535635, at *4 (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y 1997)). "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 313 (S.D.N.Y. 2020) (quotation omitted).

While Plaintiffs believe that they could ultimately establish liability, Class Counsel are both experienced and realistic, and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain. The settlement ends these

uncertainties and therefore weighs in favor of preliminary approval.  *See, e.g.*, *Quow*, 2018 WL 3368673, at *3 (Judge Parker finding that risks as to both liability and damages, including overcoming defenses, weighed in favor of final approval).

> **D.    Effectiveness of the Proposed Method of Distributing Relief: A Simple Claims Process and a Fair Allocation Plan**

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Here, the parties' proposed method for processing Class Members' claims and distributing relief includes well-established, effective procedures, including the latest best practices for incentivizing claims. Specifically, Class Members will receive an email with the subject line "Notice of Refund from Noom," which is based on a 2019 Federal Trade Commission study of class action notices that found "Notice of Refund" had "substantially higher stated opening rates than other subject lines." F.T.C., *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, at 59, (Sept. 2019),  https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

When opened, this email will provide a hyperlink to the appropriate Claim Form. Settlement Agreement Exs. 2–3.  The Claim Form is simple in that it only requires Class Members to enter their name, email address, Notice ID from the emailed notice, and their preferred payment method.  Settlement Agreement Exs. 4–5.  The Claim Form process is designed to take less than three minutes and Class Members are told as much from the get-go.  Wittels Decl. ¶ 41.  As noted in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plaint Language Guide, "[i]t is important to capture attention with a prominent headline (like a newspaper article does).  This signals who should read the notice and why it is important.  The overall layout of the notice will dictate whether busy class members will take time to read the

notice and learn of their rights."[7]  The parties are also working with the Settlement Administrator to pre-populate into the Claim Form as much information as possible.  Wittels Decl. ¶ 43.  For example, the parties have requested that the Class Member's email address be pre-populated using the Notice ID associated with each Class Member's notice email address.  *Id.*

Given that each Class Member signed up for Noom using an email address and that Noom estimates its email list generally has a deliverability rate of 99%, it is anticipated that this method of notice will (a) reach the overwhelming majority of Class Members and (b) provide a low-friction method of submitting Claims over the Internet, a familiar medium.  *Id.* ¶ 41.  Further, and critically, the Settlement Administrator will take numerous steps designed to further stimulate claims.  These include (1) reminder notice to Class Members that have not submitted claims; (2) custom social media targeting; (3) a paid search engine optimization campaign; and (4) causing the Settlement to be listed and promoted through two leading class action settlement websites.  Settlement Agreement ¶¶ 107, 109–11.  Class Members will also have access to a hotline, website, and Class Counsel, the Settlement Administrator will process claims under the parties' guidance, and Class Members will be allowed to cure any claim deficiencies.  *Id.* ¶¶ 87, 89, 110, 112.  This "belt and suspenders" approach is ideal for distributing relief.  Wittels Decl. ¶ 48.

Regarding the allocation plan, while it "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re GSE Bonds*, 414 F. Supp. 3d at 694 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).  "[N]umerous courts have held [that] a plan of allocation need not be perfect."  *Christine Asia*, 2019 WL 5257534, at *15 (collecting cases).

---

[7] https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Feb. 11, 2022).

Here, the allocation plan tracks Plaintiffs' damages model and the allocation to each Class Member is based on the strength of the Class Member's claims (Subclass A and Subclass B) and their *proportionate* share of Noom's revenues from each Subclass. *See Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (Parker, J.) (collecting cases and noting that "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel") (citation omitted). A fundamentally fair allocation plan like the one proposed here easily hurdles the approval criteria. *See id.* (approving distribution based on overall loss for each class members' transactions and finding that class members were treated "equitably relative to each other"); *see also Puddu*, 2021 WL 1910656, at *6 (allocation plan that distributed fund "on a per-share basis, [is] fair, reasonable, and adequate").

### E.   The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Request is Well Within the Norms of this Circuit

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including the timing of payment." Here, Class Counsel will request combined litigation expenses and attorneys' fees of no more than one-third of the settlement's $56,000,000 cash portion (i.e. $18,666,666). Settlement Agreement ¶ 129. This is the standard contingency fee percentage in the Second Circuit. *See Lea*, 2021 WL 5578665, at *12 (Judge Parker noting that "one-third" is the "percent that has been approved as reasonable in this Circuit" and citing cases noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *see also Emeterio*, 2022 WL 274007, at *9 ("Fee awards representing one third of the total recovery are common in this District") (quotation omitted).

Class Counsel's requested contingency fee and expense award is also reasonable in relation to the results achieved. As noted *supra*, Class Counsel's efforts over more than two years yielded

$56,000,000 in cash, $6,000,000 in subscription credits, and programmatic relief that the parties and their respective business analysts value at between $31,000,000 to $120,000,000. In awarding attorneys' fees, it is well settled that "courts include the value of both the monetary and non-monetary benefits conferred on the Class." *Fleisher v. Phoenix Life Ins. Co.*, No. 14 Civ. 8714 (CM), 2015 WL 10847814, at *15 (S.D.N.Y. Sept. 9, 2015); *see also id.* at *10 ("The overall value of the settlement comprises monetary as well as non-monetary relief."). "Leading authorities agree, as do courts in this Circuit and nationwide." *Id.* at *15 (collecting authorities).[8]

"The Federal Judicial Center provides an example of when it is appropriate to base a percentage fee on the value of injunctive relief through objective criteria: 'an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future.'" *Id.* at *15. The Federal Judicial Center's method was precisely the method used in calculating the value of the non-monetary relief Class Counsel obtained here. Wittels Decl. ¶ 34.

When considering the $56,000,000 in cash, the $6,000,000 in subscription credits, and the lowest programmatic relief valuation ($31,168,744 over two years), the requested contingency fee and expense award represents barely 20% of the $93,168,744 total settlement benefit. *Id.* ¶ 35. Accounting for the likely scenarios of the programmatic relief lasting four years ($53,381,240) or

---

[8] *See also Sykes v. Harris*, No. 09 Civ 8486 (DC), 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (considering value of non-monetary relief in setting class counsel fees); *Bell v. Pension Comm. of ATH Holding Co.*, No. 15 Civ. 2062 (TWP) (MPB), 2019 WL 4193376, at *4 (S.D. Ind. Sept. 4, 2019) (including nearly $34 million in non-monetary value in assessing class counsel's fee request); *Tennille v. W. Union Co.*, No. 09 Civ. 938 (MSK) (KMT), 2013 WL 6920449, at *10 (D. Colo. Dec. 31, 2013) (adding $46,560,596 in non-monetary value to $19,000,000 in available refunds and awarding fee of 35% ($22,946,208) of $65,560,596 because a fee based solely on the monetary component "would severely undervalue class counsel's efforts in obtaining the [non-monetary] relief and other benefits included in the [settlement]."); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (awarding fee based on non-monetary relief of "between $26 million and $38 million"); Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, 3d. Ed., at 35 (2010) (basing fees on the "actual value to the class of any settlement fund *plus* the actual value of any nonmonetary relief") (emphasis added); Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010, § 3.13 (noting fee awards are to be "based on both the monetary *and* nonmonetary value of the judgment or settlement") (emphasis added).

ten years ($120,018,728) yields a contingency fee and expense award of 16.1% and 10.3% of the settlement's total value, respectively. *Id.* Under any of these scenarios, the requested fee is at the low end of fees approved in comparable cases, as a fee of one-third (or 33.33%) of the total value obtained has repeatedly been deemed "consistent with the norms of class litigation in this Circuit." *Santiago v. Rivka, Inc.*, No. 15 Civ. 9184 (JLC), 2017 WL 11566946, at *2 (S.D.N.Y. Aug. 10, 2017); *Azogue v. 16 for 8 Hospitality LLC*, No. 13 Civ. 7899 (TPG), 2016 WL 4411422, at *6 (S.D.N.Y. Aug. 19, 2016) (same).

It is thus no surprise that Courts in this District and Circuit routinely approve fee requests for one third of the value obtained in settlements of similar size. *See, e.g.*, *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12 Civ. 2548 (VSB), 2019 WL 4734396, at *1–2, *6 (S.D.N.Y. Sept. 23, 2019) (approving 33% fee out of $75 million settlement); *Osberg v. Foot Locker, Inc.*, No. 07 Civ. 1358 (KBF), ECF No. 426 (S.D.N.Y. June 6, 2018) (33% of $288 million); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515–16 (S.D.N.Y. 2009) (33.33% of approximately $510 million); *In re Buspirone Antitrust Litig.*, No. 01 MD 1413 (JGK), 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 17, 2003) (33.33% of $220 million); *In re Restasis Antitrust Litig.*, No. 18 MD 2819 (NG) (LB), 2020 WL 6193857, *5–6 (E.D.N.Y. Oct. 7, 2020) (33.33% of $51.25 million); *Haddock v. Nationwide Financial Servcs, Inc.,* No. 01 Civ. 1552 (SRU) (WIG), ECF No. 601 (D. Conn. Apr. 9, 2015) (35% of $140 million); *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 3:07-md-1894 (AWT), ECF No. 521 (D. Conn. Dec. 9, 2014) (33.33% of $297 million).[9]

---

[9] Courts in other circuits also commonly award one-third fees in similarly-sized class actions. *See, e.g., In re Broiler Chicken Antitrust Litig.,* No. 16 Civ. 8637 (TMD), 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) (awarding 33.33% of $55 million); *In re Epipen Epinephrine Injection*, No. 17 MD 2785 (DDC) (TJJ), 2021 WL 5369798 (D. Kan. Nov. 17, 2021) (33.33% of $345 million); *Hosp. Auth. of Meto. Gov't of Nashville v. Momenta Pharms., Inc.*, No. 15 Civ. 1100 (WDC), 2020 WL 3053468, at *2 (M.D. Tenn. May 29, 2020) (33.33% of $120 million); *In re: Urethane Antitrust Litig.*, No. 04 Civ. 1616 (JWL), 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (33.33% of $835 million); *Spano v. Boeing Co.*, No. 06 Civ. 743 (NJR) (DGW), 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016) (33% of $57 million) *Dahl v. Bain Capital Partners, LLC*, No. 07 Civ. 12388 (WGY), ECF Nos. 1051, 1095 (D. Mass. Feb. 2,

*Footnote continued on next page.*

Finally, Class Counsel's requested fee and expense award furthers public policy. *See, e.g.,* *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480 (KHP), 2021 WL 5578665, at *13 (S.D.N.Y. Nov. 30, 2021) (Parker, J.) ("public policy favors the award of reasonable attorneys' fees in class action settlements" (quotation omitted)); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) ("Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases, like this one, that serve the public interest.").[10]    This is especially true where, like here, there are *no* public enforcement actions.  This deterrent effect will carry over to other market participants, who will be on notice that they will suffer unwanted costs, inconvenience, bad publicity, and legal exposure if they engage in similar conduct.

Simply put, Class Counsel's fee is reasonable, as this amount falls below the range of fees normally approved within this Circuit.  The Court need not rule on fees and costs now, however,

---

2015) (33.33% from $590.5 million settlement before class certification); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748–52 (E.D. Pa. 2013) (33.33% of $150 million); *In re Southeastern Milk Antitrust Litig.*, No. 07 Civ. 208 (JRG), 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (33.33% of $158.6 million); *In re Titanium Dioxide Antitrust Litig.*, No. 10 Civ. 318 (RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (33.33% of $163.5 million); *In re Apollo Group Inc. Sec. Litig.*, No. 04 Civ. 2147 (PHX) (JAT), 2012 WL 1378677, at *9 (D. Ariz., Apr. 20, 2012) (33% of $145 million); *In re Merck & Co. Inc. Vytorin ERISA Litig.*, No. 08 Civ. 285 (DMC), 2010 WL 547613, at *12 (D.N.J. Feb. 9, 2010) (33.33% of $41 million); *In re Vitamins Antitrust Litig.*, No. 99 Misc. 197 (TFH), 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (34.06% of $365 million).

[10] *See also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (to "attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives") (quotation omitted); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (if the "important public policy [of remedial statutes] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

as pursuant to Federal Rule of Civil Procedure 23(h) Plaintiffs will move for fees and expenses with the Motion for Final Approval of the Settlement.[11],[12]

### F. Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Alleged Damages and is Reasonable

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."   Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  2018 Advisory Notes to Fed. R. Civ. P. 23.  Here, the settlement treats individual Class Members fairly in relation to their realistic outcomes at trial.  As discussed *supra*, the payment allocation plan tracks Plaintiffs' damages model used at mediation and Class Members' awards are keyed to their alleged overpayment.  Further, all Class Members will be bound by the same mutual release, Settlement Agreement ¶¶ 52, 95–104, that does not affect the apportionment of relief, demonstrating equity.  *In re GSE Bonds*, 414 F. Supp. 3d at 698–99.

### G. The Remaining *Grinnell* Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate

#### 1.  The Reaction of the Class (*Grinnell* Factor 2)

Notice of the settlement and its details have not yet been issued.  The Court should therefore analyze this factor after the Class responds.  At this early stage, this factor is neutral.

---

[11] As for the timing of payment, fourteen days after final approval Noom will complete funding the settlement (Settlement Agreement ¶ 77) and seven days later the approved fees and expenses will be issued.  *Id.* ¶ 130.  These sums will be held in a Qualified Settlement Fund until the Effective Date and Class Member checks are issued.  *Id.*  If the Effective Date does not occur, Class Counsel must repay any fees, with interest.  *Id.*  Courts have recognized that this payment schedule that "serves the socially-useful purpose of deterring serial objectors."  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, No. 08 WP 65000 (CAB), 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016); *see also In re Lumber Liq. Chinese-Mfd. Flooring Prods. Mktg., Sales Prac. & Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) (noting that such payment provisions "have generally been approved by other federal courts").

[12] Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal."  Here, there are none.  *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36, n.30.

2.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would likely require many hundreds (if not thousands) of hours of additional discovery, the parties have completed more than enough discovery to recommend settlement.  The question raised by this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Delijanin*, 2021 WL 535635, at *3 (quotation omitted).  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but are] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *Id.* (quotation omitted).

The discovery taken here, and described *supra*, easily hurdles this standard.  *See Christine Asia*, 2019 WL 5257534, at *10 (approving settlement where "the case proceeded well into both class certification and merits discovery," including review of over 1 million pages of documents, numerous meet and confer sessions, fact depositions, and preparation of expert reports); *Quow*, 2018 WL 3368673, at *3 (Judge Parker approving settlement where discovery included production and review of "thousands" of pages of documents and data analysis).

3.  Although Defendants Likely Could Withstand a Greater Judgment, That Does Not Suggest the Settlement is Unfair (*Grinnell* Factor 7)

Even if Noom could withstand a greater judgment, its ability to do so, standing alone, "does not suggest that the settlement is unfair."  *In re Facebook*, 343 F. Supp. 3d at 413 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *see also Lea*, 2021 WL 5578665, at *10 (same). This factor is therefore neutral.

4.  The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The fairness assessment "'is not susceptible of a mathematical equation yielding a particularized sum.'"  *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 06728 (CM) (SDA), 2020

WL 4196468, at *12 (S.D.N.Y. July 21, 2020) (quoting *In re PaineWebber*, 171 F.R.D. at 130).

"[T]he question . . . is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces . . . ." *Puddu*, 2021 WL 1910656, at *6 (quotation omitted). "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Here, Noom agreed to settle this case for a substantial amount: a settlement fund of $56,000,000; $6,000,000 in subscription fee credits; plus programmatic reforms valued at an additional $31,000,000 to $120,000,000. Even if the Court were to only consider the $56,000,000 in cash relief, this sum is 27.5% of the $203,559,671 in damages Plaintiffs would have sought at trial. Wittels Decl. ¶ 36. This result is more than reasonable: it is admirable. *See Lea*, 2021 WL 5578665, at *11 (Judge Parker approving settlement of 5.3% of estimated class-wide damages); *see also id.* ("Courts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness") (citation omitted); *Emeterio*, 2022 WL 274007, at *8 (Judge Parker observing that a settlement at 25% of total damages "weighs strongly in favor of final approval"); *In re GSE Bonds Antitrust Litig.*, No. 19 Civ. 1704 (JSR), 2019 WL 6842332, at *4 (S.D.N.Y. Dec. 16, 2019) (settlement valued at 10.9% to 21.3% of possible recovery was reasonable); *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409 (WHP), 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (preliminary approval of settlement representing roughly 10-15% of allegedly unlawful fees collected).

This case presents significant risks that strongly favor compromise. Given the risks of litigation, the settlement provides substantial value to the Class. In fact, the cash portion of this settlement is the largest-ever cash recovery for consumers in an autorenewal case, far exceeding

payments in past private and public cases.[13]   Further, the programmatic relief in the settlement goes well beyond past public or private autorenewal settlements.[14]   Weighing the benefits of settlement against the risks of litigation, the outcome achieved here is an excellent result.

*      *      *

In sum, the Rule 23(e)(2) and *Grinnell* factors weigh in favor of preliminary approval. Because the settlement is "fair, adequate, and reasonable, and not the product of collusion," *Guevoura*, 2019 WL 6889901, at *4 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)), the Court should grant preliminary approval.

## V.   THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiffs seek to certify the following class under Federal Rule of Civil Procedure 23(e):

> All natural persons who purchased a Noom Healthy Weight Subscription in the United States via the Noom website or mobile app from May 12, 2016 to October 6, 2020 and who (i) were charged by Noom for a Healthy Weight Subscription and (ii) did not receive a full refund or chargeback of all Noom Healthy Weight Subscription charges.

---

[13] *See, e.g.*, *FTC v. Age of Learning, Inc.*, No. 20 Civ. 7996, ECF No. 4-1 at 10 (C.D. Cal. Sept. 1, 2020) ($10 million monetary judgment); *King v. Bumble Trading Inc.*, No. 18 Civ. 6868 (NC), ECF No. 108-1 at 21 (N.D. Cal. June 22, 2020) ($22.5 million settlement fund); *FTC v. Triangle Media Corp.*, No. 18 Civ. 1388 (LAB), ECF Nos. 126 at 12, 127 at 11 (S.D. Cal. May 30, 2019) (judgments totaling $171 million suspended after payment of $3.4 million); *Williamson v. McAfee, Inc.*, No. 14 Civ. 158 (EJD), ECF No. 114, at 2 (N.D. Cal. Feb. 3, 2017) (approximately $3 million in cash payments made to the class); *Habelito v. Guthy-Renker*, No. BC499558 (Sup. Ct. Los Angeles Cty. Feb. 1, 2017) (up to $15.2 million in cash payments to class), http://proactivclassaction.com/media/814170/settlement_agreement.pdf (last visited Feb. 11, 2022); *Marketers of Simple Pure Supplements Settle FTC Court Action*, Federal Trade Commission (May 3, 2016) ($105 million judgment suspended to $9.2 million in forfeited assets), https://www.ftc.gov/news-events/press-releases/2016/05/marketers-simple-pure-supplements-settle-ftc-court-action (last visited Feb. 11, 2022); *FTC v. Wilms*, No. 11 Civ. 828 (MP), ECF No. 117 at 18 (W.D. Wash. Mar. 6, 2012) ($359 million judgment suspended after forfeiture less than $5 million).

[14] *See, e.g.*, *Age of Learning, Inc.*, No. 20 Civ. 7996, ECF No. 4-1 at 4–10 (C.D. Cal. Sept. 1, 2020) (requiring disclosures regarding autorenewal, trial practices, and simple cancellation option); *King*, No. 18 Civ. 6868 (NC), ECF No. 108-1 (N.D. Cal. June 22, 2020) (clearer disclosure of autorenewal terms and post-purchase confirmation email); *Williamson*, No. 14 Civ. 158 (EJD), ECF No. 95 at 24–25 (N.D. Cal. Aug. 22, 2016) (updated autorenewal and reference price disclosures); *see also FTC v. XXL Impressions LLC*, No. 17 Civ. 67 (NT), ECF No. 42 at 7–18 (D. Me. Sept. 13, 2017) (prohibiting misrepresentations, requiring disclosures on certain advertisements, and requiring express written consent for autorenewals); *FTC v. Bunzai Media Grp., Inc.*, No. 15 Civ. 4527 (GW) (PLA), ECF No. 676 at 8–13 (C.D. Cal. June 27, 2018) (prohibiting failure to clearly disclose terms of offer, refund, cancellation, or obtain express written consent for charges); *Triangle Media Corp.*, No. 18 Civ. 1388 (LAB) ECF No. 126 at 6–12 (S.D. Cal. May 30, 2019) (prohibiting misrepresentations, requiring clear autorenewal disclosures, express written consent, and a simple cancellation mechanism).

Settlement Agreement ¶ 27.  As discussed below, the Class meets the requirements for class certification, and Defendants agree that this action may be certified as a class action for settlement purposes only.  *Id.* ¶¶ 66–67; *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

"Preliminary settlement approval, provisional class certification, and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring all class members are notified of the terms of the proposed Agreement, and setting the date and time of the final approval hearing." *Fteja v. Nusret New York LLC*, No. 19 Civ. 429, 2020 WL 1915325, at *2 (S.D.N.Y. Mar. 5, 2020) (Parker, J.).

Under Rule 23(a), a class action may be maintained if the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Plaintiffs request certification of a Rule 23(b)(3) class and thus must satisfy Rule 23(b)(3)'s requirements.  Rule 23(a) requires that:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires courts to find that:

> [Q]uestions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"[T]he Second Circuit has emphasized that Rule 23 should be given 'liberal rather than restrictive construction,'" *Zivkovic*, 329 F.R.D. at 68 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)), and "the Second Circuit's general preference is for granting rather than denying class certification," *id.* (quotation omitted).

### A.    Numerosity

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the parties calculate that there are approximately 2 million Class Members. Settlement Agreement ¶ 27. This element is satisfied.

### B.    Commonality

The Class also satisfies the commonality requirement. "Factual differences in the claims of the class do not preclude a finding of commonality. . . . Put simply, commonality may be found where the plaintiffs' alleged injuries derive from a unitary course of conduct by a single system." *Lea*, 2021 WL 5578665, at *5 (quotation omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

This case involves numerous common issues and courts in this District routinely find commonality when presented with the similar common questions as those at issue here. *See, e.g.*, *Mayhew v. KAS Direct, LLC*, No. 16 Civ. 6981 (VB), 2018 WL 3122059, at *5 (S.D.N.Y. June 26, 2018) (common issues included "whether defendants engaged in fraudulent, unfair, unlawful, and deceptive business practices, whether a reasonable consumer would rely on or be deceived by defendants' business practices"); *Lea*, 2021 WL 5578665, at *6 (common questions included whether defendants "engaged in a common scheme to defraud" the class).

### C. **Typicality**

"The typicality requirement is satisfied where each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *George v. Shamrock Saloon II, LLC*, No. 17 Civ. 6663 (RA) (SLC), 2021 WL 3188314, at *6 (S.D.N.Y. July 28, 2021) (quotations omitted). "The typicality requirement is not demanding." *Villella v. Chem. & Mining Co. of Chile, Inc.*, 333 F.R.D. 39, 55 (S.D.N.Y. 2019) (quotation omitted). Typicality is met when the disputed issues "occupy essentially the same degree of centrality" between the named representatives and the class. *Id.*

Like commonality, typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG), 2021 WL 4077942, at *6 (S.D.N.Y. Sept. 8, 2021) (quotation omitted). And as with commonality, typicality is not defeated by "minor variations in the fact patterns underlying individual claims," *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993), as long as the alleged wrong occurred in the same general fashion. Typicality is also "determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). Here, typicality is easily met because all Class Members were "exposed to the same marketing [and] will have almost entirely the same claims with at most 'minor variations' in the facts surrounding their purchase[.]" *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 400 (S.D.N.Y. 2016).

### D. **Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, as set forth on pp. 15–16 above, Plaintiffs meet the adequacy requirement. *In re Kind LLC "Healthy and All Nat." Litig.*, 337 F.R.D. 581,

596 (S.D.N.Y. 2021) ("[t]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class").  Class Counsel also meet this requirement.  As set forth on pp. 16–17 above, they have been able advocates for the Class.  *Id.*

### E.   Certification is Proper Under Rule 23(b)

Plaintiffs seek certification of a Rule 23(b)(3) class for settlement purposes.  Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1.   Common Questions Predominate

The essential predominance inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001).  That a defense "may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones."  *Id.* at 138.  Predominance is met when class members' claims "rely on a common legal theory."  *Zivkovic*, 329 F.R.D. at 75–76.  Thus, courts often find predominance in consumer protection cases.  *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 341 (S.D.N.Y. 2021) (collecting cases); *see also Lea*, 2021 WL 5578665, at *6 (noting predominance "is a test readily met in certain cases alleging consumer . . . fraud") (quoting *Amchem*, 521 U.S. at 623, 625).

Here, Class Members' common factual allegations and common legal theory—that Noom's public-facing autorenewal practices allegedly violated various state consumer protection laws, and common law theories—predominate over any factual or legal variations among Class Members.  Thus, the issue of whether all Class Members were the victims of unlawful practices

34

will predominate over individualized inquiries because "liability can be determined on a class-wide basis[.]" *In re Visa Check*, 280 F.3d at 139.  A finding of predominance in this case is therefore squarely in line with other cases in this District.[15]

### 2.  A Class Action Is a Superior Mechanism for Adjudicating Claims

The second part of the Rule 23(b)(3) analysis entails examining whether the class action device is superior to other methods available for a fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *see also Lea*, 2021 WL 5578665, at *6 (a class action is superior where it "presents economies of 'time, effort and expense, and promote[s] uniformity of decision").  Rule 23(b)(3) sets forth a non-exclusive list of considerations, including: the class members' interests in individually controlling the prosecution; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[16]

Here, given each Class Member's potential maximum damages (on average, roughly $200) there is little incentive to bring individual actions.  *See Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.").  It is thus unlikely that

---

[15] *See, e.g.*, *de Lacour* 338 F.R.D. at 341 (predominance met in class action under NY and CA consumer protection statutes); *In re Kind*, 337 F.R.D. at 599–602 (finding predominance under NY, CA, and FL consumer protection statutes); *Famular v. Whirlpool Corp.*, No. 16 Civ. 944 (VB), 2019 WL 1254882, at *8–9 (S.D.N.Y. Mar. 18, 2019) (finding predominance in challenge to whether labels misleading under NY consumer protection law).

[16] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Emeterio*, 2022 WL 274007, at *2 (Parker, J.) (same); *Lea*, 2021 WL 5578665, at *4 (same).  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *Pearlstein v. BlackBerry, Ltd.*, No. 13 Civ. 7060 (CM), 2021 WL 253453, at *23 (S.D.N.Y. Jan. 26, 2021) (citation omitted).

any meaningful number of Class Members would bring separate actions given the relatively "low cost of the product at issue and the lack of incentive for individuals to bring suit." *In re Kind*, 337 F.R.D. at 608. Further, Plaintiffs are unaware of any similar pending individual lawsuits filed by Class Members. Wittels Decl. ¶ 15. Moreover, many Class Members (if not most) likely do not appreciate that they have legal claims. *See de Lacour*, 338 F.R.D. at 346 (noting that many consumers "may not even realize" potentially unlawful conduct occurred). Adjudicating separate actions arising from the same facts also burdens the courts. Accordingly, this case represents the quintessential class action: the proposed settlement here is an optimal result for Class Members who would undoubtedly incur costs and expenses greatly outweighing even a full recovery if they filed individual lawsuits. To date, no difficulties have occurred in managing this action and this District is an appropriate forum, as Noom's headquarters are located in this District.

Employing the class action device here will not only achieve economies of scale but will also conserve judicial resources and prevent inconsistent adjudications. *See George v. Shamrock Saloon II, LLC*, No. 17 Civ. 6663 (RA) (HBP), 2019 WL 8106153, at *10 (S.D.N.Y. Aug. 7, 2019), *R. & R. adopted* 2020 WL 133621 (S.D.N.Y. Jan. 13, 2020) ("class adjudication, as opposed to multiple individual actions, will conserve judicial resources and avoid the waste and delay of repetitive proceedings on the same issues"). A class action is clearly the most suitable mechanism for this case.

## VI. PLAINTIFFS' LEAD COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g), which governs appointing class counsel, sets forth four criteria: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider

any other matter pertinent to counsel's ability to adequately represent the class.  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g), Advisory Committee's note.

Wittels McInturff Palikovic meets the Rule 23(g) criteria.  Class Counsel has done substantial work identifying, investigating, pursuing, and settling Plaintiffs' and Class Members' claims.  Wittels Decl. ¶¶ 13–22.  Additionally, Class Counsel has substantial experience prosecuting and settling consumer protection class actions, including deceptive practices and fraud class actions, and the lawyers assigned to this matter are well-versed in consumer protection law and class action law and are well-qualified to represent the interests of the class.  *Id.* ¶¶ 3–8.  Accordingly, Wittels McInturff Palikovic should be appointed Class Counsel.

## VII.   THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED

Plaintiffs respectfully request that the Court approve the parties' notice plan (described on pp. 11–12 above).  The notice plan fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(c)(2)(B), notice must provide:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language:
>
> (i)    the nature of the action;
> (ii)   the definition of the class certified;
> (iii)  the class claims, issues, or defenses;
> (iv)   that a class member may enter an appearance through an attorney if the member so desires;
> (v)    that the court will exclude from the class any member who requests exclusion;
> (vi)   the time and manner for requesting exclusion; and
> (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the notice plan satisfies each of these requirements and adequately apprises Class Members of their rights under the settlement.  As for the Notice itself (Settlement Agreement Exhibit 1), it is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices[17] and informs Class Members about the settlement, including how they can exclude themselves or object and the consequences of inaction.  The Notice also describes the material terms of the settlement and provides specific information regarding the date, time, and place of the final approval hearing.  Courts in this District have approved class notices even when they provide only general information.  *See, e.g.*, *George*, 2021 WL 3188314, at *7 ("Class notice need only describe the terms of the settlement generally . . . .") (quotation omitted).  "Notice need not be perfect, but must be the best notice practicable under the circumstances . . . ."  *Christine Asia*, 2019 WL 5257534, at *16 (notice was adequate where it "provided all of the necessary information for Class Members to make an informed decision regarding the Settlement").  The detailed information in the Notice far exceeds this low threshold.

The parties' notice plan clearly satisfies Rule 23(c)(2)(B)'s requirement that the Court order "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  As shown above, the parties have designed a detailed notice plan that reflects best practices and contains numerous quality control measures to ensure that the notice will reach as many Class Members as possible.  *See* pp. 11–12.

---

[17] *Available at*: https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant

Plaintiffs' Motion and endorse the proposed Order.

Dated:  February 11, 2022
      Armonk, New York               Respectfully submitted,

                                      /s/ Steven L. Wittels
                                      Steven L. Wittels
                                      J. Burkett McInturff
                                      Tiasha Palikovic
                                      Steven D. Cohen
                                      Ethan D. Roman
                                      Jessica L. Hunter

                                    **WITTELS MCINTURFF PALIKOVIC**
                                    18 Half Mile Road
                                    Armonk, New York 10504
                                    Telephone: (914) 319-9945
                                    Facsimile: (914) 273-2563
                                    slw@wittelslaw.com
                                    jbm@wittelslaw.com
                                    tpalikovic@wittelslaw.com
                                    sdc@wittelslaw.com
                                    edr@wittelslaw.com
                                    jlh@wittelslaw.com

                                    *Lead Counsel for Plaintiffs and the Class*

                                    Benjamin F. Johns (*pro hac vice*)
                                    **CHIMICLES SCHWARTZ KRINER**
                                    **& DONALDSON-SMITH LLP**
                                    361 W. Lancaster Avenue
                                    Haverford, Pennsylvania 19041
                                    Telephone: (610) 642-8500
                                    Facsimile: (610) 649-3633
                                    BFJ@chimicles.com

                                    *Co-Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the documents submitted in support of

Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, and Related

Relief via ECF this 11th day of February 2022 upon all counsel of record:

/s/  Steven L. Wittels
Steven L. Wittels